**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

DAN SILLS *and* GEORGE DICK, *individually and on behalf of all others similarly situated*,

                              Plaintiffs,

    vs.

UNITED NATURAL FOODS, INC., J. ALEXANDER MILLER DOUGLAS, JOHN W. HOWARD, *and* CHRISTOPHER P. TESTA,

                              Defendants.

No. 1:23-CV-02364-JGLC

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CHRISTOPHER TESTA'S**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................1

LEGAL STANDARD.............................................................................................................3

ARGUMENT..........................................................................................................................4

  I.  Plaintiffs Fail to Allege That Mr. Testa Had Actual Control Over UNFI or the Alleged Misstatements. ......................................................................................5

  II.  Plaintiffs Fail to Allege That Mr. Testa Was a Culpable Participant in the Alleged Fraud.................................................................................................................8

CONCLUSION.....................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ark. Teacher Ret. Sys. v. Bankrate, Inc.*,
 18 F. Supp. 3d 482 (S.D.N.Y. 2014)..................................................................................5

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)...........................................................................................................3

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
 493 F.3d 87 (2d Cir. 2007)..............................................................................................4, 8

*In re Bernard L. Madoff Inv. Sec. LLC*,
 818 F. App'x 48 (2d Cir. 2020) (per curiam) ...................................................................4

*In re Braskem S.A. Securities Litigation*,
 246 F. Supp. 3d 731, 771 (S.D.N.Y. 2017)......................................................................8

*Burstyn v. Worldwide Xceed Grp., Inc.*,
 No. 01 CIV. 1125 (GEL), 2002 WL 31191741 (S.D.N.Y. Sept. 30, 2002) .....................4

*In re Inv. Tech. Grp., Inc. Sec. Litig.*,
 No. 15 CIV. 6369 (JFK), 2018 WL 1449206 (S.D.N.Y. Mar. 23, 2018) ......................8, 10

*Li v. Eqonex Ltd.*,
 No. 1:23-CV-03346-GHW, 2024 WL 4241951 (S.D.N.Y. Sept. 18, 2024)...................5, 7

*Lively v. WAFRA Inv. Advisory Grp., Inc.*,
 6 F.4th 293 (2d Cir. 2021) ...............................................................................................3

*Lorefice v. New York*,
 No. 22-2037-CV, 2023 WL 7271838 (2d Cir. Nov. 3, 2023)...........................................3

*PR Diamonds, Inc. v. Chandler*,
 364 F.3d 671 (6th Cir. 2004) ...........................................................................................3

*In re Refco, Inc. Sec. Litig.*,
 503 F. Supp. 2d 611 (S.D.N.Y. 2007)...............................................................................5

*Rombach v. Chang*,
 355 F.3d 164 (2d Cir. 2004)..............................................................................................4

*Schwab v. E\*TRADE Fin. Corp.*,
 258 F. Supp. 3d 418 (S.D.N.Y. 2017)............................................................................8, 11

*In re ShengdaTech, Inc. Sec. Litig.*,
No. 11 CIV. 1918 LGS, 2014 WL 3928606 (S.D.N.Y. Aug. 12, 2014)...............................4, 8

*In re Smith Barney Transfer Agent Litig.*,
884 F. Supp. 2d 152 (S.D.N.Y. 2012).................................................................................5, 6, 7

*In re Sotheby's Holdings, Inc.*,
No. 00 Civ. 1041 (DLC), 2000 WL 1234601 ..........................................................................5

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
33 F. Supp. 3d 401 (S.D.N.Y. 2014)........................................................................................8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)..................................................................................................................4

*Valentine Props. Assocs., LP v. U.S. Dep't of Hous. & Urb. Dev.*,
785 F. Supp. 2d 357 (S.D.N.Y. 2011), *aff'd*, 501 F. App'x 16 (2d Cir. 2012).........................3

*Youngers v. Virtus Inv. Partners Inc.*,
195 F. Supp. 3d 499 (S.D.N.Y. 2016).......................................................................................6

**Statutes**

15 U.S.C. § 78t(a) ........................................................................................................................4

15 U.S.C. § 78u-4(b)(2) ..............................................................................................................4, 8

**Rules**

Fed. R. Civ. P. 12(b)(6)................................................................................................................3

Fed. R. Civ. P. 12(h)(2)(B) ..........................................................................................................3

Defendant Christopher P. Testa respectfully submits this Memorandum in Support of his Motion for Judgment on the Pleadings.

## INTRODUCTION

Plaintiffs allege that United Natural Foods, Inc. ("UNFI") and three of its current or former officers made false or misleading statements about the Company's financial performance during a period of extreme macroeconomic volatility and while UNFI faced unprecedented challenges. In ruling on Defendants' motion to dismiss, this Court held that one of those former officers, former UNFI President and Chief Marketing Officer Christopher Testa, did not make a false or misleading statement and therefore is not liable for a "primary" violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5. The only claim that remains against Mr. Testa is a claim for "control person liability" under Section 20(a) of the Exchange Act. That remaining claim should be dismissed for two reasons.

First, Plaintiffs have not alleged any particularized facts demonstrating that Mr. Testa exercised actual control over UNFI or the alleged misstatements at issue. The one alleged misstatement attributed to him was already dismissed by this Court. And Plaintiffs' remaining allegations directed toward control are conclusory boilerplate that courts in this District have repeatedly held to be insufficient. Second, Plaintiffs have not alleged any particularized facts raising a strong inference that Mr. Testa was a "culpable participant" in the alleged fraud. Because Plaintiffs have not adequately alleged either a primary violation under Section 10(b) or a claim for control person liability under Section 20(a), and these defects are incurable, this Court should enter an order dismissing all claims against Mr. Testa with prejudice.

## BACKGROUND

Plaintiffs seek to represent a class of investors who acquired UNFI securities between December 8, 2021 and September 25, 2023. (Dkt. 39, Second Amended Complaint ("SAC")

1

¶¶ 1, 254.) Christopher Testa served as UNFI's Chief Marketing Officer from August 2018 to July 2020 and President from August 1, 2018 to October 13, 2023. (*Id.* ¶ 29.) Plaintiffs bring a claim against Mr. Testa and the other Defendants under Section 10(b) of the Exchange Act and Rule 10b-5, alleging that they made false or misleading statements about the Company's financial performance. (*Id.* ¶¶ 269-79.) In particular, they allege that Defendants knowingly failed to disclose the relative impact of inflation-related forward buying on the Company's profitability during the putative class period. (*Id.* at ¶¶ 5-6, 144.)

Plaintiffs also bring a claim against Mr. Testa and the other Individual Defendants for "control person liability" under Section 20(a) of the Exchange Act. They allege that "[b]y virtue of their high-level positions and their ownership and contractual rights," the Individual Defendants "had the power to influence and control … the decision-making of the Company." (*Id.* ¶ 281.) They also allege that the Individual Defendants "were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected." (*Id.*)

The Court granted in part and denied in part Defendants' motion to dismiss. (Dkt. 66.) As relevant here, the Court held that Plaintiffs failed to allege adequately that Mr. Testa made a false or misleading statement: "Plaintiffs failed to oppose the motion to dismiss with respect to any statement by Mr. Testa during the Class Period, and his statements before the Class Period are not actionable." (*Id.* at 22.) In particular, the Court explained, the only challenged statement by Mr. Testa during the putative class period had "nothing to do with the impact of inflation or forward buying, and Plaintiffs make no attempt to defend why it was misleading." (*Id.* at 22 n.2.)

Having determined that Mr. Testa did not make a false or misleading statement, the Court "focuse[d] its analysis of scienter" on the other two Individual Defendants, J. Alexander Miller Douglas and John Howard. (*Id.* at 22.) The Court held that the complaint adequately alleged scienter with respect to Mr. Douglas and Mr. Howard, and that their state of mind could be imputed to the Company. (*Id.* at 27.) It then denied Defendants' motion with respect to the Section 20(a) claims because Defendants' argument for dismissing the Section 20(a) claims "rests entirely on Plaintiffs' presumptive failure to plead a claim under Section 10(b)" and the Court found that Plaintiffs had adequately alleged a primary violation under Section 10(b) as to Mr. Douglas, Mr. Howard, and UNFI. (*Id.* at 28.)

## **LEGAL STANDARD**

"The standard for granting a Rule 12(c) motion is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." *Lorefice v. New York*, No. 22-2037-CV, 2023 WL 7271838, at *2 (2d Cir. Nov. 3, 2023) (cleaned up). To survive dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.[1]

---

[1] Pursuant to Rule 12(c), a party may request judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Like a motion under Rule 12(b)(6), a Rule 12(c) motion "may be filed before discovery is complete." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021). A party may move for judgment on the pleadings after a ruling on a prior motion to dismiss. *See* Fed. R. Civ. P. 12(h)(2)(B); *Valentine Props. Assocs., LP v. U.S. Dep't of Hous. & Urb. Dev.*, 785 F. Supp. 2d 357, 370, 375 (S.D.N.Y. 2011) (Rule 12(c) motion granted after Rule 12(b)(6) ruling), *aff'd*, 501 F. App'x 16 (2d Cir. 2012); *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 679, 698 (6th Cir. 2004) (affirming grant of Rule 12(c) motion on control person liability claim under Section 20(a) after prior motion to dismiss ruling on Section 10(b) claims).

Plaintiffs' complaint is subject to the heightened pleading standards of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b). Under the PSLRA's heightened pleading requirements, Plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). The inference of scienter "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). This heightened standard also applies to a claim for control person liability under Section 20(a) because control person liability requires a showing of scienter. *See, e.g.*, *In re ShengdaTech, Inc. Sec. Litig.*, No. 11 CIV. 1918 LGS, 2014 WL 3928606, at *10 (S.D.N.Y. Aug. 12, 2014); *Burstyn v. Worldwide Xceed Grp., Inc.*, No. 01 CIV. 1125 (GEL), 2002 WL 31191741, at *8 (S.D.N.Y. Sept. 30, 2002).[2]

## **ARGUMENT**

To state a claim for control person liability under Section 20(a) of the Exchange Act, Plaintiffs must allege "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007); *see also In re Bernard L. Madoff Inv. Sec. LLC*, 818 F. App'x 48, 55 (2d Cir. 2020) (per curiam); 15 U.S.C. § 78t(a).

---

[2] Applying a heightened pleading standard and evaluating the allegations against Mr. Testa individually is required in connection with these claims. As courts recognize, fraud accusations may damage a defendant's reputation. *See Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (explaining that heightened pleading requirements "safeguard a defendant's reputation from improvident charges of wrongdoing" and collecting cases).

**I.      Plaintiffs Fail to Allege That Mr. Testa Had Actual Control Over UNFI or the Alleged Misstatements.**

Plaintiffs must first show that Mr. Testa had actual control over UNFI and the allegedly false or misleading statements at issue. But their complaint includes only conclusory and general allegations that Mr. Testa was an officer and had control over UNFI's SEC reports and press releases, which is not enough.

Control person liability requires "'actual control' over the primary violator." *Li v. Eqonex Ltd.*, No. 1:23-CV-03346-GHW, 2024 WL 4241951, at *16 (S.D.N.Y. Sept. 18, 2024) (quoting *In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 740 (S.D.N.Y. 2015)). "[O]fficer or director status alone does not constitute control." *In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 167 (S.D.N.Y. 2012) (quoting *In re Global Crossing, Ltd. Sec. Litig.*, No. 02 CIV. 910 (GEL), 2005 WL 1907005, at *12 (S.D.N.Y. Aug. 8, 2005)). In addition, a control person must have control not only over the primary violator, but "over the transaction in question." *Id.* at 166. Put another way, it is insufficient for a plaintiff to allege that a defendant has control person *status*. *Li*, 2024 WL 4241951, at *16. Rather, the defendant must have exerted "*actual* control over the matters at issue." *Id.*; *see also In re Sotheby's Holdings, Inc.*, No. 00 Civ. 1041 (DLC), 2000 WL 1234601, at *8 (S.D.N.Y. Aug. 31, 2000 ("Actual control over the wrongdoer and the transactions in question is necessary for control person liability.").

In the context of a Section 10(b) case, "control" over the "matter at issue" means actual involvement in the preparation or dissemination of the alleged misstatement—that is, signing, drafting, approving, or confirming the specific alleged misstatement, or ordering or encouraging its dissemination. *See, e.g.*, *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 663 (S.D.N.Y. 2007) ("[A] claim under § 20(a) requires … actual involvement in the making of the fraudulent statements by the putatively controlled entity."); *Ark. Teacher Ret. Sys. v. Bankrate, Inc.*, 18 F.

Supp. 3d 482, 486 (S.D.N.Y. 2014) (dismissing Section 20(a) claim where complaint "alleged no particularized facts suggesting that the [defendants] had control over the alleged misrepresentations at issue"); *Youngers v. Virtus Inv. Partners Inc.*, 195 F. Supp. 3d 499, 525 (S.D.N.Y. 2016) (dismissing Section 20(a) claims because "the 'matter[ ] at issue' is the misstatements contained in the registration statement and marketing documents," and there was no allegation that defendants were involved in preparing or disseminating those statements); *Smith Barney*, 884 F. Supp. 2d at 166-67 (dismissing Section 20(a) claims because complaint did not allege that defendant had any control over specific alleged misstatements).

Plaintiffs have not alleged that Mr. Testa had actual control over UNFI or the alleged misstatements at issue. Plaintiffs conclusorily allege that "[b]y virtue of their high-level positions" and "intimate knowledge" of UNFI's SEC reports, the Individual Defendants influenced and controlled UNFI's decision-making, "including the content and dissemination of the various statements which Plaintiffs contends [*sic*] are false and misleading." (SAC ¶ 281; *see also id.* ¶ 30.) They also allege, again in conclusory fashion, that the Individual Defendants "were provided with or had unlimited access to copies of the Company's reports … shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected," and "had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to" the alleged violations. (*Id.* ¶¶ 281-82.) At no point does the complaint allege any particularized fact about Mr. Testa specifically with respect to control. (*See id.* ¶¶ 281-83.)

Plaintiffs' conclusory and boilerplate group pleading against Mr. Testa is insufficient. Plaintiffs do not allege that Mr. Testa "signed, drafted, approved, or confirmed" any specific

alleged misstatement. *Smith Barney*, 884 F. Supp. 2d at 167; *accord Li*, 2024 WL 4241951, at *17 (dismissing Section 20(a) claims where plaintiffs relied on "group pleading without particularity" and "failed to allege that [either defendant] had actual control over the statements at issue"). Nor do they allege that Mr. Testa "ordered or encouraged" another to disseminate any misleading statement. *Smith Barney*, 884 F. Supp. at 167. In fact, the complaint fails to tie a single actionable statement to Mr. Testa specifically. (*See* Dkt. 66 at 22 n.2 (the only challenged statement by Mr. Testa during the class period "has nothing to do with the impact of inflation or forward buying, and Plaintiffs make no attempt to defend why it was misleading").)

Courts in this District have repeatedly held that nearly identical boilerplate pleading even against a company's CEO—which Mr. Testa was not—is insufficient to allege control. For example, the plaintiffs in *Li* brought Section 20(a) claims against the company's CEO (also a board member) and another board member, alleging that "[b]ecause of their positions of control and authority as senior officers and controllers of Eqonex, Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Eqonex disseminated in the marketplace." 2024 WL 4241951, at *17. These allegations were insufficient to establish actual control, the court held, because they were general appeals to the defendants' control person status, not assertions about actual control over any misleading statement. *Id.* Similarly, the plaintiffs in *Smith Barney* alleged that the CEO exercised control "by virtue of his high-level positions," "intimate knowledge of the statements filed," and "ability to prevent the issuance of the statements." 884 F. Supp. 2d at 166. These allegations were held insufficient for the same reason. *Id.* at 166-67. The court in *In re Braskem S.A. Securities Litigation* held the same, dismissing a Section 20(a) claim against the CEO because the complaint was "silent with

7

respect to [the CEO's] actual control of, or any role he played with respect to," specific alleged misstatements in SEC filings. 246 F. Supp. 3d 731, 771 (S.D.N.Y. 2017). So too here.

## II.    Plaintiffs Fail to Allege That Mr. Testa Was a Culpable Participant in the Alleged Fraud.

Plaintiffs have also failed adequately to allege that Mr. Testa "was in some meaningful sense, a culpable participant in the controlled person's fraud," which is an independent reason to dismiss the Section 20(a) claim against him. *ATSI Commc'ns*, 493 F.3d at 108. To show he was a culpable participant, Plaintiffs must allege "particularized facts" demonstrating his "conscious misbehavior or recklessness." *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 438 (S.D.N.Y. 2014) (quoting *Lapin v. Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221, 246-47 (S.D.N.Y. 2006)).

Culpable participation is a state-of-mind requirement and "must be pleaded with the same particularity as scienter." *Id.* That means the PSLRA's heightened pleading standard applies, so Plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2); *ShengdaTech*, 2014 WL 3928606, at *10. Where courts find no Section 10(b) scienter, they also find no culpable participation. *In re Inv. Tech. Grp., Inc. Sec. Litig.*, No. 15 CIV. 6369 (JFK), 2018 WL 1449206, at *8 (S.D.N.Y. Mar. 23, 2018) (no culpable participation where plaintiff had not pleaded officers' scienter); *Schwab v. E\*TRADE Fin. Corp.*, 258 F. Supp. 3d 418, 432-36 (S.D.N.Y. 2017) (same).

The only statement Plaintiffs attribute to Mr. Testa during the alleged class period is from the 3Q22 Earnings Call:

> And Sandy [Douglas], if I can build on that a little bit, there were some specific items that we're cycling in '22 that we've talked about before, including that monetization of Riverside, which creates a rent expense, which didn't exist last year. We knew health and wellness expense was going to come back on us in '22

as more people are going back for medical procedures. And we've been open about the Save A Lot transaction that service fee that we were providing them for the past 5 years that also ended in FY '22.

(SAC ¶ 167 (emphasis omitted).) The Court has already found this statement "has nothing to do with the impact of inflation or forward buying" and is not plausibly false or misleading. (Dkt. 66 at 22 n.2.) It cannot give rise to the required strong inference of scienter.

Plaintiffs also attribute four statements to Mr. Testa from before the start of the putative class period:

- September 29, 2020 (4Q20 Earnings Call): "Going forward, we'll be placing a heavy emphasis on standardizing processes and using higher level data analytics to drive decision-making and generate these incremental operating efficiencies." (SAC ¶ 45 (emphasis omitted).)

- June 9, 2021 (3Q21 Earnings Call): "We have a process for CPG [consumer-packaged goods] increases, our suppliers increases where we get notification 60, 90 days in advance." (*Id.* ¶ 66 (emphasis omitted).)

- June 9, 2021 (3Q21 Earnings Call): "Defendant Testa stated that [UNFI] had 'received notice from many suppliers indicating they will be taking price increases in the coming months' and that these price increases were 'higher than normal.'" (*Id.* ¶ 223.)

- June 9, 2021 (3Q21 Earnings Call): "Defendant Testa stated that Defendants 'expect[ed] inflation to have a larger impact on our business leading into fiscal 2022,' but 'our contracts generally allow UNFI to pass through manufacturer cost increases.'" (*Id.* ¶ 68.)

None of these statements gives rise to a strong inference that Mr. Testa knew the magnitude of the impact of inflation-related forward buying on UNFI's bottom line relative to other factors during the alleged class period. Nor do any of these statements suggest that Mr. Testa had any personal connection to any of the alleged misstatements that survived the motion to dismiss, much less a connection indicating culpability.

The complaint also makes two allegations about Mr. Testa's motive to mislead that were fully briefed as part of Defendants' motion to dismiss Plaintiffs' Second Amended Complaint;

9

those arguments are incorporated by reference here. First, Plaintiffs allege that Mr. Testa's annual bonus was an incentive to hide the impact of inflation-related forward buying. As Defendants previously explained, this incentive is common to virtually all corporate insiders and is legally insufficient to plead scienter, and in fact the Individual Defendants' long-term compensation dwarfed the short-term gains from annual bonuses, which cuts against a finding of scienter. (Dkt. 49 at 16-18; Dkt. 57 at 1-2.) This Court recognized that "the law does not support that this motive, *without more*, provides an independent basis for scienter." (Dkt. 66 at 26 (emphasis added).) At least as to Mr. Testa, there is no "more" supporting scienter, so this allegation is insufficient to show culpable participation.

Second, Plaintiffs allege that Mr. Testa made two allegedly "suspicious stock sales." (SAC ¶¶ 239-44.) As Defendants set forth previously, Mr. Testa made the sales pursuant to a Rule 10b5-1 trading plan, and such sales generally do not raise a strong inference of scienter because they cannot be timed precisely by the seller. (Dkt. 49 at 19.) Moreover, Plaintiffs make no specific allegations supporting their theory that Mr. Testa sold the shares knowing the Company's stock price would decline later, and in fact the way Mr. Testa's trading plan was structured suggests he believed the price would rise, not decline. (*Id.* at 19-20.) In addition, other factors again cut against any inference of scienter, including that Mr. Testa sold only a small percentage of his holdings, and Plaintiffs do not allege that any of the other Individual Defendants sold their shares. (*Id.* at 20-21.)

Finally, Plaintiffs have not alleged that Mr. Testa had access to or reviewed any specific documents or information that contradict any of the alleged misstatements. *See, e.g.*, *Inv. Tech. Grp.*, 2018 WL 1449206, at *5, *8 (plaintiff had "not identified any specific report or statement" showing the CFO knew damaging information, so had not adequately pleaded he was a culpable

10

participant). Their claim of control person liability boils down to pure speculation that Mr. Testa should have known about the impact of inflation-related forward buying "by virtue of [his] responsibilities and activities as a senior officer" (SAC ¶ 274), which is not enough to plead culpable participation. *See, e.g.*, *Schwab*, 258 F. Supp. 3d at 432-36 (dismissing Section 20(a) claim against CEO where it consisted only of "boilerplate allegations that defendants knew or should have known of fraudulent conduct based solely on their board membership or executive positions").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court enter an order dismissing all claims against Mr. Testa with prejudice.

Dated: November 15, 2024　　　　　　　Respectfully submitted,
　　　　New York, New York

　　　　　　　　　　　　　　　　　　/s/ *Francesca Brody*
　　　　　　　　　　　　　　　　　　Francesca Brody
　　　　　　　　　　　　　　　　　　Vincent Margiotta
　　　　　　　　　　　　　　　　　　SIDLEY AUSTIN LLP
　　　　　　　　　　　　　　　　　　787 Seventh Avenue
　　　　　　　　　　　　　　　　　　New York, New York 10019
　　　　　　　　　　　　　　　　　　Telephone: (212) 839-5300
　　　　　　　　　　　　　　　　　　Facsimile: (212) 839-5599
　　　　　　　　　　　　　　　　　　fbrody@sidley.com
　　　　　　　　　　　　　　　　　　vmargiotta@sidley.com

　　　　　　　　　　　　　　　　　　Nilofer I. Umar (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　Neil H. Conrad (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　William J. Lawrence (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　SIDLEY AUSTIN LLP
　　　　　　　　　　　　　　　　　　One South Dearborn Street
　　　　　　　　　　　　　　　　　　Chicago, Illinois 60603
　　　　　　　　　　　　　　　　　　Telephone: (312) 853-7000
　　　　　　　　　　　　　　　　　　Facsimile: (312) 853-7036
　　　　　　　　　　　　　　　　　　numar@sidley.com
　　　　　　　　　　　　　　　　　　nconrad@sidley.com
　　　　　　　　　　　　　　　　　　bill.lawrence@sidley.com

　　　　　　　　　　　　　　　　　　*Attorneys for Defendants*

11