UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAN SILLS and GEORGE DICK, individually and on behalf of all others similarly situated,<br><br>                  Plaintiffs,<br><br>     v.<br><br>UNITED NATURAL FOODS, INC., J. ALEXANDER MILLER DOUGLAS, JOHN W. HOWARD, and CHRISTOPHER P. TESTA,<br><br>                  Defendants. | Case No.: 1:23-cv-02364-JGLC-VF<br><br>**<u>STIPULATED PROTOCOL FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION</u>** |

Court-appointed Lead Plaintiff Dan Sills and additional plaintiff George Dick (together, "Plaintiffs"), and defendants United Natural Foods, Inc. ("UNFI"), J. Alexander Miller Douglas, John W. Howard, and Christopher P. Testa (collectively, "Individual Defendants" and together with UNFI, "Defendants"), by and through their respective undersigned counsel, hereby stipulate and agree to the following Stipulated Protocol for Discovery of Electronically Stored Information (the "ESI Protocol" or "Protocol").

## I.      GENERAL PROVISIONS

1.     This Protocol will govern discovery of ESI, as defined herein, and Hard-Copy Documents, as defined herein, in this Action as a supplement to the Federal Rules of Civil Procedure, the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Rules"), and the individual Policies and Procedures of District Judge Jessica G. L. Clarke and Magistrate Judge Valerie Figueredo (together, the "Individual Rules"), and any other applicable orders and rules.

2.    The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout this matter. The Parties shall follow Local Rule 26.4 and the Individual Rules with respect to any and all discovery disputes.

3.    Unless otherwise agreed to or directed by the Court, each Party will bear the costs of collecting, processing, and reviewing Documents in that Party's possession, custody, or control according to this Protocol.

4.    Nothing in this Protocol shall be construed to affect the discoverability or admissibility of any Document. All objections to the discoverability or admissibility of any Document are preserved and may be asserted at any time in accordance with the applicable Federal Rules of Evidence, Federal Rules of Civil Procedure, and/or Local Rules or Individual Rules.

5.    Each production of ESI shall be accompanied by correspondence indicating the Bates range and any applicable passwords.

6.    To the extent any of the provisions of this Protocol generate any undue or unanticipated burden on the Producing Party, the Parties will confer in good faith to consider all reasonable alternatives to any such provision.

## II.    DEFINITIONS

1.    The Parties expressly adopt and incorporate by reference (as if fully set forth herein) the uniform definitions set forth in Local Rule 26.3. Additional defined terms are set forth below. In the event of any conflict, the more specific definitions set forth below shall control.

2.    <u>Action</u>: means the above-referenced action.

3.    <u>Document</u>: has the meaning ascribed to it in Federal Rule of Civil Procedure 34(a)(1)(A) and S.D.N.Y. Local Rule 26.3. The term "Document" shall include Hard-Copy Documents and ESI as defined herein.

2

4.     Email: means electronic messages sent or received over the Internet using simple mail transfer protocol or internally within an organization's mail service, including, but not limited to, Microsoft Exchange.

5.     Email Thread: means a single Email conversation that starts with an original Email (the beginning of the conversation) and includes all subsequent replies and forwards pertaining to that original Email.

6.     ESI: means an abbreviation of "electronically stored information," which has the meaning ascribed to in Federal Rule of Civil Procedure 34(a)(1)(A).

7.     Extracted Text: means text extracted from a Native Format file and includes at least all headers, footers, document body information, and any hidden text, if available. The Extracted Text must not include text of characters that were not part of the text of the original Native Format file, including but limited to, Bates numbers and endorsements (except in the cases of redactions).

8.     Go-Get: means a request to manually retrieve and produce a specifically-identified Document, or small number of Documents.

9.     Hard-Copy Documents: means Documents existing in paper form at the time of collection.

10.    Hash Value: means the unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set.

11.    Instant Messages: means real-time communications sent via chat client, short messaging service ("SMS"), Multimedia Messaging Service ("MMS"), or Rich Messaging Service ("RMS"), including but not limited to: Slack, Microsoft Teams, Google Talk, Google Chat, Google Hangouts, Skype, Facebook Messenger, Instagram Messenger, Signal, Telegram, Snapchat,

Discord, WhatsApp, Bloomberg Messenger, WeChat, TikTok, or any similar or proprietary instant messaging system. By defining this term, the Parties do not concede that any of these sources of Instant Messages are relevant or need to be collected or searched. The Parties will separately negotiate the sources of ESI searches.

12. Load File: means an electronic file that is used to import all required production information into a document database, including, if available, document images, Extracted Text or OCR text, Native Format files where required by this ESI Protocol, and Metadata, as well as information indicating document breaks, and document relationships such as those between an Email or Instant Message and its attachments.

13. Metadata: means (i) structured information about ESI that is created by the file system or application that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file, embedded in the Document or Email and sometimes modified through ordinary business use; (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system; (iii) information, such as Bates numbers, created during the course of processing Documents or ESI for production; and (iv) information collected during the course of collecting ESI, such as the name of the device on which it was stored or the custodial data source from which it was collected. Metadata of ESI describes, *inter alia*, the characteristics, origins, usage, and validity of the collected ESI.

14. Native Format: means the format of ESI in the application in which such ESI was originally created.

15.    OCR: means the optical character recognition technology used to read Hard-Copy Documents or electronic images of Documents and output such Documents to a searchable text format.

16.    Producing Party: means any Party or Third Party in the Action that produces Documents.

17.    Protective Order: means the Confidentiality Stipulation and Protective Order that will be entered in this Action, as amended by any subsequent order(s) of the Court.

18.    Receiving Party: means a Party in the Action to whom Documents are produced.

19.    Responsive Document: means any Document that is responsive to any discovery request or subpoena served on the Producing Party in the Action and which the Producing Party has agreed or been ordered to produce, subject to the limitations set forth in the Federal Rules of Civil Procedure and/or Court order.

20.    Tagged Image File Format or TIFF: refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or Hard-Copy Documents.

21.    Third Party: means any other person/entity, other than a party to this Action.

## III.    PRESERVATION AND IDENTIFICATION OF POTENTIALLY RELEVANT INFORMATION AND ESI

The Parties acknowledge their obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody, or control. Nothing in this ESI Protocol shall affect the Parties' respective preservation obligations imposed by rule or law.

## IV.    SEARCH, COLLECTION, & REVIEW

The Parties will meet and confer in good faith to discuss any methodologies to be employed for the collection and production of Documents in response to any Fed. R. Civ. P. 34 request for production, such as the use of search terms, date ranges, electronic sources, or other filters. Where

multiple Email messages are part of a single Email Thread, the Producing Party is required to produce only the most inclusive message and need not produce earlier messages, less inclusive Email messages or "thread members" that are fully contained, including attachments and including identical senders and recipients, within the most inclusive Email Thread. The Parties may use advanced search, analytical, and retrieval technologies like predictive coding or other technology-assisted review ("TAR") in order to prioritize the review of or the grouping of Documents requested or returned from the use of search terms, date ranges, electronic sources, or other filters as agreed to between the Parties, and the Parties agree to meet and confer if any Party believes that the use of predictive searching becomes necessary to limit the review of any Documents. The Producing Party, to the extent search terms are used and the Producing Party is seeking to modify those terms, will upon request undertake reasonable efforts to provide search term reports identifying the "hit" count of Documents per search term, Documents including family per search term, and the unique hit count of Documents per search term. To the extent such "hit" reports must be modified to avoid undue or unanticipated burden in the preparation of those reports, the Parties agree to consider all such reasonable modifications.

V.    **PRODUCTION FORMATS FOR DOCUMENTS FROM HARD-COPY DOCUMENTS**

A.    <u>Generally</u>: Except for redacted and logged Documents as described in Section VII of this ESI Protocol, *infra*, the Parties will produce Documents originating from Hard-Copy Documents in CCITT Group IV single-page TIFF format (black and white, 300 dpi). If an original Document contains color, it need not be produced in color in the first instance. However, the Producing Party will honor reasonable requests for a color image, if color is necessary to understand the meaning or content of the Document. Color Documents shall be produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting to as to preserve

legibility. The Parties agree not to degrade the searchability or legibility of Documents as part of the document production process.

B.      Document Unitization: In scanning paper Hard-Copy Documents, each page of paper should be output to a single page TIFF file.  Logical document breaks shall be maintained to the extent reasonably possible and documents will be produced consistent with the manner they were maintained in the ordinary course of business. Pages containing post-it notes or other detachable notes that obscure the underlying Document should be scanned once with the detachable note intact, and then again without it, and made part of the same Document. The Parties shall make reasonable efforts to unitize the Documents in accordance with this paragraph, but recognize that certain Documents and categories of Documents might not reasonably be scanned to comply.

C.      Load File: The Parties will provide a standardized load file compatible with Relativity and with a Bates number field included in the load file to match text and metadata with TIFF/JPG images. With respect to Hard-Copy Documents, data on the load file will include the following metadata or their equivalents (when available), as defined in Section VI of this Protocol:

|       |              |
|-------|--------------|
| i.    | BEGDOC;      |
| ii.   | ENDDOC;      |
| iii.  | BEGATTACH;   |
| iv.   | ENDATTACH;   |
| v.    | CUSTODIAN;   |
| vi.   | CONFIDENTIALITY; |
| vii.  | PGCOUNT;     |
| viii. | REDACTED; and |
| ix.   | TEXTLINK.    |

## VI.   PRODUCTION FORMATS FOR ESI

A.   <u>Production Format Generally</u>: Except for redacted and logged Documents as described in Section VII of this ESI Protocol, *infra*, the Parties will produce Documents originating as ESI in TIFF format, with the exception of any spreadsheets, audio, and video files, which shall be produced in Native Format. ESI shall be produced with Extracted Text, along with the below listed metadata fields, where reasonably available. If an original Document contains color, it need not be produced in color in the first instance. However, the Producing Party will honor reasonable requests for a color image, if color is necessary to understand the meaning or content of the Document. Color Documents shall be produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting as to not degrade the original image. TIFFs/JPGs will show any and all text and images, including track changes where applicable, that would be visible to the reader using the native software that created the Document. For example, TIFFs/JPGs of Email messages should include the BCC line, to the extent technically feasible without undue burden. If the image does not accurately reflect the Document as it was kept in the usual course of business, including all comments, edits, tracking, etc., the Parties agree to meet and confer in good faith on production format options. The Parties agree that embedded Documents and hyperlinks need not be extracted as separate Documents, except that if any Party identifies a Document during the review of discovery materials and determines that such extraction for that Document is truly necessary, then upon request, the Producing Party shall in good faith attempt to produce that Document's embedded files as attachments. Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level Document or file is extracted. The Parties will provide a standardized load file.

8

B.        Metadata: Each of the Metadata and coding fields set forth below that can reasonably be extracted or generated from a Document shall be produced for that Document (subject to exceptions for privilege). All ESI will be collected in a manner that preserves the associated metadata intact (specifically including, but not limited to, the below-listed fields for "Created Date/Time" and "Last Modified Date/Time"), to the extent reasonably feasible. If the metadata fields listed below do not exist or are not reasonably accessible or available for any Documents produced, nothing in this Order shall require any Party to extract, capture, collect, or produce such data, with the exception of the following fields, if available: (a) BegBates; (b) EndBates; (c) BegAttach; (d) EndAttach; (e) All Custodian; (f) Redacted (Y/N); (g) Confidentiality; and (h) HashValue. Metadata shall be provided in a Concordance-format delimited file with a .DAT file extension and ASCII 020 and 254 delimiters for column break and text qualifier. The first line shall be the header with field names, and each subsequent line shall contain the fielded data for each Document. The Parties also agree that every production of previously unproduced Documents, the Metadata field values for each Metadata field header will be mapped to the same Metadata field source, unless otherwise agreed in writing. For redacted items which were originally ESI, all non-privileged metadata fields that are reasonably accessible or available will be provided and will include all non-privileged, non-redacted data. Redacted Documents shall be identified as such in the load file provided with the production. Nothing herein shall require a Producing Party to create or produce Metadata that does not exist, cannot be generated by ESI processing software, or is not reasonably or technically collectable. The Parties agree, in particular, that "Go-Get" collections of small sets of Documents do not require forensic-style collection to preserve all metadata. With respect to ESI, data on the load file will include the

9

following metadata fields or their equivalents (when reasonably collectable, feasible, and not privileged):

| Field Name | Description |
| --- | --- |
| BEGDOC | Begin Document Bates number |
| ENDDOC | End Document Bates number |
| BEGATTACH | Begin Bates number of family unit |
| ENDATTACH | End Bates number of family unit |
| CUSTODIAN | Individual from whom the Document originated |
| ALL CUSTODIAN | Name of the agreed-upon custodians, in addition to the primary custodian, from whose files the item would have been produced if it had not been de-duplicated |
| FROM | Author of the Email message |
| TO | Recipient(s) of the Email message |
| CC | Recipient(s) of "Carbon Copies" of the Email message |
| BCC | Recipient(s) of "Blind Carbon Copies" of the Email message |
| DOCUMENT SUBJECT | Subject field extracted from the metadata of the native file |
| EMAIL SUBJECT | Subject field extracted from the metadata of an Email file |
| DOCUMENT TITLE | The title of a Document |
| DOCUMENT AUTHOR | Author field extracted from the metadata of the native file |
| FILE EXTENSION | File extension of a Document |
| CREATE DATE | Date file was created |
| CREATE TIME | Time file was created |
| LAST MODIFIED DATE/TIME | Date and time Document was last modified |
| EMAIL SENT DATE/TIME | Date and time Email was sent |
| EMAIL RECEIVED DATE/TIME | Date and time Email was received |

| DATE/TIME APPOINTMENT START | Start date and time of calendar appointment entry |
|---|---|
| DATE/TIME APPOINTMENT END | End date of calendar appointment entry |
| LAST EDITED BY | Name of the last person to edit the Document from extracted metadata |
| PGCOUNT | Number of pages in a Document (image records) |
| FILE SIZE | File size in bytes |
| LOGICALPATH | Original logical path location of the Document in the repository from which it was collected. |
| FILE TYPE | File Type: Email, image, spreadsheet, presentation, etc. |
| MD5 HASH | Unique identifier of the file |
| FILE NAME | Original name of the file or subject of Email, including file extension |
| CONFIDENTIALITY | User-generated field that will indicate confidentiality pursuant to the Protective Order (*i.e.*, CONFIDENTIAL or HIGHLY CONFIDENTIAL). Otherwise, blank. |
| REDACTED | YES if applicable. Otherwise, blank. |
| TECHNICAL ISSUE | YES where slip sheet reads "Technical issue—file cannot be processed." Otherwise, blank. |
| TEXTLINK | Contains Path to .TXT files |
| NATIVELINK | Contains Path to native files |

C.    Reproduction in Native Format: The Parties further agree that to the extent any Party seeks production in Native Format of specifically identified ESI produced originally in TIFF format for good cause shown, the Producing Party shall respond reasonably and in good faith to any such request.

11

### VII.    MISCELLANEOUS PROVISIONS

A.    <u>Additional Formatting Processes</u>: Any Producing Party may De-NIST their electronic collections before searching and reviewing using the then-current NIST list published by the National Institute of Standards and Technology.

The Parties will make reasonable efforts to ensure that all encrypted or password-protected ESI are successfully processed prior to production. To the extent encrypted or password-protected ESI are successfully processed, the Parties have no duty to identify further the prior encrypted status of such Documents. To the extent security protection for such ESI cannot be successfully processed despite reasonable efforts, the Parties shall not be required to produce them. If a member of a Document family that has otherwise been determined to be responsive cannot be technically processed (*e.g.*, unsupported file format, file corruption, inaccessible password-protected Document) using reasonable efforts, those technical problems shall be identified and disclosed to the Receiving party by production of a Bates numbered slip sheet that states "Technical issue—file cannot be processed," or a similar phrase.

B.    <u>Bates Numbering</u>: The Parties shall assign a Bates number to individual pages of TIFF Documents and a Bates number to each Document produced in Native Format. Bates numbers shall be unique across the entire document production and sequential within a given Document. All volumes of production from a Producing Party shall be identified by the same Bates prefix and a numerical sequence. Re-produced Documents shall include their original Bates numbers, if any.

C.    <u>Confidentiality Designations</u>: If a Document or other ESI has a confidentiality designation, the designation shall be stamped on the face of all TIFF images pertaining to such Document pursuant to the Protective Order. If the Receiving Party believes that a confidentiality

designation obscures the content of a Document, then the Receiving Party may request that the Document be produced with the confidentiality designation in a different position. No Party may attach to any filing or any correspondence addressed to the Court (including any Magistrate Judge), or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding, a copy (whether electronic or otherwise) of any Native Format Document produced by any party without ensuring that the corresponding Bates number and confidentiality legend, as designated by the Producing Party, appears on the Document or in the filename (or on the Document's cover page), if used in Native Format. For each Document that is marked either "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," a confidentiality field will be populated with the word "Confidential" or the words "Highly Confidential," as the case may be, in the .DAT file.

D.    De-Duplication and Document Families: The Parties may perform de-duplication of ESI within and across custodians according to MD5 or SHA-1 Hash Values at a family level and may produce only a single copy of identical ESI. De-duplication shall not break up Document families. The custodian associated with the first copy of a Document processed will be considered the primary custodian for that Document (the custodian who will be used as the basis for determining which other collected Documents are duplicates). The Producing Party shall produce an "All Custodians" metadata field with each production as specified in Section VI above, which lists every custodian or source who or which possessed a duplicate Document. If additional Documents are produced after substantial completion of Document discovery, the Receiving Party may request that the Producing Party produce an overlay that provides an updated "All Custodian" field.

13

Any Document that contains an alteration, marking on, or addition to the original Document shall be treated as a distinct version, and shall be produced as such. These alterations include, but are not limited to, handwritten notes, electronic notes/tabs, edits, highlighting or redlining. If a Document with alternations contains color, it need not be produced in color in the first instance. However, the Producing Party will honor reasonable requests for a color image, if color is necessary to understand the meaning or content of the Document. Color Documents shall be produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting as to not degrade the original image.

For purposes of production, and to the extent feasible on an automated, scalable basis with existing technology, responsive Documents should include all parent items (mail, calendar, contacts, tasks, notes, etc.) and child files (attachments of files to Email to internal or nonpublic Documents, or other items), with the parent/child relationship preserved, except any family members that are withheld or redacted on the basis of privilege, work product, or other grounds.

E.      ESI Not Required: The Parties agree that the following ESI does not require preservation, collection, review, or production because they are either not reasonably accessible or because the remote possibility of additional relevant information existing in not reasonably accessible sources is substantially outweighed by the burden and cost of preservation, collection, review, and production, provided, however, that nothing herein shall prevent a Party from subsequently requesting that Documents from the sources identified below be preserved and produced if specific facts demonstrate a particular need for such Documents that justifies the burden of preservation and retrieval:

> i.      Deleted, shadowed, damaged, residual, slack, fragmented, or other data on hard drives, solid-state drives (SSDs), or similar physical media, and which are only accessible by forensics;

14

ii.    Random access memory (RAM), temporary files, or other ephemeral data that is difficult to preserve without disabling the operating system;

iii.    On-line access data such as temporary Internet files, history, cache, cookies, and the like;

iv.    Data stored on photocopiers, scanners, and fax machines;

v.    Data in metadata fields that are frequently updated automatically, such as last-opened dates;

vi.    Data maintained or duplicated in any electronic backup system for the purpose of system recovery or information restoration, including, but not limited to, system recovery backup tapes or other media, continuity of operations systems, and data or system mirrors or shadows, if such data are routinely purged, overwritten, or otherwise made not reasonably accessible in accordance with an established routine system maintenance policy;

vii.    Server, system, or network logs;

viii.    Data remaining from systems no longer in use that is unintelligible on the systems in use;

ix.    Video surveillance data;

x.    Voicemail; and

xi.    Email, calendars, and contact data sent to or from mobile devices (*e.g.*, iPhone, iPad, Android, and Blackberry devices), provided that a copy of all such electronic data is saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

F.    <u>Preservation of Parent-Child Relationships</u>: The Parties agree that if any part of an Email or its attachments is responsive, the entire family of Email and attachments will be produced, to the extent feasible on an automated, scalable basis with existing technology, except any family members that must be withheld or redacted on the basis of privilege, work product, or other grounds. The Parties shall use reasonable efforts to preserve parent-child relationships (the association between an attachment and its parent Document). The Parties will provide a BEGATTACH and ENDATTACH for each produced attachment in the load file. If any member of a Document "family" (e.g., an Email attachment) is withheld as privileged, then the Producing party shall produce a one-page slipsheet TIFF image bearing a unique Bates number and noting that the Document has been withheld as privileged.

G.      Redactions: The following information may appropriately be redacted: (1) information subject to the attorney-client privilege, attorney work product doctrine, or other recognized protection or privilege under U.S. law and the law and rules applicable in this Court; (2) personally sensitive or identifiable information: bank and brokerage account numbers; social security numbers and similar identifiers; personal addresses; personal telephone numbers; other personal identifying information; and (3) the names of minor children.  For redacted items that were originally ESI, all metadata fields noted in this Protocol that do not contain privileged or protected information will be provided and will include all non-redacted data. The Parties will produce redacted Documents in TIFF format with corresponding searchable text and associated metadata for the Documents, ensuring the redacted content is fully protected from disclosure. To the extent spreadsheets contain redacted text, the Producing Party shall provide a copy of the native file with redactions. During the course of discovery, the Parties may meet and confer regarding the reasonable basis for any applied redaction.

H.      Privilege Log: The Parties agree that for all Documents and information that are withheld or redacted on privilege, work product, or any other grounds[1], the Parties may provide a categorical privilege log if doing so would substantially lessen the burden of complying with discovery without substantially impairing the ability of the Receiving Party to evaluate any claim of privilege or protection ("Privilege Log").

The following categories of Documents need not be logged:

      i.      Documents that reflect communications with the undersigned counsel or members of their law firms that are related to this litigation, and that post-date the filing of the initial complaint in this Action; and

---

[1] Nothing in this provision shall be interpreted as any Party waiving its rights to object to the propriety of a Producing Party withholding or redacting information on any grounds.

  ii.  Work product created by any of the undersigned firms or agent of the undersigned firms that is related to this litigation, and that post-dates the filing of the initial complaint in this Action.

If the Producing Party elects to provide a categorical privilege log, the Requesting Party may request a metadata log for any category to evaluate any claim of privilege or protection, and the Producing Party will provide it within 14 calendar days. The metadata log will include the following metadata fields for each document:

  i.  Priv Log ID (if not produced) or BegBates (if produced)

  ii.  BegBatesAttach (if produced)

  iii.  EndBatesAttach (if produced)

  iv.  All Custodians

  v.  From

  vi.  To

  vii.  CC

  viii.  BCC

  ix.  Document Date [Date sent for emails; date modified for non-emails]

  x.  Email Subject

  xi.  FileName

  xii.  Author

  xiii.  Privilege Type

I.  <u>Timing of Privilege Logs</u>: Privilege Logs shall be produced no later than 14 calendar days after the substantial completion deadline for document discovery.

J.  <u>Processing Specifications</u>: The Producing Party will generate and preserve the MD5 or SHA-1 Hash Values of all ESI based on the Native Format file. Where Documents are not otherwise produced natively, all TIFF images shall display deletions, revisions, comments, speaker notes, and other rich data (including, but not limited to, hidden text, strikethrough text, the identity of the person making the deletion or revision and the date and time thereof, etc.) as

displayed in the Document, regardless of the display setting for this information as last saved by the custodian, to the extent reasonably possible.

K.    Third Party Documents and ESI: A Party that issues a subpoena upon any third-party ("Issuing Party") shall include a copy of this Protocol and the Protective Order with the subpoena. The Issuing Party shall produce a copy to all other Parties of any ESI or Hard-Copy Documents (including any metadata) obtained under subpoena to a third party. If a third-party production is not Bates-stamped, the Issuing Party will endorse the non-Party production with unique Bates prefixes and numbering scheme prior to reproducing them to all other Parties.

## VIII.    MODIFICATION

This protocol may be modified by written agreement of the Parties or by the Court for good cause shown.

DATED: November 15, 2024

| | |
|---|---|
| */s/ Pavithra Rajesh* | */s/ Francesca Brody* |
| **GLANCY PRONGAY & MURRAY LLP** | **SIDLEY AUSTIN LLP** |
| Gregory B. Linkh (GL-0477) | Francesca Brody |
| glinkh@glancylaw.com | Vincent Margiotta |
| 230 Park Avenue, Suite 358 | 787 Seventh Avenue |
| New York, NY 10169 | New York, New York 10019 |
| Tel: (212) 682-5340 | Telephone: (212) 839-5300 |
| Fax: (212) 884-0988 | Facsimile: (212) 839-5599 |
| | fbrody@sidley.com |
| Robert V. Prongay (admitted *pro hac vice*) | vmargiotta@sidley.com |
| rprongay@glancylaw.com | |
| Casey E. Sadler (admitted *pro hac vice*) | Nilofer I. Umar (admitted *pro hac vice*) |
| csadler@glancylaw.com | Neil H. Conrad (admitted *pro hac vice*) |
| Melissa C. Wright (admitted *pro hac vice*) | William J. Lawrence (admitted *pro hac vice*) |
| mwright@glancylaw.com | One South Dearborn Street |
| Pavithra Rajesh (admitted *pro hac vice*) | Chicago, Illinois 60603 |
| prajesh@glancylaw.com | Telephone: (312) 853-7000 |
| 1925 Century Park East, Suite 2100 | Facsimile: (312) 853-7036 |
| Los Angeles, California 90067 | numar@sidley.com |
| Tel: (310) 201-9150 | nconrad@sidley.com |
| Fax: (310) 201-9160 | bill.lawrence@sidley.com |

*Counsel for Plaintiffs Dan Sills and George Dick*

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
  hsmith@howardsmithlaw.com
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Tel: (215) 638-4847
Fax: (215) 638-4867

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
  fcruz@frankcruzlaw.com
2121 Avenue of the Stars, Suite 800
Los Angeles, CA 90067
Tel: (310) 914-5007

*Additional Counsel*

*Counsel for Defendants*