UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAN SILLS and GEORGE DICK, individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>      v.<br><br>UNITED NATURAL FOODS, INC., J. ALEXANDER MILLER DOUGLAS, JOHN W. HOWARD, and CHRISTOPHER P. TESTA,<br><br>                Defendants. | Case No. 1:23-cv-02364-JGLC-VF |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CHRISTOPHER TESTA'S MOTION FOR JUDGMENT ON THE PLEADINGS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...............................................................................................1

BACKGROUND ...................................................................................................................2

    A.    Factual Background ....................................................................................... 2

    B.    The Court's Order On Defendants' Motion to Dismiss.......................................... 2

    C.    Testa's Control And Culpable Participation ............................................................ 3

ARGUMENT..................................................................................................................... 4

I.    Legal Standards.........................................................................................................4

II.    Control Person Liability Is Adequately Pled As To Testa....................................................5

    A.    Testa Had The Ability To Control The Primary Violators' Statements ................. 5

    B.    Testa Was, In Some Meaningful Sense, A Culpable Participant.......................... 12

        1.    Cases Do Not Require Plaintiffs To Plead Culpable Participation....... 13

        2.    Even If Culpable Participation Must Be Pled With Particularity, The Standard Is Met ................................................................................... 13

CONCLUSION.................................................................................................................18

## TABLE OF AUTHORITIES

CASES

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co. Ltd.*,
   663 F. Supp. 3d 334 (S.D.N.Y. 2023)................................................................... 13, 17

*Anwar v. Fairfield Greenwich Ltd.*,
   728 F. Supp. 2d 372 (S.D.N.Y. 2010)......................................................................... 7

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)........................................................................................... 5

*Aviles v. S&P Global, Inc.*,
   2020 WL 1689405 (S.D.N.Y. Apr. 6, 2020)............................................................... 4

*Boston Ret. Sys. v. Alexion Pharm., Inc.*,
   556 F. Supp. 3d 100 (S.D.N.Y. 2021) ....................................................................... 15

*Cap. Holdings, Inc. Sec. Litig.*,
   2022 WL 19037215 (S.D.N.Y. Dec. 7, 2022) ........................................................... 13

*City of Pontiac Gen.eral Emps.' Ret. Sys. v. Lockheed Martin Corp.*,
   875 F. Supp. 2d 359 (S.D.N.Y. 2012)....................................................................... 10

*Cleveland v. Caplaw Enters.*,
   448 F.3d 518 (2d Cir. 2006)......................................................................................... 4

*CompuDyne Corp. v. Shane*,
   453 F. Supp. 2d 807 (S.D.N.Y. 2006)......................................................................... 5

*Dietrich v. Bauer*,
   76 F. Supp. 2d 312 (S.D.N.Y. 1999).......................................................................... 6

*Freudenberg v. E*Trade Fin. Corp.*,
   712 F. Supp. 2d 171 (S.D.N.Y. 2010)...................................................................... 8, 9

*Gabriel Capital, L.P. v. NatWest FinanceFin., Inc.*,
   122 F. Supp. 2d 407 (S.D.N.Y. 2000)....................................................................... 17

*In re Alstom SA*,
   406 F. Supp. 2d 433 (S.D.N.Y. 2005).................................................................... 13-15

*In re Banco Bradesco Sec. Litig.*,
   277 F. Supp. 3d 600 (S.D.N.Y. 2017)....................................................................... 10

*In re Cannavest Corp. Sec. Litig.*,
307 F. Supp. 3d 222 (S.D.N.Y. 2018)................................................................. 10, 18

*In re Inv. Tech. Grp., Inc. Sec. Litig.*,
2018 WL 1449206 (S.D.N.Y. Mar. 23, 2018) ........................................................ 15

*In re JWP Inc. Sec. Litig.*,
928 F. Supp. 1239 (S.D.N.Y. 1996)......................................................................... 5

*In re Lululemon Sec. Litig.*,
14 F. Supp. 3d 553 (S.D.N.Y. 2014)...................................................................... 13

*In re MicroStrategy, Inc. Sec. Litig.*,
115 F. Supp. 2d 620 (E.D. Va. 2000) ...................................................................... 6

*In re Philip Servs. Corp. Sec. Litig.*,
383 F. Supp. 2d 463 (S.D.N.Y. 2004)..................................................................... 14

*In re Quintel Entm't Inc. Sec. Litig.*,
72 F. Supp. 2d 283 (S.D.N.Y. 1999)......................................................................... 6

*In re Sadia, S.A. Sec. Litig.*,
643 F. Supp. 2d 521 (S.D.N.Y. 2009)..................................................................... 17

*In re Scottish Re Group. Sec. Litig.*,
524 F. Supp. 2d 370 (S.D.N.Y. 2007)....................................................................... 5

*In re Tenaris S.A. Sec. Litig.*,
493 F. Supp. 3d 143 (E.D.N.Y. 2020) ............................................................ 5, 6, 10

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
195 F. Supp. 3d 528 (S.D.N.Y. 2016)............................................................ 7, 11, 12

*In re WorldCom, Inc. Sec. Litig.*,
294 F. Supp. 2d 392 (S.D.N.Y. 2003)..................................................................... 13

*Janus Capital Group., Inc. v. First Derivative Traders*,
564 U.S. 135 (2011)............................................................................................ 10, 18

*Katz v. Image Innovations Holdings, Inc.*,
542 F. Supp. 2d 269 (S.D.N.Y. 2008)....................................................................... 6

*Lapin v. Goldman Sachs Grp., Inc.*,
506 F. Supp. 2d 221 (2d Cir. 2006) .................................................................. 13, 14

*Lively v. WAFRA Inv. Advisory Grp., Inc.*,
   6 F.4th 293 (2d Cir. 2021) ......................................................................................... 4

*Oaktree Principal Fund V, LP v. Warburg Pincus LLC*,
   2017 WL 3187688 (C.D. Cal. Jan. 17, 2017) ............................................................ 10

*Schwab v. E\*TRADE Fin. Corp.*,
   258 F. Supp. 3d 418 (S.D.N.Y. 2017) ....................................................................... 15

*SEC v. First Jersey Secs., Inc.*,
   101 F.3d 1450 (2d Cir. 1996) ...................................................................................... 5

*Sills v. United Natural Nat. Foods, Inc.*,
   2024 WL 4188324 (S.D.N.Y. Sept. 13, 2024) ................................................... *passim*

*Youngers v. Virtus Inv.estment Partners Inc.*,
   195 F. Supp. 3d 499 (S.D.N.Y. 2016) ....................................................................... 11

STATUTES

15 U.S.C. §78t(a) ............................................................................................................ 5

**PRELIMINARY STATEMENT**

The Court has already denied Testa's request to dismiss allegations that he violated Section 20(a) of the Exchange Act.[1] *Sills v. United Nat. Foods, Inc.*, 2024 WL 4188324, at \*14 (S.D.N.Y. Sept. 13, 2024) (reasoning that a primary violation was sufficiently pled against UNFI, which was allegedly "controlled" by Testa, among others). Testa now moves for judgment on the pleadings but provides no compelling reason to depart from the Court's prior ruling.

Though there is an intra-Circuit split as to which elements must be pled and under which pleading standard, Section 20(a) is adequately pled—by any measure—as to Testa. As UNFI's President, Testa oversaw the Company's supplier services (¶29); held himself out to investors as knowledgeable about supplier price increases, stating, for example, that the increases were "higher than normal" (¶67); and participated on every conference call during which Douglas and Howard (on behalf of the Company) issued actionable statements about forward buying ahead of price increases, but he failed to correct them.[2] Moreover, each of the Court's findings in support of Douglas's and Howard's scienter applies with equal force to Testa due to his self-professed knowledge of the frequency and magnitude of price increases. In fact, the Court's scienter analysis is stronger as to Testa due to his suspicious stock sales (timed shortly before the first corrective disclosure that partially revealed procurement gains from forward buying) and his departure from

---

[1] Lead Plaintiff Dan Sills and additional plaintiff George Dick (together, "Plaintiffs") allege violations of Section 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") by Defendants United Natural Foods, Inc. ("UNFI" or the "Company"), J. Alexander Miller Douglas ("Douglas"), John W. Howard ("Howard"), and Christopher Testa ("Testa") (collectively, "Defendants").

[2] Citations in the form of "¶__" are to the Second Amended Class Action Complaint for Violations of the Federal Securities Laws ("SAC," ECF 39), and "Mot." are to Testa's Memorandum of Law in Support of his Motion for Judgment on the Pleadings (ECF 82). Unless otherwise indicated, capitalized terms have the meaning set forth in the SAC, emphasis in bold and italics is added, internal citations and quotation marks are omitted, and citations are cleaned up.

1

the Company days after the end of the last disclosure. The Court's finding that Testa did not make an actionable statement or omission is irrelevant because Section 10(b) and Section 20(a) are alternative theories of liability.

Therefore, and for the reasons that follow, Testa's motion must be denied.

## BACKGROUND

### A.    Factual Background

UNFI is the largest publicly traded grocery wholesaler in North America. ¶33. At least 95% of the Company's net sales are from its Wholesale segment, which distributes and sells grocery and non-food products. ¶¶35-38. Faced with increasing industry volatility and an uncertain macroeconomic environment in the wake of the COVID-19 pandemic, unbeknownst to investors, Defendants leveraged rising inflation through massive undisclosed "strategic" forward buying. ¶¶61, 69, 85, 221. Forward buying is the practice of buying product in excess of demand ahead of known price increases. ¶61. The financial benefit achieved from strategic forward buying during the Class Period (December 8, 2021 to September 25, 2023) was later referred to by UNFI as "procurement gains." *Id.*

During the Class Period, Defendants failed to disclose the substantial impact of forward buying on the Company's financial results. Through a series of corrective disclosures, investors learned that as much as 43% of UNFI's profitability during the Class Period had been attributable to "significant level of procurement gains" from forward buying. ¶¶83-84, 91-93, 113-18, 125-30.

### B.    The Court's Order On Defendants' Motion to Dismiss

In its order granting-in-part and denying-in-part Defendants' motion to dismiss the SAC, the Court sustained the Section 10(b) claim against Defendants UNFI, Douglas, and Howard, and dismissed the Section 10(b) claim against Testa, but ***sustained the Section 20(a) claim*** against Douglas, Howard, ***and Testa***.

2

As to falsity under Section 10(b), the Court found that UNFI, Douglas, and Howard issued materially misleading statements and omissions. Specifically, "Profit Driver Statements" (¶¶143, 159, 163, 171, 175) were "actionable because they purported to disclose the drivers of the Company's profits while omitting material facts that rendered those statements misleading." *Sills*, 2024 WL 4188324, at *8 ("But it failed to disclose that forward buying was a ***significant and aberrational driver*** of its profit margins."). Similarly, "Profit Sustainability Statements" (¶¶86-87, 165, 197) were misleading because they "spoke to the impact of a deflationary environment on UNFI's margins" but "omit the crucial context that forward buying opportunities had all but evaporated." *Sills*, 2024 WL 4188324, at *9. The "Risk Factor Statements" (¶¶151, 161, 173, 191, 201) "put in play the sensitivity of the Company's margins to deflationary and inflationary pressures" but "did not mention the separate risk of decreased opportunities for inflation-related forward buying." *Sills*, 2024 WL 4188324, at *9. Financial guidance and general impact of inflation statements were dismissed. *Id.* at *9-10.

As to scienter under Section 10(b), eight bases showed that the "more cogent and compelling inference" was that "Douglas and Howard knew that procurement gains from inflation-based forward buying was a key driver in the rise and fall of profit margins at the same time that they made the plausibly misleading statements." *Id.* at *12-14.

As to Section 20(a), the Court noted that "Plaintiffs allege that Douglas, Howard, and Testa are controlling persons" and that "Plaintiffs have sufficiently alleged a primary violation of Rule 10b-5 and Section 10(b) by a controlled person, namely UNFI." *Id.* at *14.

## C.    Testa's Control And Culpable Participation

Testa was UNFI's President from August 2018 to October 2023 and its Chief Marketing Officer from August 2018 to July 2020. ¶29. In March 2020, Testa assumed oversight of, among other things, the Company's supplier services, which provided him with intimate knowledge of

3

UNFI's relationships with its suppliers and its pattern of buying. *Id.* Indeed, in the lead up to the Class Period, Testa was admittedly aware of and expecting price increases. ¶¶66, 223. In June 2021, Testa told the market that UNFI had "received notice from many suppliers indicating they will be taking price increases in the coming months" and that these price increases were "higher than normal." ¶67. Notably, Testa participated on the earnings calls on June 7, 2022 and December 7, 2022 during which Douglas and Howard made statements and omissions that the Court found misleading. *Sills*, 2024 WL 4188324 at *8-9; *see also* Declaration of Pavithra Rajesh ("Rajesh Decl.") submitted herewith, Exs. A-B.[3]

## ARGUMENT

### I.      Legal Standards

A Rule 12(c) motion for judgment on the pleadings is governed by the same standard used to adjudicate a Rule 12(b)(6) motion. *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). Thus, "a Rule 12(c) motion for judgment on the pleadings that challenges the sufficiency of a complaint on the same ground as an already-denied Rule 12(b)(6) motion to dismiss should meet an identical fate." *Aviles v. S&P Global, Inc.*, 2020 WL 1689405, at *3 (S.D.N.Y. Apr. 6, 2020).

Moreover, "[j]udgment on the pleadings is not appropriate if there are issues of fact which if proved would defeat recovery, even if the trial court is convinced that the party opposing the motion is unlikely to prevail at trial." *Lively*, 6 F.4th at 301. If there is a question of fact, "it is improper for the district court to answer it on a motion for dismissal on the pleadings." *Id.*

---

[3] On a motion for judgment on the pleadings, courts may consider the non-movant's pleading (*i.e.*, the SAC) and, among other things, "documents incorporated by reference in or integral to the pleading." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 306 (2d Cir. 2021). The Court considered these materials when adjudicating Defendants' motion to dismiss the SAC. *Sills*, 2024 WL 4188324, at *1; *see also* Declaration of Francesca Brody (ECF 50), Exs. 44-45.

4

## II.    Control Person Liability Is Adequately Pled As To Testa

"To state a claim under Section 20(a), a plaintiff must allege facts showing: '(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud.'" *Sills*, 2024 WL 4188324, at \*14 (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007)). Testa contests only the "control" and "culpable participation" elements, but these elements are adequately pled, as discussed below.

### A.    Testa Had The Ability To Control The Primary Violators' Statements

Contrary to Testa's contention, the heightened pleading standard does not apply to the control element. *Cf.*    Mot. at 3. The pleading of control is "governed by Rule 8's pleading standard." *In re Scottish Re Grp. Sec. Litig.*, 524 F. Supp. 2d 370, 386 (S.D.N.Y. 2007).[4] Control is "broadly construed" as the control person provisions were "meant to expand the scope of liability under the securities laws." *CompuDyne Corp. v. Shane*, 453 F. Supp. 2d 807, 829 (S.D.N.Y. 2006). Control may be direct or indirect,[5] and "may be established by showing that the defendant possessed the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1472-73 (2d Cir. 1996). The analysis is focused on the alleged control person's "practical ability to direct the actions of the controlled person." *In re JWP Inc. Sec. Litig.*, 928 F. Supp. 1239, 1259 (S.D.N.Y. 1996). "Actual control requires only the ***ability*** to direct the

---

[4] *See also In re Tenaris S.A. Sec. Litig.*, 493 F. Supp. 3d 143, 165 (E.D.N.Y. 2020) ("Allegations of control are not averments of fraud and therefore need not be pleaded with particularity.").

[5] 15 U.S.C. §78t(a) ("Every person who, *directly or indirectly*, controls any person liable under any provision of this chapter . . . shall also be liable jointly and severally with and to the same extent as such controlled person . . . is liable.").

actions of the controlled person, and ***not the active exercise thereof***." *Tenaris*, 493 F. Supp. 3d at 165.

"Whether a person is a 'controlling person' is a fact-intensive inquiry, and generally should not be resolved on a motion to dismiss." *Katz v. Image Innovations Holdings, Inc.*, 542 F. Supp. 2d 269, 276 (S.D.N.Y. 2008). "[D]ismissal is appropriate only when a plaintiff does not plead any facts from which it can reasonably be inferred the defendant was a control person." *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 661 (E.D. Va. 2000).

The SAC alleges multiple facts supporting a plausible inference that Testa controlled UNFI and the actionable statements. First, Testa served as UNFI's President from August 1, 2018 through October 23, 2023, which includes the entire Class Period of December 8, 2021 through September 25, 2023. ¶29. The SAC alleges that during this time Testa, along with Douglas and Howard, "possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market." ¶30. In addition, Testa, along with Douglas and Howard, was "provided with copies of the Company's reports and press releases alleged . . . to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected." *Id.*

These allegations support a plausible inference of control. *See, e.g.*, *Dietrich v. Bauer*, 76 F. Supp. 2d 312, 335 (S.D.N.Y. 1999) (positions of "owner" and "president" are "positions from which control 'can be directly inferred without more'"); *In re Quintel Entm't Inc. Sec. Litig.*, 72 F. Supp. 2d 283, 298 (S.D.N.Y. 1999) (allegations that individual defendants "had access to [company's] internal reports, press releases, public filings, and had the ability to prevent the

6

issuance of or correct the statements" were "adequate to make out a prima facie case for control person liability under § 20(a)").

Testa argues that (1) officer status alone does not confer control person status, and (2) the SAC's allegations of control are "boilerplate" and lack "any particularized fact about Mr. Testa specifically with respect to control." Mot. at 5-7. With respect to the control element, however, Plaintiffs are not required to plead "particularized fact[s]," only sufficient facts to raise a plausible inference of actual control. *See, e.g.*, *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 427 (S.D.N.Y. 2010) (defendant's oversight of "day-to-day operations" made it "at least plausible that [defendant] exerted actual control over the fraudulent transaction at issue"). In any event, the SAC does not merely allege Testa's position as President and his general ability to control UNFI's public statements; it pleads particularized facts showing Testa's actual control over, and culpable participation in, the issuance and dissemination of the false and misleading statements that the Court found actionable.

First, Testa personally participated in UNFI's earnings calls, thereby acting as a spokesperson for the Company. *E.g.*, ¶167; *see In re Virtus Inv. Partners, Inc. Sec. Litig.*, 195 F. Supp. 3d 528, 541, 543 (S.D.N.Y. 2016) (sustaining control person claim alleged against officer who "served as a spokesperson" for the primary violator, even though that officer "did not sign the public filings at issue," was "not alleged to have had authority over their contents," and was not alleged to have "actually 'made' any of the remaining misstatements for which a claim of primary liability could be asserted"). Indeed, Testa personally participated during each of UNFI's earnings calls during the Class Period, *see* Rajesh Decl., Exs. A-B, and he did not correct any of the misleading statements made by Douglas or Howard during those calls. "A high ranking company official cannot sit quietly at a conference with analysts, knowing that another official is

7

making false statements and hope to escape liability for those statements." *Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 195 (S.D.N.Y. 2010).

Second, Testa did not just "sit quietly" during UNFI's earnings calls; he affirmatively supported and lent credence to the misleading narrative offered by the other defendants. During the third quarter 2022 earnings call, Testa responded to an analyst's question about the factors driving UNFI's EBITDA margin rate decline during the quarter, explaining that there were a number of factors UNFI was "cycling" through in 2022 that were of a non-recurring nature. ¶167. The Court held this statement was not actionable because it "had nothing to do with the impact of inflation or forward buying." *Sills*, 2024 WL 4188324 at *11 n.2. But irrespective of whether Testa's statement was independently misleading, Testa prefaced it by saying that he was just "build[ing] on" Douglas's response to the same question. ¶167 ("if I can build on that a little bit"). Douglas had stated a moment earlier that "the operating margin contraction was really minor" and going forward, Defendants expected the Company's initiatives to improve efficiency under Value Path to be "back on track." *Id.*[6] These statements were misleading for the same reasons that the Court found the Profit Driver Statements and the Profit Sustainability Statements misleading— they failed to disclose the impact of the atypically elevated forward buying and misleadingly implied that the improvements UNFI had been experiencing with its margins were sustainable, even if deflation were to occur. *See, e.g.*, ¶¶163, 165; *Sills*, 2024 WL 4188324 at *8-9. Testa's statement, even if not actionable on its own, expressed agreement with and ratified Douglas's misleading statements. And Testa acknowledges that Plaintiffs may establish control by showing that he "confirm[ed]" a misleading statement or "encourag[ed] its dissemination." Mot. at 5.

---

[6] Though not specifically addressed by the Court, Douglas's statement is substantially similar to the Profit Driver Statements the Court explicitly sustained and is actionable for the same reasons. *See* ¶¶147, 153, 155, 181.

Third, Testa's statements prior to the Class Period support a plausible inference that he exercised control over the Company's disclosures about UNFI's procurement practices. For example, in September 2020, shortly before UNFI unveiled its Value Path initiative, Testa stated that, "Going forward, we'll be placing a heavy emphasis on standardizing processes and using **_higher level data analytics_** to drive decision-making and generate these **_incremental operating efficiencies_**." ¶45. In June 2021, Testa stated that (1) UNFI has "a process for CPG [consumer-packaged goods] increases, our suppliers increases where we get notification 60, 90 days in advance"; (2) UNFI had "received notice from many suppliers indicating they will be taking price increases in the coming months" and these price increases were "higher than normal"; and (3) and Defendants "expect[ed] inflation to have a larger impact on our business leading into fiscal 2022," but "our contracts generally allow UNFI to pass through manufacturer cost increases." ¶¶66-68. Each of these statements bears on the Value Path initiative (which, during the Class Period, Defendants claimed to drive profitability) or on forward buying (which, as was later revealed, was an additional driver of profitability). These statements show that Testa had a lead role in overseeing those practices and communicating to shareholders about them, which further support an inference that Testa was a control person. *See, e.g.*, *Freudenberg*, 712 F. Supp. 2d at 205 (plaintiffs adequately pled control person claim against officer who "oversaw all of the Company's capital markets endeavors" and "led and directly participated in E*TRADE's purchase of extremely risky loans and mortgage pools and the repackaging of these products").

Testa contends that the foregoing allegations are inadequate because "'control' over the 'matter at issue' means actual involvement in the preparation or dissemination of the alleged misstatement—that is, signing, drafting, approving, or confirming the specific alleged misstatement, or ordering or encouraging its dissemination." Mot. at 5. This argument fails for two

9

reasons. First, Plaintiffs satisfy Testa's purported standard. As discussed above, Testa's statements during the third quarter 2022 earnings call "confirm[ed]" Defendants' misrepresentations and "encourage[ed]" their dissemination. In addition, Testa's statements about UNFI's advance notice about its suppliers' price increases and its use of "higher level data analytics" to drive "incremental operating efficiencies" support a plausible inference that he was involved in UNFI's disclosures about the Value Path initiative, including the Profit Driver Statements in each of the quarterly press releases.[7]

Second, Defendants' narrow articulation of the standard for control is not accurate because it conflates "the ability to direct the actions of the controlled person" with the "active exercise" of that ability. *Tenaris*, 493 F. Supp. 3d at 165. If a person has the ***ability*** to control the statements of the controlled person, that suffices to plead actual control, even if the person does not actually make, prepare, or disseminate the false statements at issue. Moreover, a person can participate in the spreading of a false statement in ways other than those described by Defendants, including by concealing facts that would correct the misleading impression created by that statement.

---

[7] Pursuant to the "group pleading" doctrine, plaintiffs may "rely on a presumption that written statements that are group-published, *e.g.*, SEC filings and press releases, are statements made by ***all*** individuals with direct involvement in the everyday business of the company." *City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 373 (S.D.N.Y. 2012). There is a split among courts in this district as to whether the group pleading doctrine survives the Supreme Court's decision in *Janus Capital Group., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011). *Compare, e.g.*, *In re Cannavest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 241 (S.D.N.Y. 2018) ("Most judges in this District have continued to conclude that group pleading is alive and well after *Janus*.") *with In re Banco Bradesco Sec. Litig.*, 277 F. Supp. 3d 600, 639 (S.D.N.Y. 2017) (concluding that a non-signatory of a document is not a maker under *Janus*). The Court need not weigh in on this dispute, however, because the question here is not whether Testa is a primary violator and a "maker" under *Janus*, but whether he is a control person under Section 20(a). *See Oaktree Principal Fund V, LP v. Warburg Pincus LLC*, 2017 WL 3187688, at *7 (C.D. Cal. Jan. 17, 2017) ("Courts have found that the 'control' inquiry under section 20(a) is more forgiving than the 'maker' inquiry under *Janus* and Rule 10b-5.").

This principle is best illustrated by comparing the companion decisions in *Youngers v. Virtus Investment Partners Inc.*, 195 F. Supp. 3d 499 (S.D.N.Y. 2016) ("*Youngers*"), a case Defendants rely on for their purported standard, *see* Mot. at 6, and *In re Virtus*, 195 F. Supp. 3d at 541-43, a decision by the same judge in a related but distinct securities class action. *Youngers* was a securities class action brought by purchasers of various mutual funds against a trust that issued the funds and several related individuals and entities. *In re Virtus* was a securities class action brought by purchasers of the publicly traded securities of the parent corporation of the trust's adviser. The two cases involved similar misstatements (involving the track record of the mutual funds' proprietary trading strategy), but different primary violators.

In *Youngers*, the court dismissed the Section 20(a) claims against several entities and individuals, including (a) the adviser and sub-adviser to the trust and individuals associated with those entities, (b) two individuals who were officers of the parent corporation, and (c) one individual (Waltman) who was an employee of the trust during part of the class period who also held positions at the adviser and its parent corporation. 195 F. Supp. 3d at 524-26. The court dismissed the claims against the adviser and sub-adviser related defendants because those persons and entities only provided advice to the trust and its funds, which is different from control. *Id.* at 524-25. The court also dismissed the claims against the two officers of the parent corporation because they were not employees of the trust, which was the maker of the statements. *Id.* at 525. The only individual defendant who was an employee of the primary violator was Waltman, and the claims against him were dismissed because "his position was in Product Development, not a position of 'control' over the company's public statements." *Id.* at 525-26. Thus, the control person claims against this range of defendants were dismissed not merely because the defendants did not

11

make, prepare or disseminate any misstatements, but because they were in no position to speak for the trust and did not possess control over the trust's public statements.

In contrast, in *In re Virtus*, the same court sustained control person claims against two individuals, Waltman and Cerutti, who did not make any misstatements, prepare any misstatements, or disseminate any misstatements. 195 F. Supp. 3d at 541-43. These individuals were both employees of the primary violator in the case, which was the parent corporation of the trust's adviser. The court found that the control person claims against Waltman were sufficiently pled because he (1) signed the sub-advisory agreements between the adviser and sub-adviser, (2) tracked due diligence, and (3) was a spokesperson for the primary violator. *Id.* at 543. The court found that the control person claims against Cerutti were sufficiently pled because he (1) instructed the parent corporation's wholesalers to ignore a false representation by the sub-adviser at an internal conference, and (2) ordered the destruction of documents about the performance history of the trading strategy once the SEC initiated an investigation. *Id.* Thus, the pleading of control was not predicated on the individuals' involvement in the making, preparing or disseminating of any public misstatements, but in the case of Waltman, his status as a "spokesperson" for the primary violator and his involvement in the underlying business operations, and in the case of Cerutti, his participation in the cover-up of the underlying facts that rendered the statements misleading.

Similarly here, Testa's status as a control person is based on his status as a spokesperson for UNFI, his endorsement and ratification of the misleading statements made by Douglas and Howard, and his failure to correct those misleading statements and thereby cover up the fraud.

### B.      Testa Was, In Some Meaningful Sense, A Culpable Participant

Courts in the Second Circuit disagree whether the "culpable participation" element must be pled and what level of particularity is required. Regardless of which standard the Court employs,

12

Plaintiffs have sufficiently pled that Testa is a culpable participant in the actionable statements and omissions.

### 1.    Cases Do Not Require Plaintiffs To Plead Culpable Participation

Some courts do not even require culpable participation to be pled. *See In re iAnthus Cap. Holdings, Inc. Sec. Litig.*, 2022 WL 19037215, at *1 (S.D.N.Y. Dec. 7, 2022) ("In this Court's view, however, a plaintiff need not plead culpable participation by a control person in order to state a claim under Section 20(a)."). This is consistent with the law of "most other Circuit Courts of Appeals." *In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 415 (S.D.N.Y. 2003) (collecting cases). These courts find it sufficient to plead a primary violation and defendant's control of the primary violator. *See, e.g.*, *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co. Ltd.*, 663 F. Supp. 3d 334, 377-78 (S.D.N.Y. 2023) (CEO and Chairman who, among other things, orchestrated merger had control over actionable filings); *WorldCom*, 294 F. Supp. 2d at 415, 420 (control person claim pled against directors who signed actionable SEC filings); *see also In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 575 (S.D.N.Y. 2014) ("Courts in the Second Circuit have found that a primary violation combined with a sufficient level of control constitutes culpable participation.").

As discussed, Plaintiffs have pled a primary violation and Testa's control. Thus, under this line of authority, Plaintiffs have adequately pled a Section 20(a) claim as to Testa.

### 2.    Even If Culpable Participation Must Be Pled With Particularity, The Standard Is Met

Other courts conclude that Rule 9(b) applies. *Lapin v. Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221, 244-49 (2d Cir. 2006) (collecting cases and recognizing intra-Circuit split); *In re Alstom SA*, 406 F. Supp. 2d 433, 491 (S.D.N.Y. 2005) (reasoning that culpability is a "state of mind," which must be pled with particularity under the PSLRA). Even so, "sparse" allegations

have been found "sufficient to avoid dismissal." *In re Philip Servs. Corp. Sec. Litig.*, 383 F. Supp. 2d 463, 484-87 (S.D.N.Y. 2004) (attendance at board meetings and signing allegedly misleading registration statement suffices because "plaintiffs should not be expected to plead" "a more particularized description of what was discussed at the board meeting and [directors'] states of mind with respect to those discussions").

Recklessness suffices to plead the culpable state of mind. *See Lapin*, 506 F. Supp. 2d at 246. Recklessness can be pled, for example, by a showing that "the controlling person failed to review or check information that he had a duty [to] monitor, or that the controlling person ignored obvious signs of fraud." *Alstom*, 406 F. Supp. 2d at 491-92.

Testa was at least reckless in not knowing that the Company engaged in massive, undisclosed forward buying during the Class Period because he claimed to know of the financial impact of inflation and price increases. Before the Class Period, Testa stated that inflation would "have a larger impact on [the Company's] business leading into fiscal 2022" but claimed the price increases would be passed through to consumers. ¶68. Through these statements, Testa held himself out to monitor the financial impact of price increases in an inflationary environment. Testa was also familiar with the nature and frequency of price increases because he stated that the Company engages in "[d]aily conversations with [its] suppliers" and that price increases were "higher than normal." ¶¶67, 223. Advance notice of price increases was the impetus for UNFI's forward buying during the Class Period. ¶¶61, 100 (profitability during fiscal 2022 was "from buying inventory in advance of supplier price increases in a sequentially rising inflationary environment"). Forward buying was responsible for as much as 45% of UNFI's profitability. ¶¶105-107, 118, 130. Therefore, Testa was at least reckless in failing to monitor the financial impact of significant price increases or, if he did know, in ignoring the primary violators' obvious

14

failure to disclose the same. *Alstom*, 406 F. Supp. 2d at 496 (officer who was "directly involved in day-to-day operations" was reckless as to undisclosed "vendor financing arrangements [that] were large in scope and extended over a significant length of time").

Testa incorrectly contends that scienter is required. *Cf.* Mot. at 8 (citing *In re Inv. Tech. Grp., Inc. Sec. Litig.*, 2018 WL 1449206 (S.D.N.Y. Mar. 23, 2018) and *Schwab v. E\*TRADE Fin. Corp.*, 258 F. Supp. 3d 418 (S.D.N.Y. 2017)). Courts have found culpable participation even where scienter is not adequately pled as to that defendant. *See, e.g.*, *Boston Ret. Sys. v. Alexion Pharm., Inc.*, 556 F. Supp. 3d 100, 142-43 (S.D.N.Y. 2021) ("[T]he factual allegations as to Sinha establish that he was in some meaningful sense a culpable participant even though they do not meet the scienter requirements."). Testa's cases are distinguishable. In *Investment Technology*, the plaintiff's arguments regarding "culpable participation overlap entirely with its arguments related to [that defendant's] scienter." 2018 WL 1449206, at \*8. Because scienter was inadequately pled, so too was culpable participation. *See id.* Here, Plaintiffs plead culpable participation due, in part, to Testa's recklessness. In *Schwab*, plaintiffs had not even pled a primary violation. 258 F. Supp. 3d at 436. Regardless, *Schwab* recognizes that "culpable participation at a minimum 'requires something more than negligence.'" *Id.* (quoting *Alstom*, 406 F. Supp. 2d at 490).

Even if scienter is required, each of the eight bases cited by the Court in its prior analysis applies to Testa.[8]   First, while Douglas and Howard knew of the substantial forward buying because they "were aware of and expecting higher-than-normal price increases by suppliers," *Sills*, 2024 WL 4188324, at \*12, it was **Testa** who proclaimed that UNFI "get[s] notification 60, 90 days in advance" of price increases and that, by June 2021, the price increases were "higher than

---

[8] Having found that Testa did not make an actionable statement, the Court did not previously decide whether Testa acted with scienter. *Sills*, 2024 WL 4188324, at \*11.

normal," ¶¶66-67. Second, Defendants' revelations through the corrective disclosures demonstrate that "they knew that forward buying had a substantial impact on margins during the Class Period." *Sills*, 2024 WL 4188324, at *12. This awareness is demonstrated by Douglas's and Howard's statements that they did not "fully understand" the magnitude of forward buying until the last quarter of 2022. *Id.* Similarly, Testa oversaw the supplier division and engaged in "[d]aily conversations with suppliers," thus he had reason to know of the extent of forward buying. ¶¶29, 223. Third, the magnitude of the impact of forward buying on UNFI's earnings supported an inference of scienter, which also applies to Testa. *Sills*, 2024 WL 4188324, at *12. Fourth, "Defendants belief that a rebound in supplier promotions would offset fewer inflation-related forward buying opportunities implies they knew the latter was a boon to profits." *Id.* Likewise, the existence and impact of supplier promotions was within Testa's oversight of the supplier division. ¶29. Fifth, UNFI's wholesale segment accounts for at least 95% of the Company's net sales, thus the core operations doctrine bolsters scienter and equally applies to Testa. *Id.* at *13. Sixth, Defendants, including Testa, had access to granular information regarding inventory on hand and sales trends, and "[i]t is reasonable to infer that Defendants used such information to conduct the cost-benefit analysis necessary to execute each forward buying opportunity." *Sills*, 2024 WL 4188324, at *13. Seventh, there is "a strong inference that the explosion then evaporation of inflation-related forward buying gains (and a resulting substantial impact on margins) was a known trend under Item 303 and that its omission was at least reckless under the PSLRA." *Id.* This inference also applies to Testa, who had knowledge of the frequency and magnitude of price increases and had reason to know of the Company's massive forward buying.

Eighth, Defendants, including Testa, had "at least some motivation to mislead" because their annual bonuses were tied to the adjusted EBITDA performance, and the "substantial"

16

procurement gains "were key to hitting this benchmark." *Sills*, 2024 WL 4188324, at *13. Testa improperly attempts to relitigate whether his annual bonus suffices to plead scienter (Mot. at 10): the Court stated that "this motive, without more," is insufficient, but credited Plaintiffs' motive allegations as to Douglas and Howard due to the remaining facts and inferences. *See Sills*, 2024 WL 4188324, at *13. Because those findings also apply to Testa, Testa's annual bonus also bolsters scienter.

Other facts specific to Testa make his scienter even more compelling than Douglas's and Howard's scienter. Testa engaged in suspicious stock sales shortly before the first partial revelation of procurement gains from forward buying, which is indicative of scienter. *See* ECF 53 at 38-39. Testa's departure—days after the last corrective disclosure—is probative of scienter, and this adds to the remaining allegations further allowing the Court to credit the motive allegations. ¶133; *see In re Sadia, S.A. Sec. Litig.*, 643 F. Supp. 2d 521, 523-24, 534 (S.D.N.Y. 2009) (resignations of chairman and vice chairman within two weeks of revelation of fraud supported strong inference of scienter).

Section 20(a) liability is not precluded by, or inconsistent with, the Court's dismissal of Testa as to the Section 10(b) claim. *Cf.* Mot. at 8-9 (discussing that the Court's prior conclusion that Testa's statements are "not plausibly false or misleading"). Section 10(b) and Section 20(a) claims are alternative theories of liability, so the success of the claims do not necessarily rise and fall together. *E.g.*, *Qihoo*, 663 F. Supp. 3d at 378. Indeed, "a controlling person does not have to be a § 10(b) actor in order to culpably participate in the primary violation." *Gabriel Capital, L.P. v. NatWest Fin., Inc.*, 122 F. Supp. 2d 407, 428-29 (S.D.N.Y. 2000) (knowledge of fraud and failure to prevent it suffices), *abrogated on other grounds by In re Initial Public Offering Sec. Litig.*, 241 F. Supp. 2d 281, 352, n.85 (S.D.N.Y. 2003) ("I am no longer convinced that even facts

17

supporting a reasonable inference of control must be pleaded."). For example, the owner of 7.1% of the corporation's stock was not primarily liable for misleading statements but was nonetheless found liable under Section 20(a). *Cannavest*, 307 F. Supp. 3d at 242, 255 & n.11 ("As *Janus* makes clear, this Court's finding that Titus did not have 'ultimate authority' to 'make' the statements and omissions at issue does not preclude a finding that Plaintiffs have sufficiently pleaded control as to Titus.") (citing *Janus*, 564 U.S. at 146).

**CONCLUSION**

For the foregoing reasons, Plaintiffs have adequately pled that Testa is liable as a control person under Section 20(a) for the actionable statements and omissions. Testa's motion for judgment on the pleadings must be denied.

DATED: November 26, 2024          Respectfully submitted,

*/s/ Pavithra Rajesh*
**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay (admitted *pro hac vice*)
  rprongay@glancylaw.com
Casey E. Sadler (admitted *pro hac vice*)
  csadler@glancylaw.com
Melissa C. Wright (admitted *pro hac vice*)
  mwright@glancylaw.com
Pavithra Rajesh (admitted *pro hac vice*)
  prajesh@glancylaw.com
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Tel: (310) 201-9150
Fax: (310) 201-9160

Gregory B. Linkh (GL-0477)
  glinkh@glancylaw.com
230 Park Avenue, Suite 358
New York, NY 10169
Tel: (212) 682-5340
Fax: (212) 884-0988

*Counsel for Plaintiffs Dan Sills and George Dick*

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
  *hsmith@howardsmithlaw.com*
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Tel: (215) 638-4847
Fax: (215) 638-4867

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
  *fcruz@frankcruzlaw.com*
2121 Avenue of the Stars, Suite 800
Los Angeles, CA 90067
Tel: (310) 914-5007

*Additional Counsel*

19

## PROOF OF SERVICE

I hereby certify that on this 26th day of November, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Pavithra Rajesh*
Pavithra Rajesh