**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

DAN SILLS *and* GEORGE DICK, *individually and on behalf of all others similarly situated*,

                        Plaintiffs,

    vs.

UNITED NATURAL FOODS, INC., J. ALEXANDER MILLER DOUGLAS, JOHN W. HOWARD, *and* CHRISTOPHER P. TESTA,

                     Defendants.

---

No. 1:23-CV-02364-JGLC

**DEFENDANT CHRISTOPHER TESTA'S REPLY IN SUPPORT OF HIS**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................1

I.     Plaintiffs Fail to Allege That Mr. Testa Had Actual Control. .............................................1

II.    Plaintiffs Fail to Allege That Mr. Testa Was a Culpable Participant. ................................5

      A.     Plaintiffs must plead culpable participation, which requires particularized facts showing Mr. Testa's conscious misbehavior or recklessness. ........................5

      B.     Plaintiffs have failed to plead particularized facts showing that Mr. Testa engaged in conscious misbehavior or recklessness. .................................................6

CONCLUSION.....................................................................................................................10

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Alstom SA*,
406 F. Supp. 2d 433 (S.D.N.Y. 2005)........................................................................................7

*Anwar v. Fairfield Greenwich Ltd.*,
728 F. Supp. 2d 372 (S.D.N.Y. 2010).....................................................................................2, 3

*Bd. of Trs. of City of Ft. Lauderdale Gen. Emps.' Ret. Sys. v. Mechel OAO*,
811 F. Supp. 2d 853 (S.D.N.Y. 2011), *aff'd sub nom. Frederick v. Mechel
OAO*, 475 F. App'x 353 (2d Cir. 2012)....................................................................................7

*Boston Ret. Sys. v. Alexion Pharms., Inc.*,
556 F. Supp. 3d 100 (D. Conn. 2021)......................................................................................6

*In re Braskem S.A. Sec. Litig.*,
246 F. Supp. 3d 731 (S.D.N.Y. 2017)......................................................................................2

*City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*,
875 F. Supp. 2d 359 (S.D.N.Y. 2012)......................................................................................5

*Conley v. Gibson*, 355 U.S. 41 (1957),
*overruled by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).........................................2

*Dietrich v. Bauer*,
76 F. Supp. 2d 312 (S.D.N.Y. 1999)........................................................................................2

*Freudenberg v. E*Trade Fin. Corp.*,
712 F. Supp. 2d 171 (S.D.N.Y. 2010)......................................................................................3

*Gregory v. ProNAi Theras. Inc.*,
297 F. Supp. 3d 372 (S.D.N.Y), *aff'd*, 757 F. App'x 35 (2d Cir. 2018)................................10

*Kalin v. Xanboo, Inc.*,
526 F. Supp. 2d 392 (S.D.N.Y. 2007)......................................................................................5

*Lapin v. Goldman Sachs Grp., Inc.*,
506 F. Supp. 2d 221 (S.D.N.Y. 2006)......................................................................................6

*Li v. Eqonex Ltd.*,
2024 WL 4241951 (S.D.N.Y. Sept. 18, 2024)......................................................................1, 2

*In re Philip Services Corp. Sec. Litig.*,
383 F. Supp. 2d 463 (S.D.N.Y. 2004)......................................................................................8

*In re Quintel Ent. Inc. Sec. Litig.*,
    72 F. Supp. 2d 283 (S.D.N.Y. 1999)............................................................................2

*In re Refco, Inc. Sec. Litig.*,
    503 F. Supp. 2d 611 (S.D.N.Y. 2007)..........................................................................4

*Rich v. Maidstone Fin., Inc.*,
    2002 WL 31867724 (S.D.N.Y. Dec. 20, 2002) ...........................................................2

*In re Sadia S.A. Sec. Litig.*,
    643 F. Supp. 2d 521 (S.D.N.Y. 2009).......................................................................10

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974).....................................................................................................2

*In re ShengdaTech, Inc. Sec. Litig.*,
    2014 WL 3928606 (S.D.N.Y. Aug. 12, 2014)............................................................5

*In re Smith Barney Transfer Agent Litig.*,
    884 F. Supp. 2d 152 (S.D.N.Y. 2012).........................................................................2

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
    33 F. Supp. 3d 401 (S.D.N.Y. 2014).......................................................................5, 6

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
    2014 WL 7176187 (S.D.N.Y. Dec. 16, 2014) .............................................................9

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
    195 F. Supp. 3d 528 (S.D.N.Y. 2016).........................................................................3

**INTRODUCTION**

Plaintiffs' Opposition is designed to create the misleading impression that the allegations against Mr. Testa are at least as strong as those against Mr. Douglas and Mr. Howard, UNFI's CEO and CFO during the relevant period. To create that façade, Plaintiffs repeatedly mischaracterize their own complaint, the documents incorporated therein, and the caselaw – most strikingly, by wrongly attributing a statement by Mr. Howard to Mr. Testa to argue that Mr. Testa purportedly "ratified" a different statement by Mr. Douglas. In truth, the complaint's relevant factual allegations against Mr. Testa are few and far between. He did not make or have any actual control over any actionable statement. And Plaintiffs' Opposition only underscores the lack of particularized factual allegations allowing an inference that Mr. Testa was, in any meaningful sense, a culpable participant in the alleged fraud. This Court should hold that Plaintiffs have not stated a claim for control person liability under Section 20(a) against Mr. Testa, and enter judgment dismissing all claims against him with prejudice.

**ARGUMENT**

**I.    Plaintiffs Fail to Allege That Mr. Testa Had Actual Control.**

Plaintiffs do not dispute that control person liability requires "*actual* control over the matters at issue." *Li v. Eqonex Ltd.*, 2024 WL 4241951, at *16 (S.D.N.Y. Sept. 18, 2024); Br. 5. Nor do they dispute that the "matters at issue" are the statements that survived the motion to dismiss ruling, which concern the relative impact of inflation-related forward buying on UNFI's margin. *See* Opp. 7 (asserting that the complaint "pleads particularized facts showing Testa's actual control over … the issuance and dissemination of the false and misleading statements that the Court found actionable"). And yet, Plaintiffs' Opposition fails to explain how Mr. Testa had actual control over any of those specific statements. *See id.* at 5-12. That failure is dispositive.

Instead, Plaintiffs continue to rely on Mr. Testa's control person *status*, as evidenced by

1

his position as UNFI President, and boilerplate allegations about his purported access to the company's SEC filings and press releases. *See id.* at 6. But Defendant's Opening Brief discussed in detail several cases from this District holding that these generic and conclusory allegations are insufficient. *See* Br. 6-8 (discussing *Li*, 2024 WL 4241951, *In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152 (S.D.N.Y. 2012), and *In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d 731 (S.D.N.Y. 2017)). Tellingly, Plaintiffs do not attempt to distinguish these cases. *See* Opp. at 5-12.

To support their reliance on conclusory allegations, Plaintiffs cite *Dietrich v. Bauer*, 76 F. Supp. 2d 312, 335 (S.D.N.Y. 1999), and *In re Quintel Ent. Inc. Sec. Litig.*, 72 F. Supp. 2d 283, 298 (S.D.N.Y. 1999). *See* Opp. 6-7. But those cases did not survive *Twombly* and *Iqbal*. *See Dietrich*, 76 F. Supp. 2d at 328 (applying the "no set of facts" rule from *Conley v. Gibson*, 355 U.S. 41 (1957), that was overruled in *Twombly*); *Quintel*, 72 F. Supp. 2d at 289 (applying *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), which also applied *Conley*'s rule)). And they are inconsistent with legions of more recent cases from this District. *See, e.g.*, *Rich v. Maidstone Fin., Inc.*, 2002 WL 31867724, at *11 (S.D.N.Y. Dec. 20, 2002) (declining to follow *Dietrich*, and underscoring that "[a] complaint must allege *facts*" from which actual control can be inferred and "pleading officer or director status alone is not enough" (emphasis added)); Br. 6-8.

Plaintiffs also cite *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372 (S.D.N.Y. 2010) (*see* Opp. 7), but that case is plainly distinguishable. In *Anwar*, the controlling defendant was a parent company – the "Citco Group" – that controlled individual funds engaged in fraudulent transactions as part of the Madoff Ponzi scheme. 728 F. Supp. 2d at 387, 393. The complaint pleaded that the parent company "'directly control[led] the conduct of each'" fund administrator "pursuant to [contractual] agreements between them," and appointed the directors

that engaged in the fraudulent transactions. *Id.* at 426-27. Nothing like that is alleged here: Mr. Testa did not own, or have contractual control over, UNFI, Mr. Howard, or Mr. Douglas.

Plaintiffs next argue that Mr. Testa is a control person "based on his *status* as a spokesperson for UNFI" by participating in earnings calls. Opp. at 7, 12 (emphasis added). But Plaintiffs' authority does not establish that being a "spokesperson" for the Company *generally* is sufficient to plead control. In *Freudenberg v. E\*Trade Fin. Corp.*, the officer who was allegedly a spokesperson *made* several of the actionable statements, unlike Mr. Testa. 712 F. Supp. 2d 171, 194 (S.D.N.Y. 2010) ("Each [defendant] made false and misleading statements during conference calls and/or conferences."). And in *In re Virtus Inv. Partners, Inc. Sec. Litig.*, the plaintiffs did not merely allege that the officer was a company "spokesperson"; rather, they alleged that the defendant had a direct supervisory role over the subject matter of the actionable statements. 195 F. Supp. 3d 528, 543 (S.D.N.Y. 2016) (relying on allegations that "Waltman co-signed the sub-advisory agreements …, tracked the due diligence, and served as a spokesperson" for the entity running the fraudulently-marketed funds).[1] Plaintiffs do not allege any facts suggesting that Mr. Testa had any involvement in, much less a direct supervisory role over, tracking the financial impact of inflationary forward buying on margin.[2]

Plaintiffs also claim that Mr. Testa is a control person because he "affirmatively supported and lent credence to the misleading narrative offered by the other defendants." Opp. 8.

---

[1] Unlike here, the *Virtus* complaint alleged several detailed facts about Waltman's direct, personal involvement in the fraud. *Compare* Case No. 1:15-cv-01249-WHP, Complaint, Dkt. 33 ¶ 192 ("Waltman was authorized to speak on behalf of the Company and from the very beginning of Virtus's adoption of AlphaSector was quoted in press releases concerning the quality of the funds," personally touted the funds' performance, and was responsible for "due diligence" of the funds), *with* SAC ¶¶ 281-82 (conclusory allegations about all of the "Individual Defendants").

[2] Plaintiffs also discuss the *Virtus* defendant Cerutti. *See* Opp. 12. But Cerutti was actively involved in the making and continued dissemination of actionable statements because he instructed the company's employees to ignore a product manager's attempt to reveal the fraud and also instructed others to destroy documents to cover up the fraud. *See Virtus*, 195 F. Supp. 3d at 543; *Virtus* Docket, Dkt. 33 at ¶ 190 (detailed factual allegations).

3

They acknowledge that this Court held the only alleged misstatement attributed to Mr. Testa was "not actionable." *Id.* But they say that statement nevertheless demonstrates Mr. Testa's control over a different statement *by Mr. Douglas* because Mr. Testa purportedly said he was "'build[ing] on' Douglas's response to the same question." *Id.* This argument rests on a blatant error: as Plaintiffs' own exhibit reveals, the complaint's attribution of this statement to Mr. Testa is simply incorrect. The "if I can build on that a little bit" statement *was made by Mr. Howard*, not Mr. Testa. *Compare* Opp. 8 (citing SAC ¶ 167 and arguing that Mr. Testa purportedly said he was "'build[ing] on' Douglas's response"), *and* SAC ¶ 167 (attributing this "if I can build on that a little bit" statement to "Testa"), *with* Pls. Ex. A, Q3 2022 Earnings Call Tr. at 17 ("**JOHN W. HOWARD**: And Sandy, if I can build on that a little bit, there were some specific items … ."). In any event, *neither* Mr. Howard's "if I can build on that a little bit" statement *nor* Mr. Douglas's prior statement have anything to do with inflation-related forward buying; they were instead about the fluctuation of operating expenses. *See* Pls. Ex. A, Q3 2022 Earnings Call Tr. at 17 (referring to "operating expense," "rent expense," "health and wellness expense," and a "service fee"); *accord* Dkt. 66 at 22 n.2 (concluding that the statement wrongly attributed to Mr. Testa "has nothing to do with the impact of inflation or forward buying").

Finally, Plaintiffs argue that four statements by Mr. Testa from *before* the putative class period support an inference that he "exercised control over the Company's disclosures about UNFI's procurement practices." Opp. 9. But Plaintiffs do not cite a single case finding that pre-class-period statements can support an inference of control. *See id.* at 9-10. Indeed, none of the cited statements say anything about the *financial impact* of inflation-related forward buying at all – much less suggest that Mr. Testa had any control over statements made by others months or years later. *See In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 663 (S.D.N.Y. 2007) ("[A]

4

claim under § 20(a) requires … actual involvement in the *making of the fraudulent statements* by the putatively controlled entity." (emphasis added)). Plaintiffs have failed to show that Mr. Testa had actual control over any specific statement that survived the motion to dismiss.[3]

**II.      Plaintiffs Fail to Allege That Mr. Testa Was a Culpable Participant.**

**A.      Plaintiffs must plead culpable participation, which requires particularized facts showing Mr. Testa's conscious misbehavior or recklessness.**

Plaintiffs offer two legal arguments about the "culpable participation" standard to lower their burden. Both have been rejected by the great weight of authority in the Second Circuit.

*First*, Plaintiffs observe that "[s]ome courts do not even require culpable participation to be pled." Opp. 13. But Plaintiffs ignore that "the weight of Second Circuit precedent favors the view that a Plaintiff plead 'culpable participation' to state a section 20(a) claim, and that such participation must be plead[ed] with particularity." *Kalin v. Xanboo, Inc.*, 526 F. Supp. 2d 392, 406 (S.D.N.Y. 2007) (collecting cases); *see also Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 437-38 (S.D.N.Y. 2014) ("the majority of district courts in this Circuit have required Section 20(a) plaintiffs to allege [culpable participation]"); *In re ShengdaTech, Inc. Sec. Litig.*, 2014 WL 3928606, at *10 n.1 (S.D.N.Y. Aug. 12, 2014) ("[M]ost courts in this district have come to recite – routinely and without controversy – the control person liability standard as one requiring … culpable participation … to be affirmatively pleaded."). This is supported by the PSLRA and Second Circuit precedent. "Because Section 20(a) liability requires an individualized determination ... of the defendant [control person's] particular culpability, it stands to reason that an allegation of culpable participation requires particularized facts of the controlling person's conscious misbehavior or

---

[3] Plaintiffs' footnote about the "group pleading" doctrine is irrelevant. Opp. 10 n.7. This doctrine is about primary liability under Section 10(b), not control person liability under Section 20(a). *See City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 373, 375 (S.D.N.Y. 2012) (dismissing Section 20(a) claims).

recklessness." *Special Situations*, 33 F. Supp. 3d at 438 (internal quotation marks omitted); *see also Lapin v. Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221, 248 (S.D.N.Y. 2006) ("the Second Circuit repeatedly has … state[d] that a section 20(a) plaintiff must establish a defendant's culpable participation"). Plaintiffs offer no reason to adopt their outlier view. *See* Opp. 13.

*Second*, Plaintiffs assert that scienter is not required to establish culpable participation. Opp. 15. The only case they cite for this is *Boston Ret. Sys. v. Alexion Pharms., Inc.*, 556 F. Supp. 3d 100, 142-43 (D. Conn. 2021), which Plaintiffs misattribute to this District. *See id.* Moreover, *Boston Retirement* does not explain why or what different standard applies. *See id.* at 144 ("It is not apparent why … ."). In any event, Plaintiffs concede they must adequately allege "recklessness" and that mere "negligence" is not sufficient, which is also true of scienter under Section 10(b). *See* Dkt. 66 at 21 (scienter requires "evidence of conscious misbehavior or recklessness"); Br. 8 (collecting cases). So Plaintiffs' quibbling with the standard is of no moment; they have not sufficiently alleged culpable participation under any standard.

**B.    Plaintiffs have failed to plead particularized facts showing that Mr. Testa engaged in conscious misbehavior or recklessness.**

Plaintiffs do not attempt to show that Mr. Testa engaged in conscious misbehavior. Instead, they argue that Mr. Testa was "at least reckless in not knowing that the Company engaged in massive, undisclosed forward buying." Opp. 14. But whether UNFI engaged in "massive, undisclosed forward buying" is not the relevant question. Plaintiffs' theory of fraud is not that Defendants concealed forward buying, but that they concealed the *relative impact* of forward buying on the Company's margin. And there is no well-pleaded allegation that Mr. Testa knew anything about the relative impact of forward buying on the Company's profitability.

Plaintiffs recognize this flaw in their argument, so they assert that "Testa held himself out to monitor the financial impact of price increases in an inflationary environment." *Id.* But their

6

allegations do not support this bald assertion. At best, Plaintiffs allege only that Mr. Testa was aware that (1) inflation would impact UNFI's business in fiscal year 2022, (2) the Company received advance notice of price increases, and (3) price increases were higher than normal – all facts that were publicly disclosed. *See id.* (summarizing complaint's allegations). None of these allegations include any facts suggesting that Mr. Testa – who was not the Company's CFO and is not alleged to have had any role in its financial planning or reporting function – was "monitoring the financial impact of price increases," much less that he was aware of the relationship between inflation-related forward buying and the Company's margin. Nor do any of these allegations plead facts that Mr. Testa was aware of "specific statements or reports contradicting [his] public statements." *Bd. of Trs. of City of Ft. Lauderdale Gen. Emps.' Ret. Sys. v. Mechel OAO*, 811 F. Supp. 2d 853, 873 (S.D.N.Y. 2011), *aff'd sub nom. Frederick v. Mechel OAO*, 475 F. App'x 353 (2d Cir. 2012); Br. 10-11. Indeed, as discussed above, Mr. Testa *did not make any actionable statement.* Without particularized allegations establishing that Mr. Testa was reckless with respect to any actionable statement, Plaintiffs have not adequately alleged culpable participation.

Plaintiffs' cases are not to the contrary. Unlike Mr. Testa, the individual defendants in *In re Alstom SA* were the company's CEO and CFO and signed the "SEC filings containing [the] misrepresentations," and therefore "had a duty to familiarize" themselves with the relevant facts. 406 F. Supp. 2d 433, 459, 496, 498 (S.D.N.Y. 2005). Indeed, *Alstom* supports Mr. Testa. There, the court dismissed control person claims against the same two defendants with respect to another alleged fraud because they did not sign any documents containing "any misleading statements" and thus, there was no basis to infer they were "culpable participant[s]" with respect to those allegations. *Id.* at 496, 498. Here too, Mr. Testa did not sign *any* documents containing *any* of the actionable statements.

*In re Philip Services Corp. Sec. Litig.* is distinguishable on the same basis. *See* Opp. 13-14. Although Plaintiffs claim the allegations in that case were "sparse," they easily exceed the allegations against Mr. Testa. There, the complaint alleged that the individual defendants signed the registration statement containing the misstatements and "attended a board meeting at which participants discussed [the company's] improperly recorded earnings." 383 F. Supp. 2d 463, 486 (S.D.N.Y. 2004). Nothing like that is alleged here.

Finally, Plaintiffs assert that "each of the eight bases cited by the Court in its prior analysis" of Mr. Howard's and Mr. Douglas's scienter applies to Mr. Testa. Opp. 15. Not so. Mr. Testa is not alleged to have made any actionable statement. He did not sign or approve any of the SEC filings containing any of the actionable statements. And he is not alleged to have been involved in UNFI's financial planning or reporting function. None of the Court's scienter analysis suggests that Mr. Testa knew of but recklessly failed to disclose the impact of inflation-related forward buying on UNFI's margin.

For example, Plaintiffs argue that Mr. Testa "knew that forward buying had a substantial impact on margins during the Class Period," relying on this Court's reasoning that "Howard and Douglas' statements that they did not 'fully appreciate' or 'fully understand' the magnitude of the benefits of inflation-based forward buying until the last quarter of 2022 reasonably suggest that they had some appreciation or understanding of its impact before then." *Id.* at 16; *accord* Dkt. 66 at 23. But Mr. Testa did not make similar statements. Instead, Plaintiffs point to Mr. Testa's statement that he engaged in "[d]aily conversations with suppliers," Opp. 16, but that statement is not about forward buying at all, much less its relationship to UNFI's margin.

Similarly, Plaintiffs rely on a statement that Mr. Testa was aware of "higher than normal" supplier price increases to suggest he knew of "substantial forward buying." *Id.* at 15-16 (citing

8

SAC ¶¶ 66-67). But this statement was made in June 2021, six months *before* the start of the alleged class period, and it does not show that Mr. Testa knew anything about the relative impact of inflation-related forward buying on the Company's margin during the class period.

Plaintiffs assert that Mr. Testa knew that inflation-related forward buying was a "boon to profits" because "the existence and impact of supplier promotions was within Testa's oversight of the supplier division." *Id.* at 16 (citing SAC ¶ 29). But they rely solely on an allegation that Mr. Testa oversaw "the Company's supplier services, professional services, Brands+ business, and Canadian business" for support. SAC ¶ 29. There are no particularized factual allegations – no statement attributed to Mr. Testa, or information he is alleged to have seen – suggesting that Mr. Testa oversaw the *financial impact* of supplier promotions on profits, much less that he was aware of information contradicting any public statement.[4] It is just Plaintiffs' assertion.

Plaintiffs continue to mischaracterize their allegations about Mr. Testa when arguing that a "strong inference that the explosion then evaporation of inflation-related forward buying gains … was a known trend under Item 303 and that its omission was at least reckless" applies to Mr. Testa. Opp. 16 (quoting Dkt. 66 at 27). Again, Plaintiffs ignore that Mr. Testa did not sign the SEC filings, and they do not allege that he had any role regarding UNFI's Item 303 disclosure.

That leaves Plaintiffs with conclusory allegations that the "magnitude of the impact of forward buying" and the size of UNFI's wholesale segment raise an inference of recklessness. *Id.* But these allegations are wholly unconnected to Mr. Testa. And even in cases where a company restates its financial statements, which did not happen here, courts find that the size of the error alone does not create an inference of scienter. *See, e.g.*, *In re Turquoise Hill Res. Ltd. Sec. Litig.*,

---

[4] Plaintiffs assert that Testa "had access to granular information regarding inventory on hand and sales trends," but they cite nothing from their complaint to support this. *See* Opp. 16. Moreover, "inventory on hand" and "sales trends" do not show anything about the impact of inflation-related forward buying on margin levels.

2014 WL 7176187, at *7 (S.D.N.Y. Dec. 16, 2014). Nor does Plaintiffs' argument make sense: the notion that the "magnitude" of the issue could establish culpability against *any* executive, regardless of how disconnected the executive is from the actionable statement, is antithetical to the individualized pleading required for Section 20(a) claims.

Plaintiffs halfheartedly repeat their argument that Mr. Testa had "at least some motivation to mislead" because his annual bonus was tied to the Company's adjusted EBITDA. Opp. 16. But they ignore that Mr. Testa's long-term compensation dwarfed the short-term gain from his annual bonus, which cuts against scienter. *See* Br. 10. And this alone is not a sufficient basis to find scienter, as this Court recognized. *See* Dkt. 66 at 26.

Finally, Plaintiffs assert that the allegations concerning Mr. Testa's scienter are "even more compelling" than those for Mr. Douglas and Mr. Howard because Mr. Testa engaged in "suspicious stock sales" and resigned from the company. Opp. 17. But they ignore all the reasons why Mr. Testa's stock sales were not suspicious: he made the sales pursuant to a non-discretionary Rule 10b5-1 trading plan; his trading plan was structured in a way that suggests he believed the stock price would rise; he only sold a small percentage of his holdings; and Plaintiffs do not allege that any of the other Individual Defendants sold their shares. *Compare* Br. 10, *with* Opp. 17. Mr. Testa's resignation is also irrelevant because Plaintiffs do not allege any facts linking his departure to the alleged fraud. *Compare Gregory v. ProNAi Theras. Inc.*, 297 F. Supp. 3d 372, 415 (S.D.N.Y), *aff'd*, 757 F. App'x 35 (2d Cir. 2018), *with In re Sadia S.A. Sec. Litig.*, 643 F. Supp. 2d 521, 534-35 (S.D.N.Y. 2009) (CFO fired, company began internal investigation, and allegations supported by confidential witness statements).

## CONCLUSION

For the foregoing reasons, Mr. Testa respectfully requests that this Court enter judgment dismissing all claims against Mr. Testa with prejudice.

Dated: December 9, 2024
    New York, New York

Respectfully submitted,

*/s/ Francesca Brody*
Francesca Brody
Vincent Margiotta
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
fbrody@sidley.com
vmargiotta@sidley.com

Nilofer I. Umar (admitted *pro hac vice*)
Neil H. Conrad (admitted *pro hac vice*)
William J. Lawrence (admitted *pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
numar@sidley.com
nconrad@sidley.com
bill.lawrence@sidley.com

*Attorneys for Defendants*

11