# Exhibit 15

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| DAN SILLS and GEORGE DICK, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED NATURAL FOODS, INC., J. ALEXANDER MILLER DOUGLAS, JOHN W. HOWARD, and CHRISTOPHER P. TESTA,<br><br>Defendants. | Case No. 1:23-cv-02364-JGLC |

# EXPERT REPORT OF PAUL ZUREK, PH.D.

# June 13, 2025

# Table of Contents

I.  Qualifications ........................................................................................................... 1

II.  Assignment and Compensation .............................................................................. 1

III.  Summary of Opinions ............................................................................................ 3

    A.  Economic Evidence Regarding the Impact, If Any, of the Challenged Statements After March 8, 2023 ................................................................... 3

    B.  Assessment of Dr. Feinstein's Purported Damages Methodology ........................ 6

IV.  Selected Background ............................................................................................. 7

    A.  UNFI ................................................................................................................. 7

    B.  Market Commentary Regarding the Impact of Inflation-Related Forward Buying on UNFI's Financial Performance Before March 8, 2023 ................................... 10

V.  Plaintiffs' Allegations and the Feinstein Report ................................................... 13

    A.  Plaintiffs' Allegations ..................................................................................... 13

        1.  Challenged Statements and the Alleged Truth ......................................... 13

        2.  Alleged Corrective Disclosures ............................................................... 15

    B.  The Feinstein Report ...................................................................................... 18

VI.  Implications of Market Efficiency ....................................................................... 19

VII.  Event Study Analysis ......................................................................................... 23

    A.  Event Studies ................................................................................................. 23

    B.  Event Study Model Specification for UNFI ..................................................... 24

VIII.  Economic Evidence Is Consistent with the Challenged Statements Having Had No Impact on the Prices of UNFI Securities After March 8, 2023 ........................... 25

    A.  The Alleged Truth Was Publicly Available by March 8, 2023 and Would Have Been Fully Incorporated into the Prices of UNFI Securities After That Date If Those Securities Traded in Efficient Markets ..................................................... 26

        1.  UNFI's Q2 2023 Disclosures on March 8, 2023 ..................................... 27

        2.  Plaintiffs' Characterization of UNFI's Q2 2023 Disclosures .................. 33

        3.  Securities Analysts' Discussion of UNFI's Q2 2023 Disclosures ............ 34

    B.  In an Efficient Market, Any Changes in the Prices of UNFI Securities Following the Alleged Corrective Disclosures on June 7, 2023 and September 26, 2023 Were Not a Result of the Revelation of Information Underlying the Alleged Truth or Its Repetition Because the Alleged Truth Was Already Public Information ............. 39

        1.  June 7, 2023 (Q3 2023 Earnings Announcement) .................................. 40

2.      September 26, 2023 (Q4 2023 Earnings Announcement) ........................ 50

IX.    Dr. Feinstein Has Failed to Provide a Class-Wide Methodology Capable of Measuring Damages for Members of the Proposed Class in a Manner Consistent with Plaintiffs' Theory of Liability ........................................................................................................... 59

    A.    Methodology for Calculating Damages for UNFI Common Stock Purchasers.... 59

        1.    Dr. Feinstein's Opinions Regarding Damages for UNFI Common Stock Purchasers ...................................................................................... 59

        2.    Dr. Feinstein Has Failed to Address the Implications of Plaintiffs' Alleged Theory of Liability for the Ability of an Event Study or Other Valuation Tools to Estimate Inflation.......................................................... 61

    B.    Methodology for Calculating Damages for UNFI Call Option Purchasers and Put Option Sellers.................................................................................................. 70

## I.    Qualifications

1.    I am a Vice President at Cornerstone Research, a financial and economic consulting firm. I hold Ph.D. and M.A. degrees in finance and a B.S. degree in economics from the Wharton School at the University of Pennsylvania.  My research and work experience span several areas in financial economics, with a focus on asset pricing, valuation, and statistical analysis of financial data.  A copy of my curriculum vitae is attached as **Appendix A**.

2.    I have authored textbook chapters on issues in finance and economics.  I have taught valuation, corporate finance, risk management, and asset pricing, including in executive education programs, at the Wharton School at the University of Pennsylvania, and at Stanford Law School.

3.    I have more than 15 years of experience conducting economic analyses on complex matters at all stages of litigation, including as an expert witness.  At Cornerstone Research, I have consulted on many litigation matters, including securities lawsuits by shareholders.  My work has involved issues of market efficiency, price impact, loss causation, and valuation, as well as the calculation of per share damages.  I have served as an expert in litigation, including in securities matters, testified in arbitrations and trial, and presented findings of my analyses to regulators.  I have also spoken on various topics related to securities litigation.  A list of my prior testimony is included as part of **Appendix A**.

## II.    Assignment and Compensation

4.    I understand that plaintiffs Dan Sills and George Dick (collectively, "Plaintiffs")[1] seek to certify a class comprising "[a]ll persons and entities who or which purchased or otherwise acquired the publicly traded common stock of UNFI, and/or purchased publicly traded call options on such stock, and/or wrote publicly traded put options on such stock, between December 8, 2021 and September 25, 2023, inclusive" (the "Proposed Class Members,"

---

[1] *See* Second Amended Class Action Complaint for Violations of the Federal Securities Laws, *Dan Sills and George Dick v. United Natural Foods, Inc., et al.*, Case No. 1:23-cv-02364-JGLC, November 6, 2023 ("Complaint"), p. 1.

"Proposed Class," and "Proposed Class Period").[2]  I understand that in support of their Class Certification Motion, Plaintiffs submitted the Expert Report of Steven P. Feinstein, Ph.D. ("Dr. Feinstein"), dated March 7, 2025 (the "Feinstein Report").

5.    I have been retained by counsel ("Counsel") for defendants United Natural Foods, Inc. ("UNFI" or the "Company"), J. Alexander Miller Douglas, John W. Howard, and Christopher P. Testa (collectively, "Defendants") to:

a.  assess economic evidence regarding the impact, if any, of the actionable alleged misrepresentations (i.e., the alleged misstatements and omissions that survived Defendants' motion to dismiss[3]) on the prices of UNFI common stock and options ("UNFI Securities") following the alleged corrective disclosure on March 8, 2023, assuming those securities traded in efficient markets; and

b.  evaluate Dr. Feinstein's opinion that "Section 10(b) and Section 20(a) damages in this matter can be computed for all [Proposed] Class [M]embers and all UNFI Securities using a common methodology for each cause of action that is consistent with Plaintiffs' theory of liability."[4]

6.    In undertaking this assignment, I have examined various materials, including legal pleadings in this litigation, discovery responses and deposition transcripts in this litigation, academic literature, securities analyst reports, public press articles, and various other public sources, including data from data providers such as the Center for Research in Security Prices ("CRSP").  A list of materials that I have considered in forming my opinions is attached as **Appendix B**.

7.    I have been assisted in the preparation of this report by staff of Cornerstone Research, who worked under my direction.  Cornerstone Research is being compensated for my work in this matter at an hourly rate of $1,200.  My compensation is not dependent on the outcome of this matter or the opinions I reach.  My work in this matter is ongoing, and I reserve the right to

---

[2] Memorandum of Law in Support of Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel, *Dan Sills and George Dick v. United Natural Foods, Inc., et al.*, Case No. 1:23-cv-02364-JGLC-VF, March 7, 2025 ("Class Certification Motion"), p. 1.

[3] I understand that the Court issued an Opinion and Order denying in part and granting in part Defendants' motion to dismiss.  *See* Opinion and Order, *Dan Sills and George Dick v. United Natural Foods, Inc., et al.*, Case No. 1:23-cv-02364-JGLC-VF, September 13, 2024 ("MTD Ruling").

[4] Feinstein Report, ¶ 24.

supplement my opinions if additional information becomes available and/or if Dr. Feinstein offers additional opinions in this matter.

## III.    Summary of Opinions

8.      I have reached the following conclusions, the detailed bases for which are described throughout the report.

### A.    Economic Evidence Regarding the Impact, If Any, of the Challenged Statements After March 8, 2023

9.      As discussed in Section **VIII.A**, I examined economic evidence regarding the impact, if any, of the Challenged Statements[5] on the prices of UNFI Securities after the alleged corrective disclosure on March 8, 2023, assuming that UNFI Securities traded in efficient markets during the Proposed Class Period, as Plaintiffs allege and Dr. Feinstein opines.[6]  Based on my assessment of the economic evidence presented below, it is my opinion that this economic evidence is consistent with the Challenged Statements having had no impact on the prices of UNFI Securities following the alleged corrective disclosure on March 8, 2023, even to the extent they had impacted the prices of these securities prior to that date.

10.      Specifically, my analysis in **Section VIII.A** shows that the Alleged Truth[7] that inflation-related forward buying had been a significant but temporary driver of improvements in UNFI's gross margin during the Proposed Class Period was publicly available information by March 8, 2023.  On March 8, 2023, UNFI disclosed information comprising the Alleged Truth and this information was discussed by securities analysts over the days that followed, consistent with the fact that it was publicly available by March 8, 2023.  In efficient markets, value-relevant information is quickly and fully incorporated into security prices (**Section VI**).  Therefore, the Alleged Truth would have been fully incorporated into the prices of UNFI Securities on March 8,

---

[5] *See* **Section V.A.1** for a discussion of the "Challenged Statements."

[6] Complaint, ¶¶ 260, 263, 265; Feinstein Report, ¶¶ 18, 23.  The implications of market efficiency are discussed in **Section VI**.

[7] *See* **Section V.A.1** for a discussion of the "Alleged Truth" that I have been asked by Counsel to assume Plaintiffs allege was concealed by the Challenged Statements.

2023 and, thus, the Challenged Statements could not have impacted the price of UNFI Securities after March 8, 2023.

11.    Furthermore, I examined the two alleged corrective disclosures after March 8, 2023, that is, the alleged corrective disclosures on June 7, 2023 and September 26, 2023.  As discussed in **Section VIII.B**, any UNFI security price changes following the alleged corrective disclosures on June 7, 2023 and September 26, 2023 provide no economic evidence that the Challenged Statements had an impact on the prices of UNFI Securities after March 8, 2023 in efficient markets.  This is because the Alleged Truth was already publicly available by March 8, 2023 (well before June 7, 2023), and therefore any UNFI security price changes following the alleged corrective disclosures on June 7, 2023 and September 26, 2023 would not result from the revelation of the Alleged Truth or its repetition.  Instead, any UNFI security price changes following those alleged corrective disclosures would have been attributable to new information other than the repetition of the then-known Alleged Truth.

    a.    As discussed in **Section VIII.B.1**, on June 7, 2023, this new information includes the below-consensus (i.e., disappointing relative to analyst forecasts) Q3 2023 financial results and the downward revision to FY 2023 financial guidance.  The majority of securities analysts covering UNFI that published reports within one week of UNFI's Q3 2023 disclosures focused specifically in their title or lead paragraph on either or both of these two developments.  UNFI's Q3 2023 financial results reflected financial performance for the then-current fiscal quarter, which I understand from Counsel that Plaintiffs do not allege that UNFI could or should have disclosed these results earlier and that allegations regarding financial guidance have been dismissed.  The below-consensus financial results and financial guidance for FY 2023 are consistent with factors that did not reveal new information underlying the Alleged Truth, namely:  (i) the materialization of previously disclosed risks that increased macroeconomic pressures from moderating inflation or deflation would reduce the benefits to profitability from inflation-related forward buying opportunities achieved in prior quarters; (ii) the materialization of previously known risks that UNFI's financial results and financial guidance would be realized below expectations due to UNFI's lack of

visibility into its future performance; and (iii) factors other than inflation-related forward buying, including shrink, changes in consumer spending, and continued weak supplier promotional activity.

b.   As discussed in **Section VIII.B.2**, on September 26, 2023, this new information includes the announcement of financial guidance for FY 2024.  While securities analysts noted that UNFI's Q4 2023 financial results were generally in line with expectations, commentary discussed UNFI's stock price decline on September 26, 2023 in the context of the Company's FY 2024 earnings guidance being below analysts' forecasts.  Most securities analysts covering UNFI that published reports within one week of UNFI's Q4 2023 disclosures focused specifically in their title or lead paragraph on UNFI's FY 2024 financial guidance.  I understand from Counsel that Plaintiffs do not allege that UNFI should have provided earlier in the Proposed Class Period the FY 2024 guidance it ultimately provided on September 26, 2023 and that Plaintiffs' allegations regarding financial guidance have been dismissed.  The below-consensus financial guidance for FY 2024 is consistent with factors that did not reveal new information underlying the Alleged Truth, namely:  (i) the materialization of previously disclosed risks that increased macroeconomic pressures from moderating inflation or deflation would further reduce the benefits to profitability from inflation-related forward buying opportunities achieved in prior quarters; (ii) the materialization of previously known risks that UNFI's financial guidance would be realized below expectations due to UNFI's lack of visibility into its future performance; and (iii) factors other than inflation-related forward buying, including shrink, changes in consumer spending, moderated supplier promotional activity, and increased retail price competition.

c.   None of the above revealed new information underlying the Alleged Truth, because it was already public information at the time that inflation-related forward buying had been a significant but temporary driver of UNFI's gross margin.

**B.    Assessment of Dr. Feinstein's Purported Damages Methodology**

12.    As discussed in **Section IX**, as an economic matter and contrary to his claim, Dr. Feinstein fails to provide a class-wide methodology capable of measuring damages for UNFI Securities in a manner consistent with Plaintiffs' theory of liability in this matter.  This is the case for both UNFI common stock (**Section IX.A**) and for UNFI call and put options (**Section IX.B**).

13.    With respect to UNFI common stock, Dr. Feinstein claims that damages can be determined using "[t]he out-of-pocket damages methodology" based on a calculation of share price inflation, and that such inflation can be measured using "event study analysis, combined with widely used and generally accepted valuation tools."[8]  Without providing further explanation, he asserts that his "reading of Plaintiffs' allegations and [his] review of the experience of the Company over the course of the [Proposed] Class Period uncovered no facts or circumstances that are extraordinarily unusual or might make application of this methodology exceptionally difficult."[9]  This conclusory assertion is insufficient, as an economic matter, to establish the existence of a class-wide methodology capable of measuring damages for UNFI common stock in a manner consistent with Plaintiffs' theory of liability in this matter.

14.    First, Dr. Feinstein's assertion lacks any disclosed analytical support and therefore cannot be replicated or tested against the circumstances of the present litigation.  Second, from the perspective of a financial economist calculating damages, "out-of-pocket" damages and inflation are definitional concepts that must ultimately be calculated using some methodology that Dr. Feinstein does not identify.  Economic theory provides no assurance that the "commonly used valuation tools"[10] Dr. Feinstein references, including an event study, can be used to compute inflation without carefully assessing particular circumstances of a given litigation.  Third, among others, Dr. Feinstein has failed in particular to provide a methodology that can measure stock price inflation, if any, from under-disclosed risks regarding the impact of inflation-related forward buying on UNFI's gross margin.  I understand that Plaintiffs allege that the Alleged Corrective Disclosures were materializations of under-disclosed risks to UNFI's financial

---

[8] Feinstein Report, ¶¶ 211.ii, 212.
[9] Feinstein Report, ¶ 211.iv.
[10] Feinstein Report, ¶ 210.

performance from loss of procurement gains from inflation-related forward buying.  Thus, in order to establish the existence of a class-wide damages methodology consistent with Plaintiffs' theory of liability, Dr. Feinstein would need to provide a methodology to quantify inflation and damages stemming only from any risks that may have been understated but not from the materialization of those risks.  Dr. Feinstein has not done so.

15.    With respect to <u>UNFI call and put options</u>, Dr. Feinstein's proposed methodology to calculate damages for purchasers of call options and sellers of put options during the Proposed Class Period appears to rely on his estimate of share price inflation for UNFI common stock as an input.  However, as discussed, Dr. Feinstein has failed to provide a class-wide methodology capable of reliably measuring damages for UNFI common stock in a manner consistent with Plaintiffs' theory of liability and therefore he has also failed to do so for UNFI call and put options.  Moreover, additional challenges specific to the calculation of damages for UNFI call and put options exist that Dr. Feinstein has failed to address.  Specifically, he has failed to provide a methodology that is capable of estimating the counterfactual expected volatility of UNFI's stock price that would have prevailed absent the alleged misrepresentations.  This failure is critical because expected stock price volatility is a key input to estimating the value of UNFI call and put options, including under the Black-Scholes or binomial American option pricing models that Dr. Feinstein claims he could use to estimate damages.  Without a methodology to quantify the counterfactual expected volatility that would have prevailed absent the alleged misrepresentations, Dr. Feinstein has not provided a complete methodology to calculate damages even if he were able to calculate the other relevant input, that is, price inflation in UNFI common stock.

## IV.    Selected Background

### A.    UNFI

16.    According to its public disclosures, UNFI was at the relevant time (during the Proposed Class Period) "a leading distributor of grocery and non-food products, and [a] support services

provider to retailers in the United States and Canada."[11]  During the Proposed Class Period, UNFI's common stock was listed on the New York Stock Exchange ("NYSE") under the ticker symbol UNFI.[12]  Exchange-traded call and put options on UNFI's common stock traded on multiple exchanges, including the Chicago Board Options Exchange ("CBOE"), Nasdaq, and NYSE, throughout the Proposed Class Period.[13]

17.    The Company operated in two primary business segments:  Wholesale and Retail.[14] UNFI's Wholesale segment "is engaged in the distribution of grocery and non-food products, and [is a] support services provider to retailers in the United States and Canada."[15]  The Wholesale segment offers customers "a wide variety of food and non-food products, and [its] own line of private label products," as well as "a broad array of professional services."[16]  UNFI's Retail segment generates "revenues from the sale of groceries and other products at retail locations operated by the Company."[17]  In FY 2022 and FY 2023, the Wholesale segment accounted for approximately 96% of UNFI's total net sales and 84% of adjusted earnings before interest, taxes, depreciation, and amortization ("adjusted EBITDA").[18]

18.    In its Wholesale segment, the Company "maintain[s] contracts with suppliers to procure their products," a process referred to as *procurement*, which "includes assessments of demand

---

[11] *See* UNFI Form 10-K for the Fiscal Year Ended July 30, 2022, filed on September 27, 2022 ("UNFI 2022 10-K"), pp. 1, 28; UNFI Form 10-K for the Fiscal Year Ended July 29, 2023, filed on September 26, 2023 ("UNFI 2023 10-K"), pp. 1, 29.  UNFI is "a Delaware corporation based in Providence, Rhode Island and Eden Prairie, Minnesota." *See* UNFI 2022 10-K, p. 1; UNFI 2023 10-K, p. 1.  The Company "offer[s] approximately 260,000 products consisting of national, regional and private label brands grouped into six product categories: grocery and general merchandise; produce; perishables and frozen foods; nutritional supplements and sports nutrition; bulk and foodservice products; and personal care items."  *See* UNFI 2022 10-K, p. 1; UNFI 2023 10-K, p. 1.  Moreover, the Company "serve[s] over 30,000 unique customer locations, primarily located across the United States and Canada, [classified] into five customer types: Chains; Independent retailers; Supernatural; Retail; and Other."  *See* UNFI 2022 10-K, p. 2; UNFI 2023 10-K, p. 2.

[12] UNFI 2022 10-K, p. 25; UNFI 2023 10-K, p. 26.  **Exhibit 1** shows the evolution of UNFI's stock price during the Proposed Class Period.

[13] *See, e.g.*, "Symbol Directory," *CBOE*, https://www.cboe.com/us/options/symboldir/equity_index_options/?sid=U; *Bloomberg; OptionMetrics*.

[14] UNFI 2022 10-K, p. 1 ("Our business is classified into two reportable segments: Wholesale and Retail; and also includes a manufacturing division and a branded product line division.").  *See also* UNFI 2023 10-K, p. 1.

[15] UNFI 2022 10-K, p. 97.

[16] UNFI 2022 10-K, p. 3.

[17] UNFI 2022 10-K, p. 97.  These retail stores carry an assortment of "national and local brands, as well as [UNFI's] own private label products."  *See* UNFI 2022 10-K, p. 4.

[18] UNFI 2022 10-K, p. 37; UNFI 2023 10-K, p. 36.  *See also* UNFI 2022 10-K, p. 30 ("Net sales consist primarily of product sales of natural, organic, specialty, produce and conventional grocery and non-food products, and support services revenue from retailers, adjusted for customer volume discounts, vendor incentives when applicable, returns and allowances, and professional services revenue.  Net sales also include amounts charged by us to customers for shipping and handling and fuel surcharges."); UNFI 2023 10-K, p. 30.

planning, pricing, seasonality and other factors."[19]  The Company reported its gross margin[20] as determined by the difference between net sales and "the procured cost, including vendor funds and inbound freight."[21]  Specifically, UNFI stated that:

> Inventory costs are determined when products are procured, and include vendor funds received and inbound freight, among other items.  *The gross margins we earn on sales to our customers are typically based on a percentage mark-up, or fee, on top of vendor listed base cost*, which vary by customer, product type, vendor size, volume throughput, transportation methods and distances, among other factors.  *Net sales to customers are determined at the time of sale based on the then prevailing vendor listed base cost*, and include discounts we offer to our customers.  *The differential between the procured cost, including vendor funds and inbound freight, as compared to the net sales price of these products, generates our gross margin*.[22]

19.     UNFI and its executives discussed several ways in which the Company's financial performance, including its gross margin, was impacted by consumer price inflation.  First, UNFI stated that "[a]bsent any changes in units sold or the mix of units sold, *inflation generally has the effect of increasing sales* [and that] [g]enerally, in an inflationary environment as a wholesaler, *rising vendor costs result in higher Net sales driven by higher vendor prices when other variables such as quantities sold and vendor promotions are constant*."[23]  Second, in an inflationary environment, "costs of services from labor, transportation and other services

---

[19] UNFI 2022 10-K, p. 3.

[20] Gross margin is measured as "Gross profit as a percentage of Net sales."  *See, e.g.*, UNFI 2022 10-K, pp. 11, 53. Beginning in Q3 2022, UNFI reported certain profitability measures (e.g., gross profit) that exclude the non-cash last-in, first-out ("LIFO") charge or benefit.  *See, e.g.*, UNFI Form 8-K, filed on June 7, 2022, Ex. 99.1 ("UNFI Q3 2022 Earnings Release"), p. 1 ("During the third quarter of [FY] 2022, the Company revised its definition of Adjusted EBITDA and Adjusted EPS to exclude the impact of the non-cash LIFO charge or benefit.  The Company believes that this change provides a better indicator of its underlying operating performance and permits better comparability between periods.  Prior-year periods have been recast to reflect the new definition."); UNFI 2022 10-K, p. 31 ("During [FY] 2022, we revised our definition of Adjusted EBITDA to exclude the impact of the non-cash LIFO charge or benefit. We believe that this change provides a better indicator of our underlying operating performance and permits better comparability between periods."); UNFI 2022 10-K, p. 97 ("In [FY] 2022, the Company changed its measure of segment profit to exclude the non-cash LIFO charge or benefit from Adjusted EBITDA.  Prior period Adjusted EBITDA amounts and the reconciliation to Income (loss) from continuing operations before income taxes have been recast to reflect this change in the measure of segment profit."). According to the Company, "[u]nder the [LIFO] method of inventory accounting, product cost increases are recognized within [c]ost of sales based on expected year-end inventory quantities and costs, which has the effect of decreasing Gross profit and the carrying value of inventory during periods of inflation."  *See* UNFI 2022 10-K, p. 30.  References to gross margin in this report, unless indicated otherwise, refer to gross margin excluding the non-cash LIFO charge, as reported by the Company beginning in Q3 2022.

[21] UNFI 2022 10-K, p. 3.

[22] UNFI 2022 10-K, p. 3 (emphasis added).

[23] UNFI 2022 10-K, p. 30 (emphasis added).

expenses" can increase.[24]  Thus, whether gross margin is positively or negatively impacted by increasing inflation depends on the combined effect of "the extent that [the Company is] unable to pass on all or a portion of such product cost increases to [its] customers, or to the extent [its] operating expenses increase."[25]  Third, UNFI executives discussed the Company's practice of inflation-related forward buying[26] and how such opportunities could have a positive impact on UNFI's profitability and gross margin.  For example, during the Q3 2021 earnings call held on June 9, 2021, UNFI executives stated:

> [W]e have received notice from many suppliers indicating they will be taking price increases in the coming months.  So we expect inflation to have a larger impact on our business leading into [FY] 2022.

> As far as pass-through, … from a policy perspective depending upon the product category, *we typically get between 60 and 90 days advance notice, which gives us the ability to buy into rising markets, which is a source of gross margin for us, which is -- so will be a tailwind*.  But we passed through 100% or pretty damn close to 100% of the cost of goods that get pushed to us.[27]

**B.      Market Commentary Regarding the Impact of Inflation-Related Forward Buying on UNFI's Financial Performance Before March 8, 2023**

20.      Prior to March 8, 2023, including prior to the Proposed Class Period, securities analysts noted UNFI's practice of inflation-related forward buying (consistent with the discussion above) and commented on how such opportunities were having a positive impact on UNFI's financial performance.  For example, several securities analysts commented that the high inflationary

---

[24] UNFI 2022 10-K, p. 30.

[25] UNFI 2022 10-K, p. 11.

[26] I understand that inflation-related forward buying refers to the Company's "ability to buy into rising markets" due to suppliers providing "between 60 and 90 days advance notice" ahead of price increases.  *See* UNFI Q3 2021 Earnings Call Transcript, June 9, 2021 ("UNFI Q3 2021 Earnings Call"), p. 14.  Moreover, for the purposes of this report, I refer to "the profit from such [inflation-related] forward buying" as procurement gains.  *See* MTD Ruling, p. 3 (internal citations omitted) ("Forward buying is the practice of buying product in excess of demand ahead of known price increases.  Forward buying does not pass on the discounted cost of inventory to retailers.  Rather, the distributor increases the price of the goods right away before the known increase goes into effect, allowing the distributor to increase its profits in the short term.  UNFI later referred to the profit from such forward buying as 'procurement gains.'").

[27] UNFI Q3 2021 Earnings Call (emphasis added), pp. 6, 14.  *See also* UNFI Q3 2021 Earnings Call, p. 13 ("We have a process for [consumer-packaged goods] increases, our suppliers increases where we get notification 60, 90 days in advance.").

period in 2021 and 2022 was positively impacting UNFI, including through the opportunity to take advantage of forward buying opportunities:

> **(BofA Securities, June 9, 2021)**  [We] expect credit metrics to improve modestly due to the benefit of: (1) over $1 billion of new business and (2) *gross margin expansion due to forward buys*, inflation and higher CPG promotions....  Food inflation typically benefits UNFI as products are purchased by customers on a "cost plus" basis.  Therefore, high [prices] increase the dollar margins of purchases, while keeping margin rate consistent.  Additionally, *the company is able to expand gross margin by purchasing product ahead of price increases*.[28]

> **(Northcoast Research, September 24, 2021)**  Although we believe UNFI will outperform Street expectations to close out its [FY 2021], we think investors' focus will be placed squarely on the company's [FY 2022] outlook.  In the current selling environment *UNFI should continue to benefit from* strong consumer demand supporting store traffic as well as *higher food inflation*, *presenting the company with forward buying opportunities*.[29]

> **(BofA Securities, September 28, 2021)**  We estimate that [FY 2022 Adjusted] EBITDA increases 4% to $778 million, reducing net leverage by 0.4x to 2.7x.  Our favorable view is based upon: (1) new business, including Key Foods and (2) *gross margin expansion due to inflation and forward buys*, partially offset by: (1) incremental healthcare/benefit costs; (2) wage inflation; and (3) increased rent due to the expected sale/leaseback of the company's distribution center in Riverside, CA.[30]

> **(Northcoast Research, October 5, 2021)**  Investments in automation *coupled with the potential for forward buying opportunities means there could be substantial opportunity for UNFI to stabilize margins* well above initial post-acquisition levels.[31]

> **(UBS, June 7, 2022)**  UNFI has several factors working in its favor from a profitability perspective[.]  We believe UNFI can generate modest adj. op. margin margin [*sic*] expansion in 4Q.  *Its ability to forward buy* & the cost plus nature of

---

[28] "Spreads Do Not Reflect Business Stability; Maintain Overweight," *BofA Securities*, June 9, 2021 (emphasis added).

[29] "UNFI: Retail and Markets Remain Strong; All Eyes on Fiscal 2022," *Northcoast Research*, September 24, 2021 (emphasis added).

[30] "FY22 Deleveraging Supports Overweight Rating," *BofA Securities*, September 28, 2021 (emphasis added).

[31] "UNFI:  We See Sustained Tailwinds and Lift Our Price Target to $58," *Northcoast Research*, October 5, 2021 (emphasis added).

its contracts *should allow for it to grow its* [*gross margin*], even as inflation persists.[32]

(***Guggenheim, June 20, 2022***)  The 4Q Midpoint Guide Embeds Top-, Bottom-Line Moderation.…  The bigger news may be the projected moderation in momentum.  At the midpoint, sales growth would approximate 8.5% versus [] 9.2% in [Q3 2022] while EBITDA would be flat compared with a 6% gain in [Q3 2022].  We believe this reflects a potential inflation-related dampening in demand as well as ongoing warehouse selector/driver labor cost pressure.  However, it also seems conservative to us.…  *With respect to profitability, we believe inflation benefits—pricing and forward buys—could drive modest gross/EBITDA margin upside.*[33]

(***UBS, July 13, 2022***)  UNFI has a number of factors working in its favor, even as the macro backdrop becomes more challenging for many consumers.  *Inflation can help to support sales, [and] UNFI can preserve its gross margin by forward buying [and] passing along cost increases to its customers.*[34]

(***Northcoast Research, December 13, 2022***)  Long-Term Outlook: The post-covid recovery of the US supply chain for grocery and related products is providing opportunity for wholesalers like UNFI.  *The recent surge in inflation is allowing some forward buying—the first meaningful amounts in years.*[35]

21.    In addition, securities analysts at Wells Fargo commented during the Proposed Class Period, prior to March 8, 2023, that the earnings impact from inflation-related forward buying was expected to be temporary with decelerating inflation serving as a potential headwind to UNFI's financial performance:

(***Wells Fargo, March 17, 2022***)  Headwinds Remain and Include: *Earnings Likely Seeing Some Unsustainable Benefit*….  Inflation has clearly also provided a benefit given the structure of its contracts with customers and ability to forward buy from vendors, *but eventual disinflation is likely to be a headwind to earnings.*[36]

---

[32] "Adjusting and Growing," *UBS*, June 7, 2022 (emphasis added; emphasis in original removed).

[33] "UNFI - The Inflation-Labor Cost Battle to Shape the N-T P&L—Valuation, L-T Outlook Intriguing but We Stay Neutral Rated," *Guggenheim*, June 20, 2022 (emphasis added; emphasis in original removed).

[34] "Some Natural Change," *UBS*, July 13, 2022 (emphasis added).

[35] "UNFI: Outlook Remains Attractive; Reiterate Buy Rating with $56 Price Target," *Northcoast Research*, December 13, 2022 (emphasis added; emphasis in original removed).

[36] "UNFI: Management Constructive on Outlook in Virtual Meetings; Upgrading to Equal Weight," *Wells Fargo*, March 17, 2022 (emphasis added; emphasis in original removed).

*(Wells Fargo, December 7, 2022)*  Gross margin also contracted more than we expected, down 20bps y/y.  While customer mix was the main headwind, it's likely *the inflationary benefit that UNFI has experienced over previous quarters is also beginning to moderate.*  The company did achieve its best staffing levels since early [FY 2022] (likely helped reduce overtime/third-party labor) and increased fill rates.  While productivity efficiencies should continue to improve, *decelerating inflation and weak volumes look poised to weigh on this COVID beneficiary.*[37]

## V.    Plaintiffs' Allegations and the Feinstein Report

22.    In this section, I discuss my understanding of Plaintiffs' allegations.  In **Section V.A.1**, I discuss the alleged misrepresentations that I understand remain in the case and the information Plaintiffs allege that Defendants should have disclosed during the Proposed Class Period.  In **Section V.A.2**, I discuss days when Plaintiffs allege corrective information was disclosed.  In **Section V.B**, I provide a brief summary of portions of the Feinstein Report that are relevant to my analysis.

### A.    Plaintiffs' Allegations

#### 1.    Challenged Statements and the Alleged Truth

23.    According to the MTD Ruling, I understand that there are three categories of alleged misrepresentations during the Proposed Class Period (the "Challenged Statements") that survived Defendants' motion to dismiss:[38]

      a.    Profit driver statements that "failed to disclose that forward buying was a significant and aberrational driver of [UNFI's] profit margins";[39]

---

[37] "UNFI: Concerns Grow Around Volume Weakness and Decelerating Inflation; Remain Equal Weight," *Wells Fargo*, December 7, 2022 (emphasis added).

[38] I understand that the Court dismissed two categories of alleged misrepresentations, including (i) certain statements about FY 2023 guidance that "expressed optimistic opinions in the face of market uncertainty [that] are simply too general to be actionable [and] cannot serve as a basis for Plaintiffs' claims," and (ii) certain statements about "the general impact of inflation on the Company [that] do not address forward buying or the drivers or sustainability of the Company's profit margins."  *See* MTD Ruling, pp. 18–19, 29.

[39] MTD Ruling, pp. 16–17.  *See also* Complaint, ¶¶ 69–70 ("From the start of the [Proposed] Class Period until March 8, 2023, Defendants knowingly and/or recklessly failed to disclose that UNFI's financial results benefited 'significantly' from forward buying in advance of known price increases; that these 'significant' benefits masked the effects of other challenges the Company was facing, including labor challenges and wage inflation….  Instead of acknowledging this crucial driver of the Company's profitability, Defendants misleadingly attributed the Company's

b. Profit sustainability statements that "spoke to the impact of a deflationary environment of UNFI's margins and whether the causes of a decline in margins were temporary" but omitted that "[procurement] gains were a significant and unsustainable driver [of] profit margins";[40] and

c. Risk factor statements that "did not mention the … risk of decreased opportunities for inflation-related forward buying."[41]

24. The Challenged Statements occurred on various dates during the period from December 8, 2021 to December 7, 2022, both dates inclusive.[42]

25. Regarding the Challenged Statements, the Court's MTD Ruling, states, for example, that UNFI "failed to disclose that forward buying was a significant and aberrational driver of its profit margins."[43] The MTD Ruling further states that the Challenged Statements "commented on the drivers of the Company's margins *but never disclosed the Company's substantial reliance on gains from unsustainable inflation-based forward buying*" and that "[b]y listing potentially positive trends and downplaying potentially negative ones as temporary or discrete, while omitting the elephant in the room, these statements were plausibly misleading."[44]

26. I understand that in response to an interrogatory asking Plaintiffs to provide, for each challenged statement remaining in the case according to the MTD Ruling, "the statement or statements that [Plaintiffs] believe Defendants should have made instead of, or in addition to, the alleged misstatement or omission in order to make the alleged misstatement or omission not false or misleading," Plaintiffs "object[ed] … on the grounds that it calls for information protected by

---

outperformance during the [Proposed] Class Period to inflationary gains (the profit that results merely from continually increasing prices) and to the operational efficiencies generated by the Value Path initiative.").

[40] MTD Ruling, p. 17. *See also* Complaint, ¶ 89 (internal citations omitted) ("Defendants still did not disclose the root of the problem, which was that the extremely elevated level of forward buying and atypical procurement gains that had been sustaining the Company's gross margins for more than a year was beginning to decline. During [Q1 2023], inflation eased, and as a result, the number of price increases started to decline, thereby reducing the number of forward buying opportunities and procurement gains.").

[41] MTD Ruling, pp. 17–18. *See also* Complaint, ¶ 69 ("From the start of the [Proposed] Class Period until March 8, 2023, Defendants knowingly and/or recklessly failed to disclose that … there was a risk that the forward buying opportunities would return to normal if/when inflation started to subside, which would in turn materially reduce the Company's profitability back to normal.").

[42] *See* Complaint, Section VI; MTD Ruling, pp. 4–7.

[43] MTD Ruling, p. 16.

[44] MTD Ruling, p. 14 (emphasis added).

the attorney-client privilege and/or attorney work product doctrine" and provided no further response.[45]

27.    Dr. Feinstein's description of Plaintiffs' allegations appears consistent with the Court's description of the Challenged Statements in the MTD Ruling as above.[46]  In the Feinstein Report, Dr. Feinstein states that "[a]ccording to Plaintiffs, Defendants did not disclose that the Company's profitability depended heavily on unsustainable and atypical procurement gains."[47] He also states that "Plaintiffs allege that while the Defendants misleadingly attributed the Company's profitability gains to general inflation and its efficiency initiatives, Defendants were aware, at the time of these alleged misrepresentations and omissions, that profitability improvements were primarily driven by elevated and transitory procurement gains."[48]  Consistent with the description in the Feinstein Report, Dr. Feinstein stated at deposition that "the but-for scenario would be the scenario where [the market] was told that gross margin was being increased via large-scale and undisclosed inflation-driven forward buying."[49]

28.    For the purposes of my analysis, Counsel has instructed me to assume that, consistent with Plaintiffs' allegations as above, the Court's MTD Ruling, and Dr. Feinstein's testimony, Plaintiffs' liability theory is that UNFI should have disclosed during the Proposed Class Period, at the time the Challenged Statements were made, that inflation-related forward buying opportunities were a significant but temporary driver of improvements in UNFI's gross margin (the "Alleged Truth").[50]

### 2.    Alleged Corrective Disclosures

29.    In the section of the Complaint titled "Loss Causation," Plaintiffs allege corrective disclosures on four dates:  December 7, 2022, March 8, 2023, June 7, 2023, and September 26,

---

[45] Plaintiffs' Responses and Objections to Defendants' First Set of Interrogatories to Plaintiffs, *Dan Sills and George Dick v. United Natural Foods, Inc., et al.*, Case No. 1:23-cv-02364-JGLC-VF, March 3, 2025, p. 10.

[46] Dr. Feinstein also stated that he "found that judges are usually very good at succinctly summarizing a case, and that helps [him] understand what the case is about."  Deposition of Steven P. Feinstein, Ph.D., dated May 9, 2025 ("Feinstein Deposition"), 67:24–68:3.

[47] Feinstein Report, ¶ 40.

[48] Feinstein Report, ¶ 41.

[49] Feinstein Deposition, 203:10–13.  Dr. Feinstein also stated in his deposition that "one would need to have some sense of what the allegations are and what the alleged facts are in order to opine on whether a common damage methodology exists and is feasible."  Feinstein Deposition, 67:2–6.

[50] I understand from Counsel that Defendants maintain and do not waive any argument that none of the Challenged Statements were false, misleading, or otherwise actionable.

2023 (individually, an "Alleged Corrective Disclosure," and collectively, the "Alleged Corrective Disclosures").[51]  Plaintiffs allege that "[t]he price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged [therein] to have been concealed from the market, and/or the effects thereof, were revealed [on the dates of the Alleged Corrective Disclosures], causing investors' losses."[52]

### a)      December 7, 2022 (Q1 2023 Earnings Announcement)

30.      On this day, before market open, UNFI released Q1 2023 financial results (results for the fiscal quarter ending October 29, 2022), reaffirmed its FY 2023 financial guidance, and held a conference call with investors.[53]  Plaintiffs allege that, on this day:

> Defendants reported that gross profit rate decreased to 14.6% of net sales for [Q1 2023] (compared to 14.8% in the prior-year period).  This decrease was attributed to "changes in customer mix as we continue to grow sales with larger customers." On this news, the Company's stock price fell $6.74, or 14.7%, to close at $38.84 per share on December 7, 2022, on unusually heavy trading volume.  This stock price decline was caused by a partial materialization of risks concealed by Defendants' false and misleading statements over the previous four quarters about the reasons for the Company's improvements in its margins and Defendants' failure to disclose the atypical and elevated procurement gains over this time period.  Once inflation began to slow, UNFI's procurement gains decreased, which put pressure on UNFI's gross profit rate.[54]

### b)      March 8, 2023 (Q2 2023 Earnings Announcement)

31.      On this day, before market open, UNFI released Q2 2023 financial results (results for the fiscal quarter ending January 28, 2023), revised its FY 2023 financial guidance, withdrew its FY 2024 financial guidance, and held a conference call with investors.[55]  Plaintiffs allege that, on this day:

---

[51] Complaint, ¶¶ 212–218.
[52] Complaint, ¶ 218.
[53] UNFI Form 8-K, filed on December 7, 2022, Ex. 99.1 ("UNFI Q1 2023 Earnings Release"); UNFI Q1 2023 Earnings Call Transcript, December 7, 2022 ("UNFI Q1 2023 Earnings Call").  *See also* Complaint, ¶¶ 9–10, 83, 86, 214.
[54] Complaint, ¶ 214.
[55] UNFI Form 8-K, filed on March 8, 2023, Ex. 99.1 ("UNFI Q2 2023 Earnings Release"); UNFI Q2 2023 Earnings Call Transcript, March 8, 2023 ("UNFI Q2 2023 Earnings Call").  *See also* Complaint, ¶¶ 11, 14, 91, 95, 111, 215.

Defendants reported a $6 million year-over-year decline in gross profit for [Q2 2023], despite a 6% increase in net sales, which was "primarily driven by lower current period procurement gains due to the decelerating rate of inflation and lower inventory gains." The Company's profits "were challenged as we did not repeat the significant level of procurement gains from rapidly accelerating inflation and inventory gains, due to supply chain volatility, that we experienced in the second quarter of last year." On this news, the Company's share price fell $11.49, or 28.1%, to close at $29.47 per share on March 8, 2023, on unusually heavy trading volume. Defendants' disclosures on March 8, 2023 partially corrected the misleading impression created by Defendants' false and misleading statements during the [Proposed] Class Period and/or caused a partial materialization of the risks concealed by those false and misleading statements.[56]

### c)    June 7, 2023 (Q3 2023 Earnings Announcement)

32.    On this day, before market open, UNFI released Q3 2023 financial results (for the fiscal quarter ending April 29, 2023), revised its FY 2023 financial guidance, and held a conference call with investors.[57] Plaintiffs allege that, on this day:

UNFI revealed that lower procurement gains eroded gross margins even further, reporting that [Q3 2023] gross profit decreased $12 million due to "lower inflationary benefits primarily related to reduced procurement gains, as well as higher shrink." The Company's gross profit rate declined to 13.3%, which was "primarily driven by the volatile macroeconomic environment, which led to lower inflationary benefits and reduced procurement gains." As a result of the "pressure" on margins, the Company reduced its [FY] 2023 outlook again. Among other things, this further revealed the extent to which UNFI's prior results had been benefited by UNFI's "strategic" forward buying and the extent to which the benefit had masked other problems impacting UNFI's profitability. On this news, the Company's stock price fell $4.11, or 14.9%, to close at $23.46 per share on June 7, 2023, on unusually heavy trading volume. The stock continued to fall the next trading day by $1.56, or 6.6%, to close at $21.90 per share on June 8, 2023. Defendants' disclosures on June 7, 2023 further corrected the misleading impression created by Defendants' false and misleading statements during the

---

[56] Complaint, ¶ 215 (emphasis in original removed). Plaintiffs also claim that on March 8, 2023 "UNFI considerably lowered its profitability expectations by slashing its previously issued [FY 2023] adjusted EBITDA guidance … and withdrew previously issued guidance for [FY] 2024." Complaint, ¶¶ 94, 111. Plaintiffs claim that "Defendants continue to issue materially misleading statements, including [FY] 2023 guidance that purports to account for the decline in forward buying opportunities." Complaint, Section V.E (title case in original). However, I understand from Counsel that this allegation has been dismissed from the case. *See* MTD Ruling, pp. 18–19 ("The [FY 2023] Guidance Statements Are Not Actionable.… The [FY 2023] Guidance Statements, which expressed optimistic opinions in the face of market uncertainty, are simply too general to be actionable…. Accordingly, these statements cannot serve as a basis for Plaintiffs' claims.").

[57] UNFI Form 8-K, filed on June 7, 2023, Ex. 99.1 ("UNFI Q3 2023 Earnings Release"); UNFI Q3 2023 Earnings Call Transcript, June 7, 2023 ("UNFI Q3 2023 Earnings Call"). *See also* Complaint, ¶¶ 17, 113–124, 216.

[Proposed] Class Period and/or caused a partial materialization of the risks concealed by those false and misleading statements.[58]

### d)    September 26, 2023 (Q4 2023 Earnings Announcement)

33.    On this day, before market open, UNFI released Q4 2023 (for the fiscal quarter ending July 29, 2023) and FY 2023 financial results, provided FY 2024 financial guidance, and held a conference call with investors.[59]  Plaintiffs allege that, on this day:

> UNFI revealed that it "expect[s] further headwinds as we continue to cycle elevated inflationary benefits during the first half of [FY] 2024."  As a result of the "lower levels of anticipated procurement gains," Defendants expected net sales of $30.9 to $31.5 billion and adjusted EBITDA of $450 to $550 million in [FY] 2024.  On this news, the Company's stock price fell $5.19, or 27%, to close at $13.73 per share on September 26, 2023, on unusually heavy trading volume. Defendants' disclosures on September 26, 2023 further corrected the misleading impression created by Defendants' false and misleading statements during the [Proposed] Class Period and/or caused a partial materialization of the risks concealed by those false and misleading statements.[60]

### B.    The Feinstein Report

34.    Dr. Feinstein opines that UNFI Securities traded in efficient markets throughout the Proposed Class Period.[61]  He states that "[a]n efficient market, as defined and discussed by *Cammer*, *Basic*, *Amgen*, *Halliburton II*, Alan Bromberg and Lewis Lowenfels, Professor Fama, and other leading scholars, is a market in which publicly available information is incorporated into the price of a security such that the trading price reflects publicly available information with reasonable promptness."[62]  Dr. Feinstein cites Nobel Prize–winning economist Professor Eugene Fama, whom he quotes as stating:

> I take the market efficiency hypothesis to be the simple statement that security prices fully reflect all available information.…  A weaker and economically more

---

[58] Complaint, ¶ 216 (emphasis in original removed).
[59] UNFI Form 8-K, filed on September 26, 2023, Ex. 99.1 ("UNFI Q4 2023 Earnings Release"); UNFI Q4 2023 Earnings Call Transcript, September 26, 2023 ("UNFI Q4 2023 Earnings Call").  *See also* Complaint, ¶¶ 18, 125–131, 217.
[60] Complaint, ¶ 217 (emphasis in original removed).
[61] Feinstein Report, ¶ 18.
[62] Feinstein Report, ¶ 52.

sensible version of the efficiency hypothesis says that prices reflect information to the point where the marginal benefits of acting on information (the profits to be made) do not exceed the marginal costs.[63]

35.    For the purposes of my analysis in this report, I have been asked by Counsel to assume that UNFI Securities traded in efficient markets during the Proposed Class Period as Dr. Feinstein claims.  In **Section VI**, I discuss certain additional implications of market efficiency.

36.    In addition to opining that markets for UNFI Securities were efficient, Dr. Feinstein also opines that "Section 10(b) and Section 20(a) damages in this matter can be computed for all [Proposed] Class members and all UNFI Securities using a common methodology for each cause of action that is consistent with Plaintiffs' theory of liability."[64]  As discussed in ¶ 5 above, I have been asked to evaluate this claim, which I do in **Section IX**.

## VI.    Implications of Market Efficiency

37.    Market efficiency is a fundamental concept in financial economics dating back to the seminal work of the aforementioned Nobel Prize–winning economist Professor Eugene Fama in the 1960s.[65]  Professor Fama defined an efficient market for a security as one in which the security's price reflects the value implications of available information:

> In general terms, the ideal is a market in which prices provide accurate signals for resource allocation:  that is, a market in which firms can make production-investment decisions, and investors can choose among the securities that represent ownership of firms' activities under the assumption that security prices at any time "fully reflect" all available information.  A market in which prices always "fully reflect" available information is called "efficient."[66]

38.    Empirical tests of market efficiency in financial economics concern three different sets of information with respect to which efficiency is examined.  Tests of so-called weak form market efficiency examine whether security prices incorporate information that can be obtained from

---

[63] Fama, Eugene F., "Efficient Capital Markets: II," *The Journal of Finance* 46, no. 5 (1991): 1575–1617 ("Fama II"), p. 1575; Feinstein Report, ¶ 47.

[64] Feinstein Report, ¶ 24.

[65] Fama, Eugene F., "Efficient Capital Markets: A Review of Theory and Empirical Work," *The Journal of Finance* 25, no. 2 (1970): 383–417 ("Fama I").

[66] Fama I, p. 383.

historical prices and dividends.  Tests of semi-strong form market efficiency examine whether security prices incorporate all publicly available information.[67]  Finally, tests of strong form market efficiency consider whether security prices incorporate all information, including private information that is not publicly available.[68]  Markets are generally not considered to be strong form efficient.[69]

39.    I understand from Counsel that the form of market efficiency that is relevant in the present context is semi-strong form market efficiency.  In other words, the relevant question is whether security prices quickly and fully incorporate all publicly available information.[70]  This definition also appears to be generally consistent with Dr. Feinstein's definition discussed above.

40.    Information is incorporated rapidly into a security's price in an efficient market; the literature has documented instances where this happens within minutes of the information becoming public.[71]  An important feature of securities that are traded in efficient markets is that security prices are the sum of discounted expected future cash flows based on the market's

---

[67] If markets are semi-strong form efficient, they will also necessarily be weak form efficient, because all publicly available information includes information regarding historical prices and dividends.

[68] Fama I, p. 383.  *See also* Ross, Stephen A., Randolph W. Westerfield, and Jeffrey Jaffe, *Corporate Finance*, 7th ed., McGraw-Hill/Irwin, 2005 ("Ross et al. (2005)"), p. 356.

[69] Berk, Jonathan, Peter DeMarzo, and Jarrad Harford, *Fundamentals of Corporate Finance*, Global Edition, 4th ed., Pearson Education Limited, 2019, p. 348 ("Berk et al. (2019)") ("Mutual fund managers and fundamental analysts, such as those who work for brokerages and make stock recommendations, believe that mispricing can be uncovered by careful analysis of company fundamentals.  There is evidence that traders with inside information about upcoming merger or earnings announcements can make abnormal returns by trading (illegally) on that information, so the market is clearly not strong form efficient.").

[70] Unless otherwise specified, any references to market efficiency and efficient markets in this report refer to the semi-strong form of market efficiency.

[71] *See, e.g.*, Fama II, pp. 1601–1602 ("The typical result in event studies on daily data is that, on average, stock prices seem to adjust within a day to event announcements.  The result is so common that this work now devotes little space to market efficiency.  The fact that quick adjustment is consistent with efficiency is noted, and then the studies move on to other issues.").  An article by Busse and Green find that "prices of stocks discussed positively during the Midday Call report on CNBC experience a statistically and economically significant increase beginning seconds after the stock is initially mentioned and lasting approximately one minute.  The response to negative reports is larger but more gradual.  Prices continue falling for 15 minutes after airing."  Busse, Jeffrey A., and T. Clifton Green, "Market Efficiency in Real Time," *Journal of Financial Economics* 65, no. 3 (2002): 415–437, p. 435.  Chordia et al. find that "pattern[s] of intra-day serial dependence [reveal] that it takes more than five minutes but less than sixty minutes" for sophisticated investors to react to order imbalances.  *See* Chordia, Tarun, Richard Roll, and Avanidhar Subrahmanyam, "Evidence on the Speed of Convergence to Market Efficiency," *Journal of Financial Economics* 76, no. 2 (2005): 271–292, p. 271.  Finally, Greene and Watts find that for stocks on the Nasdaq and the NYSE, "the majority of the price response to nontrading-hours earnings announcements is realized during the opening trade.… [W]hen clock time is considered, price adjusts rapidly over the first post-announcement half hour for both types of announcements on both exchanges."  Greene, Jason T., and Susan G. Watts, "Price Discovery on the NYSE and the NASDAQ:  The Case of Overnight and Daytime News Releases," *Financial Management* 25, no. 1 (1996): 19–42, pp. 19–20.

assessment of publicly available information.[72]  A market is semi-strong form efficient when *all information* that is publicly available is reflected in prices.  For example, as explained in corporate finance textbooks:

> A market is [semi-strong form] efficient if prices reflect (incorporate) *all publicly available information*, including information such as published accounting statements for the firm as well as historical price information.[73]

> [Market efficiency] implies that securities will be fairly priced, based on their future cash flows, *given all information that is available to investors….* Information that is available to all investors includes information in news reports, financial statements, corporate press releases, or *other public data sources*.[74]

41.     According to Professor Fama, if the market is semi-strong form efficient, "prices reflect information to the point where the marginal benefits of acting on information (the profits to be made) do not exceed the marginal costs."[75]  Given that the marginal cost of obtaining and acting on public information is relatively low, the marginal benefit of acting on public information is essentially zero if the market is efficient—that is, the value-relevant content of public information is incorporated fully into a security's price.  Notably, the existence of an efficient market does not require all investors to access, analyze, and trade on publicly available information.  It is sufficient for some (potentially the most sophisticated) investors to identify and trade on newly disclosed public information such that it is rapidly reflected in market prices.  Short-selling of securities is one trading strategy through which negative information is incorporated into prices, while an investor optimistic about the prospects of a company may bid up the market price by purchasing shares.[76]

---

[72] Brealey, Richard A., Stewart C. Myers, and Franklin Allen, *Principles of Corporate Finance*, 12th ed., McGraw-Hill Education, 2017, p. 336 ("In an efficient market it is not possible to find expected returns greater (or less) than the risk-adjusted opportunity cost of capital.  This implies that every security trades at its fundamental value, based on future cash flows … and … the opportunity cost of capital.").

[73] Ross et al. (2005), p. 356 (emphasis added).

[74] Berk et al. (2019), p. 348 (emphasis added).

[75] Fama II, p. 1575.

[76] Short sellers are investors who borrow shares and sell them at the prevailing price, potentially anticipating that the price declines in the future when the shares are re-purchased and returned to the lender.  The act of selling borrowed shares can put downward pressure on the stock price, resulting in a lower market price. *See, e.g.*, Asquith, Paul, Parag A. Pathak, and Jay R. Ritter, "Short Interest, Institutional Ownership, and Stock Returns," *Journal of Financial Economics* 78, no. 2 (2005): 243–276, for a discussion of short-selling.

42.    A corollary of the efficient market hypothesis is that, because a semi-strong form efficient market rapidly and fully incorporates all publicly available information that impacts the assessment of future cash flows and risks as soon as that information first becomes public (as soon as it enters the market's "information set"), the market will not react to subsequent repetition of previously available public information.  In fact, this very idea was used to introduce the concept of market efficiency by the economist Burton Malkiel in a chapter on the efficient market hypothesis in The New Palgrave's *Finance* (1989):

> A capital market is said to be efficient if it fully and correctly reflects all relevant information in determining security prices.  Formally, the market is said to be efficient with respect to some information set … if security prices would be unaffected by revealing that information to all participants.  Moreover, efficiency with respect to an information set … implies that it is impossible to make economic profits by trading on the basis of [that information set].[77]

43.    In other words, if a particular piece of information is already part of the market's information set at some point in time, and if the market is semi-strong form efficient, subsequent repetition of that information to market participants would not cause the security price to react further to the re-release of this information because that information was already incorporated into the price of the security earlier in time.  Dr. Feinstein appeared to agree with this principle at his deposition.[78]

44.    Finally, a semi-strong form efficient market also would not react to information that is not value-relevant.  Value-relevant information is information that affects the market's assessment of a company's future cash flows and risks.  Information that is not value-relevant would not be expected to affect security prices.  Dr. Feinstein also appeared to agree with this principle at his deposition.[79]

---

[77] Malkiel, Burton G., "Efficient Market Hypothesis," in *Finance*, John Eatwell, Murray Milgate, and Peter Newman (eds.), Palgrave Macmillan, 1989, p. 127.

[78] *See, e.g.*, Feinstein Deposition, 151:12–21 ("But like I said before, if it truly is, you know, stale information that has no new informative content, it wouldn't -- it shouldn't move the stock price significantly.  I mean, it might be coincident with something else that happens that moves the stock price significantly.  But, in theory, information that has already had its price impact won't have another price impact."), 153:17–20 ("Old information that's already been incorporated in the stock price won't move the stock price again.").

[79] *See, e.g.*, Feinstein Deposition, 156:15–22 ("Q: Okay. But economic theory holds that if information is not value relevant, it would not be expected to impact a company's stock price, correct? A: It's a tautology. What they mean -- if it's not valuation relevant, that means it would not be expected to impact the stock price."). *See also* Feinstein

## VII.    Event Study Analysis

### A.    Event Studies

45.    An event study is a statistical tool used to measure the impact of a specific news event on value, as measured by changes in stock price (or the price of another security).[80]  An event study generally involves three steps.[81]  First, a researcher selects the specific event to be examined and identifies when the information associated with that event first became public.  A researcher also selects the appropriate event window, or the period over which the stock prices will be examined.  For example, a researcher may examine the effect of an earnings announcement for a particular company as measured by the price reaction over a one-day window.  Second, a statistical regression model is used to calculate the so-called residual (or abnormal) return accounting for market and industry movements, which is the portion of the observed return that is unexpected based on a model of expected returns—that is, the portion that cannot be attributed to market or industry price movements according to the statistical model employed.[82]  Third, a statistical hypothesis regarding the residual return is constructed and tested.  For example, a researcher may test a hypothesis (a so-called null hypothesis) that the residual return equals zero following the release of information—that is, that there is no security price reaction to the event after controlling for market and industry factors.  Hypothesis testing is a statistical technique that evaluates whether the null hypothesis (zero residual return in the example) can be rejected for a given significance threshold (conventionally 5%) based on the observed data.[83]  In an efficient market, the rejection of the null hypothesis of zero residual return supports a finding that information disclosed during the event window affected the security's price.

---

Deposition, 155:6–15 ("Q. Yes, I would ask you to set forth your definition of value-relevant information….  A. … I mean, there's -- a lot of information is valuation-relevant.  Cash flows are relevant.  Earnings are relevant.  Margins are relevant.  Gross profit, net profit, these things are relevant.").

[80] *See, e.g.*, MacKinlay, A. Craig, "Event Studies in Economics and Finance," *Journal of Economic Literature* 35, no. 1 (1997): 13–39 ("MacKinlay (1997)"), for an overview of event studies in financial economics.

[81] *See, e.g.*, MacKinlay (1997), pp. 14–16.

[82] Note that an event study is a joint test of whether the model used to calculate residual returns is correct and whether residual returns are zero.

[83] Whenever statistical significance is discussed in this report without specifying a confidence level, a 5% level using a two-tail test is implied.  *See, e.g.*, Kaye, David H., and David A. Freedman, "Reference Guide on Statistics," in *Reference Manual on Scientific Evidence*, 3rd ed., The National Academies Press, 2011, pp. 251–252 (internal citations omitted) ("In practice, statistical analysts typically use levels of 5% and 1%.  The 5% level is the most common in social science, and an analyst who speaks of significant results without specifying the threshold probably is using this figure.…  These levels of 5% and 1% have become icons of science and the legal process.  In truth, however, such levels are at best useful conventions.").

46.    In an efficient market, the residual return on a particular day as calculated using an appropriately specified event study model reflects the market's contemporaneous assessment of the value implications of all new company-specific information revealed on the day.  Thus, event study analysis is subject to certain limitations.  First, an event study alone cannot measure the impact of a specific piece of information when there are multiple pieces of new information revealed simultaneously during the same event window.  Second, an event study may be insufficient to measure the hypothetical price impact that would have occurred following the release of the same information at a different point in time or under different economic conditions to the extent that such a release of information would have been assessed differently by the market under those conditions.  Third, an event study generally cannot measure the impact of information that is not publicly disclosed.

## B.    Event Study Model Specification for UNFI

47.    For my analysis of UNFI's stock price movements,[84] I use a two-factor (market and industry) linear regression model to estimate the statistical relationship between daily UNFI stock returns and the daily returns of market and industry indices.  The market index I use is the return on the CRSP value-weighted NYSE/NYSE MKT/Nasdaq/ARCA Market Index.  The industry index I use is an equal-weighted index of companies in the S&P SmallCap 600 Food Distributors Index, excluding UNFI, which is an index that the Company used as a basis for comparison in certain of its public filings.[85]  The UNFI residual return on a given day is calculated as the actual, observed UNFI return on that day minus the return predicted by the two-factor model on that day.  To estimate the parameters of the regression model, I used the Proposed Class Period as the estimation window.[86]

48.    My regression model relies on the same market and industry indices that Dr. Feinstein uses.[87]  Unlike Dr. Feinstein's specification, I estimate my model over the Proposed Class Period

---

[84] See **Exhibit 1** for a chart of UNFI stock prices during the Proposed Class Period.

[85] UNFI compared its stock price performance to the S&P SmallCap 600 Food Distributors Index in its FY 2022 and FY 2023 annual reports.  See UNFI 2022 10-K, pp. 25–26; UNFI 2023 10-K, pp. 26–27.  I reconstruct the industry index to exclude UNFI.  Dr. Feinstein does the same.  See Feinstein Report, ¶ 138.  My results are robust to using a value-weighted industry index of companies in the S&P SmallCap 600 Food Distributors Index, excluding UNFI.

[86] I exclude from the estimation of my regression model the returns corresponding to the impact dates of the Challenged Statements and the Alleged Corrective Disclosures.

[87] Feinstein Report, ¶¶ 136–138.

instead of using "rolling" windows of one year and based on simple (arithmetic) returns rather than logarithmic returns that Dr. Feinstein relies on.[88]  **Exhibit 2** presents my regression estimation results.  For the dates analyzed by Dr. Feinstein in his report, when Plaintiffs claim the Alleged Corrective Disclosures caused price declines, my event study model's determination regarding statistical significance is the same as that implied by Dr. Feinstein's model specification.[89]

## VIII.   Economic Evidence Is Consistent with the Challenged Statements Having Had No Impact on the Prices of UNFI Securities After March 8, 2023

49.     I was asked to assess economic evidence regarding the impact, if any, of the Challenged Statements on the prices of UNFI Securities after the alleged corrective disclosure on March 8, 2023, assuming that UNFI Securities traded in efficient markets during the Proposed Class Period, as Plaintiffs allege and Dr. Feinstein opines.[90]  Based on my assessment of the economic evidence discussed below, it is my opinion that this economic evidence is consistent with the Challenged Statements having had no impact on the prices of UNFI Securities following the alleged corrective disclosure on March 8, 2023, to the extent they had impacted the prices of these securities prior to that date.

50.     *First*, as discussed in **Section VIII.A**, the Alleged Truth that inflation-related forward buying had been a significant but temporary driver of improvements in UNFI's gross margin during the Proposed Class Period[91] was publicly available information by March 8, 2023.  As discussed previously, prior to March 8, 2023, information about UNFI's practice of inflation-related forward buying and how such opportunities positively impacted UNFI's profitability and

[88] Feinstein Report, ¶¶ 139, 143.

[89] According to my event study, UNFI's residual return was -13.59% on December 7, 2022, -27.74% on March 8, 2023, -14.88% on June 7, 2023, and -23.99% on September 26, 2023, all of which are statistically significant using a 95% confidence level.  According to Dr. Feinstein's event study, UNFI's residual log return was -14.97% on December 7, 2022, -32.94% on March 8, 2023, and -16.42% on June 7, 2023, which he also finds to be statistically significant using a 95% confidence level.  *See* Feinstein Report, Exhibit-9; UNFI_FEINSTEIN_016780, Sheet "Exhibit-9."  The residual returns that Dr. Feinstein calculates are not directly comparable to the residual returns from my event study because he estimates his model using logarithmic (or log) returns, whereas I estimate my regression model using simple (arithmetic) returns.  Moreover, Dr. Feinstein's event study analysis does not appear to extend beyond September 25, 2023, and his disclosed results do not therefore analyze the statistical significance for the September 26, 2023 alleged corrective disclosure.  *See* Feinstein Report, Exhibit-9; UNFI_FEINSTEIN_016780, Sheet "Exhibit-9."

[90] Complaint, ¶¶ 260, 263, 265; Feinstein Report, ¶¶ 18, 23.

[91] *See* **Section V.A** for a discussion of the Alleged Truth.

gross margin was publicly available and discussed by securities analysts.[92]  As I show below, on March 8, 2023, UNFI disclosed information comprising the Alleged Truth.  This information was then also discussed by securities analysts, consistent with the fact that this information was publicly available by that date.  In efficient markets, value-relevant information is quickly and fully incorporated into security prices, as discussed in **Section VI**.  Therefore, the Alleged Truth would have been fully incorporated into the prices of UNFI Securities soon after the March 8, 2023 alleged corrective disclosure.

51.     _Second_, I examined the two alleged corrective disclosures after March 8, 2023, that is, the alleged corrective disclosures on June 7, 2023 and September 26, 2023.  As discussed in **Section VIII.B**, any UNFI security price changes following the alleged corrective disclosures on June 7, 2023 and September 26, 2023 provide no economic evidence that the Challenged Statements had an impact on the prices of UNFI Securities after March 8, 2023 in efficient markets.  This is because, as discussed above, the Alleged Truth was already publicly available by March 8, 2023 (well before June 7, 2023), and therefore any UNFI Securities price changes following the alleged corrective disclosures on June 7, 2023 and September 26, 2023 would not result from the revelation of the Alleged Truth or its repetition.  Instead, any UNFI Securities price changes following the alleged corrective disclosures on June 7, 2023 and September 26, 2023 would have been attributable to new information other than the repetition of then-known Alleged Truth, including, for example, below-consensus (disappointing relative to analyst forecasts) financial results and financial guidance announcements for FY 2023 and FY 2024.

  **A.**  **The Alleged Truth Was Publicly Available by March 8, 2023 and Would Have Been Fully Incorporated into the Prices of UNFI Securities After That Date If Those Securities Traded in Efficient Markets**

52.     This section discusses that the Alleged Truth was publicly available information by March 8, 2023, including that it was subsequently discussed by market participants such as analysts.  That conclusion is supported based on my review of publicly available information to determine when the Alleged Truth was publicly disclosed, which I summarize below.  Specifically, I analyzed UNFI's public disclosures in its earnings announcements and earnings

---

[92] _See_ **Section IV.B**.

conference calls, SEC filings, securities analyst reports covering UNFI, and public press articles discussing UNFI during the Proposed Class Period. As discussed in **Section VI** in the context of economic implications of market efficiency, from an economic perspective, when a piece of information (here, the Alleged Truth about a particular challenged statement) first becomes public, in an efficient market any security price change attributable to the information (here, the disclosure of the Alleged Truth) is rapid, and there is no subsequent impact if that same information is subsequently reiterated (here, there is no further impact of the alleged failure to disclose the Alleged Truth once it is disclosed). Moreover, there are no Challenged Statements occurring on or after March 8, 2023, which means there are no statements made after March 8, 2023 that are alleged to have introduced new artificial inflation in the prices of UNFI Securities (or deflation in the case of UNFI put options) or to have precluded any artificial inflation in the prices of UNFI Securities from dissipating on that date. Thus, if the markets for UNFI Securities were efficient throughout the Proposed Class Period, as Plaintiffs allege and Dr. Feinstein opines,[93] the Alleged Truth would have already been fully incorporated into the prices of UNFI Securities on March 8, 2023 and could not have impacted the price of UNFI Securities after March 8, 2023.

53.    In this section, I first analyze UNFI's Q2 2023 disclosures on March 8, 2023, highlighting UNFI's disclosures regarding inflation-related forward buying and its impact on UNFI's financial performance (**Section VIII.A.1**). Second, I summarize Plaintiffs' characterization of UNFI's Q2 2023 disclosures regarding inflation-related forward buying (**Section VIII.A.2**). Third, I analyze securities analysts' discussion of UNFI's Q2 2023 disclosures regarding inflation-related forward buying and its effect on the Company's financial performance (including gross margin) and its gross margin trajectory during the Proposed Class Period (**Section VIII.A.3**). These analyses demonstrate that the Alleged Truth was publicly disclosed information by March 8, 2023.

### 1.    UNFI's Q2 2023 Disclosures on March 8, 2023

54.    Before market open on March 8, 2023, UNFI issued a press release in which the Company announced its Q2 2023 financial results (for the period ending January 28, 2023),

---

[93] Complaint, ¶¶ 260, 263, 265; Feinstein Report, ¶¶ 18, 23.

revised its FY 2023 financial guidance, and withdrew its financial targets for FY 2024.[94]  UNFI also held an earnings conference call shortly after the earnings announcement to discuss its financial results, which was accompanied by the Q2 2023 earnings call presentation.[95]  In its earnings release, UNFI reported Q2 2023 adjusted EBITDA of $181 million (compared to $220 million for Q2 2022) and adjusted earnings per share ("adjusted EPS") of $0.78 (compared to $1.36 for Q2 2022).[96]  UNFI disclosed that its profitability in Q2 2023 "was lower than recent levels and [the Company's] plan,"[97] and analysts noted it was below consensus.[98]  UNFI also revised downward its FY 2023 guidance and withdrew its financial targets for FY 2024.[99]  Specifically, the Company announced that FY 2023 adjusted EBITDA was guided to be in the range of $715–$785 million compared to the range of $850–$880 million it had previously disclosed on September 27, 2022 and reaffirmed on December 7, 2022.[100]  Similarly, UNFI also reduced its FY 2023 adjusted EPS guidance, with FY 2023 adjusted EPS guided to be in the range of $3.05–$3.90 compared to the range of $4.85–$5.15 previously disclosed on September 27, 2022 and reaffirmed on December 7, 2022.[101]  Moreover, UNFI stated that it was withdrawing its financial targets for FY 2024 given the "updated expectations for [FY 2023]."[102]

---

[94] UNFI Q2 2023 Earnings Release, p. 1.

[95] UNFI Q2 2023 Earnings Call; UNFI Q2 2023 Earnings Conference Call Slides, March 8, 2023.

[96] UNFI Q2 2023 Earnings Release, p. 1.

[97] UNFI Q2 2023 Earnings Release, p. 1.  *See also* UNFI Q2 2023 Earnings Call, p. 2 ("[O]ur second quarter adjusted EBITDA and adjusted EPS were well below our expectations.").  UNFI also reported net sales that increased year-over-year "primarily driven by inflation and new business."  *See* UNFI Q2 2023 Earnings Release, p. 1.

[98] *See*, *e.g.*, "F2Q23 Miss, F2023 Outlook Lowered, F2024 Targets Withdrawn," *BMO*, March 8, 2023 ("UNFI reported [Q2 2023] adjusted EPS of $0.78 significantly below our estimate of $1.44 by 46% and consensus estimate $1.45…. Adjusted EBITDA of $181 million was below our forecast of $227 million by (20)% and consensus $231 million by (22)%."); "The Bottom Falls Out; Moderating Inflation Drives Significant Gross Margin Miss, Largely Contained to Non-Perishables; Remain Neutral," *BTIG*, March 8, 2023 ("This morning, UNFI posted a meaningful and surprising profit miss, driven almost entirely by weaker gross margin."); "Sour Systems Spoil the Quarter," *Deutsche Bank*, March 8, 2023 ("UNFI delivered disappointing results today with EPS at $0.78 falling well short of [Deutsche Bank] and the Street ($1.39 and $1.43, respectively); "Disappointing Q2F23, Guidance Lowered, Reducing F23/F24 Estimates," *Seaport*, March 9, 2023 (emphasis removed) ("[Q2 2023] adj. EPS and EBITDA significantly missed consensus estimates.").

[99] UNFI Q2 2023 Earnings Release, p. 1; UNFI Q2 2023 Earnings Call, pp. 2–3, 6.

[100] UNFI Q2 2023 Earnings Release, p. 3; UNFI Form 8-K, filed on September 27, 2022, Ex. 99.1 ("UNFI FY 2022 Earnings Release"), p.3; UNFI Q1 2023 Earnings Release, p. 3.

[101] UNFI Q2 2023 Earnings Release, p. 3; UNFI FY 2022 Earnings Release, p. 3; UNFI Q1 2023 Earnings Release, p. 3.

[102] UNFI Q2 2023 Earnings Call, p. 6.

55.    In its Q2 2023 earnings release, UNFI reported gross margin of 14.0% for Q2 2023 compared to 14.8% for Q2 2022, a year-over-year reduction of 0.8 percentage points[103] and attributed that reduction mostly to the loss of "significant" inflation-related forward buying opportunities that had benefited gross margin over the prior year.  Specifically, UNFI executives stated during the earnings conference call and in the earnings press release that:

> Our reduced profitability this quarter was primarily driven by a lower gross profit rate,[104] as *we did not repeat the level of significant procurement and inventory gains experienced last year*….  We did not fully appreciate the benefit to last year's gross profit from buying inventory in advance of supplier price increases in the sequentially rising inflationary environment."[105]

> [P]rofitability in the quarter was lower than recent levels and our plan.  Profits were challenged as *we did not repeat the significant level of procurement gains from rapidly accelerating inflation and inventory gains*, due to supply chain volatility … experienced in the second quarter of [FY 2022].[106]

> Our gross [margin] declined by approximately 80 basis points.  *The largest drivers of this decline in gross profit rate were lower procurement and inventory gains* resulting from among several things, supply chain volatility, and a deceleration in the sequential rate of inflation.[107]

56.    As shown above, UNFI stated that the "largest driver" of the reduction in its reported gross margin of 0.8 percentage points in Q2 2023 was lower procurement and inventory gains. This reduction in gross margin lowered UNFI's gross margin to a level that was in fact below prior quarters during the Proposed Class Period and was large relative to year-over-year increases in prior quarters during the Proposed Class Period.  In **Exhibit 3a**, I examine UNFI's quarterly gross margin during the Proposed Class Period.[108]  As shown in the exhibit, UNFI's

---

[103] UNFI Q2 2023 Earnings Release, p. 2 ("The gross profit rate in the [Q2] 2023 was 13.7% of net sales and included a $29 million LIFO charge.  Excluding this non-cash charge, gross profit rate was 14.0% of net sales. Gross profit rate in [Q2] 2022 was 14.5% of net sales and included a $19 million LIFO charge.  Excluding this non-cash charge, gross profit rate in [Q2] 2022 was 14.8% of net sales.").

[104] Gross profit rate and gross margin are used interchangeably in this context.

[105] UNFI Q2 2023 Earnings Call, p. 3 (emphasis added).

[106] UNFI Q2 2023 Earnings Release, p. 1 (emphasis added).

[107] UNFI Q2 2023 Earnings Call, p. 4 (emphasis added).

[108] As discussed in **Section IV**, beginning in Q3 2022 UNFI calculated gross margin equal to gross profit as a percentage of net sales, where gross profit excludes the non-LIFO charge or benefit for that fiscal period. *See, e.g.*, UNFI 2022 10-K, pp. 11, 31, 53.  Consistent with this approach, quarterly gross margin in **Exhibit 3** is calculated as (i) gross profit excluding non-cash LIFO charge divided by (ii) net sales.

quarterly gross margin varied between 14.75% and 15.25% during the Proposed Class Period prior to March 8, 2023 (i.e., from Q1 2022 to Q1 2023) before declining to 14.05% in Q2 2023.[109]  Moreover, **Exhibit 3b** shows that the year-over-year reduction in quarterly gross margin in Q2 2023 (equal to 0.70 percentage points) was also large relative to the year-over-year changes in gross margin in any previous quarter during the Proposed Class Period (between Q1 2022 and Q1 2023), including the year-over-year increases in gross margins throughout FY 2022 that ranged from 0.26 to 0.46 percentage points.  Thus, the disclosed reduction in UNFI's gross margin in Q2 2023 was 1.5–2.7 times larger than any prior increase that I understand Plaintiffs allege was driven by procurement gains.[110]  Given UNFI's disclosure that lower procurement and inventory gains this quarter were the "largest driver" of the reduction in Q2 2023 gross margin, the results presented in **Exhibits 3a** and **3b** highlight that information disclosed on March 8, 2023 implied that inflation-related forward buying was in fact a significant driver of UNFI's gross margin during the Proposed Class Period.

57.    Moreover, UNFI's disclosures on March 8, 2023 further imply that the year-over-year reduction in gross margin that UNFI disclosed in Q2 2023 understates the gross margin impact of a complete loss of any inflation-related forward buying opportunities over a full quarter.  This is because UNFI management noted that the price increases that had generated forward buying opportunities in prior quarters had decreased by two-thirds relative to Q2 2022 (i.e., a third still remained) and that the reduction in forward buying opportunities had only become apparent more recently (during the last month of the quarter; i.e., earlier in the quarter those opportunities were still largely present):

> Suppliers are obligated in one format to give us 60 days and the other 90 [days] and the forward buy impact happens in that cycle.  And what we're seeing right now is [that] the accumulation of all the price increases that have happened in the last 12 months add up to a significant year-over-year price inflation.  The number

---

[109] UNFI appears to report rounded figures in its Q2 2023 earnings release as UNFI reported gross margin of 14.0% for Q2 2023 compared to 14.8% for Q2 2022, and a year-over-year reduction of 0.8 percentage points.  *See* UNFI Q2 2023 Earnings Release, p. 2.

[110] To arrive at the 1.5–2.7 figure range, I divide the gross margin reduction in Q2 2023 by the range of year-over-year gross margin increases of 0.26 to 0.46 between Q1 2022 and Q4 2022.

of price increases that are happening now is reduced by about 2/3 from last year, and that significantly impacted P6 [of FY 2023].[111]

[M]argins started to tick up in P6 [of FY 2022] due to forward buying. …[A]s the year went on, margins continued to improve as a result of forward buying."[112]

58.    The above implies that the information disclosed on March 8, 2023 included that the reported results continued to include the impact of (albeit greatly reduced) inflation-related forward buying and therefore implied that further declines in gross margin could occur if all such forward buying ceased.

59.    In addition to revealing that inflation-related forward buying had been a "significant" driver of gross margin, the Company also revealed that the financial benefits to profitability from inflation-related forward buying opportunities in prior quarters had been temporary, with UNFI characterizing them as "not repeatable in the current environment."

We now realize the magnitude of [*the benefits to last year's gross profit from buying inventory in advance of supplier price increases in the sequentially rising inflationary environment*]*, which are not repeatable in the current environment*.[113]

Profits were challenged as *we did not repeat the significant level of procurement gains from rapidly accelerating inflation and inventory gains*, due to supply chain volatility, that we experienced in the second quarter of [FY 2022].[114]

60.    Further showing the temporary nature of the financial benefits to profitability from inflation-related forward buying opportunities, in addition to the impact on gross margin, the Company also attributed its reduced FY 2023 adjusted EBITDA and adjusted EPS guidance and its withdrawal of its financial targets for FY 2024 to the loss of inflation-related forward buying opportunities.[115]  With respect to FY 2023 guidance, UNFI management stated that the magnitude of "the benefit to last year's gross [margin] from buying inventory in advance of supplier price increases in the sequentially rising inflationary environment … [is] not repeatable

---

[111] UNFI Q2 2023 Earnings Call, p. 10.  I understand that "P6" refers to the sixth month of the fiscal year (March), which corresponds to the last month in Q2 2023.
[112] UNFI Q2 2023 Earnings Call, p. 11.
[113] UNFI Q2 2023 Earnings Call, p. 3 (emphasis added).
[114] UNFI Q2 2023 Earnings Release, p. 1 (emphasis added).
[115] UNFI Q2 2023 Earnings Call, pp. 2–3.

in the current environment" and that the Company "expect[s] to see similar trends in profitability … for the remainder of the year, as [the Company] continue[s] to lap periods of significant benefits from procurement gains as price increase activity further decelerates."[116] Additional statements by UNFI management highlighting that the financial benefits from inflation-related forward buying opportunities were not "repeatable" include:

> [O]ur expectation is that the third and fourth quarters will also be adversely impacted by these declining inflation dynamics.[117]

> Profits were challenged as we did not repeat the significant level of procurement gains from rapidly accelerating inflation and inventory gains … experienced in the second quarter of [FY 2022]. *As a result of these challenges, we are reducing our profitability expectations for [FY] 2023 and withdrawing our [FY] 2024 targets.*[118]

61.    With respect to the withdrawal of its FY 2024 financial targets,[119] management stated that "[g]iven [the] updated expectations for this year, we have withdrawn the long-term [FY] 2024 financial targets originally provided at our June 2021 Investor Day," consistent with their discussion regarding the reduction in FY 2023 profitability and earnings guidance.[120]

62.    In sum, UNFI's Q2 2023 disclosures on March 8, 2023 revealed the information that Plaintiffs allege should have been disclosed earlier in the Proposed Class Period—that is, the Alleged Truth that inflation-related forward buying opportunities were a significant but temporary driver of improvements in UNFI's gross margin during the Proposed Class Period. Therefore, if the markets for UNFI Securities were efficient throughout the Proposed Class Period, as Plaintiffs allege and Dr. Feinstein opines,[121] the Alleged Truth would have been fully incorporated into the prices of UNFI Securities by March 8, 2023 and could not have impacted the price of UNFI Securities after March 8, 2023.

---

[116] UNFI Q2 2023 Earnings Call, p. 3.
[117] UNFI Q2 2023 Earnings Call, pp. 4–5.
[118] UNFI Q2 2023 Earnings Release, p. 1 (emphasis added).
[119] UNFI Q2 2023 Earnings Release, p. 1.
[120] UNFI Q2 2023 Earnings Call, p. 6.
[121] Complaint, ¶¶ 260, 263, 265; Feinstein Report, ¶¶ 18, 23.

## 2.    Plaintiffs' Characterization of UNFI's Q2 2023 Disclosures

63.    Plaintiffs' characterization of UNFI's Q2 2023 disclosures on March 8, 2023 is consistent with the above conclusion.  For example, Plaintiffs state that:

> On March 8, 2023, before the market opened, UNFI shocked the market by reporting a $6 million year-over-year decline in gross profit, despite a 6% increase in net sales….  [The Q2 2023] Press Release disclosed that the decrease in the Company's [Q2 2023] gross profit rate had been "*primarily driven by lower current period procurement gains due to the decelerating rate of inflation and lower inventory gains*."  By attributing the [Q2 2023] earnings miss to lower procurement gains, *the Company admitted that its prior year period (that is, [Q2 2022]) had materially benefited from "significant" procurement gains.*[122]

> Defendants admitted three months later on March 8, 2023 that *UNFI had previously benefited from significant procurement gains and that they were "not repeatable in the current environment*," leading to substantial gross margin decline.[123]

> Defendants' own statements confirm that the impact of forward buying was "significant."  The [Q2 2023] Press Release stated that the prior year period included a "significant level of procurement gains."[124]

> UNFI was forced to *publicly reveal the substantial procurement gains that had benefited its previously reported financial results.*[125]

64.    Therefore, if the markets for UNFI Securities were efficient throughout the Proposed Class Period, as Plaintiffs allege and Dr. Feinstein opines,[126] under Plaintiffs' characterization of the disclosure in the Complaint, the Alleged Truth would have already been fully incorporated into the prices of UNFI Securities at the time of the March 8, 2023 alleged corrective disclosure and could not have impacted the price of UNFI Securities after March 8, 2023.

---

[122] Complaint, ¶¶ 91–93 (emphasis added; emphasis in original removed).
[123] Complaint, ¶ 239 (emphasis added).
[124] Complaint, ¶ 234.
[125] Complaint, ¶ 11 (emphasis added).
[126] Complaint, ¶¶ 260, 263, 265; Feinstein Report, ¶¶ 18, 23.

### 3.    Securities Analysts' Discussion of UNFI's Q2 2023 Disclosures

65.    Consistent with my analysis of UNFI's Q2 2023 disclosures and Plaintiffs' characterization of those disclosures discussed above, securities analyst commentary is consistent with the Alleged Truth being public information by March 8, 2023.[127]  Securities analysts' commentary after the Q2 2023 earnings announcement echoed UNFI's disclosure that inflation-related forward buying had been a significant but temporary driver of improvements in UNFI's gross margin.  For example:

> (*BTIG, March 8, 2023*)  *Strategic Buys Ahead of Price Hikes Inflated Profit Last Year*.  This morning, *UNFI posted a meaningful and surprising profit miss, driven almost entirely by weaker gross margin*.  Gross margin was 70 bps lower than our forecast and 80 bps below last year at 13.7%, as the company underestimated the procurement and inventory gains it realized during the onset of heightened inflation.  *Put simply, UNFI benefited from strategically purchasing inventory (mostly non-perishables) ahead of scheduled price hikes over the past 12-18 months, and is now lapping those gains*.[128]

> (*Goldman Sachs, March 8, 2023*)  Gross margin declined -70 bps y/y to 14.0% primarily *due to elevated procurement gains in the prior year related to inventory buying ahead of rising inflation, which is not repeatable in the current disinflationary environment*.[129]

> (*UBS, March 13, 2023*)  We downgrade UNFI following several developments, incl. 1) *challenges lapping higher than anticipated procurement & inventory gains in the year ago period (contributing to our expectations of 55-60 bps of GM pressure in [the second half of FY 2023])*….  UNFI is likely to face profitability headwinds in [the second half of FY 2023] as it cycles past "significant" procurement gains.[130]

66.    Securities analysts attributed the below-consensus Q2 2023 earnings, reduced FY 2023 financial guidance, and withdrawal of the FY 2024 earnings target to a loss of inflation-related forward buying opportunities.[131]  For example:

---

[127] *See* **Exhibit 4**.

[128] "The Bottom Falls Out; Moderating Inflation Drives Significant Gross Margin Miss, Largely Contained to Non-Perishables; Remain Neutral," *BTIG*, March 8, 2023 (emphasis added; emphasis in original removed).

[129] "Margin Profile Reset Lower; Reiterate Neutral," *Goldman Sachs*, March 8, 2023 (emphasis added).

[130] "The Path to Value Will Likely Take Time: Downgrade to Neutral," *UBS*, March 13, 2023 (emphasis added).

[131] *See* **Exhibit 4**.

(**BTIG, March 8, 2023**)  *UNFI posted a highly disappointing quarter, lowering its [FY 2023] outlook and withdrawing [FY 2024] targets in the process, as underappreciated inventory gains are lapped.  Forward buying during outsized inflation this time last year inflated gross profit*, which the company's antiquated systems failed to fully identify.…  This morning, UNFI posted a meaningful and surprising profit miss, driven almost entirely by weaker gross margin.  Gross margin was 70 bps lower than our forecast and 80 bps below last year at 13.7%, as the company underestimated the procurement and inventory gains it realized during the onset of heightened inflation.  Put simply, UNFI benefited from strategically purchasing inventory (mostly non-perishables) ahead of scheduled price hikes over the past 12-18 months, and is now lapping those gains.[132]

(**CL King, March 9, 2023**)  Adjusted EBITDA of $181MM fell 17.7% year over year and missed both our $230.6MM estimate and consensus of $231.3MM.  *The primary driver of the earnings shortfall was lower-than-forecast gross profit ($1,098MM versus our $1,138MM estimate) that was the result of lower year-over-year procurement gains and inventory holding profits*….  We are lowering our [FY 2023] and [FY 2024] adjusted EBITDA forecasts to $730MM (from $868MM) and $803MM (from $908MM), respectively.  We are lowering our respective [FY 2023] and [FY 2024] EPS estimates to $3.15 (from $4.95) and $4.00 (from $5.25).[133]

(**Deutsche Bank, March 8, 2023**)  Current price increase velocity is 2/3 of last year's volumes meaning less opportunity to take advantage of forward buys this year to maintain gross margin.  Management expects this pressure to continue through [the second half of FY 2023] and has reduced the profitability outlook for the full year, resulting in an updated adjusted EPS range of $3.05-$3.90 (previously $4.85-$5.15).  Perhaps more importantly, management withdrew its long-term [FY 2024] targets, signaling the problems may extend well into next year.[134]

(**Seaport, March 9, 2023**)  *The primary factor driving lower earnings during [Q2 2023] and over the next 12 months is the lapping of significant inventory gains from surging procurement inflation during [FY 2022].*  Inflation is now decelerating rapidly, and large, incremental procurement income is not repeatable going forward.[135]

---

[132] "The Bottom Falls Out; Moderating Inflation Drives Significant Gross Margin Miss, Largely Contained to Non-Perishables; Remain Neutral?," *BTIG*, March 8, 2023 (emphasis added).

[133] "UNFI: Downgrading to Neutral, Cutting Estimates; Proprietary Analysis Shows that Gross Margin Issues that Caused Q2 Earnings Miss Most Likely to Persist for Three More Quarters," *CL King*, March 9, 2023 (emphasis added).

[134] "Sour Systems Spoil the Quarter," *Deutsche Bank*, March 8, 2023.

[135] "Disappointing Q2F23, Guidance Lowered, Reducing F23/F24 Estimates," *Seaport*, March 9, 2023 (emphasis added).

(*Wolfe Research, March 8, 2023*)  Investors are likely concerned about the impact of disinflation and lapping procurement gains going forward in the context of a wider guide range….  The procurement headwinds are expected to persist through [FY 2023], which caused management to cut guidance (EPS down -28% at the midpoint) and widen the guided range of outcomes.[136]

67.    Furthermore, actions taken by securities analysts following the Q2 2023 disclosures are consistent with information comprising the Alleged Truth being publicly available information by March 8, 2023.  Specifically, securities analysts lowered their FY 2023 and FY 2024 earnings and profitability estimates and attributed the revision to UNFI's loss of inflation-related forward buying opportunities, consistent with it being publicly disclosed that inflation-related forward buying had been a significant but temporary driver of gross margin.[137]  For example:

(*Wells Fargo, March 8, 2023*)  Given management's admitted lack of visibility, we are taking our [FY 2023] estimate to the low end of guidance.  We project a decline in [FY 2024] earnings, which incorporates the full lap of the procurement gains.  We are lowering our [FY 2023] and [FY 2024] EPS estimates to $3.05 (from $4.95) and $2.65 (from $5.35), respectively.  We are also lowering our price target to $28 (from $40), 5.5x our [FY 2024] EBITDA estimate.[138]

(*Goldman Sachs, March 8, 2023*)  Gross margin declined -70 bps y/y to 14.0% primarily due to elevated procurement gains in the prior year related to inventory buying ahead of rising inflation, which is not repeatable in the current disinflationary environment while management noted limited visibility previously given legacy digital infrastructure.  Pressure from this difficult lap should continue for the balance of the year….  We are lowering our [FY 2023–2025] EPS estimates by ~38% to $3.15/$3.29/$3.62 from $5.04/$5.33/$5.79, respectively, primarily due to a lower gross margin outlook.[139]

(*Deutsche Bank, March 8, 2023*)  While the top line remained strong, gross margin pressure surfaced in the final month of the quarter as the company lapped one-time benefits of forward buys last year.  UNFI had no visibility into the pricing benefits experienced over the last five quarters because of antiquated systems.  Current price increase velocity is 2/3 of last year's volumes meaning less opportunity to take advantage of forward buys this year to maintain gross margin.  Management expects this pressure to continue through [the second half

---

[136] "United Natural Foods (UNFI) - Guidance Slashed as Inflation Decelerates...," *Wolfe Research*, March 8, 2023 (emphasis in original removed).
[137] *See* **Exhibit 4**.
[138] "UNFI: Q2 Disappoints as End of Historic Inflation Cyle Begins to Show Its Challenges," *Wells Fargo*, March 8, 2023.
[139] "Margin Profile Reset Lower; Reiterate Neutral," *Goldman Sachs*, March 8, 2023.

of FY 2023] and has reduced the profitability outlook for the full year, resulting in an updated adjusted EPS range of $3.05-$3.90 (previously $4.85-$5.15). Perhaps more importantly, management withdrew its long-term 2024 targets, signaling the problems may extend well into next year…. Our 3Q EPS forecast is $0.60 (prior $1.04; Street $1.11)…. Our adjusted FY23 EPS estimate decreases to $3.24 from $4.88 (Street $4.97; guidance $3.05-$3.90)…. Our adjusted EBITDA forecast is $720M (Street $868M; guidance $715M-$785M). Turning to [FY 2024], we forecast EPS of $3.49 (prior $5.12; Street $5.34) as we incorporate lower gross margins.[140]

*(Northcoast Research, March 10, 2023)* Estimate Change: Management's guidance for adjusted EPS in [FY] 2023 carries a wide range from $3.05-$3.90; it had been $4.85-$5.15. We move just below the midpoint to $3.42, from $5.04. We move our [FY] 2024 estimate from $5.47 to $3.68. The Street seems to have yet fully digested the [Q2 2023] results as at the time of writing the Street's estimates for [FY] 2023 and 2024 sit at $3.93 and $4.30, respectively.[141]

*(UBS, March 13, 2023)* We downgrade UNFI following several developments, incl. 1) challenges lapping higher than anticipated procurement & inventory gains in the year ago period (contributing to our expectations of 55-60 bps of GM pressure in [the second half of FY 2023])…. We now model $3.32 in [FY 2023] EPS ($4.99 prior), $3.35 in [FY 2024] EPS ($5.45 prior), & $3.55 in [FY 2025] EPS ($5.74 prior).[142]

68.    In **Exhibit 5a** I examine the Q3 2023, Q4 2023, FY 2023, and FY 2024 gross margin estimates by securities analysts covering UNFI around the Q2 2023 earnings announcement. Consistent with analysts incorporating in their estimates on and after March 8, 2023 that inflation-related forward buying had been a significant but temporary driver of gross margin, as shown in the exhibit, eight contributors provided estimates of FY 2023 and FY 2024 gross margin (excluding the non-cash LIFO charge) for UNFI around this date, and all lowered their gross margin estimates for UNFI during the week immediately following the Q2 2023 earnings announcement.[143] The average (median) reduction was 64 (60) basis points for Q3 2023, 68 (60) basis points for Q4 2023, 53 (55) basis points for FY 2023, and 56 (50) basis points for FY

---

[140] "Sour Systems Spoil the Quarter," *Deutsche Bank*, March 8, 2023.

[141] "UNFI: Lost Momentum – Shares Downgraded to Neutral," *Northcoast Research*, March 10, 2023 (emphasis in original removed).

[142] "The Path to Value Will Likely Take Time: Downgrade to Neutral," *UBS*, March 13, 2023.

[143] Moreover, as shown in the exhibit, five contributors also provided estimates for FY 2023 and four for FY 2024 gross margin *including* the non-cash LIFO charge, and all also lowered their gross margin estimates for UNFI during the week immediately following the Q2 2023 earnings announcement.

2024.[144] **Exhibit 5b** shows that the reduction in the average (median) analyst estimates for FY 2023 and FY 2024 gross margin around Q2 2023 exceeded any change (whether an increase or a decrease) in previous quarters during the Proposed Class Period.

69.     These results are consistent with market participants taking into account that information comprising the Alleged Truth was publicly available information by March 8, 2023.  As I detailed earlier in this section, commentary from securities analysts echoed UNFI's disclosures that inflation-related forward buying had been a significant but temporary driver of improvements in UNFI's gross margin.  These securities analysts also adjusted downward their estimates for UNFI's future gross margin, including Q3 2023 and Q4 2023, to reflect their revised outlook on the Company's profitability into subsequent quarters.[145]  These downward revisions further illustrate that market participants were taking into account the impact on UNFI's gross margin from the loss of inflation-related forward buying opportunities not just for the current period, but also for future quarters.

70.     Even with these adjustments to their forecasts, securities analysts noted that the loss of procurement gains from inflation-related forward buying could further accelerate in subsequent quarters given concerns about management's limited visibility into the impact of inflation-related forward buying on its profitability.  For example, analysts at Roth MKM stated on March 8, 2023 that "[w]e are discouraged by the lack of visibility on costs and worry that even after the reset, the risk of over-earning remains."[146]  Similarly, analysts at Wells Fargo stated on March 8, 2023 that "[g]iven management's admitted lack of visibility, we are taking our 2023 estimate to the low end of guidance."[147]

71.     In sum, the analysis in this section shows that the Alleged Truth was made public by March 8, 2023.  Thus, if the markets for UNFI Securities were efficient throughout the Proposed Class Period, as Plaintiffs allege and Dr. Feinstein opines,[148] the Alleged Truth would have

---

[144] The results are consistent for analyst estimates of gross margin including the non-cash LIFO charge.

[145] *See, e.g.*, "UNFI: Q2 Disappoints as End of Historic Inflation Cyle Begins to Show Its Challenges," *Wells Fargo*, March 8, 2023 ("Given management's admitted lack of visibility, we are taking our 2023 estimate to the low end of guidance.").

[146] "UNFI: Visibility Not There - Downgrade to Neutral," *Roth MKM*, March 8, 2023.

[147] "UNFI: Q2 Disappoints as End of Historic Inflation Cycle Begins to Show Its Challenges," *Wells Fargo*, March 8, 2023.

[148] Complaint, ¶¶ 260, 263, 265; Feinstein Report, ¶¶ 18, 23.

already been fully incorporated into the prices of UNFI Securities on March 8, 2023 and could not have impacted the price of UNFI Securities after March 8, 2023.

> **B.     In an Efficient Market, Any Changes in the Prices of UNFI Securities Following the Alleged Corrective Disclosures on June 7, 2023 and September 26, 2023 Were Not a Result of the Revelation of Information Underlying the Alleged Truth or Its Repetition Because the Alleged Truth Was Already Public Information**

72.     In this section, I discuss the two additional alleged corrective disclosures after March 8, 2023, namely, the disclosures on June 7, 2023 and September 26, 2023.  In an efficient market, price changes, if any, experienced by UNFI Securities following the alleged corrective disclosures on June 7, 2023 and September 26, 2023 provide no economic evidence that the Challenged Statements had an impact on the prices of UNFI Securities after the March 8, 2023 alleged corrective disclosure, for the reasons below.

73.     *First*, as discussed in **Section VIII.A**, the Alleged Truth was public information by March 8, 2023.  Thus, it would have been fully and rapidly incorporated into the prices of UNFI Securities following the March 8, 2023 alleged corrective disclosure in efficient markets.  As discussed in **Section VI**, the reiteration of information that is already public (and therefore is already fully incorporated into security prices) cannot have any incremental impact on security prices in efficient markets.  Thus, any reiteration in the June 7, 2023 and September 26, 2023 alleged corrective disclosures of information underlying the Alleged Truth would not cause any change in UNFI Securities prices when those later disclosures occurred.

74.     *Second*, as explained below, any UNFI Securities price changes following the alleged corrective disclosures on June 7, 2023 and September 26, 2023 are consistent with factors other than the revelation of information underlying the Alleged Truth, namely, below-consensus Q3 2023 financial results and the downward revision to FY 2023 financial guidance for the Q3 2023 disclosures on June 7, 2023, and below-consensus FY 2024 financial guidance for the Q4 2023 disclosures on September 26, 2023.  Moreover, the reported reasons for the below-consensus financial results and financial guidance for FY 2023 and FY 2024 are consistent with factors that did not reveal new information underlying the Alleged Truth, namely (i) the materialization of previously disclosed risks that increased macroeconomic pressures from moderating inflation or

deflation would reduce the benefits to profitability from inflation-related forward buying opportunities achieved in prior quarters; (ii) the materialization of previously known risks that UNFI's financial results and financial guidance would be realized below expectations due to UNFI's lack of visibility into its future performance due to legacy data management system limitations; and (iii) factors other than inflation-related forward buying, including shrink,[149] changes in consumer spending, and weak supplier promotional activity.  None of these reported reasons revealed new information underlying the Alleged Truth because it was already public information that inflation-related forward buying had been a significant but temporary driver of UNFI's gross margin.

### 1.    June 7, 2023 (Q3 2023 Earnings Announcement)

75.    As discussed in ¶ 64 above, because the Alleged Truth was publicly available information by March 8, 2023, in efficient markets the Challenged Statements would not have impacted UNFI Securities prices on June 7, 2023.  Instead, based on my analysis of the June 7, 2023 alleged corrective disclosure and securities analyst reports released after the disclosure as detailed below, any UNFI Securities price changes following the alleged corrective disclosure on June 7, 2023 are consistent with factors other than the revelation of the Alleged Truth.

### a)    Overview of UNFI's Q3 2023 Disclosures

76.    Before market open on June 7, 2023, UNFI issued a press release, in which the Company announced its Q3 2023 financial results (for the period ending April 29, 2023) and revised FY 2023 financial guidance.[150]  UNFI also held an earnings conference call shortly after the earnings announcement to discuss its financial results, which was accompanied by the Q3 2023 earnings call presentation.[151]

---

[149] During the Q3 2023 Earnings Call, UNFI's CEO defined shrink as "all things that affect inventory from the time we take it in and pay for it until we deliver it and it's paid for by a customer[;] … any variance in that process can be called shrink."  UNFI Q3 2023 Earnings Call, p. 8.  During the Q4 2023 Earnings Call, UNFI's CEO further stated that shrink levels were "driven by four main categories: procurement, inventory gains or losses, damages and spoilage."  UNFI Q4 2023 Earnings Call, p. 12.
[150] UNFI Q3 2023 Earnings Release; UNFI Q3 2023 Earnings Call.
[151] UNFI Q3 2023 Earnings Call; UNFI Q3 2023 Earnings Conference Call Slides, June 7, 2023.

77.     In its earnings release, UNFI reported Q3 2023 adjusted EBITDA of $159 million (compared to $196 million in Q3 2022) and adjusted EPS of $0.54 (compared to $1.10 for Q3 2022).[152]  UNFI also reported gross margin, excluding the non-cash LIFO charge, of 13.8% (compared to 15.0% in Q3 2022).[153]  UNFI also revised downward its FY 2023 earnings guidance.[154]  Specifically, the Company announced that FY 2023 adjusted EBITDA was guided to be in the range of $610–$650 million compared to the range of $715–$785 million previously disclosed on March 8, 2023.[155]  Similarly, UNFI also reduced its FY 2023 adjusted EPS forecast, with FY 2023 adjusted EPS guided to be in the range of $1.80–$2.30 compared to the range of $3.05–$3.90 previously disclosed on March 8, 2023.[156]  As UNFI explained in its Q3 2023 earnings press release, the Company's "profitability was impacted by a greater than expected decline in gross margins reflecting a challenging operating and macroeconomic backdrop, which contributed to lower inflationary benefits primarily related to reduced procurement gains, as well as higher shrink."[157]  UNFI stated that this "challenging operating and macroeconomic" environment contributed to both its Q3 2023 financial results and its FY 2023 earnings guidance revision.[158]

78.     During the earnings conference call, UNFI executives attributed the Company's below-consensus Q3 2023 financial results and FY 2023 earnings guidance revision to multiple factors, including (i) "a rapidly changing and volatile external environment," (ii) "significant and unexpected slowing in the wholesale commodity inflation," and (iii) "higher-than-expected shrink."[159]  UNFI executives also noted that the complex infrastructure and legacy systems associated with the Company's acquisition of SuperValu in 2018 "limit[ed] [UNFI's] ability to understand the recent volatility within [its] business [in] real time."[160]

79.     In the Complaint, Plaintiffs allege that on June 7, 2023 "UNFI revealed that lower procurement gains eroded gross margins even further [and] reduced its [FY] 2023 outlook

---

[152] UNFI Q3 2023 Earnings Release, p. 1.
[153] UNFI Q3 2023 Earnings Release, p. 2.
[154] UNFI Q3 2023 Earnings Release, p. 3.
[155] UNFI Q3 2023 Earnings Release, p. 3.
[156] UNFI Q3 2023 Earnings Release, p. 3.
[157] UNFI Q3 2023 Earnings Release, p. 1.
[158] UNFI Q3 2023 Earnings Release, p. 1.
[159] UNFI Q3 2023 Earnings Call, p. 3.
[160] UNFI Q3 2023 Earnings Call, p. 3.

again."[161]  Plaintiffs also claim that these disclosures "further revealed the extent to which UNFI's prior results had been benefited by UNFI's 'strategic' forward buying and the extent to which the benefit had masked other problems impacting UNFI's profitability."[162]

80.    Plaintiffs allege that following the Q3 2023 disclosures, "the Company's stock price fell $4.11, or 14.9% … on June 7, 2023 [and that] [t]he stock continued to fall the next trading day by $1.56, or 6.6% … on June 8, 2023."[163]  As discussed below, in efficient markets, stock price declines (and UNFI Securities price changes broadly) following the June 7, 2023 alleged corrective disclosure are consistent with factors other than the revelation of new information underlying the Alleged Truth.[164]

> **b)    Market Commentary Following UNFI's Q3 2023 Disclosures**

81.    Securities analyst commentary after the Q3 2023 earnings announcement discussed UNFI's stock price decline on June 7, 2023 in the context of below-consensus earnings for Q3 2023 and a downward revision to UNFI's FY 2023 guidance.  For example:

> *(BTIG, June 7, 2023)*  UNFI posted another weaker-than-expected quarter and further brought down guidance this morning, as moderating inflation and lower procurement gains continued to weigh on profitability.…  We believe shares will continue to be under pressure until investors gain confidence that profitability has bottomed and recovery is underway, which is not evident in management's outlook for [Q4 2023].  Given that inflation is just beginning to moderate, we believe pressure from procurement gains could continue for several more quarters, clouding the profitability outlook.  In our view, the steep share price decline today is primarily a result of this uncertain outlook and the second consecutive slash in guidance.[165]

> *(CL King, June 8, 2023)*  [UNFI] posted a large 3Q23 (ended April) earnings miss versus consensus (although earnings were about in line with our estimates) and cut its earnings guidance, which resulted in a 15% sell-off in the stock.

---

[161] Complaint, ¶ 113.
[162] Complaint, ¶ 216.
[163] Complaint, ¶ 216.
[164] As discussed in **Section VI**, in efficient markets UNFI Securities prices would fully and rapidly incorporate any new, value-relevant information contained in the Q3 2023 disclosures.  I have seen no evidence to attribute any price changes in UNFI Securities on June 8, 2023 to any information in UNFI's Q3 2023 financial results or revised FY 2023 guidance, which were disclosed before market open on June 7, 2023.
[165] "Perfect Storm of Challenges; Retrenching Consumer, Moderating Inflation and Shrink Lead to Another Guidance Cut; Maintain Neutral," *BTIG*, June 7, 2023.

Adjusted EBITDA fell 19% year over year, which matched our forecast, but was 5% below the (14)% consensus estimate.  Based on our proprietary analysis … we project that the disinflation-driven gross margin pressures that we believe caused both the Q3 earnings miss and guidance cut will persist for two more quarters.[166]

*(Goldman Sachs, June 7, 2023)*  UNFI [stock price] closed down -14.9% … after its [Q3 2023] miss and ~41% reduction in [FY 2023] guidance (at the midpoint) related to a lower profitability outlook.  Key takeaways: 1) margin pressure continues given ongoing procurement headwinds amid disinflation, although visibility is modestly improving with process changes. [167]

82.    In fact, the majority of securities analysts covering UNFI that published reports within one week of UNFI's Q3 2023 disclosures focused specifically in their title or lead paragraph on either UNFI's below-consensus earnings for Q3 2023, UNFI's FY 2023 financial guidance, or both.  Specifically, out of nine securities analysts that published reports within one week of UNFI's Q3 2023 disclosures, eight securities analysts[168] focused on UNFI's FY 2023 financial guidance revision in either the title or lead paragraph of at least one report the analysts published,[169] and six securities analysts[170] focused on UNFI's below-consensus earnings for Q3 2023 in either the title or lead paragraph.

83.    UNFI's Q3 2023 financial results and FY 2023 guidance could not have revealed the Alleged Truth because the Alleged Truth was already public information.  In particular, as

---

[166] "UNFI: Q3 Adjusted EBITDA in Line with Our Forecast, but Missed Consensus by 5%; FY23 Earnings Guidance Cut as Lower Inventory Holding Gains Persist," *CL King*, June 8, 2023.

[167] "Margin Pressure Continues as Disinflation Limits Procurement Opportunities; Reiterate Neutral," *Goldman Sachs*, June 7, 2023.

[168] "Slight F3Q23 Miss; F23 Adjusted EBITDA Guidance Cut by 15-17%," *BMO*, June 7, 2023; "Multiple Challenges Prompt Downgrade to Marketweight," *BofA Securities*, June 7, 2023; "Perfect Storm of Challenges; Retrenching Consumer, Moderating Inflation and Shrink Lead to Another Guidance Cut; Maintain Neutral," *BTIG*, June 7, 2023; "Margin Pressure Continues as Disinflation Limits Procurement Opportunities; Reiterate Neutral," *Goldman Sachs*, June 7, 2023; "UNFI: Another Surprising Guidance Cut as Pricing Lap and Macro Wreaks Havoc; Remain Sidelined Despite Sharp Sell-off," *Wells Fargo*, June 7, 2023; "Despite Another Pullback Still More Risk for UNFI," *BMO*, June 8, 2023; "UNFI: Q3 Adjusted EBITDA in Line with Our Forecast, but Missed Consensus by 5%; FY23 Earnings Guidance Cut as Lower Inventory Holding Gains Persist," *CL King*, June 8, 2023; "UNFI: Earnings Power Difficult to Determine," *Roth MKM*, June 8, 2023; "Will UNFI Put Up a United Front?," *UBS*, June 8, 2023.

[169] UBS and BMO both published two reports within one week of UNFI's Q3 2023 disclosures.

[170] "Slight F3Q23 Miss; F23 Adjusted EBITDA Guidance Cut by 15-17%," *BMO*, June 7, 2023; "Margin Pressure Continues as Disinflation Limits Procurement Opportunities; Reiterate Neutral," *Goldman Sachs*, June 7, 2023; "What's the Initial View on UNFI's 3Q'23 Results?," *UBS*, June 7, 2023; "UNFI: Another Surprising Guidance Cut as Pricing Lap and Macro Wreaks Havoc; Remain Sidelined Despite Sharp Sell-off," *Wells Fargo*, June 7, 2023; "UNFI: Q3 Adjusted EBITDA in Line with Our Forecast, but Missed Consensus by 5%; FY23 Earnings Guidance Cut as Lower Inventory Holding Gains Persist," *CL King*, June 8, 2023; "UNFI: Earnings Power Difficult to Determine," *Roth MKM*, June 8, 2023.

discussed in **Section VIII.A**, the Alleged Truth was public information by March 8, 2023. Moreover, UNFI's Q3 2023 financial results reflected business performance for the then-current fiscal quarter, which I understand Plaintiffs do not allege UNFI could or should have disclosed earlier at the time of any Challenged Statement.[171]  Although Plaintiffs allege in the Complaint that UNFI's FY 2023 guidance announced on March 8, 2023 was materially false and misleading, I understand from Counsel that that allegation has been dismissed.[172]

84.     Moreover, based on my review of the UNFI Q3 2023 disclosures and market commentary, none of the reported reasons for the below-consensus earnings for Q3 2023 and downward revision to UNFI's FY 2023 guidance revealed the Alleged Truth because it was already public information that inflation-related forward buying had been a significant but temporary driver of UNFI's gross margin (*see* **Section VIII.A**).  As described below, the reported reasons for the below-consensus earnings for Q3 2023 and for the downward revision to UNFI's FY 2023 guidance are consistent with factors that did not reveal new information underlying the Alleged Truth, namely (i) the materialization of previously disclosed risks that increased macroeconomic pressures from moderating inflation or deflation would reduce the benefits to profitability from inflation-related forward buying opportunities achieved in prior quarters; (ii) the materialization of previously known risks that UNFI's financial results and financial guidance would be realized below expectations due to UNFI's lack of visibility into its future performance; and (iii) factors other than inflation-related forward buying, including shrink, changes in consumer spending, and continued weak supplier promotional activity.

> **(1)     Market Commentary Concerning the Materialization of the Previously Disclosed Risks of Loss of Inflation-Related Forward Buying Opportunities Due to Increased Macroeconomic Pressures Leading to Moderating Inflation and Deflation**

---

[171] For example, UNFI executives stated during the Q3 2023 earnings conference call that UNFI's quarterly financial results were affected by unexpected macroeconomic factors that materialized during the quarter. *See e.g.*, UNFI Q3 2023 Earnings Call, p. 3 ("I want to express our deep disappointment in our results.  We faced several obstacles, which impacted our results and exacerbated the legacy issues I just discussed.…  [W]e saw a significant and unexpected slowing in the wholesale commodity inflation, which created some additional unanticipated margin weakness.").

[172] *See* MTD Ruling, pp. 18–19 ("The [FY 2023] Guidance Statements Are Not Actionable.…  The [FY 2023] Guidance Statements, which expressed optimistic opinions in the face of market uncertainty, are simply too general to be actionable….  Accordingly, these statements cannot serve as a basis for Plaintiffs' claims.").

85.    With respect to the first risk materializing, securities analysts discussed the impact of increased macroeconomic pressures on procurement gains as one of the reasons for UNFI's below-consensus Q3 2023 earnings and downward revision to FY 2023 guidance.  Specifically, analysts discussed the effect of moderating inflation and deflation on UNFI's gross margin due to the loss of inflation-related forward buying.  For example:

> *(BTIG, June 7, 2023)*  UNFI posted another weaker-than-expected quarter and further brought down guidance this morning, *as moderating inflation and lower procurement gains continued to weigh on profitability.…*  Lower inflation Driving Reduced Procurement Gains, and In-Turn, Profit.  Similar to the dynamic last quarter, moderating inflation has [led] to lower procurement and inventory gains.…  As a reminder, *UNFI benefitted from strategically purchasing inventory (mostly non-perishables) ahead of scheduled price hikes over the past 12-18 months, and is now lapping those gains*.[173]

> *(Goldman Sachs, June 7, 2023)*  Key takeaways: 1) *margin pressure continues given ongoing procurement headwinds amid disinflation*, although visibility is modestly improving with process changes.…  We expect peak margin pressure in [Q4 2023] given our inflation outlook, which we believe is reflected in updated guidance.[174]

> *(UBS, June 8, 2023)*  Tough procurement gain comparisons & softening inflation were again a challenge.…  Limited procurement opportunities led to [gross margin] weakness[.]  *UNFI's [gross margin] was again impacted by reduced procurement gains in [Q3 2023], with falling sequential inflation providing less opportunity for forward buying*.[175]

86.    The impact of macroeconomic pressures on inflation-related forward buying is the materialization of a risk disclosed no later than March 8, 2023.  Specifically, UNFI had previously disclosed in March 2023 (*see* **Section VIII.A.1**) that inflation-related forward buying opportunities were a significant but temporary driver of improvements in UNFI's gross margin.[176]  In addition, UNFI had already disclosed (and analysts subsequently discussed) the risk that moderating inflation would negatively impact its financial performance even more than

---

[173] "Perfect Storm of Challenges; Retrenching Consumer, Moderating Inflation and Shrink Lead to Another Guidance Cut; Maintain Neutral," *BTIG*, June 7, 2023 (emphasis added; emphasis in original removed).

[174] "Margin Pressure Continues as Disinflation Limits Procurement Opportunities; Reiterate Neutral," *Goldman Sachs*, June 7, 2023 (emphasis added).

[175] "Will UNFI Put Up a United Front?," *UBS*, June 8, 2023 (emphasis added; emphasis in original removed).

[176] *See* **Section VIII.A**.

expected, as I detail in **Section VIII.A**.  For example, UNFI management stated on March 8, 2023 that their "expectation is that [Q3 2023 and Q4 2023] will also be adversely impacted by these declining inflation dynamics."[177]  Analysts at Seaport noted on March 9, 2023 that "[t]he primary factor driving lower earnings during [Q2 2023] and over the next 12 months is the lapping of significant inventory gains from surging procurement inflation during 2022" and that "[i]nflation is now decelerating rapidly, and large, incremental procurement income is not repeatable going forward."[178]  Similarly, analysts at Wolfe Research noted on March 8, 2023 that "[i]nvestors are likely concerned about the impact of disinflation and lapping procurement gains going forward."[179]

**(2)     Market Commentary Concerning the Materialization of Previously Known Risks Due to Lack of Visibility**

87.     With respect to the second risk materializing, securities analysts discussed the impact on UNFI's gross margin (relative to expectations) from limited visibility into future performance due to legacy data management system limitations as another reason for UNFI's below-consensus Q3 2023 earnings and FY 2023 downward guidance revision.  For example:

> *(BTIG, June 7, 2023)*  The pressure on gross margin, lack of visibility and varied tech infrastructure is making it difficult for management to accurately forecast. For [Q4 2023], management now forecasts adjusted EBITDA of $63MM-$103MM, well below our already reduced estimate of $192MM, and consensus of $176MM.  *At this point in time, we are unsure if these numbers are realistic, or too conservative, given the lack of visibility on procurement gains.*[180]

> *(Goldman Sachs, June 7, 2023)  We believe UNFI's margin issues are largely company-specific due to 1) its limited integration between the SuperValu assets ... and its legacy infrastructure, which results in low visibility on procurement,*

---

[177] UNFI Q2 2023 Earnings Call, pp. 4–5.

[178] "Disappointing Q2F23, Guidance Lowered, Reducing F23/F24 Estimates," *Seaport*, March 9, 2023.

[179] "United Natural Foods (UNFI) - Guidance Slashed as Inflation Decelerates...," *Wolfe Research*, March 8, 2023 (emphasis in original removed).

[180] "Perfect Storm of Challenges; Retrenching Consumer, Moderating Inflation and Shrink Lead to Another Guidance Cut; Maintain Neutral," *BTIG*, June 7, 2023 (emphasis added).

although it continues to improve modestly with process changes, noting the multi-year turnaround remains underway.[181]

**(Wells Fargo, June 7, 2023)**  Visibility on Sustained EBITDA Very Low: *Credibility at UNFI is about as low as it gets*, as it's shocking how the company seemed caught off guard by these issues given their magnitude.  While management is taking action, we don't expect much near-term help beyond $100m of knee-jerk cost cuts.[182]

**(Roth MKM, June 8, 2023)**  We are discouraged by the lack of visibility on costs and worry that even after the reset, the risk of over-earning remains.  Ultimately, topline performance and market share will drive earnings growth, but without more confidence in near-term earnings, we cannot recommend owning shares.  We like the growth opportunities ahead for UNFI, including the ability to leverage existing capabilities, but we are not confident in our ability to anticipate cost surprises.[183]

88.    The impact of limited visibility into UNFI's future performance due to legacy data management system limitations is consistent with the materialization of a risk disclosed on March 8, 2023.  Specifically, UNFI had previously disclosed on March 8, 2023 that it had limited visibility into its future financial performance, including future procurement gains.  For example, management stated during its Q2 2023 earnings conference call that "the state of [UNFI's] legacy data management and infrastructure … severely limited [the Company's] ability to fully assess and forecast the impact of [procurement gains]."[184]  Management also stated:

> [We would] like to address the lack of visibility into the factors that affected our quarter….  We did not fully appreciate the benefit to last year's gross profit from buying inventory in advance of supplier price increases in the sequentially rising inflationary environment.

---

[181] "Margin Pressure Continues as Disinflation Limits Procurement Opportunities; Reiterate Neutral," *Goldman Sachs*, June 7, 2023 (emphasis added).

[182] "UNFI: Another Surprising Guidance Cut as Pricing Lap and Macro Wreaks Havoc; Remain Sidelined Despite Sharp Sell-off," *Wells Fargo*, June 7, 2023 (emphasis added; emphasis in original removed).

[183] "UNFI: Earnings Power Difficult to Determine," *Roth MKM*, June 8, 2023.

[184] UNFI Q2 2023 Earnings Call, pp. 3–4.  *See also* UNFI Q2 2023 Earnings Call, p. 3 ("At the time, we did not have full visibility and sufficient detail into the commercial drivers of the benefits due to legacy issues with digital infrastructure limiting real-time data which is required to fully understand and forecast these profitability drivers. We were able to understand these issues towards the end of the quarter due to the significant intra-period volatility, which has led us to a different set of financial expectations for [FY] 2023 compared to our December [2022] earnings call.").

[T]he state of our legacy data management and infrastructure, which we are addressing in our transformation agenda, severely limited our ability to fully assess and forecast the impact of these dynamics, both last year and this year.[185]

89.    I understand Plaintiff Dan Sills appears to have discussed the Company's legacy data management system limitations as well following the Q2 2023 disclosures on March 8, 2023 as evidenced by a text exchange he had on March 11, 2023 with another individual, stating:

[Mr. Sills:]  That [Q2 2023] earnings call is pretty concerning.  *They are going to have these issues for some time and don't know the scope of the problems yet due to their systems.*

[Other individual:]  At least couple quarters.  I hope I'm wrong.

[Mr. Sills:]  At least.  It's a margin reset driven by inflation and pricing that they won't get….  I am worried how long it will take them to turn this around and that they don't have a good handle on the business.[186]

90.    In addition, securities analysts noted following the March 8, 2023 alleged corrective disclosure that UNFI's then guidance may be at risk of not being realized given the Company's limited visibility[187] into the financial benefits from inflation-related forward buying due to issues with its legacy digital systems.  For example:

*(Roth MKM, March 8, 2023)*  We are discouraged by the lack of visibility on costs and worry that even after the reset, the risk of over-earning remains.[188]

*(Wells Fargo, March 8, 2023)*  A Conservative Approach to Estimates Seems Warranted:  Given management's admitted lack of visibility, *we are taking our 2023 estimate to the low end of guidance.*[189]

---

[185] UNFI Q2 2023 Earnings Call, pp. 3–4.

[186] PLTF_UNFI_003845–877, at 870–871.

[187] *See* "Sour Systems Spoil the Quarter," *Deutsche Bank*, March 8, 2023 ("UNFI had no visibility into the pricing benefits experienced over the last five quarters because of antiquated systems."); "Margin Profile Reset Lower; Reiterate Neutral," *Goldman Sachs*, March 8, 2023 ("Gross margin declined -70 bps y/y to 14.0% primarily due to elevated procurement gains in the prior year related to inventory buying ahead of rising inflation, which is not repeatable in the current disinflationary environment while management noted limited visibility previously given legacy digital infrastructure.").

[188] "UNFI: Visibility Not There - Downgrade to Neutral," *Roth MKM*, March 8, 2023.

[189] "UNFI: Q2 Disappoints as End of Historic Inflation Cycle Begins to Show Its Challenges," *Wells Fargo*, March 8, 2023 (emphasis added; emphasis in original removed).

**(3)    Market Commentary Concerning Factors Other Than Inflation-Related Forward Buying**

91.    Another category of reported reasons for UNFI's below-consensus earnings for Q3 2023 and its downward revision to FY 2023 guidance that did not reveal new information underlying the Alleged Truth comprises factors other than inflation-related forward buying.  Since these factors do not concern inflation-related forward buying, they could not have revealed the Alleged Truth and represent confounding information.  Specifically, securities analysts discussed how elevated shrink,[190] shifting consumer spending, and continued weak supplier promotional activity—all of which are factors other than inflation-related forward buying—contributed to UNFI's below-consensus earnings and downward revision to its FY 2023 guidance.  For example:

> *(BTIG, June 7, 2023)*  The [below-consensus] results also presented elevated shrink, a more cautious consumer, and retail share shifts as new items that added to the wall of challenges…. UNFI reported [Q3 2023] sales that was essentially in-line to a touch light of our expectations, however, profitability was well below our forecast, driven by many of the same factors from last quarter. *Management's commentary also suggested a retrenchment in consumer spending, greater focus on value and higher shrink are new challenges that all played a part in the poor results*.[191]

> *(Wolfe Research, June 7, 2023)*  Units / Volumes. Units saw a slightly steeper decline versus prior quarters[.] Management believes the weakness is a result of a *softer consumer* (eg lower SNAP benefits) and *share loss to mass merchants*…. *Promotional activity* (% of items and magnitude) *remains below pre-pandemic levels*, which UNFI expects to continue through its [FY 2023] (July end).[192]

> *(BMO, June 8, 2023)*  Procurement gains came in worse than anticipated, *shrink was added to the list of margin pressures, running ~40bps above levels two years*

---

[190] Plaintiffs also note that elevated shrink and reduction in supplier promotional activity are factors that affected UNFI's financial performance in Q3 2023.  *See* Complaint, ¶ 113 (emphasis removed) ("On June 7, 2023, before the market opened, UNFI revealed that lower procurement gains eroded gross margins even further, reporting in a press release that [Q3 2023] gross profit decreased $12 million due to 'lower inflationary benefits primarily related to reduced procurement gains, as well as higher shrink'"), ¶ 121 ("This revision ([FY 2023 guidance]) reflected 'an assumption that procurement gain opportunities continue to decline' and that 'supplier promotional activity [will] remain below pre-pandemic levels,' Defendant Howard explained during the [Q3 2023] Earnings Call.").

[191] "Perfect Storm of Challenges; Retrenching Consumer, Moderating Inflation and Shrink Lead to Another Guidance Cut; Maintain Neutral," *BTIG*, June 7, 2023 (emphasis added; emphasis in original removed).

[192] "United Natural Foods (UNFI) - Mixed F'3Q Results as Trends Decelerate," *Wolfe Research*, June 7, 2023 (emphasis added).

*ago (~$125MM to EBITDA)* and the *promotional environment remains relatively unchanged*.[193]

*(Roth MKM, June 8, 2023)*  A combination of: 1) poor procurement-timing benefit attribution; 2) *industry headwinds… has revised business outlook downward from $5 in EPS to ~$2.…*  With inflation continuing to subside and *value-oriented retailers taking marketplace share*, we don't envision current headwinds abating in the near-term.[194]

*(UBS, June 8, 2023)*  UNFI's 3Q results were pressured by external & internal factors[.] *[C]onsumer trade down to mass merchants and value players negatively impacted UNFI's natural & organic business, impacting gross profit dollar growth through the channel.  Shrink was also an issue*.[195]

92.    I also reviewed all the securities analyst reports published on or after June 7, 2023 that were available to me.  None commented that UNFI's Q3 2023 disclosures revealed that inflation-related forward buying had been a significant but temporary driver of gross margin, which is consistent with the Alleged Truth already being public information before June 7, 2023.

93.    In sum, price changes experienced by UNFI Securities following the alleged corrective disclosure on June 7, 2023 are consistent with factors other than the revelation of new information underlying the Alleged Truth.

### 2.    September 26, 2023 (Q4 2023 Earnings Announcement)

94.    As discussed in ¶ 73 above, because the Alleged Truth was publicly available information by March 8, 2023, in efficient markets the Challenged Statements would not have impacted UNFI Securities prices on September 26, 2023.  Instead, based on my analysis of the September 26, 2023 alleged corrective disclosure and securities analyst reports released after the disclosure as detailed below, any UNFI Securities price changes following the alleged corrective disclosure on September 26, 2023 are consistent with factors other than the revelation of the Alleged Truth.

---

[193] "Despite Another Pullback Still More Risk for UNFI," *BMO*, June 8, 2023 (emphasis added).
[194] "UNFI: Earnings Power Difficult to Determine," *Roth MKM*, June 8, 2023 (emphasis added).
[195] "Will UNFI Put Up a United Front?," *UBS*, June 8, 2023 (emphasis added; emphasis in original removed).

### a)   UNFI's Q4 2023 Disclosures

95.   Before market open on September 26, 2023, UNFI issued a press release, in which the Company announced its Q4 2023 and FY 2023 financial results (for the period ending July 29, 2023) and announced FY 2024 financial guidance.[196]  UNFI also held an earnings conference call shortly after the earnings announcement to discuss its financial results, which was accompanied by the Q4 2023 earnings call presentation.[197]

96.   In its earnings release, UNFI reported Q4 2023 adjusted EBITDA of $93 million (compared to $213 million in Q4 2022) and adjusted EPS (loss) of -$1.15 (compared to adjusted EPS of $0.63 in Q4 2022).[198]  UNFI also reported gross margin, excluding the non-cash LIFO charge, of 13.5% (compared to 15.2% in Q4 2022).[199]  UNFI explained in its Q4 2023 earnings press release that "profitability declined primarily due to a decrease in inflation driven procurement gains and elevated shrink."[200]  During the Company's Q4 2023 earnings call, UNFI executives stated that UNFI's earnings results "finished towards the high end" of the guidance that UNFI provided on June 7, 2023.[201]  Analysts noted that UNFI's Q4 2023 financial results were mixed, with revenues in-line with expectations and profitability slightly above expectations.[202]

97.   Although Q4 2023 financial results were generally in-line with or slightly above market expectations, UNFI's FY 2024 guidance that was announced on September 26, 2023, which included adjusted EBITDA in the range of $450–$550 million and adjusted EPS in the range

---

[196] UNFI Q4 2023 Earnings Release; UNFI Q4 2023 Earnings Call.  Note that the Company had previously withdrawn its FY 2024 financial targets on March 8, 2023.  *See* UNFI Q2 2023 Earnings Release, p. 1; UNFI Q2 2023 Earnings Call, p. 6.

[197] UNFI Q4 2023 Earnings Call; UNFI Q4 2023 Earnings Conference Call Slides, September 26, 2023.

[198] UNFI Q4 2023 Earnings Release, p. 2.

[199] UNFI Q4 2023 Earnings Release, p. 2.

[200] UNFI Q4 2023 Earnings Release, p. 1.

[201] *See* UNFI Q4 2023 Earnings Call, p. 2.

[202] *See, e.g.*, "Outlook Suggests Uncertainty Persists; Procurement Losses, Shrink and Higher Incentive Compensation Weighs on Earnings - Remain Neutral," *BTIG*, September 26, 2023 (emphasis removed) ("EBITDA Slightly Better Than Expected on Softer Sales.  UNFI posted slightly better than expected [Q4 2023] adjusted EBITDA, despite modestly weaker sales."); "Profitability Bottoming Process to Deepen in F24," *BMO*, September 26, 2023 (emphasis removed) ("F4Q23 Sales in Line, Adjusted EBITDA Beat.  UNFI reported [Q4 2023] adjusted EBITDA of $93mm above our forecast of $82mm and consensus of $84mm, and towards the high-end of the implied guidance range of $63-$103mm….  Sales were $7.4bn …, roughly in line with our estimate and consensus of $7.5bn"); "United Natural Foods (UNFI) – F'24 Guidance Disappoints," *Wolfe Research*, September 26, 2023 ("UNFI reported sales of $7.42bn (vs [FactSet Consensus] $7.47bn, implied guide of $7.25-7.65bn) [and] [a]djusted EBITDA of $93mm beat [FactSet Consensus] of $84mm (guidance implied $63-103mm).").

of -$0.88–$0.38, was below analyst forecasts as discussed below.[203]  The Company linked its FY 2024 guidance to multiple factors, including the impact of moderating inflation and the normalization of performance-based incentive compensation.  For example, UNFI stated in its earnings release that this guidance "reflect[ed] lower levels of anticipated procurement gains, driven by moderating levels of inflation, as well as the restoration of performance-based incentive cash compensation in [FY 2024]."[204]  UNFI also stated that it expected "further headwinds as [it] continue[d] to cycle elevated inflationary benefits during the first half of [FY] 2024."[205]  In addition, management noted, during the Company's Q4 2023 earnings conference call, that UNFI's FY 2024 adjusted EBITDA guidance range of $450–550 million "reflect[ed] approximately $125 million in lower anticipated procurement gains, primarily in last year's first and second quarters [(i.e., Q1 2023 and Q2 2023)] resulting from the continued decline in the number of supplier price increases [and] include[d] normalized performance-based incentive compensation accrual of approximately $62 million [(compared to FY 2023, which was not material)]."[206]

98.     In the Complaint, Plaintiffs allege that on September 26, 2023 UNFI reported "a 56.3% decline in [a]djusted EBITDA to $93 million," which the Company "attributed to 'lower levels of procurement gain opportunities resulting from decelerating inflation.'"[207]  Plaintiffs further claim that analyst commentary following this earnings announcement "confirms that the massive extent of forward buying and its unbelievable impact on UNFI's profits was not disclosed throughout the [Proposed] Class Period and was instead obscured by Defendants' misleading statements."[208]  Plaintiffs allege that following the Q4 2023 disclosures, "the Company's stock price fell $5.19, or 27% … on September 26, 2023."[209]  As discussed in the next section, in efficient markets, stock price declines (and changes in prices of UNFI Securities other than common stock) following the September 26, 2023 alleged corrective disclosure are consistent with factors other than the revelation of the Alleged Truth.

---

[203] UNFI Q4 2023 Earnings Release, p. 3.
[204] UNFI Q4 2023 Earnings Release, p. 3.
[205] UNFI Q4 2023 Earnings Release, p. 1.
[206] UNFI Q4 2023 Earnings Call, p. 6.
[207] Complaint, ¶¶ 18, 125.
[208] Complaint, ¶ 19.
[209] Complaint, ¶¶ 18, 128, 217.

**b)      Market Commentary Following UNFI's Q4 2023 Disclosures**

99.      Securities analyst commentary following the Q4 2023 earnings announcement discussed UNFI's stock price decline on September 26, 2023 in the context of the Company's FY 2024 earnings guidance that was below analysts' forecasts.  For example:

> ***(BTIG, September 26, 2023)***  *[W]e believe shares were under pressure as the [FY 2024] outlook suggests visibility remains poor and progress on reversing the procurement gains and elevated shrink have yet to materialize.… [W]e believe shares are under pressure from the lower adjusted EBITDA outlook, forecasted to be $450MM-$550MM compared with our $575MM estimate and consensus of $622MM*, and lack of discernable progress on many initiatives.  *This guidance assumes* low-to-mid-single digit inflation and *approximately $125MM of drag from lapping procurement gains, mostly confined to [the first half of FY 2024]*.[210]

> ***(Deutsche Bank, September 26, 2023)***  While [Q4 2023] results beat a relatively low bar, it marked *another disappointing update from UNFI as it introduced [FY 2024] guidance significantly below consensus (EBITDA 19% below), sending shares 25% lower*.[211]

> ***(Guggenheim, September 26, 2023)***  CEO Sandy Douglas is steering UNFI through a difficult combination of evaporating procurement gains, the slow return of vendor promotions, and the wholesale transformation of supply chain/IT capabilities in the pursuit of profitable secular growth.  With initial [FY 2024] adjusted EBITDA guidance ~20% below the consensus and leverage poised to expand to ~4x, the ~27% sell-off (vs S&P down ~1.5%) is hardly surprising to us, especially with macro concerns rising.[212]

100.      Most securities analysts covering UNFI that published reports within one week of UNFI's Q4 2023 disclosures focused specifically in their title or lead paragraph on UNFI's FY 2024 financial guidance.  Specifically, out of 11 securities analysts that published reports within one week of UNFI's Q4 2023 disclosures, 10 securities analysts[213] focused on UNFI's below-consensus FY 2024 financial guidance in either the title or lead paragraph of their reports.

[210] "Outlook Suggests Uncertainty Persists; Procurement Losses, Shrink and Higher Incentive Compensation Weighs on Earnings - Remain Neutral," *BTIG*, September 26, 2023 (emphasis added).
[211] "Another Day, Another Disappointment," *Deutsche Bank*, September 26, 2023 (emphasis added).
[212] "UNFI - Cycling $250M of Procurement Gains While Transforming the Business—Lowering Our 2024 EBITDA Estimate by ~20%; Stay Neutral Rated," *Guggenheim*, September 26, 2023.
[213] "Profitability Bottoming Process to Deepen in F24," *BMO*, September 26, 2023; "Cutting Target Price and EBITDA Forecasts Again," *BMO*, September 26, 2023; "Outlook Suggests Uncertainty Persists; Procurement

101.    As discussed, however, UNFI's FY 2024 guidance did not reveal the Alleged Truth.  As discussed in **Section VIII.A**, the Alleged Truth was public information by March 8, 2023.  Further, I understand from Counsel that Plaintiffs do not allege that UNFI should have provided earlier in the Proposed Class Period the FY 2024 guidance it ultimately provided on September 26, 2023 and that Plaintiffs' allegations regarding financial guidance have been dismissed.

102.    Moreover, based on my review of the UNFI Q3 2023 disclosures and market commentary that followed, none of the reported reasons for UNFI's below-consensus FY 2024 guidance revealed the Alleged Truth because it was already public information that inflation-related forward buying had been a significant but temporary driver of UNFI's gross margin, as I discuss in **Section VIII.A**.  As described below, the reported reasons for the below-consensus FY 2024 earnings guidance are consistent with factors that did not reveal new information underlying the Alleged Truth, namely:  (i) the materialization of previously disclosed risks that increased macroeconomic pressures from moderating inflation or deflation would further reduce the benefits to profitability from inflation-related forward buying opportunities achieved in prior quarters; (ii) the materialization of previously known risks that UNFI's financial guidance would be realized below expectations due to UNFI's lack of visibility into its future performance; and (iii) factors other than inflation-related forward buying, including shrink, changes in consumer spending, moderated supplier promotional activity, and increased retail price competition.

> **(1)** **Market Commentary Concerning the Materialization of the Previously Disclosed Risks of the Loss of Inflation-Related Forward Buying Opportunities Due to Increased Macroeconomic Pressures Leading to Moderating Inflation and Deflation**

---

Losses, Shrink and Higher Incentive Compensation Weighs on Earnings - Remain Neutral," *BTIG*, September 26, 2023; "UNFI: 4Q23 Earnings Beat Us and Consensus but FY24 Earnings Guidance Set Well Below Us and Consensus," *CL King*, September 26, 2023; "Another Day, Another Disappointment," *Deutsche Bank*, September 26, 2023; "UNFI - Cycling $250M of Procurement Gains While Transforming the Business—Lowering Our 2024 EBITDA Estimate by ~20%; Stay Neutral Rated," *Guggenheim*, September 26, 2023; "UNFI: Weak Guide - Cooperation Agreement," *Roth MKM*, September 26, 2023; "What's the Initial View on UNFI's 4Q'23 Results?," *UBS*, September 26, 2023; "UNFI: FQ4 Highlights Challenges, but Update About as We Expected; Remain Sidelined," *Wells Fargo*, September 26, 2023; "United Natural Foods (UNFI) - F'24 Guidance Disappoints," *Wolfe Research*, September 26, 2023; "UNFI: Q4 Adjusted EBITDA Beats, but FY24 Earnings Guidance Set Well Below Street on Continued Drag from Lower Inventory Holding Gains, as Confirmed by Our Proprietary Model," *CL King*, September 27, 2023; "Disinflation Continues to Pressure Margins," *Goldman Sachs*, September 27, 2023; "UNFI: Profitability Not Matching Value-Added," *Roth MKM*, September 27, 2023; "Taking Inventory of a Challenging Year Ahead," *UBS*, September 27, 2023.

103.     With respect to the first risk materializing, securities analysts discussed the impact of increased macroeconomic pressures on procurement gains as one of the reasons for UNFI's below-consensus FY 2024 earnings guidance.  Specifically, analysts discussed the effect of moderating inflation on UNFI's expected gross margin due to the loss of inflation-related forward buying.  For example:

> *(Deutsche Bank, September 26, 2023)*  Further, the [FY 2024] guidance is not without risk, in our view, which includes expectations of [low single digits/mid single digits] inflation, a divergence from the expectations of peers and food retailers.[214]

> *(BTIG, September 26, 2023)*  [W]e believe shares are under pressure from the lower adjusted EBITDA outlook, forecasted to be $450MM-$550MM compared with our $575MM estimate and consensus of $622MM, and lack of discernable progress on many initiatives. *This guidance assumes low-to-mid-single digit inflation* and approximately $125MM of drag from lapping procurement gains, mostly confined to [the first half of 2024].[215]

> *(Wells Fargo, September 26, 2023)*  Margin Issues Continue in Q4 [2023] as Top-Line Headwinds Accelerate:  *Margin pressure from the lap of robust procurement gains, moderating inflation, and elevated shrink all bled into Q4 [2023], and look to be [first half of FY 2024] headwinds.*[216]

> *(Goldman Sachs, September 27, 2023)*  *Disinflation continues to pressure margins*….  Key takeaways: 1) margin pressure increased in [Q4 2023], but should sequentially improve from here, with the rate of change in inflation likely the key factor; 2) solid revenue growth supported by inflation and new wholesale business, partially offset by incremental weakness in retail as price competition increases in its markets; and 3) *[FY 2024] guidance came in well below expectations*, while upside potential is largely linked to vendor promotions and a more favorable inflationary environment.[217]

104.     However, the impact of increased macroeconomic pressures from moderating inflation or deflation is the materialization of a risk disclosed on March 8, 2023, as previously discussed in

---

[214] "Another Day, Another Disappointment," *Deutsche Bank*, September 26, 2023.

[215] "Outlook Suggests Uncertainty Persists; Procurement Losses, Shrink and Higher Incentive Compensation Weighs on Earnings - Remain Neutral," *BTIG*, September 26, 2023 (emphasis added).

[216] "UNFI: FQ4 Highlights Challenges, but Update About as We Expected; Remain Sidelined," *Wells Fargo*, September 26, 2023 (emphasis added; emphasis in original removed).

[217] "Disinflation Continues to Pressure Margins," *Goldman Sachs*, September 27, 2023 (emphasis added).

**Section VIII.B.1.b).(1)**, rather than the revelation of new information underlying the Alleged Truth.

> **(2)** **Market Commentary Concerning the Materialization of Previously Known Risks Due to Lack of Visibility**

105.    With respect to the second risk materializing, analysts discussed the impact on UNFI's gross margin from limited visibility into future performance due to legacy data management system limitations as another reason for UNFI's below-consensus FY 2024 earnings guidance. For example:

> *(BTIG, September 26, 2023)*  UNFI posted another muted quarter this morning, slightly topping our and consensus earnings forecasts despite modestly weaker sales.  That said, we believe shares were under pressure as the [FY 2024] outlook suggests visibility remains poor and progress on reversing the procurement gains and elevated shrink have yet to materialize.  We expect [FY 2024] to be a transition year, as the company invests to upgrade its systems for better reporting and effectiveness, while lapping procurement gains in the first-half and working to normalize shrink.[218]

> *(Deutsche Bank, September 26, 2023)*  The visibility into UNFI's earnings power also remains low and we think UNFI will remain a show-me story.[219]

> *(Wells Fargo, September 26, 2023)*  Weak [Q4 2023] results beat a low bar and guidance was below consensus, but the update should not have been surprising given recent issues seemed likely to bleed into [FY 2024].  UNFI has a lot of wood to chop to restore credibility and improve profitability.[220]

> *(Goldman Sachs, September 27, 2023)*  We believe this disinflationary cycle has impacted UNFI to a greater degree given the limited integration between the SuperValu assets (acquisition closed in Oct 2018) and its legacy infrastructure, which results in low visibility on procurement, although it continues to improve modestly with process changes, noting the multi-year turnaround remains underway.[221]

---

[218] "Outlook Suggests Uncertainty Persists; Procurement Losses, Shrink and Higher Incentive Compensation Weighs on Earnings - Remain Neutral," *BTIG*, September 26, 2023.
[219] "Another Day, Another Disappointment," *Deutsche Bank*, September 26, 2023.
[220] "UNFI: FQ4 Highlights Challenges, but Update About as We Expected; Remain Sidelined," *Wells Fargo*, September 26, 2023.
[221] "Disinflation Continues to Pressure Margins," *Goldman Sachs*, September 27, 2023.

106.    However, the impact of limited visibility into UNFI's future performance due to legacy data management system limitations is the materialization of a risk known on March 8, 2023, as I previously discussed in **Section VIII.B.1.b).(2)**, rather than the revelation of new information underlying the Alleged Truth.

### (3)    Market Commentary Concerning Factors Other Than Inflation-Related Forward Buying

107.    Another category of reported reasons for the below-consensus FY 2024 earnings guidance comprises factors other than inflation-related forward buying.  Since these factors do not concern inflation-related forward buying, they would not have revealed the Alleged Truth and are confounding information.  Specifically, securities analysts discussed that elevated shrink,[222] shifting consumer spending, moderated supplier promotional activity, and increased retail price competition, all of which are factors other than inflation-related forward buying, contributed to UNFI's below-consensus FY 2024 earnings guidance.  For example:

> **(BMO, September 26, 2023)**  *[W]e continue to see longer-term structural headwinds for UNFI, particularly as the grocery environment becomes more competitive* and the company's investments in automation are likely to take many years and weigh on [free cash flow].… *Retail Profitability Pressured by Significant Price Competition.*  Contrary to [Q3 2023], when UNFI characterized the promotional environment as relatively unchanged, *UNFI noted tightening consumer demand, reductions in government support (including student loans), and "significant" price competition in primary Twin Cities market.*[223]

> **(Guggenheim, September 26, 2023)**  In the [near-term], uncertainty persists around food volumes, the cadence of vendor promotions, and the efficacy of the still-nascent strategic initiatives.[224]

> **(Wells Fargo, September 26, 2023)**  Guidance Falls Short of Consensus: Management set a seemingly low bar with $450-550 million EBITDA guidance,

---

[222] Plaintiffs also note that elevated shrink is a factor that affected UNFI's financial performance in Q4 2023.  *See* Complaint, ¶ 125 ("On September 26, 2023, before the market opened, UNFI announced its [Q4 2023] financial results in a press release … including net sales of $7.4 billion and a 56.3% decrease in Adjusted EBITDA to $93 million.  In the [Q4 2023] Press Release, Defendant Douglas stated that 'profitability declined primarily due to a decrease in inflation driven procurement gains and elevated shrink.'").

[223] "Cutting Target Price and EBITDA Forecasts Again," *BMO*, September 26, 2023 (emphasis added).

[224] "UNFI - Cycling $250M Of Procurement Gains While Transforming The Business—Lowering Our 2024 EBITDA Estimate By ~20%; Stay NEUTRAL Rated," *Guggenheim*, September 26, 2023.

well below consensus ($622 million) but closer to our estimate.… Could Retail Segment be Canary in the Coal Mine? *Materially weaker results in the retail segment underscore what may lie ahead for conventional players (and UNFI's customer base) as the environment becomes increasingly difficult.… Management cited a weaker consumer, more intense competition, and price investments to drive the comp.*[225]

*(Wolfe Research, September 26, 2023)* UNFI's guidance came in substantially softer than expected (EBITDA of $450-550mm vs FC $622mm) as profitability continues to struggle. *Commentary on promotions also suggested a more competitive environment, in-line with our early September checks and investor polling.…* Promotions – Management is seeing an acceleration in retail promotions, which weighed on [Q4 2023] retail results and should continue in [FY 2024].[226]

*(Goldman Sachs, September 27, 2023)* [FY 2024] guidance came in well below expectations, while upside potential is largely linked to *vendor promotions and a more favorable inflationary environment.* We reiterate our Neutral rating given 1) a relatively stable to rising inflationary environment is the most supportive for UNFI's cost-plus contract structure, while we anticipate continued disinflation in the near-term; 2) *the long-term trend of market share losses by conventional/independent grocers likely remains a headwind*; 3) *the potential risk of contract losses and/or an increased competitive environment as retailers might continue to bring more distribution in-house.*[227]

*(UBS, September 27, 2023)* *Shrink remains a challenge. Plus, consumers are increasingly gravitating to discount players such as [Walmart Inc.] for groceries, which reduces demand for UNFI's higher margin independent channel.*[228]

108.    I also reviewed all 16 analyst reports published on or within one week after September 26, 2023 that were available to me. None commented that UNFI's Q4 2023 disclosures revealed that inflation-related forward buying had been a significant but temporary driver of gross margin. A report by analysts at Guggenheim commented on the total magnitude of the impact of inflation-related forward buying on gross margin, stating "[w]ith initial 2024 adjusted EBITDA guidance ~20% below the consensus and leverage poised to expand to ~4x, the ~27% sell-off (vs

---

[225] "UNFI: FQ4 Highlights Challenges, but Update About as We Expected; Remain Sidelined," *Wells Fargo*, September 26, 2023 (emphasis added; emphasis in original removed).

[226] "United Natural Foods (UNFI) – F'24 Guidance Disappoints," *Wolfe Research*, September 26, 2023 (emphasis added; emphasis in original removed).

[227] "Disinflation Continues to Pressure Margins," *Goldman Sachs*, September 27, 2023 (emphasis added).

[228] "Taking Inventory of a Challenging Year Ahead," *UBS*, September 27, 2023 (emphasis added).

S&P down ~1.5%) is hardly surprising to us, especially with macro concerns rising.…  To be honest, we continue to be very surprised by the magnitude of the procurement gains [and by] our estimate, they totaled $250 million during [the second half of FY 2022/first half of FY 2023] and have shrunk to virtually nothing."[229]  None of the other 15 analyst reports published within one week of UNFI's Q4 2023 disclosures commented on the total magnitude of inflation-related forward buying in prior quarters.

109.    In sum, price changes experienced by UNFI Securities following the alleged corrective disclosure on September 26, 2023 are consistent with factors other than the revelation of new information underlying the Alleged Truth.

### IX.    Dr. Feinstein Has Failed to Provide a Class-Wide Methodology Capable of Measuring Damages for Members of the Proposed Class in a Manner Consistent with Plaintiffs' Theory of Liability

110.    Dr. Feinstein states that he was asked "to determine whether Section 10(b) and Section 20(a) damages in this matter can be computed for all [Proposed] Class members using a common methodology that is consistent with Plaintiffs' theory of liability for each cause of action."[230]  As explained in this section, as an economic matter, Dr. Feinstein has failed to provide a class-wide methodology capable of measuring damages for UNFI Securities in a manner consistent with Plaintiffs' theory of liability.  This is the case for both UNFI common stock (**Section IX.A**) and for UNFI call and put options (**Section IX.B**).

### A.    Methodology for Calculating Damages for UNFI Common Stock Purchasers

#### 1.    Dr. Feinstein's Opinions Regarding Damages for UNFI Common Stock Purchasers

111.    In Section X of his report (titled "Common Damages Methodology"), Dr. Feinstein states that "[t]he out-of-pocket damages methodology is consistent with Plaintiffs' theory of liability and can be applied commonly for all [Proposed] Class members to compute their respective

---

[229] "UNFI - Cycling $250M Of Procurement Gains While Transforming The Business—Lowering Our 2024 EBITDA Estimate By ~20%; Stay Neutral Rated," *Guggenheim*, September 26, 2023.
[230] Feinstein Report, ¶ 2.

damages pursuant to their Section 10(b) and Section 20(a) claims."[231]  He also states that "damages for all [Proposed] Class members with claims under Section 20(a) can be computed using the same common methodology" as the one he describes for Section 10(b) damages.[232]

112.    With respect to damages for UNFI common stock, Dr. Feinstein states that "out-of-pocket damages are measured as the difference between the amount of stock price inflation at purchase and the amount of inflation in the stock price at sale."[233]  He defines inflation as "the difference between the observed market price of [the stock] and what [the stock] price would have been but for the fraud."[234]  Dr. Feinstein claims that "[c]onstruction of the inflation ribbon," which he defines as "a time series of the difference between a security's actual price observed in the marketplace, and the estimated price that the security would have traded at each day had there been full disclosure," "generally employs event study analysis, combined with widely used and generally accepted valuation tools."[235]

113.    In particular, he claims that "[t]he inflation ribbon is often constructed by working chronologically backwards from the final corrective disclosure back to the start of the [Proposed] Class Period, accounting for alleged fraud-related residual price declines as they occurred."[236]  Therefore, Dr. Feinstein appears to be asserting that residual returns from event study analysis are "often" used to calculate the amount of inflation on each day.[237]

114.    Dr. Feinstein then asserts that "[t]o the extent that there may be specific issues complicating the quantification of artificial inflation encountered in the execution of the out-of-pocket damages methodology due to any potentially unique facts and circumstances of this case, the standard tools of valuation analysis can be applied as needed to value the UNFI Securities in the but-for scenario, and that [the] but-for price can then be compared with the actual prevailing market price to arrive at the measure of artificial inflation."[238]  Without providing further explanation, Dr. Feinstein asserts that his "reading of Plaintiffs' allegations and

---

[231] Feinstein Report, ¶ 200.
[232] Feinstein Report, ¶ 215.
[233] Feinstein Report, ¶ 206.
[234] Feinstein Report, ¶ 205.
[235] Feinstein Report, ¶ 211.ii.
[236] Feinstein Report, ¶ 211.ii.
[237] At his deposition, in response to the question, "If you were asked to do a loss causation analysis in this case, would you use this event study for purposes of doing that analysis?," Dr. Feinstein responded: "I'd almost certainly do an event study."  Feinstein Deposition, 204:20–205:2.
[238] Feinstein Report, ¶ 208.

[his] review of the experience of the Company over the course of the [Proposed] Class Period uncovered no facts or circumstances that are extraordinarily unusual or might make application of this methodology exceptionally difficult."[239]

### 2. Dr. Feinstein Has Failed to Address the Implications of Plaintiffs' Alleged Theory of Liability for the Ability of an Event Study or Other Valuation Tools to Estimate Inflation

115.    As mentioned above, Dr. Feinstein ultimately concludes that his "reading of Plaintiffs' allegations and [his] review of the experience of the Company over the course of the [Proposed] Class Period uncovered no facts or circumstances that are extraordinarily unusual or might make application of [the out-of-pocket] methodology exceptionally difficult."[240]  This conclusory assertion is insufficient, as an economic matter, to establish the existence of a class-wide methodology capable of measuring damages for UNFI common stock in a manner consistent with Plaintiffs' theory of liability in this matter, let alone being an actual damages methodology to estimate damages on a class-wide basis and consistently with Plaintiffs' theory of liability. Dr. Feinstein's assertion also lacks any disclosed analytical support and therefore cannot be replicated or tested against the circumstances of the present litigation.

116.    From the perspective of a financial economist calculating damages, "out-of-pocket" damages and inflation are definitional concepts that must ultimately be calculated using some methodology that Dr. Feinstein does not identify.  Economic theory provides no assurance that "commonly used valuation tools,"[241] including an event study, can be used to compute inflation without assessing particular circumstances of a given litigation, irrespective of whether such circumstances are "extraordinarily unusual."[242]

117.    Moreover, even accepting Dr. Feinstein's claim that "out-of-pocket damages" can be calculated absent "extraordinarily unusual" circumstances as a matter of course, Dr. Feinstein would need to establish some theoretical and/or empirical basis, taking into account the nature of Plaintiffs' allegations and alleged theory of liability, as well as the Court's MTD Ruling which I understand has narrowed the allegations, that would let him conclude that there are no

---

[239] Feinstein Report, ¶ 211.iv.
[240] Feinstein Report, ¶ 211.iv.
[241] Feinstein Report, ¶ 210.
[242] Feinstein Report, ¶ 211.iv.

"extraordinarily unusual" circumstances such that he could conclude that a methodology to calculate inflation exists and can be feasibly and reliably implemented in the future. As discussed in **Section IX.A.2.a)**, he has established no such basis in his report, despite his apparent conclusion that there are no "extraordinarily unusual" circumstances in this matter. Moreover, as discussed in **Section IX.A.2.b)**, there are specific complicating circumstances in this matter arising from the implications of Plaintiffs' allegations and theory of liability, which Dr. Feinstein has failed to address, namely, that Plaintiffs characterize the Alleged Corrective Disclosures as materializations of risk.

a)      **Dr. Feinstein's Assumption That an Unspecified Methodology to Calculate Inflation Exists and Can Be Implemented in the Future Lacks Any Disclosed Analytical Support**

118.   From the perspective of a financial economist calculating damages, "out-of-pocket" damages and inflation are definitional concepts that must ultimately be calculated using some methodology that Dr. Feinstein does not identify beyond his high-level assertions regarding the use of an event study and "commonly used" valuation tools. As an economic matter, "out-of-pocket" damages and inflation do not, in and of themselves, constitute a methodology that can be used to perform the calculation of damages. Therefore, in order to eventually calculate inflation and damages, it is necessary to develop a methodology consistent with the relevant alleged theory of liability, assuming such a methodology exists. Economic theory provides no assurance that "commonly used" valuation tools can be used to compute inflation without assessing the particular circumstances of a given litigation. In fact, it may be the case that, despite Dr. Feinstein's claim that event study analysis, "valuation multiple models," "discounted cash flow (DCF) models," "scenario analysis," "generally accepted option pricing formulas," and "the literature regarding valuation effects of various factors such as reputation, transparency, governance, and the quality of internal controls"[243] are available as tools, he may not be able to apply those tools here to reliably calculate inflation.

119.   Dr. Feinstein discusses using an event study as a tool to be used in calculating inflation and damages.[244] As an economic matter, under some circumstances the value impact of the

_____

[243] Feinstein Report, ¶ 210.
[244] Feinstein Report, ¶¶ 204, 210–211. *See also* Feinstein Deposition, 205:1–6.

alleged misrepresentations could be measured using an event study applied on the day an alleged misrepresentation was made, assuming that one can isolate the price movement that is specific to the alleged misrepresentation (i.e., assuming one can reliably account for any confounding information). In other circumstances, a price decline following the revelation of allegedly corrective information can measure the impact of allegedly withheld information, again assuming that one can isolate the price movement specific to that revelation. Measuring value impact in this manner (i.e., using an event study methodology to isolate company-specific price movements on alleged misrepresentation dates or dates when allegedly corrective information was revealed) can therefore, under certain circumstances, yield a measure of inflation based on the observed changes in the stock price.

120.    However, calculations of inflation based on observed changes in the stock price due to alleged misrepresentations or alleged corrective disclosures alone may not be possible for reasons including differences between the information allegedly withheld from the market and the information that is ultimately revealed and alleged by plaintiffs to have caused investors' losses. This is particularly the case when the information ultimately revealed on a date of an alleged corrective disclosure is that a risk had materialized but the allegedly withheld information is the presence of that risk (but not the certainty of the eventual outcome). As an economic matter, in this circumstance, any alleged inflation associated with the alleged misrepresentations would be different from the stock price decline that ultimately occurs when outcomes are revealed (i.e., when the risks materialize).

121.    If one were to conclude that it is not reasonable to measure the impact of information throughout a given class period only using observed price changes at the time the alleged misrepresentations occurred or at the time the truth about the alleged fraud was revealed, it would be necessary to ascertain whether other appropriate valuation techniques exist to reliably calculate inflation given plaintiffs' alleged theory of liability and whether the data required to apply those techniques are available. In other words, a financial economist would need to carefully consider the allegations and their implications to determine whether "out-of-pocket" inflation-based damages that are consistent with the theory of liability in the case can reliably be calculated on a class-wide basis. A mere statement that an expert's "reading of Plaintiffs' allegations and [his] review of the experience of the Company over the course of the [Proposed]

Class Period uncovered no facts or circumstances that are extraordinarily unusual or might make application of [the out-of-pocket] methodology exceptionally difficult"[245] is not sufficiently detailed to be replicable and does not constitute an economic basis to conclude that inflation can ultimately be calculated.

122.    Dr. Feinstein asserts that "[v]aluation analysis is undertaken continuously, every day, for virtually every publicly traded security, and these tools address the very complexities that could potentially be encountered in the course of computing artificial inflation and damages in this case."[246]  However, even if "[v]aluation analysis is undertaken continuously, every day, for virtually every publicly traded security," the challenge that Dr. Feinstein has failed to address is how he could at a later stage calculate damages (let alone to provide a methodology to do so), in this case, given the specific complication discussed in the following section, that is, that the alleged disclosures represent the materialization of risks.  At deposition, Dr. Feinstein also failed to provide any specificity regarding the damages methodology he would apply in this matter.[247]  For example, in response to a question whether, "[in] an instance where the materialization of the risk is not inevitable, the stock price inflation attributable to the understatement of the risk may be different from the stock price impact attributable to the materialization of the risk," Dr. Feinstein appeared to agree and stated that "case-specific analysis" would be needed,[248] but did not articulate a methodology or otherwise explain how he could or would measure any stock price inflation given the allegedly under-disclosed risks here in this case.

---

[245] Feinstein Report, ¶ 211.iv.

[246] Feinstein Report, ¶ 209.

[247] *See, e.g.*, Feinstein Deposition, 222:1–15 (emphasis added) ("*Q. You haven't yet made that determination as to what the most appropriate tool is, correct? A. That's right*.  But I know that at least one of them will work. I mean, probably more because I see valuation analysts doing it. Q. Well, your answer concedes that some tools may be more appropriate than others, correct? A. That's right.  And *I have not yet made the determination as to which is the most appropriate valuation tool*."); 244:10–20 (emphasis added) ("Q. Now, you're saying that out-of-pocket damages doesn't -- it accommodates a whole range of tools because it's intended to be widely used and flexible, correct? A. The valuation tools I mean, yeah. So it's -- it allows for – it's not constrained to use a particular valuation formula. It's not constrained to use a particular valuation formula. *It accommodates whatever valuation formula is deemed to be correct for the case at hand*."); 246:24–247:10 (emphasis added) ("Q. And so just to make sure that we're clear, *you haven't evaluated which valuation formula is deemed to be correct for this case? A. That's right*. I'm going to make that decision if and when I do the loss causation and damages analysis. It would be imprudent to lock myself into a formula now, having not yet done the analysis -- having not yet done the loss causation and damages analysis.").

[248] Feinstein Deposition, 237:4–12 ("Q. In an instance where the materialization of the risk is not inevitable, the stock price inflation attributable to the understatement of the risk may be different from the stock price impact attributable to the materialization of the risk, correct?  A. That's right. That depends -- so that calls for a case-specific analysis.").

> **b)**    **Dr. Feinstein Has Failed to Provide a Methodology That Can Measure Stock Price Inflation Arising from Allegations of Under-Disclosed Risks**

123.    With respect to each Alleged Corrective Disclosure, I understand that Plaintiffs discuss each such disclosure by reference to the materialization of under-disclosed risks:

> **December 7, 2022 (Q1 2023 Earnings Announcement):**  Defendants reported that gross profit rate decreased to 14.6% of net sales for [Q1 2023] (compared to 14.8% in the prior-year period).  This decrease was attributed to "changes in customer mix as we continue to grow sales with larger customers."  On this news, the Company's stock price fell $6.74, or 14.7%, to close at $38.84 per share on December 7, 2022, on unusually heavy trading volume. *This stock price decline was caused by a partial materialization of risks concealed by Defendants' false and misleading statements* over the previous four quarters about the reasons for the Company's improvements in its margins and Defendants' failure to disclose the atypical and elevated procurement gains over this time period.  Once inflation began to slow, UNFI's procurement gains decreased, which put pressure on UNFI's gross profit rate.[249]

> **March 8, 2023 (Q2 2023 Earnings Announcement):**  Defendants reported a $6 million year-over-year decline in gross profit for [Q2 2023], despite a 6% increase in net sales, which was "primarily driven by lower current period procurement gains due to the decelerating rate of inflation and lower inventory gains."  The Company's profits "were challenged as we did not repeat the significant level of procurement gains from rapidly accelerating inflation and inventory gains, due to supply chain volatility, that we experienced in the second quarter of last year."  On this news, the Company's share price fell $11.49, or 28.1%, to close at $29.47 per share on March 8, 2023, on unusually heavy trading volume.  Defendants' disclosures on March 8, 2023 *partially corrected the misleading impression created by Defendants' false and misleading statements during the [Proposed] Class Period and/or caused a partial materialization of the risks concealed by those false and misleading statements*.[250]

> **June 7, 2023 (Q3 2023 Earnings Announcement):**  UNFI revealed that lower procurement gains eroded gross margins even further, reporting that [Q3 2023] gross profit decreased $12 million due to "lower inflationary benefits primarily related to reduced procurement gains, as well as higher shrink."  The Company's gross profit rate declined to 13.3%, which was "primarily driven by the volatile macroeconomic environment, which led to lower inflationary benefits and reduced procurement gains."  As a result of the "pressure" on margins, the

---

[249] Complaint, ¶ 214 (emphasis added).

[250] Complaint, ¶ 215 (emphasis added; emphasis in original removed).

Company reduced its [FY] 2023 outlook again.  Among other things, this further revealed the extent to which UNFI's prior results had been benefited by UNFI's "strategic" forward buying and the extent to which the benefit had masked other problems impacting UNFI's profitability.  On this news, the Company's stock price fell $4.11, or 14.9%, to close at $23.46 per share on June 7, 2023, on unusually heavy trading volume.  The stock continued to fall the next trading day by $1.56, or 6.6%, to close at $21.90 per share on June 8, 2023.  Defendants' disclosures on June 7, 2023 *further corrected the misleading impression created by Defendants' false and misleading statements during the [Proposed] Class Period and/or caused a partial materialization of the risks concealed by those false and misleading statements.*[251]

**September 26, 2023 (Q4 2023 Earnings Announcement):**  UNFI revealed that it "expect[s] further headwinds as we continue to cycle elevated inflationary benefits during the first half of [FY] 2024."  As a result of the "lower levels of anticipated procurement gains," Defendants expected net sales of $30.9 to $31.5 billion and adjusted EBITDA of $450 to $550 million in [FY] 2024.  On this news, the Company's stock price fell $5.19, or 27%, to close at $13.73 per share on September 26, 2023, on unusually heavy trading volume.  Defendants' disclosures on September 26, 2023 *further corrected the misleading impression created by Defendants' false and misleading statements during the [Proposed] Class Period and/or caused a partial materialization of the risks concealed by those false and misleading statements.*[252]

124.    Under what I understand to be Plaintiffs' theory of liability and, in particular, allegations that the alleged corrective disclosures are corrective because the market did not fully appreciate the risks to UNFI's financial performance from loss of procurement gains from inflation-related forward buying, in order to identify a class-wide damages methodology consistent with Plaintiffs' theory of liability, Dr. Feinstein would need to provide a methodology to quantify damages stemming only from risks that may have been understated.  Dr. Feinstein has not done so in his report and, thus, has failed to provide a class-wide damages methodology consistent with Plaintiffs' theory of liability.

125.    Instead, Dr. Feinstein states that the "inflation ribbon is often constructed by working chronologically backwards from the final corrective disclosure back to the start of the [Proposed] Class Period, accounting for alleged fraud-related residual price declines as they occurred."[253]  As explained below, however, the residual price declines following alleged corrective disclosures

---

[251] Complaint, ¶ 216 (emphasis added; emphasis in original removed).
[252] Complaint, ¶ 217 (emphasis added).
[253] Feinstein Report, ¶ 211.ii.

measured using an event study model cannot alone be used to measure stock price inflation in a case where, as Plaintiffs appear to allege in the current matter, alleged corrective disclosures comprise materializations of allegedly under-disclosed risks.

126.    There is an important economic distinction between the market's reaction to the public disclosure of a risk of an adverse event (i.e., the reaction to a disclosure of the possibility that a negative outcome could occur), and the market's reaction to the materialization of that risk (i.e., the reaction to learning that a negative outcome did occur).  When a risk of an adverse outcome materializes, a company's stock price will generally decline even if that risk was fully disclosed to market participants; that is, the price will decline even if there was no prior inflation.[254]  Thus, stock price declines associated with materializations of risk overstate declines attributable to an allegedly undisclosed or understated risk and therefore overstate artificial inflation.  This means that any price declines in UNFI Securities following the December 7, 2022, March 8, 2023, June 7, 2023, and September 26, 2023 alleged materializations of risks regarding the loss of procurement gains from inflation-related forward buying cannot be assumed to measure inflation during the Proposed Class Period.

127.    To understand why stock price declines associated with materializations of risk overstate declines that would be attributable to a disclosure regarding an allegedly understated risk, consider the following illustrative example.  A company knows that there is a 30% probability it will lose a major customer, yet conceals this risk (i.e., the market believes there is a 0% probability).  The company loses the customer and its stock price declines.  The stock price decline when the company loses the customer represents the reaction to the certainty (100% probability) of losing the customer, while the allegedly concealed risk is that there was a 30% probability of losing the customer.  Since a stock price decline in response to a 100% probability of loss would be *larger* than in response to a 30% probability of that same loss, the stock price decline to the former (the "back-end price drop") is not a measure of stock price inflation due to the allegedly concealed risk.  To further illustrate this, suppose the "back-end price drop" were $10.  Had the company revealed the 30% probability that it would lose a major customer before this risk had materialized (i.e., before the probability of loss reached 100%), the hypothetical price absent the alleged concealed risk would have been lower than the actual price by $3, which

---

[254] *See, e.g.*, Skinner, Douglas J., and Richard G. Sloan, "Earnings Surprises, Growth Expectations, and Stock Returns or Don't Let an Earnings Torpedo Sink Your Portfolio," *Review of Accounting Studies* 7 (2002): 289–312.

is 30% of $10 in the above example where the market was assuming 0% probability. Using the price drop of $10 to measure inflation would overstate it by $7. Dr. Feinstein has not identified a methodology that would avoid this problem.[255]

128.    As a potential alternative to the use of an event study model to measure inflation, Dr. Feinstein references the use of valuation tools (e.g., "valuation multiple models," "discounted cash flow (DCF) models," "scenario analysis"[256]). However, Dr. Feinstein also has not established that valuation tools can reliably be used to quantify inflation stemming only from allegations of under-disclosed risks. Using valuation tools to measure inflation resulting from under-disclosed risks, if any, would require estimating various valuation model parameters that would have been consistent with market expectations had the alleged proper disclosures been made. Dr. Feinstein does not provide any analysis to show that the necessary data are available (or exist) to estimate the valuation model parameters consistent with market expectations in such a scenario. For example, application of a DCF analysis, one of the examples of a valuation tool that Dr. Feinstein identifies, would require Dr. Feinstein to estimate expected cash flows (which could require estimating probabilities of various outcomes, including the materialization of risks, and their associated cash flow impact) and discount rates that would have been consistent with market expectations had the alleged proper disclosures been made.[257] Therefore, Dr. Feinstein has not shown that valuation tools can be used to measure inflation under Plaintiffs' alleged theory of liability, which means he has not established a basis for his ultimate conclusion that damages can be calculated consistently with Plaintiffs' alleged theory of liability given that an event study alone would not be sufficient in the presence of risks that had materialized, as discussed above.

129.    An additional issue arising from Dr. Feinstein's failure to articulate a damages methodology is due to Plaintiffs' allegation that the allegedly concealed truth was revealed not on one day, but over a series of partial corrective disclosures, over multiple days spread out over

---

[255] Note that in the stylized example above, both the probability incorporated in the stock price (0%) and the probability that would have been incorporated in the stock price had the company made a truthful disclosure (30%) are readily available. Dr. Feinstein does not provide a methodology for estimating either probability as it relates to the allegedly concealed risks. Moreover, the value implications of the loss of the customer ($10 per share) is assumed to be constant over time in this highly stylized example. Dr. Feinstein does not provide a methodology for estimating the relevant quantity over time as it relates to the allegedly concealed risks.

[256] Feinstein Report, ¶¶ 210–211.

[257] *See, e.g.*, Cochrane, John H., *Asset Pricing: Revised Edition*, Princeton University Press, 2005, p. 3.

several months.  For example, Plaintiffs allege that the market learned new information about the allegedly under-disclosed risks on March 8, 2023, when UNFI disclosed that inflation-related forward buying had been a significant but temporary driver of UNFI's gross margin.  Dr. Feinstein has not explained how he would quantify inflation under the allegation that the information available to the market about the allegedly under-disclosed risks (and therefore, any portion of the allegedly concealed truth that would have remained undisclosed) changed following alleged corrective disclosures.  To measure damages in a manner consistent with Plaintiffs' alleged liability theory, a reliable methodology for measuring artificial stock price inflation would need to account for any changes in the information available to the market regarding those allegedly under-disclosed risks.  Specifically, to the extent that Dr. Feinstein is proposing to calculate damages by reference to price declines occurring on dates of Alleged Corrective Disclosures, as he appears to be, Dr. Feinstein would need to articulate a methodology to quantify inflation, throughout the Proposed Class Period, arising from the incremental disclosure of under-disclosed risks at each Alleged Corrective Disclosure date, as opposed to price declines due to the materialization of, among other facts, then already disclosed risks.

130.    Moreover, a reliable damages methodology would need to control for confounding information that was simultaneously announced on the alleged corrective disclosure dates and measure the impact of only information underlying the Alleged Truth.  Dr. Feinstein has failed to articulate how his purported methodology would be used to parse out or remove the impact of confounding information.  Rather, he simply states that his "approach and analysis enable computation of the artificial inflation ribbon even in cases where there is confounding information," without explaining how he would do so.[258]  This issue is relevant here because, for example, as discussed in **Sections VIII.B.1.b).(3)** and **VIII.B.2.b).(3)**, in efficient markets, UNFI Securities price changes following the alleged corrective disclosures on June 7, 2023 and September 26, 2023 are consistent with factors other than inflation-related forward buying, such as elevated shrink, shifting consumer spending, continued weak supplier promotional activity, and increased retail price competition.

---

[258] Feinstein Report, ¶ 211.iv.

### B. Methodology for Calculating Damages for UNFI Call Option Purchasers and Put Option Sellers

131. Dr. Feinstein states that "[s]tock options are derivative securities, whose values depend on the value of the underlying stock," and if "the underlying stock is artificially inflated, the price of call options on the stock will also be artificially inflated, and the price of put options will be artificially depressed."[259] He claims that "[g]iven the inflation ribbon for the stock," artificial inflation for UNFI call and put options can be calculated using "widely used and generally accepted option pricing formulas, such as the binomial American option pricing formula … or the Black-Scholes formula."[260] Thus, to show that there is a methodology to calculate inflation and damages for UNFI options, Dr. Feinstein would need to show that there is a methodology to calculate "the inflation ribbon for the stock."

132. Dr. Feinstein has failed to provide a reliable methodology for estimating two key inputs into the option pricing models he suggests he would use in this matter to calculate "the inflation ribbon" for options: (i) for the aforementioned reasons, UNFI's common stock price that would have prevailed absent the alleged misrepresentations and (ii) UNFI's expected stock price volatility that would have prevailed absent the alleged misrepresentations during the Proposed Class Period (the but-for stock price and but-for stock price volatility, respectively). Thus, he has failed to provide a reliable methodology for measuring UNFI option damages consistent with Plaintiffs' theory of liability.

133. *First*, Dr. Feinstein's proposed methodology to calculate damages for purchasers of call options and sellers of put options during the Proposed Class Period appears to rely on his estimate of share price inflation for UNFI common stock as an input.[261] Specifically, Dr. Feinstein indicates that the price of UNFI options absent the alleged misrepresentations (the hypothetical but-for option price) can be calculated based on using, as an input into the "widely used and generally accepted option pricing formulas,"[262] the but-for stock price. However, as

---

[259] Feinstein Report, ¶ 207.

[260] Feinstein Report, ¶ 207. *See also* Feinstein Report, ¶ 211.v ("Applying a generally accepted and widely used option pricing formula, such as the Binomial formula or the Black-Scholes formula, both of which related stock prices to option prices, can be used to construct an inflation ribbon for each UNFI option from the UNFI stock inflation ribbon.").

[261] Feinstein Report, ¶¶ 207, 211.v.

[262] Feinstein Report, ¶ 207. *See also* Feinstein Report, ¶ 211.v ("Applying a generally accepted and widely used option pricing formula, such as the Binomial formula or the Black-Scholes formula, both of which related stock

discussed in the prior section, Dr. Feinstein has failed to provide a class-wide methodology capable of reliably measuring damages for UNFI common stock in a manner consistent with Plaintiffs' theory of liability.  Therefore,  he also has failed to do so for UNFI call and put options.

134.    For example, as discussed in **Section IX.A.2**, any stock price declines following the Alleged Corrective Disclosures due to the materialization of the risk that the Company's profit margin and earnings prospects could continue to deteriorate due to further loss of procurement gains from inflation-related forward buying in a period of moderating inflation rates or deflation[263] would not provide a reliable measure of stock price inflation at earlier times during the Proposed Class Period, even assuming, as Plaintiffs allege, that that risk was not fully disclosed.  Therefore, Dr. Feinstein does not reliably demonstrate that UNFI stock price declines on dates of Alleged Corrective Disclosures can be used to measure stock price inflation earlier in the Proposed Class Period.  Thus, he has not shown that inflation in the price of UNFI common stock can reliably be used as an input to "generally accepted and widely used option pricing formula[s] … to construct an inflation ribbon for each UNFI option."[264]

135.    *Second*, as discussed below, additional challenges specific to the calculation of damages for UNFI call and put options (as opposed to UNFI stock) exist that Dr. Feinstein has failed to address.  Specifically, Dr. Feinstein has failed to provide a reliable methodology that is capable of estimating the but-for stock price volatility, and without such a methodology, Dr. Feinstein has not provided a complete methodology to calculate damages for UNFI call and put options, even if he were able to calculate the other relevant input, i.e., the but-for stock price.

136.    This failure is critical because expected stock price volatility is an important input to estimating the value of UNFI call and put options,[265] including using the Black-Scholes or

---

prices to option prices, can be used to construct an inflation ribbon for each UNFI option from the UNFI stock inflation ribbon.").

[263] *See* **Sections VIII.B.1.b** and **VIII.B.2.b**.

[264] Feinstein Report, ¶ 211.v.  *See also* Feinstein Report, ¶ 207.

[265] Expected stock price volatility is an input that must be estimated. *See* Hull, John C., *Options, Futures, and Other Derivatives*, 9th ed., Pearson, 2015 ("Hull (2015)"), p. 341 ("The one parameter in the [Black-Scholes] pricing formulas that cannot be directly observed is the volatility of the stock price. …[T]his can be estimated from a history of the stock price.  In practice, traders usually work with what are known as implied volatilities.  These are the volatilities implied by option prices observed in the market.").  Implied volatility represents the level of volatility that is required for an option-pricing model (like the Black-Scholes model) to calculate an option price that is equal to the price observed in the market given the values of all the other inputs to the option-pricing model.  Implied volatility also depends on the strike price and the expiration date (i.e., the same stock will have different levels of implied volatility per option series).  *See* Hull (2015), p. 438.

binomial American option pricing models that Dr. Feinstein states he could use to estimate damages.[266]  Thus, to analyze inflation (or deflation) in the price of UNFI call (put) options, it is necessary to analyze, among others, the impact, if any, of the Challenged Statements on expected stock price volatility.

137.    When asked about this issue during his deposition, Dr. Feinstein stated that:

> *There's a number of different ways… you can calculate a but-for volatility forecast just like you can calculate a but-for stock price.*  But what I explained in my -- well, in previous cases and also in the published article is that, you know, you could either use the -- *you could produce a conservative measure of damages by choosing either of the market's forecast of volatility before the disclosure or the market's forecast of volatility after the disclosure, which are observable as implied volatilities, and you can choose the one that produces the more conservative measure of damages.* That is the methodology I – that's the implementation methodology that I explained in the published paper.[267]

> [I]f it's not obvious or clear which is the more appropriate forecast to use for the calculation of the but-for option price, *one approach is to choose the volatility forecast that would produce the lower measure of damages and produce a conservative measure of damages.*[268]

138.    Therefore, I understand Dr. Feinstein to be saying in his deposition (he does not address the issue in his report) that the level of implied volatility for each UNFI option series before or after each Alleged Corrective Disclosure that provides "the more conservative measure of damages"[269] could be the appropriate level of but-for stock price volatility.  If he has some other methodology in mind for choosing between the two, I did not identify any articulation of such a methodology in his report or deposition testimony.

139.    As discussed below, however, Dr. Feinstein has not demonstrated that this approach would be feasible and reliable to implement.  He has not demonstrated that measuring volatility at the time of each Alleged Corrective Disclosure (either immediately prior or immediately after, and choosing the one implying lower damages) would yield a reliable measure of but-for

---

[266] Feinstein Report, ¶¶ 207, 211.v.  Dr. Feinstein states that "[a]ccording to fundamental option pricing principles, option prices are a function of the underlying stock price, the contract strike price, time to expiration, interest rates, the anticipated level of stock price volatility, and anticipated dividends."  Feinstein Report, ¶ 175.

[267] Feinstein Deposition, 261:17–262:9 (emphasis added).

[268] Feinstein Deposition, 262:21–263:3 (emphasis added).

[269] Feinstein Deposition, 262:6–7.

volatility earlier during the Proposed Class Period, which is a required input to calculate but-for option prices earlier during the Proposed Class Period, when the options were purchased by Proposed Class Members. Further, he has not reconciled his suggested approach and whether it is feasible with the fact that option-implied volatilities for UNFI options vary across options and over time, which would potentially necessitate the calculation of hundreds of volatility measures.

140.    As an initial matter, Plaintiffs' allegations are consistent with the alleged misrepresentations having impacted the prices of UNFI call and put options through their impact on expected stock price volatility. Thus, a reliable damages methodology for UNFI call and put options would need, as a matter of economics, to reliably estimate but-for volatility. Plaintiffs allege that UNFI's stock price would have been lower but-for the alleged misrepresentations.[270] Academic research in finance finds that volatility is generally negatively related to stock prices.[271] Thus, all else equal, if UNFI stock price would have been lower but-for the alleged misrepresentations as Plaintiffs allege, UNFI but-for stock volatility would have been higher. Dr. Feinstein acknowledged during his deposition that lower stock prices tend to increase volatility:

> Usually, what happens is when a --well, *usually what happens is when a stock price goes down, the volatility forecast goes up. So one would check to see if that's the case*, and that would also help inform the decision.[272]

> Q. If the volatility of UNFI stock price increased as a result of the alleged corrective disclosure, wouldn't that affect the price of UNFI's options, according to the option price models that you proposed? … A. Yeah, that would be taken into account by the formulas. Formula has a relationship between volatility forecast and option price.[273]

> And then I guess the question you raised is what do you do about volatility? If volatility changes if -- if the disclosure not only changes the stock price but

---

[270] *See* **Section V.A**.

[271] Finance theory shows that common stock is a levered claim on a company's assets. Consistent with theory, empirical research in finance shows that stock price volatility is affected by both financial leverage and asset volatility (the volatility of the value of the firm's entire assets). For example, Choi and Richardson (2016) find empirical evidence to support the claim that stock price volatility is impacted by both financial leverage and asset volatility; they find that negative shocks (news) to the underlying asset values affect stock price volatility in the short term through asset volatility, and in the long term through more permanent shocks to financial leverage. *See* Choi, Jaewon, and Matthew Richardson, "The Volatility of a Firm's Assets and the Leverage Effect," *Journal of Financial Economics* 121, no. 2 (2016): 254–277. *See also* Christie, Andrew A., "The Stochastic Behavior of Common Stock Variances:  Value, Leverage and Interest Rate Effects," *Journal of Financial Economics* 10, no. 4 (1982): 407–432.

[272] Feinstein Deposition, 265:13–18 (emphasis added).

[273] Feinstein Deposition, 266:17–267:1.

also changes the volatility, there are ways to deal with that.  One way is to pick whichever volatility from before and after the disclosure gives you the lower damages.  That's a conservative choice.[274]

141.    Therefore, this implies the need for a reliable measure of but-for volatility, which Dr. Feinstein has not established his approach is capable of measuring for the reasons detailed below.

142.    *First*, Dr. Feinstein appears to propose an approach that selects the measure of volatility that yields lower damages based on implied volatility measured "from before and after" a given alleged corrective disclosure.  Dr. Feinstein has not explained how he would reconcile such an approach with the allegation by Plaintiffs of multiple Alleged Corrective Disclosures, each of which can be associated with different levels of implied volatility, and how he would apply all these different estimates (each disclosure may be associated with a different minimum damages level) to select the appropriate but-for volatility at different points during the Proposed Class Period consistently with both Plaintiffs' allegations and market efficiency (which imposed restrictions on how options are priced relative to both each other and to the price of UNFI stock[275]).

143.    *Second*, under Plaintiffs' theory of liability, the Challenged Statements could have caused the market to under-appreciate the risks of loss of inflation-related forward buying opportunities. Given stock price volatility measures the uncertainty of future stock price movements,[276] then any change in the market's assessment of these risks during the Proposed Class Period (not only on dates of the Alleged Corrective Disclosures) could impact the assessment of volatility.  Dr. Feinstein's proposed approach does not address this possibility and Dr. Feinstein does not articulate how he would deal with this issue.

---

[274] Feinstein Deposition, 269:13–21.

[275] In the absence of arbitrage opportunities, economic theory imposes constraints on the theoretical relationship between the stock price at a given point in time and the contemporaneous prices of pairs of call and put options with the same strike price and expiration date – this relationship is known as put-call parity.  *See e.g.,* Hull (2015), pp. 240–245, 431.

[276] The volatility of a stock is "a measure of … uncertainty about the returns provided by the stock."  Hull (2015), p. 325.  In simple terms, as stock price volatility increases, the likelihood that the stock price will increase or decrease in the future increases holding all other factors constant.  Call option holders benefit from stock price increases and have limited downside risk for stock price decreases (the maximum loss is equal to the option premium if the holder does not exercise the option to buy the underlying stock).  Likewise, put option holders benefit from stock price decreases and have limited downside risk for stock price increases (the maximum loss is equal to the option premium if the holder does not exercise the option to sell the underlying stock).  Thus, stock price volatility has a positive impact to the value of the options for holders of both call and put options, because it makes it more likely that the price will fluctuate enough to make the payoff from exercising the option positive.  The opposite is true for option sellers.  *See* Hull (2015), pp. 235–236.

144.    *Third*, the implied volatilities measured following Alleged Corrective Disclosures would reflect the market's assessment of volatility following at least a partial (given the multiple alleged corrective disclosures) materialization of under-disclosed risks, rather than the market's hypothetical assessment of volatility earlier given a disclosure of the risk but not that the risk had already materialized.  Dr. Feinstein has not provided a methodology to measure the portion of the change in implied volatility following an alleged corrective disclosure when a risk materialized that is due to new information underlying the Alleged Truth versus the portion attributable to the materialization of risks (or potentially other confounding information).

145.    *Fourth*, Dr. Feinstein has not addressed how he would deal with changes in volatilities during the Proposed Class Period as options' time to maturity and moneyness changed.[277] Financial economics literature shows that implied volatility of an option is correlated with both an option's time to expiration and its moneyness.  For example, Dumas, Fleming, and Whaley (1998) find that the empirical relationship between implied volatility and strike price is affected by the time to expiration of the underlying options.[278]  The authors find that "[o]ptions that are deep in the money or out of the money have higher implied volatilities than at-the-money options" and that this pattern "is influenced by the time to expiration of the underlying options," consistent with the notion of implied volatilities varying across time and moneyness.[279]

146.    *Finally*, the challenges identified above are in addition to the fact that a damages methodology would need to estimate but-for stock price volatility for *each* of the UNFI options that were held by Proposed Class Members over an alleged corrective disclosure.  This is because when applying option pricing models in practice such as the Black-Scholes or binomial American option pricing models, calculating each option's model-implied price may require a different volatility input.  Without using option-specific volatilities, referred to as implied volatilities, an option pricing model can yield inaccurate estimates of option prices (which could

---

[277] Moneyness refers to the degree to which an option series is in or out of the money.  Hull (2015), p. 440.  A call (put) option is in-the-money if it has a positive expected payoff if the underlying stock price is greater (less) than the strike price.  A call (put) option is out-of-the-money if the underlying stock price is less (greater) than the strike price.  A call (put) option is at-the-money if the underlying stock price is equal to the strike price.  Hull (2015), p. 220.

[278] Dumas, Bernard, Jeff Fleming, and Robert E. Whaley, "Implied Volatility Functions: Empirical Tests," *The Journal of Finance* 53, no. 6 (1998): 2059–2106 ("Dumas, Fleming, and Whaley (1998)"), p. 2060 ("In practice, however, Black-Scholes implied volatilities tend to differ across exercise prices and times to expiration.").

[279] Dumas, Fleming, and Whaley (1998), pp. 2060, 2062.  *See also* Rubinstein, Mark, "Implied Binomial Trees," *The Journal of Finance* 49, no. 3 (1994): 771–818; Carr, Peter, and Liuren Wu, "The Finite Moment Log Stable Process and Option Pricing," *The Journal of Finance* 58, no. 2 (2003): 753–777.

then result in an inaccurate estimate of inflation and damages).[280]  **Exhibit 6** shows the implied volatilities across UNFI call and put options on each day during the Proposed Class Period,[281] and as shown in the exhibit, implied volatilities varied by option and over time.  Dr. Feinstein would need to provide a methodology that is capable of measuring but-for stock price volatility for each option, in particular for each of the 209 UNFI option series in his sample that were held over an Alleged Corrective Disclosure date.[282]

147.    In sum, Dr. Feinstein fails to provide a reliable methodology to calculate two important inputs for the "widely used and generally accepted option pricing formulas,"[283] the but-for stock price (for reasons discussed in **Section IX.A**) and the but-for stock price volatility.  As a result, he has not provided a reliable class-wide methodology for measuring damages pertaining to UNFI options consistently with Plaintiffs' alleged theory of liability.

Executed this 13th day of June, 2025

Paul Zurek, Ph.D.

---

[280] *See, e.g.*, Hull (2015), p. 443 ("The volatility smile defines the relationship between the implied volatility of an option and its strike price.  For equity options, the volatility smile tends to be downward sloping.  This means that out-of-the-money puts and in-the-money calls tend to have high implied volatilities whereas out-of-the-money calls and in-the-money puts tend to have low implied volatilities….  Often traders also use a volatility term structure.  The implied volatility of an option then depends on its life. When volatility smiles and volatility term structures are combined, they produce a volatility surface. This defines implied volatility as a function of both the strike price and the time to maturity.").

[281] The data on UNFI options are obtained from Dr. Feinstein's backup materials that he produced with his report.

[282] An option series refers to all options of a given type (call options or put options) on the same underlying stock that have the same strike price and expiration date.  *See* Hull (2015), p. 833.

[283] Feinstein Report, ¶ 207.

**Appendix A**

# PAUL ZUREK, Ph.D.
## Vice President

**Cornerstone Research**
Two Embarcadero Center, 20th Floor • San Francisco, CA 94111
415.229.8225 • mobile 917.434.7602
pzurek@cornerstone.com

## ACADEMIC BACKGROUND

2002 – 2008    **The Wharton School, University of Pennsylvania**    Philadelphia, Pennsylvania
*Ph.D. and M.A. in Finance*
Research interests include valuation, asset pricing, financial econometrics and financial institutions risk management.

1998 – 2002    **The Wharton School, University of Pennsylvania**    Philadelphia, Pennsylvania
*B.S. in Economics, Concentration in Finance, Minor in Mathematics, Summa Cum Laude*

## PROFESSIONAL EXPERIENCE

7/08 – Present    **Cornerstone Research, Inc.**    New York and San Francisco
*Vice President*
Experience conducting financial and economic analysis for financial institution and other corporate and individual clients in complex litigation, including securities, valuation, appraisal, market structure, market manipulation, hedge funds, PE and investment management, international arbitration, financial fraud, risk management, and government investigations.  Design and oversee development of quantitative analysis models.
Provide testimony and presentation of findings to regulators and arbitration panels.

2023 – Present    **Stanford University Law School**    Palo Alto, California
Lecturer in Law, teaching Corporate Finance and Valuation

6/10 – 03/11    **United Poles Federal Credit Union**    Perth Amboy, New Jersey
*Director and ALCO Committee Member*
Member of the Board of Directors.  Advised on issues of strategy and risk.

9/02 – 12/07    **Kimberton International Associates – The Banking Group**    Kimberton, Pennsylvania
*Senior Consultant*
Designed executive education programs for banking and financial services.  Taught seminars on financial institutions risk management, macroeconomics, banking, and general business management.  Worked with clients in the United States, Europe and Latin America.

5/01 – 8/01    **Credit Suisse First Boston**    San Francisco, California
*Mergers & Acquisitions Summer Analyst*
Assisted in transactions during both preparatory and due-diligence stages.  Performed financial statement, precedent transaction and comparable company analysis.  Updated league tables and analyzed revenue, market share and headcount trends in the Technology M&A Group.

**Appendix A**

---

**TEACHING EXPERIENCE**

| | |
|---|---|
| Stanford Law School<br>*Lecturer, teaching Corporate Finance and Valuation* | 2023, 2024, 2025 |
| Wharton / Ping An Bank Executive Education Program<br>*Taught global economics and credit risk modeling in Beijing, China.* | 2015 |
| Wharton China Asset Management Company Executive Development Program<br>*Taught global financial markets and market microstructure.* | 2011 |
| Risk Management Association and Wharton Advanced Risk Management Program<br>*Instructor (2007–2009) and Academic Co-Director (2009)* | 2007 – 2009 |
| Wharton Hana Financial Hana Leaders Academy Global Course<br>*Instructor in Risk Management* | 2008 |
| Merrill Lynch Investment Banking Institute<br>*Teaching Assistant* | 2006, 2007 |
| Investment Management, Derivative Securities, International Banking,<br>Venture Capital, Corporate Finance, Macroeconomics, Microeconomics<br>*Teaching Assistant* | 2002 – 2008 |

**RESEARCH AND PUBLICATIONS**

"Momentum and Long-Run Risks," Working Paper, *The Wharton School*, November 2007.

"Essays on Asset Pricing," Doctoral Dissertation, *The University of Pennsylvania*, 2008.

The Guide to Damages in International Arbitration. Chapter 16: Market Approach or Comparables (with José Alberro), 1st Edition, November 2016, 2nd Edition, December 2017, 3rd Edition, November 2018.

Commodities: Markets, Performance, Strategies. Chapter 14: Commodity Mutual Funds (with Gustavo Camilo and Janko Cizel), Oxford University Press 2018.

"Collateralized loan obligations in the age of COVID-19" (with Yan Cao and Manuel Vasconcelos), Thomson Reuters Westlaw Expert Analysis, June 22, 2020.

**HONORS AND AWARDS**

| | |
|---|---|
| Outstanding Doctoral Student Paper Award at the Southern Finance Association<br>Annual Meeting, Western Finance Association Doctoral Student Travel Grant | 2008 |
| Weiss Center for International Financial Research Summer Fellowship | 2007 |
| Dean's Fellowship for Distinguished Merit | 2002 |
| Class of 1939 Fellowship | 2002 |

**Appendix A**

---

**INVITED AND CONFERENCE PRESENTATIONS, SPEAKING ENGAGEMENTS**

| | |
|---|---|
| "Delaware Shareholder Litigation," invited lecture, Corporate Finance, Professor Prasad Krishnamurthy, Berkeley Law School | 2023 |
| "Securities Litigation Trends in 2022: Notable Developments and Challenges" webcast, The Knowledge Group | 2022 |
| "The Rise of Special Purpose Acquisition Companies (SPACs): How to Minimize Securities Litigation Risks" webcast, The Knowledge Group | 2021 |
| "Trends and Updates on Class Action Litigation: Hot Buttons During the COVID-19 Crisis," webcast, The Knowledge Group | 2020 |
| "Discussion: Loss Causation in a Bear Market: The Economists' Perspective," Chicago Bar Association Securities Law Committee | 2020 |
| "The Evolving Securities Litigation Landscape: Recent Trends and Updates You Need to Know," webcast, The Knowledge Group | 2020 |
| "Effective Use of Statistical Evidence in Class Action Litigation: Practical Guide in 2019," webcast, The Knowledge Group | 2019 |
| "Securities Litigation in 2019: Winning Tips and Strategies," webcast, The Knowledge Group | 2019 |
| "Proving and Determining Damages in International Arbitration: Methods, Trends and Best Practices," webcast, The Knowledge Group | 2019 |
| Cambridge Forums Forum on Securities Litigation, panel speaker. | 2019 |
| Western Finance Association Annual Meeting, Southern Finance Association Annual Meeting, Drexel University, Ohio State University, University of Iowa, University of Minnesota, University of Notre Dame, Virginia Polytechnic Institute and State University | 2008 |
| The Wharton School | 2007 |

**CONFERENCE PARTICIPATION**

| | |
|---|---|
| Wharton Rodney L. White Center for Financial Research Conference on Financial Decisions and Asset Markets[*] | 2019 |
| American Finance Association Annual Meeting | 2008, 2009, 2011 – 2020 |
| Western Finance Association Annual Meeting[*] | 2008, 2016 – 2018 |
| NYU Five Star Conference in Finance | 2012 |
| Wharton FIC and Oliver Wyman's Risk Roundtable | 2003, 2011 |
| Southern Finance Association Annual Meeting[*], Mid-Atlantic Research Conference in Finance[*] | 2008 |
| Mid-Atlantic Research Conference in Finance[*], Wharton FIC and Oliver Wyman's Risk Roundtable | 2007 |
| NBER's Asset Pricing Program Meeting | 2006 |
| The Philadelphia Fed Policy Forum | 2003 |
| NSF/NBER Time Series Conference | 2002 |

* Paper Discussant or Presenter

**Appendix A**

_____

**OTHER PAST ACTIVITIES**

Referee for the Journal of Economic Dynamics and Control and Finance Research Letters.  Fellow at the Wharton Financial Institutions Center.

**Appendix A**

---

**TESTIMONY AND EXPERT REPORTS**

In the Matter of Deutsche Bank Securities, Inc. (SEC administrative proceeding 3-17730), presentation to the SEC and NY AG, June 2015.

Pattelli v. Lending Club Corporation (American Arbitration Association), testimony, January 2016.

In Re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation (MDL No. 2672 CRB (JSC), USDC ND California), expert declaration, August 2016.

Confidential expert reports submitted to the SEC regarding execution quality in FX markets, September 2016 and October 2016.

B.K. et al v. Gregory McKay (2:15-cv-00185, USDC District of Arizona), expert report, December 2017.

MidCoast Council and Division CCMF Ltd. v. Fitch Ratings, Inc., Federal Court of Australia, New South Wales (NSD995 of 2014), expert reports, June 2018 and February 2019, expert conclave and joint expert report, June 2019.

In Re: RH Securities Litigation (4:17-cv-00554, USDC ND California), expert report, August 2018, deposition, September 2018.

Public Employees' Retirement System of Mississippi v. Treehouse Foods, Inc. et al (1:16-cv-10632, USDC ND Illinois), expert report, October 2018, deposition, April 2019.

Aaron Booth and Cody Tucker on behalf of themselves and all others similarly situated v. Galveston County, Texas, et al (3:18-cv-104, USDC SD Texas), two expert declarations and deposition, January 2019.

Brian C. Schartz, On Behalf of Himself and All Others Similarly Situated and Derivatively on Behalf of Nominal Defendant The Female Health Company v. O.B. Parrish, et al (2016CH14488 and 2016CH13815, Circuit Court of Cook Country, Illinois, County Department, Chancery Division), expert report, February 2019, deposition, March 2019.

In Re: Spectrum Pharmaceuticals, Inc. Securities Litigation (2:16-cv-02279, USDC District of Nevada), expert report, March 2019.

Trevor Mild, Individually and on Behalf of All Others Similarly Situated v. PPG Industries, Inc., Michael H. McGarry, Vincent J. Morales, and Mark C. Kelly (2:18-cv-04231, USDC CD California), expert report and deposition, April 2019.

In Re: Novo Nordisk Securities Litigation (3:17-cv-00209, USDC District of New Jersey), expert report, June 2019, deposition July 2019.

Christakis Vrakas et al v. United States Steel Corporation et al (2:17-cv-00579, USDC WD Pennsylvania), expert report and deposition, June 2019.

Margaret Tinsley, et al v. Michael Faust, et al (2:15-cv-00185, USDC District of Arizona), expert reports, October and November 2019, deposition, January 2020.

In re Health Insurance Innovations Securities Litigation (8:17-cv-02186, USDC MD Florida), expert report, January 2020, deposition, February 2020.

Frederic Haghebaert, Individually and On Behalf of All Others Similarly Situated v. Tandy Leather Factory, Inc., Janet Carr, Tina L. Castillo, and Shannon L. Greene (4:19-cv-01000, USDC ND Texas), expert declaration, February 2020.

Matt Karinski v. Stamps.com, Inc. et al (2:19-cv-01828, USDC CD California), expert report, August 2020, deposition, October 2020.

Matt Wolther, individually and on behalf of all others similarly situated v. Shubham Maheshwari et al (18CV329690, Superior Court of the State of California, County of Santa Clara), expert report, February 2021.

Cambridge Retirement System, Individually and On Behalf of All Others Similarly Situated v. Amneal Pharmaceuticals, Inc. et al (SOM-L-1701-19, Superior Court of New Jersey, Law Division, Somerset County), expert report, March 2021.

Indiana Public Retirement System, Individually and on Behalf of All Others Similarly Situated v. Michael T. Cartwright, Kirk R. Manz, and Andrew W. McWilliams (3:19-cv-00407, USDC MD Tennessee), expert report, September 2021, deposition June 2022.

Shela Camenisch and Dale Dean; Luna Baron; and Eva King, Individually and as Trustee of the Eva M. King Trust, individually and on behalf of all others similarly situated v. Umpqua Bank (3:20-cv-5905-RS, USDC ND California), expert report, March 2022, deposition, April 2022.

Lewis Stein, Individually and on Behalf of All Others Similarly Situated v. U.S. Xpress Enterprises, Inc. et al (1:19-cv-00098, USDC ED Tennessee), expert report, October 2022, deposition, November 2022.

In Re Maxar Technologies, Inc. Shareholder Litigation (19CV357070, Superior Court of the State of California, County of Santa Clara), expert report, December 2022.

In Re Jernigan Capital, Inc. Securities Litigation (1:20-cv-09575, USDC SD New York), expert report, February 2023, deposition, March 2023.

In Re Fibrogen Inc. Securities Litigation (3:21-cv-02623, USDC ND California), expert report, May 2023, deposition June 2023.

RSBIX Corp. v. Eris Exchange LLC and Eris Clearing LLC (American Arbitration Association), expert report, May 2023, hearing testimony, June 2023.

Barbara Strougo, individually and on behalf of all others similarly situated v. Mallinckrodt Public Limited Company et al (3:20-cv-10100, USDC District of New Jersey), expert report, June 2023, deposition, August 2023.

L-5 Healthcare Partners, LLC v. Alphatec Holdings, Inc. (2019-0412-NAC, Court of Chancery of the State of Delaware), expert report, September 2023 and October 2023, deposition, November 2023, trial testimony, January 2024.

Virgo Ventures Liquidating Trust et al v. Daniel Rosenberg et al (2019 L 011889, Circuit Court of Cook County, Illinois, Country Department, Law Division), expert report, December 2023, March 2024.

Michael Pardi, individually and on behalf of all others similarly situated v. Tricida, Inc. and Gerritt Klaerner (4:21-cv-00076, USDC ND California), expert report, July 2024.

David Hall and Marta Hall v. Jeffrey Vetter, Michael Dee, Anand Gopalan, James Graf, Andrew Hamer, Julie Levenson, Michael Vella, and Does 1 through 30 (JAMS Arbitration), expert report, December 2024, deposition January 2025.

San Antonio Fire and Police Pension Fund v. Dentsply Sirona Inc. et al (1:22-cv-06339, USDC SD New York), expert report, December 2024.

Appendix B

# Documents Considered by Paul Zurek, Ph.D.

**Academic Articles**

- Asquith, Paul, Parag A. Pathak, and Jay R. Ritter, "Short Interest, Institutional Ownership, and Stock Returns," *Journal of Financial Economics* 78, no. 2 (2005): 243–276

- Busse, Jeffrey A., and T. Clifton Green, "Market Efficiency in Real Time," *Journal of Financial Economics* 65, no. 3 (2002): 415–437

- Carr, Peter, and Liuren Wu, "The Finite Moment Log Stable Process and Option Pricing," *The Journal of Finance* 58, no. 2 (2003): 753–777

- Choi, Jaewon, and Matthew Richardson, "The Volatility of a Firm's Assets and the Leverage Effect," *Journal of Financial Economics* 121, no. 2 (2016): 254–277

- Chordia, Tarun, Richard Roll, and Avanidhar Subrahmanyam, "Evidence on the Speed of Convergence to Market Efficiency," *Journal of Financial Economics* 76, no. 2 (2005): 271–292

- Christie, Andrew A., "The Stochastic Behavior of Common Stock Variances: Value, Leverage and Interest Rate Effects," *Journal of Financial Economics* 10, no. 4 (1982): 407–432

- Dumas, Bernard, Jeff Fleming, and Robert E. Whaley, "Implied Volatility Functions: Empirical Tests," *The Journal of Finance* 53, no. 6 (1998): 2059–2106

- Fama, Eugene F., "Efficient Capital Markets: A Review of Theory and Empirical Work," *The Journal of Finance* 25, no. 2 (1970): 383–417

- Fama, Eugene F., "Efficient Capital Markets: II," *The Journal of Finance* 46, no. 5 (1991): 1575–1617

- Greene, Jason T., and Susan G. Watts, "Price Discovery on the NYSE and the NASDAQ:  The Case of Overnight and Daytime News Releases," *Financial Management* 25, no. 1 (1996): 19–42

- MacKinlay, A. Craig, "Event Studies in Economics and Finance," *Journal of Economic Literature* 35, no. 1 (1997): 13–39

- Rubinstein, Mark, "Implied Binomial Trees," *The Journal of Finance* 49, no. 3 (1994): 771–818

**Appendix B**

- Skinner, Douglas J., and Richard G. Sloan, "Earnings Surprises, Growth Expectations, and Stock Returns or Don't Let an Earnings Torpedo Sink Your Portfolio," *Review of Accounting Studies* 7 (2002): 289–312

## Analyst Reports

- "UNFI: Retail and Markets Remain Strong; All Eyes on Fiscal 2022," *Northcoast Research*, September 24, 2021

- "FY22 Deleveraging Supports Overweight Rating," *BofA Securities*, September 28, 2021

- "UNFI: We See Sustained Tailwinds and Lift Our Price Target to $58," *Northcoast Research*, October 5, 2021

- "UNFI: Management Constructive on Outlook in Virtual Meetings; Upgrading to Equal Weight," *Wells Fargo*, March 17, 2022

- "Adjusting and Growing," *UBS*, June 7, 2022

- "UNFI - The Inflation-Labor Cost Battle to Shape the N-T P&L—Valuation, L-T Outlook Intriguing but We Stay Neutral Rated," *Guggenheim*, June 20, 2022

- "Some Natural Change," *UBS*, July 13, 2022

- "UNFI: Concerns Grow Around Volume Weakness and Decelerating Inflation; Remain Equal Weight," *Wells Fargo*, December 7, 2022

- "UNFI: Outlook Remains Attractive; Reiterate Buy Rating with $56 Price Target," *Northcoast Research*, December 13, 2022

- "F2Q23 Miss, F2023 Outlook Lowered, F2024 Targets Withdrawn," *BMO*, March 8, 2023

- "Lowering Target Price Following Profit Reset; Risks Remain," *BMO*, March 8, 2023

- "The Bottom Falls Out; Moderating Inflation Drives Significant Gross Margin Miss, Largely Contained to Non-Perishables; Remain Neutral," *BTIG*, March 8, 2023

- "UNFI: 2Q23 Adjusted EBITDA Missed on Gross Profit Shortfall; F2023 Earnings Guidance Cut as Lower Inventory Holding Gains to Persist," *CL King*, March 8, 2023

- "Sour Systems Spoil the Quarter," *Deutsche Bank*, March 8, 2023

- "Margin Profile Reset Lower; Reiterate Neutral," *Goldman Sachs*, March 8, 2023

**Appendix B**

- "UNFI: Visibility Not There - Downgrade to Neutral," *Roth MKM*, March 8, 2023

- "What's the Initial View on UNFI's 2Q'23 Results?," *UBS*, March 8, 2023

- "UNFI: Q2 Disappoints as End of Historic Inflation Cyle Begins to Show Its Challenges," *Wells Fargo*, March 8, 2023

- "United Natural Foods (UNFI) - Guidance Slashed as Inflation Decelerates...," *Wolfe Research*, March 8, 2023

- "UNFI: Downgrading to Neutral, Cutting Estimates; Proprietary Analysis Shows that Gross Margin Issues that Caused Q2 Earnings Miss Most Likely to Persist for Three More Quarters," *CL King*, March 9, 2023

- "Disappointing Q2F23, Guidance Lowered, Reducing F23/F24 Estimates," *Seaport*, March 9, 2023

- "UNFI: Lost Momentum – Shares Downgraded to Neutral," *Northcoast Research*, March 10, 2023

- "UNFI - A Rare Significant EBITDA Miss Impacts N-T Confidence but Shouldn't Alter the Algo—Lower Estimates, Stay Neutral Rated Despite Modest Multiple," *Guggenheim*, March 12, 2023

- "The Path to Value Will Likely Take Time: Downgrade to Neutral," *UBS*, March 13, 2023

- "Reiterating Our Buy on UNFI," *R5 Capital*, March 14, 2023

- "Slight F3Q23 Miss; F23 Adjusted EBITDA Guidance Cut by 15-17%," *BMO*, June 7, 2023

- "Multiple Challenges Prompt Downgrade to Marketweight," *BofA Securities*, June 7, 2023

- "Perfect Storm of Challenges; Retrenching Consumer, Moderating Inflation and Shrink Lead to Another Guidance Cut; Maintain Neutral," *BTIG*, June 7, 2023

- "Margin Pressure Continues as Disinflation Limits Procurement Opportunities; Reiterate Neutral," *Goldman Sachs*, June 7, 2023

- "What's The Initial View On UNFI's 3Q'23 Results?," *UBS*, June 7, 2023

- "UNFI: Another Surprising Guidance Cut as Pricing Lap and Macro Wreaks Havoc; Remain Sidelined Despite Sharp Sell-off," *Wells Fargo*, June 7, 2023

- "United Natural Foods (UNFI) - Mixed F'3Q Results as Trends Decelerate," *Wolfe Research*, June 7, 2023

- "Despite Another Pullback Still More Risk for UNFI," *BMO*, June 8, 2023

**Appendix B**

- "UNFI: Q3 Adjusted EBITDA in Line with Our Forecast, but Missed Consensus by 5%; FY23 Earnings Guidance Cut as Lower Inventory Holding Gains Persist," *CL King*, June 8, 2023

- "UNFI: Earnings Power Difficult to Determine," *Roth MKM*, June 8, 2023

- "Will UNFI Put Up a United Front?," *UBS*, June 8, 2023

- "Cutting Target Price and EBITDA Forecasts Again," *BMO*, September 26, 2023

- "Profitability Bottoming Process to Deepen in F24," *BMO*, September 26, 2023

- "Outlook Suggests Uncertainty Persists; Procurement Losses, Shrink and Higher Incentive Compensation Weighs on Earnings - Remain Neutral," *BTIG*, September 26, 2023

- "UNFI: 4Q23 Earnings Beat Us and Consensus but FY24 Earnings Guidance Set Well Below Us and Consensus," *CL King*, September 26, 2023

- "Another Day, Another Disappointment," *Deutsche Bank*, September 26, 2023

- "UNFI - Cycling $250M of Procurement Gains While Transforming the Business—Lowering our 2024 EBITDA Estimate by ~20%; Stay Neutral Rated," *Guggenheim*, September 26, 2023

- "UNFI: Weak Guide - Cooperation Agreement," *Roth MKM*, September 26, 2023

- "What's The Initial View On UNFI's 4Q'23 Results?," *UBS*, September 26, 2023

- "UNFI: FQ4 Highlights Challenges, but Update About as We Expected; Remain Sidelined," *Wells Fargo*, September 26, 2023

- "United Natural Foods (UNFI) - F'24 Guidance Disappoints," *Wolfe Research*, September 26, 2023

- "UNFI: Q4 Adjusted EBITDA Beats, but FY24 Earnings Guidance Set Well Below Street on Continued Drag from Lower Inventory Holding Gains, as Confirmed by Our Proprietary Model," *CL King*, September 27, 2023

- "Disinflation Continues to Pressure Margins," *Goldman Sachs*, September 27, 2023

- "UNFI: Profitability Not Matching Value-Added," *Roth MKM*, September 27, 2023

- "Taking Inventory of a Challenging Year Ahead," *UBS*, September 27, 2023

**Appendix B**

- Analyst reports covering UNFI that were published from December 8, 2021 through September 30, 2023 and were available from LSEG Workspace or S&P Capital IQ; and analyst reports covering UNFI obtained from Counsel and Dr. Feinstein's backup materials

**Data**

- Bloomberg
- Center for Research in Security Prices (CRSP)
- Factiva
- LSEG Workspace
- OptionMetrics
- S&P Capital IQ

**Depositions**

- Deposition of Dan Sills, dated April 30, 2025
- Deposition of George Dick, dated May 7, 2025
- Deposition of Steven P. Feinstein, Ph.D., dated May 9, 2025

**Earnings Conference Call Transcripts**

- UNFI Q3 2021 Earnings Call Transcript, June 9, 2021
- UNFI Q1 2023 Earnings Call Transcript, December 7, 2022
- UNFI Q2 2023 Earnings Call Transcript, March 8, 2023
- UNFI Q2 2023 Earnings Conference Call Slides, March 8, 2023
- UNFI Q3 2023 Earnings Call Transcript, June 7, 2023
- UNFI Q3 2023 Earnings Conference Call Slides, June 7, 2023
- UNFI Q4 2023 Earnings Call Transcript, September 26, 2023
- UNFI Q4 2023 Earnings Conference Call Slides, September 26, 2023

**Appendix B**

**Expert Reports**

- Expert Report of Steven P. Feinstein, Ph.D., dated March 7, 2025, including all documents cited therein and backup materials

**Legal Documents and Pleadings**

- Second Amended Class Action Complaint for Violations of the Federal Securities Laws, *Dan Sills and George Dick v. United Natural Foods, Inc., et al.*, Case No. 1:23-cv-02364-JGLC, November 6, 2023

- Opinion and Order, *Dan Sills and George Dick v. United Natural Foods, Inc., et al.*, Case No. 1:23-cv-02364-JGLC-VF, September 13, 2024

- Plaintiffs' Responses and Objections to Defendants' First Set of Interrogatories to Plaintiffs, *Dan Sills and George Dick v. United Natural Foods, Inc., et al.*, Case No. 1:23-cv-02364-JGLC-VF, March 3, 2025

- Memorandum of Law in Support of Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel, *Dan Sills and George Dick v. United Natural Foods, Inc., et al.*, Case No. 1:23-cv-02364-JGLC-VF, March 7, 2025

- Sworn Certification of Dan Sills, United Natural Foods, Inc. (UNFI) Securities Litigation, March 7, 2025

- Sworn Certification of George Dick, United Natural Foods, Inc. (UNFI) Securities Litigation, March 7, 2025

**Produced Documents**

- PLTF_UNFI_002510–3079

- PLTF_UNFI_003080–303

- PLTF_UNFI_003304–403

- PLTF_UNFI_003555–574

- PLTF_UNFI_003590–610

- PLTF_UNFI_003665–786

- PLTF_UNFI_003845–877

- UNFI_FEINSTEIN_016778

- UNFI_FEINSTEIN_016780

**Appendix B**

**Public Press**

- Public press articles obtained from Bloomberg Law and Factiva

- UNFI earnings and guidance update press releases from Q1 2021 through Q3 2023

**SEC Filings**

- UNFI Form 8-K, filed on June 7, 2022

- UNFI Form 8-K, filed on September 27, 2022

- UNFI Form 8-K, filed on December 7, 2022

- UNFI Form 8-K, filed on March 8, 2023

- UNFI Form 8-K, filed on June 7, 2023

- UNFI Form 8-K, filed on September 26, 2023

- UNFI Form 10-K for the Fiscal Year Ended July 30, 2022, filed on September 27, 2022

- UNFI Form 10-K for the Fiscal Year Ended July 29, 2023, filed on September 26, 2023

- UNFI Forms 10-Q during the period from Q1 2022 to Q3 2023

**Textbooks**

- Berk, Jonathan, Peter DeMarzo, and Jarrad Harford, *Fundamentals of Corporate Finance*, Global Edition, 4th ed., Pearson Education Limited, 2019

- Brealey, Richard A., Stewart C. Myers, and Franklin Allen, *Principles of Corporate Finance*, 12th ed., McGraw-Hill Education, 2017

- Cochrane, John H., *Asset Pricing: Revised Edition*, Princeton University Press, 2005

- Hull, John C., *Options, Futures, and Other Derivatives*, 9th ed., Pearson, 2015

- Kaye, David H., and David A. Freedman, "Reference Guide on Statistics," in *Reference Manual on Scientific Evidence*, 3rd ed., The National Academies Press, 2011

- Malkiel, Burton G., "Efficient Market Hypothesis," in *Finance*, John Eatwell, Murray Milgate, and Peter Newman (eds.), Palgrave Macmillan, 1989

**Appendix B**

- Ross, Stephen A., Randolph W. Westerfield, and Jeffrey Jaffe, *Corporate Finance*, 7th ed., McGraw-Hill/Irwin, 2005

**Websites**

- "Symbol Directory," *CBOE*, https://www.cboe.com/us/options/symboldir/equity_index_options/?sid=U

**All documents cited and referenced in this report and exhibits.**

**Exhibit 1**



# United Natural Foods, Inc.
# Closing Stock Price and Volume
## 9/9/21 – 12/22/23

Source: *CRSP*; Complaint

**Exhibit 2**

# United Natural Foods, Inc.
# Regression Estimation Results[1]
## Dependent Variable:  UNFI Returns

| Estimation Period:  12/8/21 – 9/25/23 | Coefficient | p-value[2] |
|---|---|---|
| Market Index[3] | 0.569 | 0.000 * |
| Industry Index[4] | 0.619 | 0.000 * |
| Intercept | 0.000 | 0.795 |
| | | |
| Observations | 438 | |
| Adjusted R-Squared | 0.471 | |
| Standard Error | 0.017 | |

Source:  *CRSP*; Complaint; UNFI Forms 10-K for FY 2022 and FY 2023

Note:
[1] The two-factor regression model with market and industry indices is estimated over the Proposed Class Period (i.e., 12/8/21 – 9/25/23), excluding the impact dates of the Challenged Statements and the Alleged Corrective Disclosures as alleged in the Complaint:  12/8/21, 12/9/21, 3/9/22, 3/10/22, 6/7/22, 6/8/22, 9/27/22, 9/28/22, 12/7/22, 12/8/22, 3/8/23, 6/7/23, 6/8/23, and 9/26/23.
[2] p-values marked with the asterisk "*" denote statistical significance at the 5% level (corresponding to using the 95% confidence level) using a two-tailed test.
[3] Market Index represents the returns on the CRSP value-weighted NYSE/NYSE MKT/Nasdaq/ARCA Market Index.
[4] Industry Index represents the returns on an equal-weighted index of companies in the S&P SmallCap 600 Food Distributors Index, excluding UNFI (Andersons Inc., Chefs' Warehouse Inc., and SpartanNash Co.).  UNFI compared its stock price performance to the S&P SmallCap 600 Food Distributors Index in its FY 2022 and FY 2023 annual reports.

**Exhibit 3a**

## United Natural Foods, Inc.
## Quarterly Gross Margin
## Excluding Non-Cash LIFO Charge[1]
### Q1 2022 – Q4 2023[2]



Source: UNFI SEC Filings; Complaint; MTD Ruling

Note:
[1] Quarterly gross margin is calculated as the sum of gross profit and non-cash LIFO charge divided by net sales, using figures from the earnings release corresponding to that quarter.
[2] UNFI's fiscal year ends on the Saturday closest to July 31.
[3] Earnings announcement corresponds to a Challenged Statement.
[4] Earnings announcement corresponds to an Alleged Corrective Disclosure.

**Exhibit 3b**

# United Natural Foods, Inc.
# Year-over-Year Change in Quarterly Gross Margin
# Excluding Non-Cash LIFO Charge[1]
## Q1 2022 – Q4 2023[2]



Source:  UNFI SEC Filings; Complaint; MTD Ruling

Note:
[1] Represents the change in quarterly gross margin excluding non-cash LIFO charge relative to the same fiscal quarter one year prior.  Quarterly gross margin is calculated as the sum of gross profit and non-cash LIFO charge divided by net sales, using figures from the earnings release corresponding to that quarter.
[2] UNFI's fiscal year ends on the Saturday closest to July 31.
[3] Earnings announcement corresponds to one of the Challenged Statements.
[4] Earnings announcement corresponds to one of the Alleged Corrective Disclosures.

**Exhibit 4**

# United Natural Foods, Inc.
## Analyst Reports Following the Q2 2023 Earnings Announcement
Sample Analyst Commentary on Inflation-Related Forward Buying and Procurement Gains
3/8/23 – 3/14/23

| Date | Contributor | Analyst Report Excerpt[1] |
|---|---|---|
| 3/8/23 | BMO | Despite the challenges, we do not view the pullback in shares as a buying opportunity as this profit re-set should merely get the company back to more normalized **profit levels that had been boosted by unsustainable procurement gains during the elevated inflationary environment**. The 13% cut to EBITDA guidance (at the mid-point) suggests that procurement gains account for at least ~10-15% of EBITDA; however, the company has not disclosed the magnitude of EBITDA that is typically attributed to procurement gains and therefore it's difficult to gauge whether this is conservative enough and/or what other elements of the company's growth have not been properly attributed to the appropriate drivers (synergies, initiatives, etc). |
| 3/8/23 | BTIG | UNFI posted a highly disappointing quarter, lowering its [FY 2023] outlook and withdrawing [FY 2024] targets in the process, **as underappreciated inventory gains are lapped**. Forward buying during outsized inflation this time last year inflated gross profit, which the company's antiquated systems failed to fully identify.<br><br>**Strategic Buys Ahead of Price Hikes Inflated Profit Last Year**. This morning, UNFI posted a meaningful and surprising profit miss, driven almost entirely by weaker gross margin. **Gross margin was 70 bps lower than our forecast and 80 bps below last year at 13.7%, as the company underestimated the procurement and inventory gains it realized during the onset of heightened inflation. Put simply, UNFI benefited from strategically purchasing inventory (mostly non-perishables) ahead of scheduled price hikes over the past 12-18 months, and is now lapping those gains**. |
| 3/8/23 | CL King | Adjusted EBITDA of $181MM fell 17.7% year over year and missed both our $230.6MM estimate and consensus of $231.3MM. The primary driver of the earnings shortfall was lower-than-forecast gross profit ($1,098MM versus our $1,138MM forecast) that was the result of lower year-over-year procurement gains and inventory holding profits. We also believe that industrywide lower year-over-year volumes at grocery store customers negatively impacted profitability. |
| 3/8/23 | Deutsche Bank | While the top line remained strong, **gross margin pressure surfaced in the final month of the quarter as the company lapped one-time benefits of forward buys last year**. UNFI had no visibility into the pricing benefits experienced over the last five quarters because of antiquated systems. **Current price increase velocity is 2/3 of last year's volumes meaning less opportunity to take advantage of forward buys this year to maintain gross margin. Management expects this pressure to continue through [the second half of FY 2023] and has reduced the profitability outlook for the full year**, resulting in an updated adjusted EPS range of $3.05-$3.90 (previously $4.85-$5.15). Perhaps more importantly, management withdrew its long-term [FY 2024] targets, signaling the problems may extend well into next year.<br><br>Our adjusted [FY 2023] EPS estimate decreases to $3.24 from $4.88 (Street $4.97; guidance $3.05-$3.90) ... Our adjusted EBITDA forecast is $720M (Street $868M; guidance $715M-$785M). Turning to [FY 2024], we forecast EPS of $3.49 (prior $5.12; Street $5.34) **as we incorporate lower gross margins**. |

**Exhibit 4**

# United Natural Foods, Inc.
## Analyst Reports Following the Q2 2023 Earnings Announcement
Sample Analyst Commentary on Inflation-Related Forward Buying and Procurement Gains
3/8/23 – 3/14/23

| Date | Contributor | Analyst Report Excerpt[1] |
|---|---|---|
| 3/8/23 | Goldman Sachs | Gross margin declined -70 bps y/y to **14.0% primarily due to elevated procurement gains in the prior year related to inventory buying ahead of rising inflation, which is not repeatable in the current disinflationary environment** while management noted limited visibility previously given legacy digital infrastructure. Pressure from this difficult lap should continue for the balance of the year.<br><br>We are lowering our [FY 2023–2025] EPS estimates by ~38% to $3.15/$3.29/$3.62 from $5.04/$5.33/$5.79, respectively, primarily due to a lower gross margin outlook. |
| 3/8/23 | UBS | **Still, some headwinds emerged over the course of the quarter that are expected to have longer term impacts, including a considerable slowdown in procurement gains as inflation slowed.** Addressing where these deviated from expectations (was it simply a faster than anticipated decline in inflation or did it include anything more structural?) & other profitability shortfalls will likely be key topics of discussion on the co's earnings call. |
| 3/8/23 | Wells Fargo | UNFI reported adj. EPS of $0.78, well below the Street's $1.45, **as inflation-driven procurement gains were not fully repeated. The gross margin fell 80bps y/y to 14.0% (ex the LIFO charge), the lowest since CY [Q1 2020].** UNFI's updated guidance now includes higher net sales (midpoint of $30.3bn, prior $30.1bn), but much lower profitability (adj EBITDA $750m, adj EPS $3.48 at midpoint, prior $865m and $5.00).<br><br>**Given management's admitted lack of visibility, we are taking our [FY 2023] estimate to the low end of guidance. We project a decline in [FY 2024] earnings, which incorporates the full lap of the procurement gains.** We are lowering our [FY 2023] and [FY 2024] EPS estimates to $3.05 (from $4.95) and $2.65 (from $5.35), respectively. We are also lowering our price target to $28 (from $40), 5.5x our [FY 2024] EBITDA estimate. |
| 3/8/23 | Wolfe Research | **Investors are likely concerned about the impact of disinflation and lapping procurement gains going forward in the context of a wider guide range.**<br><br>UNFI reported mixed [Q2 2023] results as sales came in ahead of expectations, but EBITDA missed **due to gross margin compression as UNFI lapped inventory procurement gains** and OpEx levels remained elevated. **The procurement headwinds are expected to persist through [FY 2023]**, which caused management to cut guidance (EPS down -28% at the midpoint) and widen the guided range of outcomes. |

**Exhibit 4**

# United Natural Foods, Inc.
## Analyst Reports Following the Q2 2023 Earnings Announcement
Sample Analyst Commentary on Inflation-Related Forward Buying and Procurement Gains
3/8/23 – 3/14/23

| Date | Contributor | Analyst Report Excerpt[1] |
|---|---|---|
| 3/9/23 | CL King | Based on our proprietary analysis[], **we project that the disinflation-driven gross margin pressures that caused the [Q2 2023] earnings miss will likely persist for three more quarters**.<br><br>Adjusted EBITDA of $181MM fell 17.7% year over year and missed both our $230.6MM estimate and consensus of $231.3MM. The primary driver of the earnings shortfall was lower-than-forecast gross profit ($1,098MM versus our $1,138MM estimate) that was the result of **lower year-over-year procurement gains and inventory holding profits.**<br><br>Cutting Our Adjusted EBITDA and EPS Estimates. We are lowering our [FY 2023] and [FY 2024] adjusted EBITDA forecasts to $730MM (from $868MM) and $803MM (from $908MM), respectively. We are lowering our respective [FY 2023] and [FY 2024] EPS estimates to $3.15 (from $4.95) and $4.00 (from $5.25). |
| 3/9/23 | Seaport | The primary factor driving lower earnings during [Q2 2023] and over the next 12 months is the **lapping of significant inventory gains from surging procurement inflation during [FY 2022]. Inflation is now decelerating rapidly, and large, incremental procurement income is not repeatable going forward**. Gross profit margins will face considerable headwinds through most of [Q2 2024].<br><br>**The earnings shortfall reflected substantially lower procurement income during the final month of [Q2 2023]**.... Equally important, and adding to [uncertainty], UNFI also pulled its [FY 2024] guidance numbers as well. UNFI will face difficult year-over-year gross profit margin comparisons through the first two-thirds of [Q2 2024], reflecting lower nonrecurring procurement income. |
| 3/10/23 | Northcoast Research | **The company missed opportunities at procuring inventory ahead of vendor cost increases, which pressured the FIFO gross profit margin.**<br><br>Estimate Change: Management's guidance for adjusted EPS in fiscal [FY] 2023 carries a wide range from $3.05-$3.90; it had been $4.85-$5.15. We move just below the midpoint to $3.42, from $5.04. We move our [FY] 2024 estimate from $5.47 to $3.68. The Street seems to have yet fully digested the [Q2 2023] results as at the time of writing the Street's estimates for [FY] 2023 and 2024 sit at $3.93 and $4.30, respectively.<br><br>**Contrary to our expectation, UNFI failed to take advantage of continuing inflation during the second quarter, using forward buying to achieve gross profit growth.** Additionally, the company did not reap any benefits from improved product supplies or promotions, which might have offset a portion of the disappointing results. **With forward buying opportunities occurring in 60- and 90-day cycles, and the number of price increases down by two-thirds year-over-year, we expect similar operating margin results in the remaining quarters of [FY 2023] and the first quarter of [FY 2024].** |

**Exhibit 4**

# United Natural Foods, Inc.
# Analyst Reports Following the Q2 2023 Earnings Announcement
## Sample Analyst Commentary on Inflation-Related Forward Buying and Procurement Gains
## 3/8/23 – 3/14/23

| Date | Contributor | Analyst Report Excerpt[1] |
|---|---|---|
| 3/12/23 | Guggenheim | The substantial [Q2 2023] bottom-line miss and guide-down is a rare occurrence in a consumables space benefiting from elevated inflation, with most peers delivering "beats and raises." **This was driven by a gross margin shortfall as meaningful inflation related 'inventory profit' was cycled**.<br><br>EBITDA fell ~18% Y/Y with a ~59 basis point margin shortfall—2.3% versus our 2.9% estimate, meaningful for a low-margin distributor. It is attributed to the cycling of elevated 'inventory profit' a year ago with this pressure expected to persist, albeit to a lesser degree, over the next 2-3 quarters. |
| 3/13/23 | UBS | We downgrade UNFI following several developments, incl. 1) **challenges lapping higher than anticipated procurement & inventory gains in the year ago period** (contributing to our expectations of 55-60 bps of GM pressure in [the second half of FY 2023])... We now model $3.32 in [FY 2023] EPS ($4.99 prior), $3.35 in [FY 2024] EPS ($5.45 prior), & $3.55 in [FY 2025] EPS ($5.74 prior).<br><br>UNFI is likely to face profitability headwinds in [the second half of FY 2023] as it cycles past 'significant' procurement gains. |
| 3/14/23 | R5 Capital | Profitability was significantly impacted by supply chain volatility and the fact that t**he company did not repeat procurement gains seen last year**. Gross margin in [Q2 2023] was 14.05%, down - 70 bps y/y. **Gross margins trends were driven by lower procurement gains, decelerating inflation and lower inventory gains**.<br><br>We have also decreased our gross margin estimates for the remainder of the year, now expecting -60 bps of contraction in [Q3 2023] and -40 bps of contraction in [Q4 2023]. This results in -48 bps of contraction for the full year and a gross margin of 14.5%. |

Source:  Analyst Reports

Note:
[1]  Emphasis in original removed and emphasis added in boldface.

**Exhibit 5a**

# United Natural Foods, Inc.
## Analyst Estimates of Gross Margin
## Before and After Q2 2023 Earnings Announcement[1]

*Panel 1:  Gross Margin, Excluding Non-Cash LIFO Charge*

| Contributor | Report Date | Analyst Estimate Before 3/8/23 Q3 2023 $(a_1)$ | Q4 2023 $(b_1)$ | FY 2023 $(c_1)$ | FY 2024 $(d_1)$ | Report Date | First Analyst Estimate On or After 3/8/23 Q3 2023 $(a_2)$ | Q4 2023 $(b_2)$ | FY 2023 $(c_2)$ | FY 2024 $(d_2)$ | Revision (bps) Q3 2023 $(a_3)=(a_2)-(a_1)$ | Q4 2023 $(b_3)=(b_2)-(b_1)$ | FY 2023 $(c_3)=(c_2)-(c_1)$ | FY 2024 $(d_3)=(d_2)-(d_1)$ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BMO | 12/7/22 | 14.97% | 15.10% | 14.91% | 15.00% | 3/8/23 | 14.50% | 14.60% | 14.49% | 14.50% | -47 | -50 | -42 | -50 |
| CL King | 3/7/23 | 14.80% | 15.05% | 14.80% | 14.75% | 3/9/23 | 14.30% | 14.65% | 14.45% | 14.40% | -50 | -40 | -35 | -35 |
| Deutsche Bank | 3/7/23 | | | 14.90% | 15.00% | 3/8/23 | 14.10% | 14.40% | 14.30% | 14.50% | | | -60 | -50 |
| Goldman Sachs | 12/7/22 | | | 14.90% | 15.00% | 3/8/23 | 14.10% | | 14.30% | 14.30% | | | -60 | -70 |
| Guggenheim | 12/8/22 | 14.97% | 15.25% | 14.95% | 14.90% | 3/12/23 | 14.32% | 14.65% | 14.46% | 14.51% | -65 | -60 | -49 | -39 |
| R5 Capital | 12/9/22 | | | 14.90% | 14.90% | 3/14/23 | 14.40% | | 14.50% | 14.50% | | | -40 | -40 |
| UBS | 12/7/22 | 15.10% | 15.40% | 15.10% | 15.10% | 3/13/23 | 14.50% | 14.60% | 14.50% | 14.50% | -60 | -80 | -60 | -60 |
| Wells Fargo | 12/7/22 | 15.00% | 15.10% | 15.00% | 15.10% | 3/8/23 | 14.00% | 14.00% | 14.20% | 14.10% | -100 | -110 | -80 | -100 |
| **Average** | | **14.97%** | **15.18%** | **14.93%** | **14.97%** | | **14.28%** | **14.48%** | **14.40%** | **14.41%** | **-64** | **-68** | **-53** | **-56** |
| **Median** | | **14.97%** | **15.10%** | **14.91%** | **15.00%** | | **14.31%** | **14.60%** | **14.46%** | **14.50%** | **-60** | **-60** | **-55** | **-50** |

**Exhibit 5a**

# United Natural Foods, Inc.
## Analyst Estimates of Gross Margin
## Before and After Q2 2023 Earnings Announcement[1]

*Panel 2:  Gross Margin, Including Non-Cash LIFO Charge*

| Contributor | Report Date | Analyst Estimate Before 3/8/23 | | | | Report Date | First Analyst Estimate On or After 3/8/23 | | | | Revision (*bps*) | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Q3 2023 | Q4 2023 | FY 2023 | FY 2024 | | Q3 2023 | Q4 2023 | FY 2023 | FY 2024 | Q3 2023 | Q4 2023 | FY 2023 | FY 2024 |
| | | $(a_1)$ | $(b_1)$ | $(c_1)$ | $(d_1)$ | | $(a_2)$ | $(b_2)$ | $(c_2)$ | $(d_2)$ | $(a_3)=(a_2)-(a_1)$ | $(b_3)=(b_2)-(b_1)$ | $(c_3)=(c_2)-(c_1)$ | $(d_3)=(d_2)-(d_1)$ |
| BTIG | 12/7/22 | 14.50% | 14.90% | 14.60% | 14.70% | 3/8/23 | 14.00% | 14.50% | 14.20% | 14.40% | -50 | -40 | -40 | -30 |
| Deutsche Bank | 12/8/22 | 14.20% | 14.50% | 14.60% | 14.70% | 3/8/23 | 13.50% | 13.90% | 14.00% | 14.10% | -70 | -60 | -60 | -60 |
| Guggenheim | 12/8/22 | 14.73% | 15.03% | 14.70% | 14.82% | 3/12/23 | 13.95% | 14.29% | 14.11% | 14.35% | -78 | -74 | -59 | -47 |
| Roth MKM | 12/8/22 | 14.00% | 14.60% | 14.40% | | 3/8/23 | 13.60% | 14.10% | 14.00% | | -40 | -50 | -40 | |
| Seaport | 12/8/22 | 14.34% | 15.03% | 14.55% | 14.72% | 3/9/23 | 13.70% | 13.80% | 13.93% | 14.18% | -64 | -123 | -62 | -54 |
| **Average** | | **14.35%** | **14.81%** | **14.57%** | **14.74%** | | **13.75%** | **14.12%** | **14.05%** | **14.26%** | **-60** | **-69** | **-52** | **-48** |
| **Median** | | **14.34%** | **14.90%** | **14.60%** | **14.71%** | | **13.70%** | **14.10%** | **14.00%** | **14.26%** | **-64** | **-60** | **-59** | **-51** |

Source:  Analyst Reports

Note:
[1]    The analyst estimate of gross margin before 3/8/23 is based on the most recent report by a given contributor after the Q1 2023 earnings announcement on 12/7/22 and prior to 3/8/23 that included estimates of gross margin for Q3 2023, Q4 2023, FY 2023, or FY 2024.  The analyst estimate on or after 3/8/23 is based upon the first report for a given contributor within one week following UNFI's Q2 2023 earnings announcement with an estimate of gross margin for Q3 2023, Q4 2023, FY 2023, or FY 2024.

**Exhibit 5b**

# United Natural Foods, Inc.
## Change in Analyst Estimates of Gross Margin
## Following Earnings Announcements[1]

Q1 2022 – Q2 2023[2]

*(in bps )*

**Panel 1: Gross Margin, Excluding Non-Cash LIFO Charge**

| Earnings Announcement Date | FY 2023 | | | FY 2024 | | |
|---|---|---|---|---|---|---|
| | Number of Contributors | Average Change in Estimate | Median Change in Estimate | Number of Contributors | Average Change in Estimate | Median Change in Estimate |
| 12/8/21 [Q1 2022] | 0 | | | 0 | | |
| 3/9/22 [Q2 2022] | 0 | | | 0 | | |
| 6/7/22 [Q3 2022] | 0 | | | 0 | | |
| 9/27/22 [Q4 2022] | 4 | 3 | 3 | 3 | 17 | 16 |
| 12/7/22 [Q1 2023] | 6 | -12 | -8 | 6 | -15 | -10 |
| 3/8/23 [Q2 2023] | 8 | -53 | -55 | 8 | -56 | -50 |

**Panel 2: Gross Margin, Including Non-Cash LIFO Charge**

| Earnings Announcement Date | FY 2023 | | | FY 2024 | | |
|---|---|---|---|---|---|---|
| | Number of Contributors | Average Change in Estimate | Median Change in Estimate | Number of Contributors | Average Change in Estimate | Median Change in Estimate |
| 12/8/21 [Q1 2022] | 4 | 14 | 12 | 1 | 20 | 20 |
| 3/9/22 [Q2 2022] | 5 | 1 | 0 | 1 | 5 | 5 |
| 6/7/22 [Q3 2022] | 3 | 17 | 12 | 0 | | |
| 9/27/22 [Q4 2022] | 6 | -17 | -20 | 2 | -7 | -7 |
| 12/7/22 [Q1 2023] | 5 | -5 | -1 | 4 | -4 | 0 |
| 3/8/23 [Q2 2023] | 5 | -52 | -59 | 4 | -48 | -51 |

Source: Analyst Reports

Note:
[1] For each contributor, the change in analyst estimates of gross margin for FY 2023 and FY 2024 is based on the difference between the estimate in the first report published within a week after a UNFI earnings announcement date and the estimate in the most recent report published after the prior earnings announcement date.
[2] UNFI's fiscal year ends on the Saturday closest to July 31.

**Exhibit 6**

# United Natural Foods, Inc.
## Implied Volatilities for UNFI Options Considered in the Feinstein Report[1]
### 12/8/21 – 9/25/23



Source:  Feinstein Report and Backup Materials; UNFI_FEINSTEIN_016778

Note:
[1]  The exhibit shows the daily implied volatility for UNFI options during the Proposed Class Period (i.e., 12/8/21 – 9/25/23) using data on UNFI options obtained from Dr. Feinstein's backup materials that he produced with his report.  The exhibit omits from display 95 observations where the option on a given day had an implied volatility above 200%.