UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAN SILLS and GEORGE DICK, individually and on behalf of all others similarly situated,

               Plaintiffs,

-against-

UNITED NATURAL FOODS, INC., J. ALEXANDER MILLER DOUGLAS, JOHN W. HOWARD, and CHRISTOPHER P. TESTA,

               Defendants.

23-CV-2364 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

Defendant Christopher P. Testa moves for judgment on the pleadings on a Section 20(a) claim of the Securities Exchange Act. For the reasons stated herein, the motion is DENIED.

## BACKGROUND

The Court adopts and presumes the parties' familiarity with the facts as set forth in its prior opinion at ECF No. 66 (the "Opinion" or "Op."). In summary, this case is about alleged securities fraud by United Natural Foods, Inc. ("UNFI" or the "Company") and its executives, including Defendant Testa, the former Company President and Chief Marketing Officer. UNFI, the largest publicly traded grocery wholesaler in North America, learned of supplier price increases 60 to 90 days in advance of those price increases taking effect. In a practice known as "forward buying," UNFI leveraged this knowledge to stock up on inventory at the lower prices while immediately passing along price increases to retailers. This practice significantly propped up UNFI's earnings in 2022 but were not sustainable. In 2023, after earnings decreased significantly, UNFI revealed the extent to which its profits had been driven by unsustainable forward buying gains the prior year.

Plaintiffs, purchasers of UNFI's securities, bring this putative class action under the Securities Exchange Act. They allege that Defendants knew of the impact of the aberrational level

of inflation-related forward buying, and that Defendants' public statements omitting this information were misleading. ECF No. 39 ("SAC"). Plaintiffs bring claims under Section 10(b) and Rule 10b-5 for securities fraud, which require a pleading of scienter—in other words, facts stated with particularity that give rise to a strong inference that the defendant acted with the requisite state of mind. SAC ¶¶ 269–79; *see* 15 U.S.C. § 78u-4(b)(2)(A); *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322–23 (2007). Plaintiffs also bring claims under Section 20(a) for control person liability against UNFI and its executives, including Testa. SAC ¶¶ 280–83. Defendants moved to dismiss all claims. ECF No. 48.

On September 13, 2024, the Court issued its Opinion denying the motion in large part. Op. at 29. Specifically, the Court determined that Plaintiffs had stated a claim under Section 10(b) and Rule 10b-5. *Id.* at 27. In doing so, however, the Court stated in its scienter analysis that "Plaintiffs failed to oppose the motion to dismiss with respect to any statement by Testa during the Class Period, and his statements before the Class Period are not actionable." *Id.* at 22. The Court noted:

> The only challenged statement by Testa during the Class Period is that "there were . . . specific items that we're cycling in '22 that we've talked about before, including that monetization of Riverside, which creates a rent expense, which didn't exist last year." SAC ¶ 167. That statement has nothing to do with the impact of inflation or forward buying, and Plaintiffs make no attempt to defend why it was misleading.

*Id.* at 22 n.2.

The Court also denied Defendants' motion to dismiss the Section 20(a) claim for control person liability against Defendant Testa because "Defendants' argument . . . rest[ed] entirely on Plaintiffs' presumptive failure to plead a claim under Section 10(b) and Rule 10b-5." *Id.* at 28 (cleaned up and citation omitted). The Court thus did not examine whether allegations pertaining to Testa meet all elements required to bring a claim under Section 20(a).

Defendant Testa now moves under Rule 12(c) for a judgment on the pleadings on the remaining Section 20(a) claim against him. ECF Nos. 81, 82 ("Mot.") at 1.

## LEGAL STANDARD

A Rule 12(c) motion is governed by the same standards of a Rule 12(b)(6) motion. *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011). That is, in reviewing such a motion, the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). A claim will survive a Rule 12(b)(6) motion—and by extension, a Rule 12(c) motion—only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## DISCUSSION

Plaintiffs allege that Defendant Testa violated Section 20(a) of the Securities Exchange Act. To state a claim under Section 20(a), a plaintiff must allege facts showing: "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007). The Court has already determined that Plaintiffs sufficiently alleged a primary violation. *See* Op. at 12–27. Defendant Testa now argues that Plaintiffs have failed to allege the remaining elements: control and culpable participation. The Court addresses each in turn.

I.      **Plaintiffs Have Adequately Alleged Control**

To establish the control element of a Section 20(a) claim, Plaintiffs must show that Testa had "the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 240.12b-2(4) (2024); *see also S.E.C. v. First Jersey Sec., Inc.,* 101 F.3d 1450, 1472–73 (2d Cir. 1996). A control person must "actually possess, in fact, rather than in theory, the ability to direct the actions of the controlled person." *Patel v. Koninklijke Philips N.V.*, No. 21-CV-4606 (ERK), 2024 WL 4265758, at *5 (E.D.N.Y. Sept. 23, 2024) (quoting *In re Global Crossing, Ltd. Sec. Litig.*, No. 02-CV-910 (GEL), 2005 WL 1875445, at *3 (S.D.N.Y. Aug. 5, 2005)). Courts in this Circuit have also held that a defendant "must not only have actual control over the primary violator, but have actual control over the *transaction* in question." *Id.*; (quoting *In re Alstom SA*, 406 F. Supp. 2d 433, 487 (S.D.N.Y. 2005)). However, "[b]ecause fraud is not an essential element of a Section 20(a) claim, Plaintiffs need not plead control in accordance with the particularity required under Rule 9(b)." *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d 164, 255 (S.D.N.Y. 2022) (quoting *Tecku v. Yieldstreet, Inc.*, No. 20-CV-7327 (VM), 2022 WL 1322231, at *15 (S.D.N.Y. May 3, 2022); *see also In re Virtus Inv. Partners, Inc. Sec. Litig.*, 195 F. Supp. 3d 528, 542 (S.D.N.Y. 2016)). Moreover, whether a defendant is a controlling person "is a fact-intensive inquiry, and generally should not be resolved on a motion to dismiss." *Katz v. Image Innovations Holdings, Inc.*, 542 F. Supp. 2d 269, 276 (S.D.N.Y. 2008).

Plaintiffs have alleged the following facts to show that Testa was a controlling person. Testa was UNFI's President during the entire relevant Class Period. SAC ¶ 29. During this time, Testa "possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and

4

institutional investors, *i.e.*, the market." *Id.* ¶ 30. Testa was also "provided with copies of the Company's reports and press releases alleged . . . to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected." *Id.* Plaintiffs also allege that Testa participated in UNFI's earnings calls during the Class Period. *Id.* ¶¶ 67, 167. During one call, Testa represented that several factors were driving UNFI's EBITDA margin rate decline, but did not mention forward buying. *Id.* ¶ 167. This statement was made in conjunction with statements by Defendant Douglas that also omitted mention of forward buying and that "our strategy to continue to make our operating expense more efficient should be back on track as we go ahead." *Id.* Plaintiffs allege that the statements were "materially false and misleading and omitted to disclose material facts necessary to prevent them from being misleading." *Id.* ¶¶ 164, 168.

Defendant Testa contends that these broad allegations are insufficient because they only establish control person status, and not actual control over the violators or the transactions. Mot. at 5–7. The Court disagrees and finds that Plaintiffs have sufficiently alleged control.

First, the Court is mindful that the majority of cases recognizes—including cases cited by Defendants—that particularity is not required for this element. *See In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d at 255 (quoting *Tecku*, 2022 WL 1322231, at *15); *In re Virtus Inv. Partners, Inc. Sec. Litig.*, 195 F. Supp. 3d at 542; *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 122 (S.D.N.Y. 2013); *In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 166 (S.D.N.Y. 2012); *Sedona Corp. v. Ladenburg Thalmann & Co.,* No. 03-CV-3120 (LTS) , 2005 WL 1902780, at *16 (S.D.N.Y. Aug. 9, 2005); *In re Initial Pub. Offering Sec. Litig.,* 358 F. Supp. 2d 189, 208 (S.D.N.Y. 2004). It would be inadequate for Plaintiffs to refer solely to Testa's status as Company President to imply control. *See In re Global Crossing,* 2005 WL

5

1875445, at *3. But that is not all Plaintiffs have alleged here. Plaintiffs also allege that Testa had actual access to the contents of the statements, possessed actual authority to control the misleading statements, and that the misleading statements were made nonetheless. SAC ¶ 29–30.

Second, while broad allegations of Testa's authority over and knowledge of the misleading statements might not always be enough to show actual control, *see, e.g., In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d at 166–67, the allegations about Testa's participation in an earnings call imply that he exercised actual control. SAC ¶¶ 167–68; *see Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 205 (S.D.N.Y. 2010) (finding control where, among other things, defendant spoke directly to investors during calls); *In re Virtus Inv. Partners, Inc. Sec. Litig.*, 195 F. Supp. 3d at 543 (finding control by each defendant where, among other things, one defendant acted as a spokesperson for the company and another defendant directed wholesalers to ignore certain truthful statements); *see also In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d at 166–67 (suggesting that actual control might be shown through contact with primary violators during the issuance of misleading disclosures, or approval or confirmation of a misleading statement, or encouragement toward a primary violator to make a misleading statement).

To be sure, Plaintiffs' allegations regarding Testa's participation in this single call are quite minimal. And by itself, his statement during the call would not be sufficient for a Section 10(b) claim because it has nothing to do with forward buying. But for a Section 20(a) claim, the context matters. Made in conjunction with Douglas's statements, it is plausible that Testa was condoning the misleading omission of material information about forward buying and the misleading suggestion that the margin rate "should be back on track as we go ahead." Combined with the allegations that Testa had authority over UNFI statements and had access to UNFI statements, it is

plausible that Testa did exercise control over the misleading statements. Plaintiffs have adequately pled this element.

## II.     Plaintiffs Have Adequately Pled Culpable Participation

The third element of a Section 20(a) claim requires Plaintiffs to allege facts showing that Testa was a "culpable participant" in the fraud. *See Suez Equity Invs., L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 101 (2d Cir. 2001). But the Second Circuit has not defined what "culpable participation" means. "In that vacuum, district courts . . . are split as to what, exactly, a 'culpable participation' allegation requires." *In re: EZCorp, Inc. Sec. Litigs.*, 181 F. Supp. 3d 197, 212 (S.D.N.Y. 2016). Some courts find that allegations of control "are not averments of fraud and therefore need not be pled with particularity." *In re Parmalat Sec. Litig.*, 414 F. Supp. 2d 428, 440 (S.D.N.Y. 2006). The majority of courts take the opposite approach, holding that "culpable participation" "must be plead with the same particularity as scienter under section 10(b)." *Lapin v. Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221, 246 (S.D.N.Y. 2006); *see also Patel,* 2024 WL 4265758, at *5 (citing *In re Alstom SA*, 406 F. Supp. 2d at 491); *McIntire*, 927 F. Supp. 2d at 122–23). But, as one court has pointed out, both positions have shortcomings:

> The minority, notice pleading standard seems to read out the "culpable participation" prong entirely, in essence requiring only (1) a primary violation and (2) "control." Or, as one case applying the standard put it, "naked allegations of control will typically suffice." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 190 (S.D.N.Y. 2006). On the other hand, the majority standard lacks a textual basis in Section 20(a) of the Exchange Act. *See Lapin v. Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221, 248 (S.D.N.Y. 2006) ("The statute plainly imposes liability on a controlling person for any primary violation, unless the controlling person acted in good faith and did not induce the action."); *In re Parmalat Sec. Litig.,* 375 F. Supp. 2d at 308 ("The interpretation most consistent with the text is that the defendant bears the burden of establishing good faith and lack of inducement, not that the plaintiff must allege the opposite in its pleadings."). The majority standard thus "assumes that because 'culpable participation' requires *proof* of a certain state of mind, plaintiffs must *plead* scienter. This assumption has been made despite the fact that the Second Circuit has never defined "culpable participation" or equated that term with scienter." *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 393 (S.D.N.Y. 2003) (emphasis in original) (internal citations removed).

*In re: EZCorp, Inc. Sec. Litigations*, 181 F. Supp. 3d 197, 212–13 (S.D.N.Y. 2016) (cleaned up).

This Court is similarly cautious of the weaknesses of both interpretations. On one hand, the Court agrees that "because Section 20(a) liability requires an individualized determination of the control person's particular culpability, an allegation of culpable participation requires particularized facts as to that control person's actions." *Bos. Ret. Sys. v. Alexion Pharms., Inc.*, 556 F. Supp. 3d 100, 144 (D. Conn. 2021). But the Court is not convinced that those facts must establish the conscious misbehavior or recklessness of scienter. "It is not apparent why a control person cannot be found, based on an individualized determination, to have been in some meaningful sense a culpable participant even when that control person does not have 'conscious recklessness—*i.e.*, a state of mind approximating actual intent[.]'" *Id.* (quoting *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009)).

In either case, however, Plaintiffs have sufficiently alleged culpable participation. That is because the scienter analysis that the Court performed in its prior Opinion also applies to Testa. In that Opinion, the Court determined that Plaintiffs adequately pled scienter for executives Douglas and Howard based on a theory of conscious recklessness. Op. at 20–27. The Court explained eight bases for this determination, seven of which addressed what UNFI executives were likely to know about the forward buying practice and its impact, and one of which addressed the motive of UNFI executives to mislead about the practice in order to maximize their bonuses. *Id.* Although Testa was one such executive, the Court did not apply the scienter analysis to Testa because Testa had made no statements that could be challenged for a primary violation. Op. at 22 n.2. Nonetheless, seven of the eight bases that the Court examined in its scienter analysis for Douglas and Howard are equally true for Testa.

There is only one basis from the Court's prior analysis that does not apply to Testa. That is the second basis: that Douglas and Howard's statements that they did not "fully appreciate" or "fully understand" the magnitude of the benefits of inflation-based forward buying suggests they had some appreciation or understanding of its impact. Op. at 23–24. However, this conclusion does not change the outcome of the scienter analysis for Testa. That is because Plaintiffs have alleged other facts to show that Testa knew about the impact of the forward buying practice. Specifically, Plaintiffs alleged that Testa engaged in suspicious stock sales shortly before the first partial revelation of procurement gains from forward buying. *Id.* ¶¶ 239–244. On January 23, 2023, Testa sold over 27,000 shares of his UNFI stock, or about 17% of his holdings. *Id.* ¶¶ 241, 244. His total proceeds were in excess of one million dollars. *Id.* ¶ 244. This occurred one and a half months before Defendants reported negative information on the market. *Id.* ¶ 240. Combined with the other seven bases the Court previously examined, these allegations are sufficient to support an inference of scienter. Plaintiffs have adequately pled all three elements of a Section 20(a) claim.

## CONCLUSION

For the foregoing reasons, Testa's motion for judgment on the pleadings is DENIED. The Clerk of Court is directed to terminate ECF No. 81.

Dated: July 28, 2025
New York, New York

SO ORDERED.

*Jessica Clarke*

JESSICA G. L. CLARKE
United States District Judge