## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAN SILLS and GEORGE DICK, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>    v.<br><br>UNITED NATURAL FOODS, INC., J. ALEXANDER MILLER DOUGLAS, JOHN W. HOWARD, and CHRISTOPHER P. TESTA,<br><br>Defendants. | Case No. 1:23-cv-02364-JGLC-VF |

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND <u>CLASS COUNSEL</u>

**TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................. 1

II.     DEFENDANTS DO NOT PROVE A COMPLETE LACK OF PRICE IMPACT, AS
        REQUIRED TO REBUT THE PRESUMPTION OF RELIANCE ................................... 2

III.    DEFENDANTS' ATTEMPT TO SHORTEN THE CLASS PERIOD FAILS .................. 3

        A.    Defendants' Attack On Individual Disclosures Is Inappropriate At This
              Stage.......................................................................................................... 3

        B.    Defendants' "Price Impact" Challenges About Two Alleged Price Drop
              Dates Are Loss Causation Arguments That Fail Under The Law .......................... 5

        C.    Defendants Ignore Evidence That Supports Price Impact After March 8 .............. 7

        D.    There Is No "Mismatch" Between the Statements and Disclosures ...................... 11

IV.     *AFFILIATED UTE* PROVIDES AN INDEPENDENT BASIS TO CONCLUDE
        RELIANCE IS A COMMON QUESTION AS TO THE ENTIRE CLASS PERIOD..... 12

V.      DEFENDANTS' QUIBBLES WITH PLAINTIFFS' DAMAGES MODEL DO NOT
        DEFEAT PREDOMINANCE ................................................................................. 12

        A.    The "Out-of-Pocket" Methodology Is Standard In Securities Cases.................... 12

        B.    The "Out-of-Pocket" Methodology Is Appropriate In This Case......................... 16

VI.     SILLS AND DICK ARE TYPICAL AND ADEQUATE ............................................... 19

VII.    CONCLUSION...................................................................................................... 21

## TABLE OF AUTHORITIES

CASES

*Abramson v. Newlink Genetics Corp.*,
    965 F.3d 165 (2d Cir. 2020).................................................................................... 11, 16

*Ark. Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*,
    77 F.4th 74 (2d Cir. 2023) ........................................................................................ 2, 11

*Baliga v. Link Motion, Inc.*,
    2022 WL 16707361 (S.D.N.Y. Nov. 4, 2022)................................................................ 12

*Basic v. Levinson*,
    485 U.S. 224 (1988)......................................................................................................... 1

*Bos. Ret. Sys. v. Alexion Pharm., Inc.*,
    2023 WL 2932485 (D. Conn. Apr. 13, 2023)................................................... 3, 14, 21

*City of Livonia Emps.' Ret. Sys. v. Wyeth*,
    284 F.R.D. 173 (S.D.N.Y. 2012) ..................................................................................... 21

*Crews v. Rivian Auto., Inc.*,
    2024 WL 3447988 (C.D. Cal. July 17, 2024).................................................................. 9

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011)......................................................................................................... 4

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*,
    301 F.R.D. 116 (S.D.N.Y. 2014) ..................................................................................... 14

*Freudenberg v. E\*Trade Fin. Corp.*,
    712 F. Supp. 2d 171 (S.D.N.Y. 2010)....................................................................... 6, 10

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    903 F.2d 176 (2d Cir. 1990)........................................................................................... 20

*George v. China Auto. Sys., Inc.*,
    2013 WL 3357170 (S.D.N.Y. July 3, 2013) ................................................................... 20

*Gordon v. Sonor Cap. Mgmt. LLC*,
    92 F. Supp. 3d 193 (S.D.N.Y. 2015)............................................................................... 20

*Griffin v. GK Intelligent Sys., Inc.*,
    196 F.R.D. 298 (S.D. Tex. 2000)..................................................................................... 20

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2011).............................................................................................. 2, 20

*In re Allergan PLC Sec. Litig.*,
2021 WL 4077942 (S.D.N.Y. Sept. 8, 2021)............................................................ 14

*In re Apache Corp. Sec. Litig.*,
2024 WL 532315 (S.D. Tex. Feb. 9, 2024) ................................................................ 6

*In re Aphria, Inc. Sec. Litig.*,
342 F.R.D. 199 (S.D.N.Y. 2022) .............................................................................. 11

*In re Apple Inc. Sec. Litig.*,
2023 WL 2763952 (N.D. Cal. Mar. 28, 2023)........................................................... 19

*In re Barrick Gold Sec. Litig.*,
314 F.R.D. 91 (S.D.N.Y. 2016) ..................................................................... 13, 14, 17

*In re BP p.l.c. Sec. Litig.*,
2014 WL 2112823 (S.D. Tex. May 20, 2014) ...................................................... 17, 18

*In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*,
2019 WL 5287980 (S.D.N.Y. Oct. 18, 2019) ............................................................. 2

*In re Credit Suisse Sec. Fraud Class Actions*,
2025 WL 1866293 (S.D.N.Y. July 7, 2025) ......................................................... 14, 19

*In re DiDi Glob. Inc. Sec. Litig.*,
2025 WL 1909295 (S.D.N.Y. July 7, 2025) ............................................................... 7

*In re Facebook, Inc. Sec. Litig.*,
87 F.4th 934 (9th Cir. 2023) ...................................................................................... 6

*In re FibroGen Sec. Litig.*,
2024 WL 1064665 (N.D. Cal. Mar. 11, 2024).............................................................. 6

*In re Gilead Sci. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) .................................................................................... 6

*In re Kirkland Lake Gold Ltd. Sec. Litig.*,
2024 WL 1342800 (S.D.N.Y. Mar. 29, 2024) .......................................................... 11

*In re Merck & Co., Inc. Sec., Deriv. & ERISA Litig.*,
2013 WL 396117 (D.N.J. Jan. 30, 2013) .................................................................... 4

iii

*In re NIO, Inc. Sec. Litig.*,
  2023 WL 5048615 (E.D.N.Y. Aug. 8, 2023) ........................................................................... 21

*In re Omega Healthcare Investors, Inc. Sec. Litig.*,
  563 F. Supp. 3d 259 (S.D.N.Y. 2021) ................................................................................ 6, 10

*In re Pfizer Inc. Sec. Litig.*,
  282 F.R.D. 38 (S.D.N.Y. 2012) ........................................................................................... 2, 19

*In re Qualcomm Inc. Sec. Litig.*,
  2023 WL 2583306 (S.D. Cal. Mar. 20, 2023) ........................................................................ 6

*In re Scientific-Atlanta, Inc. Sec. Litig.*,
  571 F. Supp. 2d 1315 (N.D. Ga. 2007) ................................................................................. 16

*In re Teva Sec. Litig.*,
  2021 WL 872156 (D. Conn. Mar. 9, 2021) ........................................................................... 17

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
  625 F. Supp. 3d 164 (S.D.N.Y. 2022) ..................................................................................... 5

*In re Vale S.A. Sec. Litig.*,
  2017 WL 1102666 (S.D.N.Y. Mar. 23, 2017) ....................................................................... 11

*In re Vale S.A. Sec. Litig.*,
  2022 WL 122593 (E.D.N.Y. Jan. 11, 2022) ............................................................... 13, 14, 17

*In re Waste Mgmt. Sec. Litig.*,
  775 F. Supp. 3d 742  (S.D.N.Y. 2025) .................................................................................. 14

*Kamerman v. Ockap Corp.*,
  112 F.R.D. 195 (S.D.N.Y. 1986) .......................................................................................... 20

*Martinek v. AmTrust Fin. Servs., Inc.*,
  2022 WL 326320 (S.D.N.Y. Feb. 3, 2022) ......................................................................... 7, 15

*Miller v. Asensio & Co.*,
  364 F.3d 223 (4th Cir. 2004) ............................................................................................... 18

*Monroe Cty. Emps.' Ret. Sys. v. Southern Co.*,
  332 F.R.D. 370 (N.D. Ga. 2019) ...................................................................................... 3, 4, 15

*Ohio Public Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
  2018 WL 3861840 (N.D. Ohio Aug. 14, 2018) ..................................................................... 15

iv

*Pearlstein v. BlackBerry Ltd.*,
  2021 WL 253453 (S.D.N.Y. Jan. 26, 2021) ........................................................ 10, 13, 15, 20

*Puddu v. NYGG (Asia) Ltd.*,
  2022 WL 2789250 (S.D.N.Y. July 15, 2022) ......................................................................... 12

*Ramirez v. Exxon Mobil Corp.*,
  2023 WL 5415315 (N.D. Tex. Aug. 21, 2023) ......................................................................... 6

*Rocco v. Nam Tai Elecs., Inc.*,
  245 F.R.D. 131 (S.D.N.Y. 2007) ........................................................................................... 20

*San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*,
  732 F. Supp. 3d 300 (S.D.N.Y. 2024) ..................................................................................... 5

*San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*,
  --- F.R.D. ---, 2025 WL 1903959 (S.D.N.Y. July 10, 2025) .......................................... *passim*

*Scott v. N.Y.C. Dist. Council of Carpenters Pension Plan*,
  224 F.R.D. 353 (S.D.N.Y. 2004) ........................................................................................... 20

*Sicav v. James Jun Wang*,
  2015 WL 268855 (S.D.N.Y. Jan. 21, 2015) ........................................................................... 15

*Sills v. United Nat. Foods, Inc.*,
  2024 WL 4188324 (S.D.N.Y. Sept. 13, 2024) ............................................................... 5, 11, 12

*Sjunde AP-Fonden v. Gen. Elec. Co.*,
  341 F.R.D. 542 (S.D.N.Y. 2022) ........................................................................................ 4, 21

*Strougo v. Barclays PLC*,
  312 F.R.D. 307 (S.D.N.Y. 2016) ............................................................................................. 5

*Tsereteli v. Residential Asset Securitization Trust 2006-A8*,
  283 F.R.D. 199 (S.D.N.Y. 2012) ........................................................................................... 20

*Waggoner v. Barclays PLC*,
  875 F.3d 79 (2d Cir. 2017) .................................................................................................... 18

*Wilson v. LSB Indus., Inc.*,
  2018 WL 3913115 (S.D.N.Y. Aug. 13, 2018) .............................................................. 4, 15, 18

*Yi Xiang v. Inovalon Holdings, Inc.*,
  327 F.R.D. 510 (S.D.N.Y. 2018) ............................................................................................. 6

v

Plaintiffs submit this reply in further support of their Motion for Class Certification (ECF 97, "Motion") and in response to Defendants' Opposition (ECF 112, "Opp.").[1]

## I.    INTRODUCTION

Plaintiffs' Motion demonstrated that all elements of Rule 23(a) and 23(b)(3) are met. Dr. Feinstein's expert report establishes market efficiency and demonstrates that the *Basic* fraud-on-the-market presumption of reliance applies, such that common issues predominate under Rule 23(b)(3). *See* ECF 99-1 ("Feinstein Report"); *Basic v. Levinson*, 485 U.S. 224 (1988).

Defendants concede market efficiency and make no attempt to prove a complete lack of price impact, as is required to defeat class certification. *See* Sec. II, *infra.* They only challenge the *length* of the Class Period by arguing all corrective information about UNFI's forward buying was fully disclosed by March 8, 2023, such that the last two alleged price drops did not correct any misstatements or omissions at issue. But this attempt to shorten the Class Period is a premature *loss causation* attack not properly resolved on this procedural motion. Moreover, the argument—once it is properly before the factfinder on a full evidentiary record—will win or lose *as to the entire Class*, demonstrating that certification is warranted, not precluded. *See* Sec. III, *infra*.

Defendants raise two other meritless challenges, neither of which defeats certification. First, Defendants claim Plaintiffs failed to show damages are capable of determination by a class-wide methodology. But Defendants' specious challenge to Dr. Feinstein's "out-of-pocket" damages methodology has been rejected by nearly every other court to consider it, including a recent decision in this District. *See San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*, --- F.R.D. ---, 2025 WL 1903959, at *4 (S.D.N.Y. July 10, 2025) ("*Comcast* does not require plaintiffs' damages model to capture precisely plaintiffs' theory of loss causation at the class-

---

[1] Unless otherwise noted, capitalized terms have the same meaning as stated in Plaintiffs' opening brief (ECF 98), and citations to "¶__" are to the Second Amended Complaint (ECF 39).

certification stage."); *see also* Sec. V & Ex. A (compendium of 32 cases certifying class with "out-of-pocket" damages methodology similar to that proposed here).[2] Second, they challenge the adequacy of the class representatives. But "[p]ermitting defendants to police the adequacy of class representatives and their counsel is like permitting a fox to take charge of the chicken house." *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 48 (S.D.N.Y. 2012). Each Plaintiff is knowledgeable about the litigation and has demonstrated his ability and desire to represent the Class. *See* Sec. VI, *infra*.

Plaintiffs made a substantial showing that certification should be granted. Defendants fail to carry their burden to prove otherwise. The Motion should be granted in its entirety.

## II.    DEFENDANTS DO NOT PROVE A COMPLETE LACK OF PRICE IMPACT, AS REQUIRED TO REBUT THE PRESUMPTION OF RELIANCE

Having demonstrated market efficiency, Plaintiffs are entitled to "a presumption that a public, material misrepresentation will distort the price of stock traded in an efficient market, and that anyone who purchases the stock at the market price may be considered to have done so in reliance on the misrepresentation." *Halliburton Co. v. Erica P. John Fund, Inc*., 573 U.S. 258, 283-84 (2011) ("*Halliburton II*"). To rebut this presumption, Defendants must "demonstrate[], ***by a preponderance of the evidence***, that the alleged misstatements ***did not in fact impact the price of the stock***." *Ark. Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74, 103 (2d Cir. 2023) ("*ATRS*").[3] Defendants "must demonstrate ***a complete lack of price impact***." *In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, 2019 WL 5287980, at *6 (S.D.N.Y. Oct. 18, 2019), *report and recommendation adopted in relevant part*, 2020 WL 1329354 (S.D.N.Y. Mar. 23, 2020).

Defendants do not—and cannot—contest that every alleged corrective disclosure was followed by a statistically significant decrease in the stock price. Feinstein Report, Ex-9; ECF 113-

---

[2] Exhibits are attached to the concurrently-filed Declaration of Kara M. Wolke.

[3] Unless otherwise noted, all emphasis is added and internal citations and quotations are omitted.

15 ("Zurek Report") at ¶48 & n.89.[4] These price decreases constitute direct evidence of price impact, and are fatal to any attempt to rebut the presumption of reliance. *Bos. Ret. Sys. v. Alexion Pharm., Inc.*, 2023 WL 2932485, at \*12 (D. Conn. Apr. 13, 2023) (to rebut the presumption, "defendants must show that the alleged misstatements caused <u>no</u> price impact whatsoever, and the defendants must make this showing as to ***all*** of the alleged corrective disclosures") (underscore emphasis in original); *Monroe Cty. Emps.' Ret. Sys. v. Southern Co.*, 332 F.R.D. 370, 394 (N.D. Ga. 2019) ("a statistically significant reaction to a firm-specific news event is evidence of price impact").[5] Indeed, Defendants' expert, Dr. Zurek, does *not* purport to opine that he has proved a complete absence of price impact as to *any* of the alleged corrective disclosures, let alone as to *all* of them. Ex. B ("Feinstein Reply Report"), ¶¶16-18.

## III.    DEFENDANTS' ATTEMPT TO SHORTEN THE CLASS PERIOD FAILS

### A.    Defendants' Attack On Individual Disclosures Is Inappropriate At This Stage

Unable to show a complete lack of price impact, Defendants attempt to shorten the Class Period to end on March 8, 2023, by arguing that the March 8 disclosure fully corrected their prior misstatements and omissions such that the last two corrective disclosures (June 7, 2023 and September 26, 2023) did not reveal any new fraud-related information. Opp. 16-27. But this prematurely challenges *loss causation* as to the latter two disclosures. When the factual record is fully developed, both sides can present evidence to support their merits-based arguments about whether the March 8, 2023 disclosure was, in fact, fully corrective of all misrepresented or omitted information, or whether the later disclosures revealed any new corrective information, as required

---

[4] Feinstein's opening report does not analyze the price reaction following the last corrective disclosure on September 25, 2023 because it is after the Class Period, but it is undisputed that the September 26, 2023 price decline is statistically significant. *See* Zurek Report, n.89; Feinstein Reply Report, ¶129.

[5] While it is not Plaintiffs' burden to show price impact, Plaintiffs also have shown front-end price impact with a statistically significant price increase on first day of Class Period. Feinstein Report, ¶149 & Ex-9 thereto.

to prove loss causation. If Defendants' arguments prevail for either disclosure, Plaintiffs will lose that price drop as to the entire Class. In other words, Defendants' arguments are amenable to *class-wide* determination, and thus support that Class certification is appropriate.

The Supreme Court explained the difference between reliance (required for class certification) and loss causation (*not* required for class certification):

> [A]n investor presumptively relies on a defendant's misrepresentation if that information is reflected in the market price of the stock at the time of the relevant transaction. Loss causation, by contrast, requires a plaintiff to show that a misrepresentation that affected the integrity of the market price *also* caused a subsequent economic loss.

*Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 812, 814-15 (2011) (vacating denial of class certification that required loss causation proof because "loss causation is a familiar and distinct concept in securities law; it is not price impact") (emphasis in original).

Determining *when* misrepresentations are fully cured (as Defendants ask the Court to do) necessarily resolves *loss causation* by concluding when investors' losses are no longer recoverable, which is an issue better suited for summary judgment or trial. *Wilson v. LSB Indus., Inc.*, 2018 WL 3913115, at *18-20 (S.D.N.Y. Aug. 13, 2018) (refusing to alter alleged class period); *Sjunde AP-Fonden v. Gen. Elec. Co.*, 341 F.R.D. 542, 549 (S.D.N.Y. 2022) (declining to shorten class period where subsequent partial disclosures were alleged to reveal new information).[6]

The law of the case further precludes Defendants' attempt on this Motion to challenge the final two corrective disclosures. Defendants did not seek dismissal of the June or September 2023 disclosures in their motion to dismiss *or* their motion for judgment on the pleadings. *See* ECF 49, 82. They cannot do so now. *See In re Merck & Co., Inc. Sec., Deriv. & ERISA Litig.*, 2013 WL

---

[6] *See also Southern Co.*, 332 F.R.D. at 395 (refusing to shorten class period at class certification because "the question of what caused the stock price to decline is an ultimate merits question") (collecting cases).

396117, at *14 (D.N.J. Jan. 30, 2013) (class certification is not an "opportunity to seek dismissal of certain claims…in the guise of limiting the Class Period"); *accord Strougo v. Barclays PLC*, 312 F.R.D. 307, 328 (S.D.N.Y. 2016) (refusing to limit class where motion to dismiss order had not decided "when statements became material").

### B.    Defendants' "Price Impact" Challenges About Two Alleged Price Drop Dates Are Loss Causation Arguments That Fail Under The Law

Even if Defendants' attempt to shorten the Class Period were considered, their arguments about the curative effect of the March 8 disclosure are wrong. As an initial matter, Defendants incorrectly limit Plaintiffs' fraud theory to the failure to disclose the mere *existence* of prior forward buying. *See* Opp. 19-20. But in addition to initially omitting the practice entirely, Defendants concealed the ***extent*** to which UNFI's profitability was driven by unsustainable forward buying, which was revealed over time in a series of partial disclosures. *See Sills v. United Nat. Foods, Inc.*, 2024 WL 4188324, at *8 (S.D.N.Y. Sept. 13, 2024) ("the market was blindsided by the ***eventual*** revelation of the significant and unsustainable ***level*** of procurement gains"); *see also* Feinstein Reply Report, ¶¶20-22 (Zurek's analysis based on narrow, misinterpretation of claims).

Defendants acknowledge that the June and September disclosures reported financial results that missed market expectations and reduced guidance going forward, but they claim this did not reveal anything new about UNFI's forward buying. Opp. 24-26. Defendants are wrong. An earnings miss that ***quantifies*** the repercussions of previously-revealed fraudulent conduct is new and corrective. *See, e.g.*, *San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*, 732 F. Supp. 3d 300, 325 (S.D.N.Y. 2024) ("each disappointing earnings report" was "linked" to alleged channel stuffing scheme); *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d 164, 256-57 (S.D.N.Y. 2022) (disclosures revealing "true extent of the delays and cost-overruns" sufficient for

loss causation). Defendants' authority agrees. *Yi Xiang v. Inovalon Holdings, Inc.*, 327 F.R.D. 510, 521 (S.D.N.Y. 2018) (ending class when company quantified impact of tax reforms and rejecting defendants' effort to end with earlier disclosure of higher tax rate) (Opp. 24).[7] Likewise, a guidance reduction is new and corrective—even where the cause of the reduction was previously disclosed—because it reveals the ***extent*** of the problem. *In re Omega Healthcare Investors, Inc. Sec. Litig.*, 563 F. Supp. 3d 259, 268-69 (S.D.N.Y. 2021) (landlord's reduced revenue outlook further revealed extent of tenant's financial issues, even where fact of tenant's financial impairment was previously disclosed); *Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 202-03 (S.D.N.Y. 2010) (revised guidance corrective where earlier partial disclosures "did not reveal the full truth about the risks and true performance of [mortgage] portfolio").[8]

Here, while the March 8 disclosure first revealed the *existence* of the forward buying problem in fiscal 2022, it was only partially disclosed, and the later release of new information (in June and September 2023) that both (i) *quantified* previously unknown forward buying gains in fiscal 2022,[9] and (ii) showed forward buying problems were continuing to plague UNFI (in the

---

[7] *See also In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 956 (9th Cir. 2023) (lower user engagement and ad revenue "allowed the public to appreciate the significance of" previously disclosed data breach scandal); *In re Gilead Sci. Sec. Litig.*, 536 F.3d 1049, 1058 (9th Cir. 2008) (revenue miss was caused by previously disclosed regulatory warning letter).

[8] Defendants cite a handful of out-of-Circuit cases that found a lack of back-end price impact where—unlike here—the alleged disclosure merely repeated prior publicly-available information. *In re FibroGen Sec. Litig.*, 2024 WL 1064665, at \*12-15 (N.D. Cal. Mar. 11, 2024) (FDA meeting was not corrective where it repeated information from earlier briefing document); *Ramirez v. Exxon Mobil Corp.*, 2023 WL 5415315, at \*20 (N.D. Tex. Aug. 21, 2023) (analyst downgrade reiterated already public information); *In re Apache Corp. Sec. Litig.*, 2024 WL 532315, at \*9 (S.D. Tex. Feb. 9, 2024) (financial struggle "did not shed any new light" about asset that had already been written down). Defendants' other case found there was no front-end price impact for certain misstatements, which is not even an argument Defendants make here. *In re Qualcomm Inc. Sec. Litig.*, 2023 WL 2583306, at \*13 (S.D. Cal. Mar. 20, 2023) (no front-end price impact for licensing statements where market knew license limitations three years earlier). Plaintiffs have shown front-end price impact here. Feinstein Report, ¶149 & Ex-9 thereto.

[9] ¶118 (June 2023 was first time 3Q 2022 procurement gains were quantified), ¶125 (September 2023 was first time 4Q 2022 procurement gains were quantified), ¶127 (September 2023 also was first time 1Q and 2Q 2022 procurement gains were quantified, with Defendants explaining adjusted EBITDA guidance "reflects approximately $125 million in lower anticipated procurement gains, primarily in last year's first and second quarters"); Feinstein Reply Report,

6

form of disappointing results and/or guidance) in fiscal 2023 and fiscal 2024,[10] revealed more about the previously concealed *extent* of forward buying. That each disclosure was accompanied by statistically significant price declines raises "substantial doubt as to the curative effect" of prior disclosures, which precludes shortening the Class Period. *In re DiDi Glob. Inc. Sec. Litig.*, 2025 WL 1909295, at *8 (S.D.N.Y. July 7, 2025), *report and recommendation adopted by* 2025 WL 2345696 (S.D.N.Y. Aug. 13, 2025).[11]

Notably, Dr. Zurek does not even actually opine that the evidence demonstrates a complete absence of price impact after March 8. Rather, he says, "it is my opinion that this economic evidence *is consistent with* the Challenged Statements having had no impact on the prices of UNFI Securities following the alleged corrective disclosure on March 8, 2023…." Zurek Report, ¶9. That Dr. Zurek finds some evidence to be "consistent with" an absence of price impact *does not demonstrate* a complete absence of price impact, particularly where, as discussed below, Dr. Zurek ignores evidence that indicates the presence of price impact after March 8. Feinstein Reply Report, ¶18.

### C.    Defendants Ignore Evidence That Supports Price Impact After March 8

Defendants ask this Court to hold March 8, 2023 was a fully corrective disclosure, but ignore evidence from major investment banks demonstrating that they did *not* understand the

---

¶41 ("procurement gains in Q3 and Q4 of 2022" were "still undisclosed as of 8 March 2023"); *see also id.* ¶¶46-50, ¶144.

[10] ¶¶120-21 (June 2023 guidance reduction, citing "decline in procurement gain opportunities"), ¶126 (September 2023 announcement of disappointing fiscal 2024 guidance, which "reflects lower levels of anticipated procurement gains, driven by moderating levels of inflation,…); Feinstein Reply Report, ¶¶87-94, ¶¶119-129, ¶146.

[11] Defendants also argue that Sills understood the March 8, 2023 disclosure to fully reveal the concealed information. Opp. 23. Setting aside that Defendants misrepresent Sills' testimony (*see* Ex. C at 183:9-14), the argument is a red herring. Sills's subjective belief, even if he *thought* he knew all there was to know about forward buying on March 8, 2023, could not show a complete lack of price impact to defeat *class-wide* reliance. *See Martínek v. AmTrust Fin. Servs., Inc.*, 2022 WL 326320, at *7 (S.D.N.Y. Feb. 3, 2022) (rejecting arguments that investor's "testimony calls into question the extent to which the class relied" on company statements).

March 8 disclosure to have fully disclosed the extent of UNFI's forward buying issue. For example, after the June 7, 2023 disclosure, Wells Fargo noted that "[t]he headwind from lapping inflation-related procurement gains that was revealed last quarter is actually turning out to be even *worse than expected*" (Ex. D), while Guggenheim was "*surprised* at the rapid deterioration in profitability" and continued "inflation management" problems (Ex. E). After the September 26, 2023 disclosure, Guggenheim said "[t]o be honest, *we continue to be very surprised at the magnitude of the procurement gains*." Ex. F. UBS found that "*the extent of its tough inventory gain comparisons are becoming more apparent*." Ex. G. *See also* Feinstein Reply Report, ¶¶79-80, ¶¶101-02, ¶¶133-34. Dr. Zurek claims to have read these reports, yet he largely ignores these expressions of surprise. *See* Zurek Report, ¶¶92, 108; Ex. M at 75:18-76:10.[12]

Beyond expressing surprise, analysts explicitly noted that the June and September disclosures revealed new information about the *past extent* of forward buying. Feinstein Reply Report, ¶¶98, 133. Dr. Zurek claims that, except for Guggenheim, none of the 15 other analyst reports following the September disclosure even "commented on the total magnitude of inflation-related forward buying in prior quarters." Zurek Report, ¶108. Wrong. Goldman noted Defendants' admission, made for the first time in the September 2023 earnings call, that forward buying contributed to $125 million in gains in fiscal 2022, primarily in 1Q and 2Q. *See* Ex. H; *see also* Ex. I (UBS, similar). BTIG also assessed the September 2023 disclosure in relation to what it revealed about fiscal 2022; BTIG had previously forecast (in 4Q 2022) "adjusted EBITDA of

---

[12] Dr. Zurek misleadingly focuses only on the "title or lead paragraph" of analyst reports and concludes that analysts already understood from the March 8 disclosure that the loss of procurement gains would impact UNFI, and even "accelerate," during the rest of 2023. Zurek Report, ¶¶69-70, 82, 100. His conclusion flies in the face of the analysts who expressed surprise. Feinstein Reply Report, ¶¶99-100 (discussing that, after March 8, analysts overestimated UNFI's profitability for fiscal 2023 "because they were still deprived of the information about the magnitude of procurement gains earned in FY 2022"). Thus, any prior discussion purporting to warn that procurement gains would abate "underassessed" the risk "because the market was not told how great were the procurement gains reaped in FY 2022." Feinstein Reply Report, ¶108.

$214MM for this quarter [4Q 2023], almost three times the actual result"—*i.e.*, it projected 3x higher EBITDA when it did not know about UNFI's procurement gains. Ex. J. Following the massive miss in September, BTIG noted the "main difference" between its forecast and UNFI's actual results "is the lapping of procurement gains, which dragged profit by ~$100MM and gross margin by about 175 bps," thus revealing forward buying had contributed to previously undisclosed (and unsustainable) procurement gains exceeding $100 million in Q4 2022. *Id.*; Ex. G (UBS stating similar). And Guggenheim—the one report that Dr. Zurek acknowledges— specifically tied its lowering of UNFI's EBITDA estimate by 20% to revelations of the Company's forward buying problem (procurement gains were "$250 million during 2H 2022/1H2023" but had "shrunk to virtually nothing"). Ex. F. These analyst reports support price impact. *See Pearlstein v. BlackBerry Ltd.*, 2021 WL 253453, at *22 (S.D.N.Y. Jan. 26, 2021) (analyst commentary that prior valuations were "too high" precluded shortening class period). Contrary to Dr. Zurek's claim, at least 5 of 16 analyst reports after the September disclosure discussed new information about the magnitude of procurement gains during the Class Period. *See* Feinstein Reply Report, ¶133; *see also id.* ¶¶124, 146. Defendants cannot prove a complete lack of price impact by ignoring evidence of it.

Analysts also found the guidance announcements in June and September 2023 revealed new information about the ***ongoing*** decline in forward buying—*e.g.*, BTIG noted the fiscal 2024 guidance implied an "approximately $125MM of drag from lapping procurement gains, mostly confined to 1HF24" (Ex. J)—revealing more about the ***extent*** of the issue.[13] *Crews v. Rivian Auto., Inc.*, 2024 WL 3447988, at *15 (C.D. Cal. July 17, 2024) (final partial disclosure was corrective

---

[13] Defendants cannot seriously contend that the increased shrink is unrelated to procurement gains, Opp. 25, when their own disclosures state that elevated shrink is "driven by . . . procurement," ¶131.

where analysts attributed weak financial guidance to "further information" about cost pressures); *Omega Healthcare*, 563 F. Supp. 3d at 268-69; *Freudenberg*, 712 F. Supp. 2d at 202-03.

Defendants' argument that the March 8, 2023 disclosure was fully curative conflicts not only with these analyst statements from June and September 2023, it also conflicts with Defendants' earlier arguments in this case that *they themselves* did not understand the extent and financial impact of forward buying in March 2023. ECF 49 at 4. The market cannot be charged with knowledge that Defendants, themselves, claimed not to have. Moreover, discovery produced so far shows that the extent of UNFI's forward buying and its impact on UNFI's financials was ***not*** fully disclosed on March 8—investors had questions and UNFI knew it hadn't answered them. Ex. K (UNFI-0042532 at -33) (3/29/23



); Ex. L (UNFI-0041551 at -59-60) (4/14/23

).

Finally, while Defendants claim that new information about forward buying played no part in the June and September 2023 disclosures and subsequent price drops, their own expert testimony makes clear that it is premature to determine *what* caused those price drops. *See, e.g.*, Ex. M at 72:19-74:11 (characterizing the September 26 drop as "complicated," stating "***I think*** … it was fully known that inflation-related forward-buying was temporary" but "a number of different factors [were] at play"). Where numerous analysts cited new information about the extent of forward buying as among the "factors" contributing to weak guidance on June 7 and September 26, 2023 (*see* Feinstein Reply Report, ¶¶98, 133), Defendants' expert's ***conjecture*** that all material information about forward buying was fully disclosed on March 8 fails to carry Defendants' burden of demonstrating a complete absence of price impact by a preponderance of the evidence.

10

*Id.* at ¶¶111, 138 ("Dr. Zurek does not prove" that procurement gains "played no role" in latter two drops).[14] Defendants simply have not proven that *no part* of the June and September price drops were connected to the revelation of new information about forward buying.

### D.    There Is No "Mismatch" Between the Statements and Disclosures

Defendants unavailingly argue that there is a mismatch between the alleged misrepresentations and omissions and the corrective disclosures in June and September 2023. Opp. 26-27. Their premise is that the challenged statements are "generic" because they do not "purport to speak on the specific extent that profit drivers or risk factors impacted margin." *Id.* at 27. But the Court already rejected that. *Compare* ECF 57 at 1 (arguing no duty to disclose "the specific degree of forward buying") *with Sills*, 2024 WL 4188324, at *8 (holding UNFI had a duty to disclose "significant and unsustainable level" of forward buying). Thus, the Court already held the challenged statements were sufficiently specific. *See ATRS*, 77 F.4th at 101 ("[T]he duty to disclose more is triggered only when that which *is* disclosed is sufficiently specific to evoke a reasonable investor's reliance.") (emphasis in original). And there is a sufficiently close fit between the challenged statements and the corrective disclosures, all of which center on UNFI's forward buying. *Abramson v. Newlink Genetics Corp.*, 965 F.3d 165, 179 (2d Cir. 2020) (loss must be caused by "the *subject* of the fraudulent statement or omission") (emphasis in original); *In re Vale S.A. Sec. Litig.*, 2017 WL 1102666, at *29 (S.D.N.Y. Mar. 23, 2017) ("no requirement" that corrective disclosure be "mirror image tantamount to a confession of fraud").[15]

---

[14] At most, Defendants suggest the June and September disclosures revealed that UNFI may have been impacted by other factors in addition to forward buying. Opp. 24-26; Zurek Report, ¶¶91-93, 107-09. This does not defeat price impact. *In re Aphria, Inc. Sec. Litig.*, 342 F.R.D. 199, 208 (S.D.N.Y. 2022) (declining to shorten class period where court could not conclusively find that earlier disclosure fully cured misrepresentations); *see also* Sec. III.A, *supra*.

[15] *Cf. In re Kirkland Lake Gold Ltd. Sec. Litig.*, 2024 WL 1342800, at *8 (S.D.N.Y. Mar. 29, 2024) (Opp. 27) ("considerable gap" between "generic" statements to prioritize organic growth and alleged disclosure announcing acquisition). Because there is no "gap" in genericness, the Court need not evaluate whether an "equally generic" substitute for misrepresentation would have impacted the stock price. *ATRS*, 77 F.4th at 102.

## IV.    *AFFILIATED UTE* PROVIDES AN INDEPENDENT BASIS TO CONCLUDE RELIANCE IS A COMMON QUESTION AS TO THE ENTIRE CLASS PERIOD

Defendants acknowledge that "*Affiliated Ute* applies in cases involving primarily a failure to disclose." Opp. 28. This Court has already found that Plaintiffs' allegations are rooted in Defendants' omission of the impact of forward buying. *Sills*, 2024 WL 4188324, at *8 ("the impact of forward buying on profit margins, **which these statements omitted**" was material); *id.* at *9 ("They **omit the crucial context** that forward buying opportunities had all but evaporated."); *id.* ("These cautionary statements **did not mention** the separate risk of decreased opportunities for inflation-related forward buying."). Defendants incorrectly claim that the existence of any actionable statement precludes *Affiliated Ute*. *See Baliga v. Link Motion, Inc.*, 2022 WL 16707361, at *11 (S.D.N.Y. Nov. 4, 2022) ("There is ample support post-*Waggoner* and *Schwab*…for the proposition that *Affiliated Ute* applies even when a complaint alleges both misstatements and omissions" and holding *Affiliated Ute* applied even though case alleged misstatements) (citing cases). None of Defendants' statements are outright lies, which would be affirmative misstatements to which *Affiliated Ute* does not apply. And none of Defendants' arguments about price impact rebut the *Affiliated Ute* presumption. *See Puddu v. NYGG (Asia) Ltd.*, 2022 WL 2789250, at *4-5 (S.D.N.Y. July 15, 2022) ("the *Affiliated Ute* presumption…does not infer reliance from a change in a share's market price").

## V.    DEFENDANTS' QUIBBLES WITH PLAINTIFFS' DAMAGES MODEL DO NOT DEFEAT PREDOMINANCE

### A.    The "Out-of-Pocket" Methodology Is Standard In Securities Cases

Defendants' criticism of Plaintiffs' damages model is not a basis to deny class certification because Defendants do not argue that the proffered model raises individualized issues. Opp. 8-15. They "don't argue that plaintiffs' approach to damages leads to different outcomes for different purchasers or reveals that purchasers suffering no injury are intermingled with those properly in

the class." *Dentsply*, 2025 WL 1903959 at *3 ("Defendants' bottom-line argument is just that plaintiffs' damages model won't be up to snuff for anyone. In all but the rare case, that's an argument for summary judgment, not class certification.").

"In general, courts have found *Comcast* to pose a low bar." *In re Vale S.A. Sec. Litig.*, 2022 WL 122593, at *18 (E.D.N.Y. Jan. 11, 2022), *report and recommendation adopted*, 2022 WL 969724 (E.D.N.Y. Mar. 31, 2022). In fact, Plaintiffs "are not required to…proffer a damages model" at this stage where their "actual theory of damages (out-of-pocket damages) is entirely consistent with their theory of Section 10(b) liability and would be measurable on a class-wide basis." *In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 105-06 (S.D.N.Y. 2016); *see also Dentsply*, 2025 WL 1903959, at *5 ("*Comcast* did not hold that proponents of class certification *must* rely upon a classwide damages model to demonstrate predominance.") (emphasis in original). "The Second Circuit has interpreted *Comcast* to require plaintiffs to be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Pearlstein*, 2021 WL 253453, at *22.

Plaintiffs did that here. Dr. Feinstein explained that "Section 10(b) per-security damages can be measured" by (i) using valuation tools to "establish if corrective disclosures caused the price of UNFI Securities to fall," (ii) constructing an "inflation ribbon" to determine "how much artificial inflation caused by the alleged fraud was in the price of the UNFI stock on each day during the Class Period, if any," and (iii) applying that inflation ribbon to trading data submitted by class members. Feinstein Report at ¶211 ("The calculation of each Class member's per-security damages would be a mechanical arithmetic exercise for all Class members who bought UNFI stock

13

or call options, or wrote UNFI put options, during the Class Period.").[16] This method, "out-of-pocket" damages, tracks Plaintiffs' theory of injury. *In re Waste Mgmt. Sec. Litig.*, 775 F. Supp. 3d 742, 764 (S.D.N.Y. 2025) ("[The out-of-pocket] approach conforms to Plaintiffs' theory of injury that...investors would have paid less had there been no misleading statements."). This model is sufficient under *Comcast* because Plaintiffs "have only one substantive theory of liability: that defendants made misleading statements that artificially inflated [UNFI's] stock price." *Dentsply*, 2025 WL 1903959, at *3.

Contrary to Defendants' semantic protestations that this is a "definitional description" and not a "model" (Opp. 9), the out-of-pocket model has long been recognized as the "traditional" measure of damages in Section 10(b) cases. *Barrick*, 314 F.R.D. at 105; *see also Alexion*, 2023 WL 2932485, at *14 (collecting cases); *Vale*, 2022 WL 122593, at *19 ("[A]lthough Feinstein has not yet computed damages or conducted a loss causation analysis, the model he outlines is similar in operation and detail to ones that have regularly been approved by other courts in this circuit."). Indeed, Dr. Feinstein's damages model has been approved in dozens of post-*Comcast* securities cases at the class certification stage. Ex. A (compendium of *32* post-*Comcast* securities cases where Dr. Feinstein's "out-of-pocket" damages methodology was approved).[17]

Defendants and Dr. Zurek criticize Dr. Feinstein's model because it does not specify the precise valuation tool(s) that he will use to implement that model. What Defendants are demanding

---

[16] *Cf. Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 141 (S.D.N.Y. 2014) (no specificity as to "formulaic" methodology) (Opp. 14).

[17] Defendants claim that recent decisions approving out-of-pocket models "cannot be squared" with more recent Supreme Court cases. Opp. 15 n.8. Not so. Courts in this district have consistently approved such models even after those precedential decisions. *See, e.g.*, *Dentsply*, 2025 WL 1903959, at *3; *In re Credit Suisse Sec. Fraud Class Actions*, 2025 WL 1866293, at *10 (S.D.N.Y. July 7, 2025); *Waste Mgmt.*, 775 F. Supp. 3d at 764-65; *In re Allergan PLC Sec. Litig.*, 2021 WL 4077942, at *14 (S.D.N.Y. Sept. 8, 2021). That Defendants desperately cling to the fact that *other* circuits have taken a related question for interlocutory appeal—not even that other circuits have held otherwise—only confirms that precedent supports Plaintiffs' position.

is not a model – but *implementation* of a model. Opp. 9-10. Numerous courts have soundly rejected this exact argument. *E.g.*, *LSB Indus.*, 2018 WL 3913115, at *17 (rejecting defendants' criticism that "Feinstein does not specify which valuation tools he will use, how he will separate the effect" of corrective disclosures and materializations of the risk, or "how he will calculate inflation"); *Vale*, 2022 WL 969724, at *6 (same). "Because the decision of which, if any, of those tools will be necessary to measure damages in this case depends on development of the fact record on the merits, it would be inappropriate for Professor Feinstein to conclusively state which he would use at this stage of the litigation." *Southern Co.*, 332 F.R.D. at 399; *accord AmTrust*, 2022 WL 326320, at *18-19 (approving Dr. Feinstein's damages methodology where he stated he would use "valuation tools, including event study analysis" to create a model after factual determinations); *Pearlstein*, 2021 WL 253453, at *22 (citing cases that "have accepted Dr. Feinstein's three-step method of calculating per share damages").

Defendants urge this Court to ignore this plethora of Second Circuit precedent and follow a single outlier out-of-Circuit rejection of Dr. Feinstein's damages model. *See* Opp. 14 (citing *Ohio Public Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 2018 WL 3861840 (N.D. Ohio Aug. 14, 2018) ("*Opers*")).[18] Other courts in this District already have rejected *Opers* as "contrary to the many recent in-circuit cases concluding that damages models very similar to the one offered here were sufficiently concrete and detailed to pass muster at the class certification stage." *Vale*, 2022 WL 969724, at *6 (citing cases). This Court should do the same.

---

[18] Defendants also cite *Sicav v. James Jun Wang*, 2015 WL 268855 (S.D.N.Y. Jan. 21, 2015) (Opp. 14) but concede that those plaintiffs proceeded under a different theory of liability. The *Sicav* plaintiffs alleged an undisclosed scheme that enabled insiders to sell the company's securities at inflated prices *but there was no identified corrective disclosure*. 2015 WL 268855, *1-2. The plaintiffs alternatively alleged that the insider sales drove down the stock price, thereby injuring previous purchasers. *Id*. at *2. The court noted that was "an unusual theory of classwide injury" compared to *the "typical" theory*—as alleged here—that "the market reacted negatively on a given day or several-day period to a corrective disclosure, causing a decline in stock value that simultaneously harmed all shareholder class members in the same way." *Id.*

15

### B.    The "Out-of-Pocket" Methodology Is Appropriate In This Case

Defendants claim there are four reasons why the out-of-pocket methodology "presents challenges with calculating damages on a classwide basis" in this case. Opp. 11-15. Shockingly, Defendants do not cite a single in-Circuit case that supports any of these "issues"—because the law does not support these arguments.[19] Faced with this reality, they primarily rely on their expert, Dr. Zurek, who unsuccessfully raised the same "challenges" in other cases. *See* Feinstein Reply Report, ¶23. For example, Dr. Zurek was the defendants' expert in *Dentsply*, and many of his baseless positions were recently squarely rejected. 2025 WL 1903959, at *2-5. Moreover, Dr. Zurek does not opine that damages *cannot* be calculated on a class-wide basis; he merely claims (incorrectly) that Dr. Feinstein fails to propose a model that does so. As such, his opinion should be afforded "little weight." *In re Scientific-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1340 (N.D. Ga. 2007) (noting that where defendants' expert only criticizes plaintiffs' expert, "the Court affords his affidavit little weight").

First, Defendants claim that Plaintiffs' materialization of the risk theory precludes application of the out-of-pocket damages model, speculating that the model "could" overstate alleged inflation and that Dr. Feinstein's methodology is purportedly flawed because he has not yet conducted a "case-specific analysis" addressing this. Opp. 11-12. From the fact that Dr. Feinstein has yet to conduct this analysis, Defendants leap to the unsupported conclusion that he "has never established that a methodology accounting for this issue is even possible in this case." *Id.* at 12. As an initial matter, this argument ignores Plaintiffs also alleged a corrective disclosure

---

[19] *See* Opp. 11-14 (only citing a Second Circuit case for the description of the "materialization of the risk theory," *Abramson*, 965 F.3d 165). But *Abramson* did *not* preclude an "out-of-pocket" damages theory for cases proceeding under a materialization of risk theory. Moreover, the holding underscores that *discovery* is necessary for the factfinder to determine the extent to which allegedly undisclosed facts had an impact on later-revealed information alleged to have "constructively disclos[ed] the fraud." 965 F.3d at 179-80.

16

theory as to all four drops. *Compare* Opp. 11 *with* ¶¶213-17. But even if a materialization of the risk theory *was* the sole basis for alleging loss causation, Defendants' argument has consistently been rejected in the Second Circuit because "materialization of the risk" is not a theory of liability, it is a theory of loss causation, and thus has no bearing on whether Plaintiffs' methodology is *Comcast*-compliant. *See Vale*, 2022 WL 122593, at *19; *Dentsply*, 2025 WL 1903959, at *5 (rejecting same argument by Dr. Zurek). Indeed, courts routinely find the out-of-pocket damages methodology appropriate for cases alleging loss causation through both corrective disclosures and materialization of risk. *See, e.g.*, *Barrick*, 314 F.R.D. at 106-07; *In re Teva Sec. Litig.*, 2021 WL 872156, at *41-42 (D. Conn. Mar. 9, 2021).

Defendants' sole contrary authority is a case in which plaintiffs sought to certify two classes, each with a different theory of liability. *See* Opp. 11 (citing *In re BP p.l.c. Sec. Litig.*, 2014 WL 2112823 (S.D. Tex. May 20, 2014)). There, plaintiffs sought to certify a class of investors who purchased pre-oil spill under a materialization of the risk theory and a class of investors who purchased post-oil spill under a corrective disclosure theory. 2014 WL 2112823, at *2-4. The pre-spill subclass alleged that they purchased in reliance on the defendants' representations that BP maintained its oil rigs safely and complied with applicable regulations, thus concealing the risk of a future oil spill, which materialized and damaged investors when the spill occurred. For the pre-spill class, the plaintiffs' expert argued that people would have not invested *at all* if they knew the truth about the compliance issues—*not* that people would have paid less for the stock if they knew the truth, which is what Dr. Feinstein opines here. *Id.* at *11 (noting plaintiffs rejected using a hypothetical but-for price). The district court declined to certify the pre-spill subclass because plaintiffs' "materialization of the risk" theory was inconsistent with their specific proffered damages model, which could not account for the fact that the underlying risk of a future oil spill

17

changed throughout the class period. *Id.* at *2-4, *12. The instant action has no such issues because, again, Plaintiffs allege a single theory of liability that they bought at inflated prices because the truth and the extent of its associated risks was concealed—*not* that investors would not have bought the stock at all had they known the truth.[20]

Second, Defendants complain that Dr. Feinstein did not isolate the amount of incremental inflation at each partial corrective disclosure date, and that he was required to do this *now* for his methodology to be "reliable." Opp. 12. Defendants cite no precedent for this position, which is unsurprising since their position is contrary to the law. Indeed, the Second Circuit "explicitly rejected this argument, noting that '*Comcast* does not suggest that damage calculations must be so precise' as to account for 'variations in inflation over time.'" *LSB Indus.*, 2018 WL 3913115, at *17 (quoting *Waggoner v. Barclays PLC*, 875 F.3d 79, 106 (2d Cir. 2017)).[21]

Third, Defendants argue Dr. Feinstein did not eliminate the impact of confounding news. Opp. 13.[22] Dr. Feinstein specifically articulated how his methodology accounts for confounding information, stating "[t]his approach and analysis enable computation of the artificial inflation ribbon even in cases where there is confounding information." Feinstein Report, ¶211(iv). This is sufficient for class certification—particularly where the record on whether information is fraud-related or is truly "confounding" is not yet developed.[23] *See Dentsply*, 2025 WL 1903959, at *5

---

[20] Defendants ignore that the *BP* court actually certified the part of the case that resembled a typical securities class action (the post-spill Class), where the understatement of bad news delayed the stock price falling. 2014 WL 2112823, at *12.

[21] *Waggoner*, 875 F.3d at 106 ("[E]ven accepting the Defendants' premises that inflation would have varied during the class period in this case and that such variation could not be accounted for, the Defendants' argument fails [under *Comcast*].").

[22] Defendants' authority only confirms that isolating confounding factors is a merits-based loss causation argument. *Miller v. Asensio & Co.*, 364 F.3d 223, 233 (4th Cir. 2004) (jury verdict that plaintiffs proved liability but did not offer evidence to "discern the *amount* of recoverable damages . . . resulting *solely* from [defendant's] misrepresentations) (Opp. 13).

[23] *See* Ex. M at 72:19-74:11 (Dr. Zurek testified that the September 2023 drop may have been caused by a number of factors).

("Because this quibble is one about whether plaintiffs' damages were the result of defendants' alleged misstatements or something else, it's yet another version of the complaint that Plaintiffs have not demonstrated loss causation as to the entire drop in the stock price.").

Fourth, Defendants complain about damages for UNFI's options. Opp. 13-14. Defendants do not contest that the UNFI's options traded in an efficient market. Indeed, options traders can rely on the *Basic* presumption. *Credit Suisse*, 2025 WL 1866293, at *11. Instead, Dr. Zurek claims that Dr. Feinstein's options damages methodology "failed to provide a reliable methodology capable of estimating stock price volatility." *See* Opp. 13. But volatility data is readily obtainable from third party sources, like *OptionMetrics*, or it can be calculated using historical options pricing data. Feinstein Reply Report, ¶¶191-92. Moreover, the same methodology that Dr. Feinstein proposes for calculating damages for options here has been approved at class certification over similar objections. *See Credit Suisse*, 2025 WL 1866293, at *10 (out-of-pocket model "will have no trouble accounting for inflation with respect to the CS options"); *In re Apple Inc. Sec. Litig.*, 2023 WL 2763952, at *2 (N.D. Cal. Mar. 28, 2023) (approving methodology even though "defendants' objections appear to highlight differences that exist between the various options that would prevent them from being calculated in exactly the same way or at the same time.").

## VI.   SILLS AND DICK ARE TYPICAL AND ADEQUATE

Class representatives are inadequate only if they "display an alarming unfamiliarity with the suit, display an unwillingness to learn about the facts underlying their claims, or are so lacking in credibility that they are likely to harm their case." *Pfizer*, 282 F.R.D. at 51. Defendants make no such showing here.

Both Plaintiffs demonstrated their knowledge of the case by identifying the Class Period, the theory of fraud, the Defendants, the other class representative, the nature of their injury, and

the stage of the litigation.[24] They understand their duties, and they have fulfilled those duties by responding to discovery requests, traveling to New York for their depositions, preparing for and sitting for their full-day depositions, and spending significant time overseeing their counsel and staying informed about the case.[25] Complex decisions such as the appropriate class period and the challenged misrepresentations are soundly within the purview of counsel, and Plaintiffs' deference to counsel on such decisions (Opp. 29-30) does not make this "lawyer-driven litigation." *Tsereteli v. Residential Asset Securitization Trust 2006-A8*, 283 F.R.D. 199, 209 (S.D.N.Y. 2012) ("Even where parties are uninformed, adequacy rightly is found where a great deal of reliance on expert counsel is to be expected.").[26]

Nor do Sills' purchases after the March 8, 2023 disclosure subject him to a unique reliance defense. Opp. 32. Defendants' own cited cases show the defense of non-reliance only applies where the proposed class representative invested while in possession of material, ***non-public*** information. *Kamerman v. Ockap Corp.*, 112 F.R.D. 195, 197-98 (S.D.N.Y. 1986) (plaintiff inadequate where he admitted he knew of the alleged omissions when he invested) (Opp. 32).[27]

---

[24] Ex. C at 49:17-25 (Defendants and UNFI's business); 50:16-51:16, 71:9-72:8, 76:10-16, 102:12-103:5 (theory of fraud); 56:12-19 (alleged claims); 59:11-12 (class period); 287:5-7 (losses suffered); 322:24-323:6 (class certification stage); 91:11-17 (other class representative); Ex. N at 133:14-24 (Defendants and UNFI's business); 153:5-154:15 (theory of fraud); 156:7-20 (alleged claims); 162:3-12 (class period); 142:10-22 (losses suffered); 265:8-13 (in discovery and sitting for class certification deposition).

[25] Ex. C at 321:24-322:23; Ex. N at 256:6-257:6.

[26] Defendants' cases are inapposite as the plaintiffs did not know the allegations, the duties of a class representative, or even that the case was brought as a class action. *Gordon v. Sonor Cap. Mgmt. LLC*, 92 F. Supp. 3d 193, 200 (S.D.N.Y. 2015); *Scott v. N.Y.C. Dist. Council of Carpenters Pension Plan*, 224 F.R.D. 353, 356 (S.D.N.Y. 2004); *see also Griffin v. GK Intelligent Sys., Inc.*, 196 F.R.D. 298, 302 (S.D. Tex. 2000) ("singularly interested in recovering his own investment"). Defendants half-heartedly contend that Dick's prior litigation renders him inadequate, Opp. 31 n.13, but unadjudicated allegations (even of fraud) do not undermine Dick's credibility, *Pearlstein*, 2021 WL 253453, at *12-13 (civil judgments of fraud did not render investor inadequate).

[27] *Halliburton II*, 573 U.S. at 269 (atypical where plaintiff would have bought or sold even if he knew of the fraud); *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 179-80 (2d Cir. 1990) (similar); *George v. China Auto. Sys., Inc.*, 2013 WL 3357170, at *6-7 (S.D.N.Y. July 3, 2013) (atypical where "in-and-out trader" may have profited from the fraud); *Rocco v. Nam Tai Elecs., Inc.*, 245 F.R.D. 131, 136 (S.D.N.Y. 2007) (plaintiff invested when he knew of "manipulated finances" that had never publicly corrected).

Defendants make no suggestion that Sills was privy to non-public information. Instead, Defendants cite his purchases of UNFI stock "after the alleged fraud was fully revealed on March 8, 2023." Opp. 32. But Defendants have not proven that the alleged fraud was fully revealed by that date, *see* Sec. III, *supra*, and purchases after a partial corrective disclosure do not render investors atypical. *Sjunde AP-Fonden*, 341 F.R.D. at 548. Even if the Court later concludes that the March 8, 2023 disclosure is fully curative, Sills' purchases on or after that date (9,500 shares) are dwarfed by his significant purchases between December 8, 2021 and March 7, 2023 (63,670 shares). *City of Livonia Emps.' Ret. Sys. v. Wyeth*, 284 F.R.D. 173, 178-79 (S.D.N.Y. 2012) (investor typical where "post-disclosure purchases were not disproportionately large"); *Alexion*, 2023 WL 2932485, at *6 (post-disclosure purchases have "no bearing on whether or not [investor] relied on the integrity of the market ***during*** the class period").

Defendants incorrectly claim that Sills believed the UNFI stock price was manipulated by short sellers. Opp. 33. In fact, Sills testified that *insider trading* could have manipulated the stock price. *See* Ex. C at 261:24-262:5. Regardless, a lead plaintiff's beliefs are "largely irrelevant" where, as here, the Class relies on the *Basic* presumption. *Wyeth*, 284 F.R.D. at 179; *accord In re NIO, Inc. Sec. Litig.*, 2023 WL 5048615, at *7 (E.D.N.Y. Aug. 8, 2023) ("a lack of individual reliance on the alleged misstatements or omissions is not a defense").

## VII.    CONCLUSION

Plaintiffs' Motion should be granted, (1) certifying the Class; (2) appointing Sills and Dick as Class representatives; and (3) appointing Glancy Prongay & Murray LLP as Class Counsel.

Dated: August 22, 2025

By: */s/ Kara M. Wolke*
**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay (admitted *pro hac vice*)
Kara M. Wolke (admitted *pro hac vice*)
Casey E. Sadler (admitted *pro hac vice*)
Melissa C. Wright (admitted *pro hac vice*)
Pavithra Rajesh (admitted *pro hac vice*)
Amir A. Soleimanpour (admitted *pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
kwolke@glancylaw.com

Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 358
New York, NY 10169
Telephone:(212) 682-5340
Facsimile: (212) 884-0988
glinkh@glancylaw.com

*Counsel for Plaintiffs and Proposed Class Counsel for the Proposed Class*

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

**LAW OFFICES OF FRANK CRUZ**
Frank Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Additional Counsel*

22

## CERTIFICATE OF COMPLIANCE

The undersigned counsel for Plaintiffs certifies that this brief contains 7,598 words. *See* ECF 126.

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On August 22, 2025, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 22, 2025.

_/s/ Kara M. Wolke_
Kara M. Wolke