# Exhibit B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Civil Action No. 1:23-cv-02364-JGLC

DAN SILLS and GEORGE DICK,
Individually and on Behalf of All
Others Similarly Situated,

                         Plaintiffs,

        v.

UNITED NATURAL FOODS, INC.,
J. ALEXANDER MILLER
DOUGLAS, JOHN W. HOWARD,
and CHRISTOPHER P. TESTA,

                         Defendants.

REPLY REPORT

PROFESSOR STEVEN P. FEINSTEIN, PH.D., CFA

August 22, 2025

## TABLE OF CONTENTS

I.     SCOPE OF PROJECT AND REPORT .........................................................................1

II.    SUMMARY OF CONCLUSIONS AND OPINIONS ........................................................4

III.   AREAS OF AGREEMENT...................................................................................8

    A.   Market Efficiency ...............................................................................9

    B.   Damages Methodology .........................................................................9

    C.   Statistical Significance and Causes of Alleged Corrective Disclosure Price Declines..................................................................................................10

IV.    DR. ZUREK'S MISCHARACTERIZATION OF PLAINTIFFS' ALLEGATIONS........................................................................................11

    A.   Review of Plaintiffs' Allegations and Related Facts .............................................12

    B.   Dr. Zurek Adopts Defendants' Alternative "Alleged Truth" Which Mischaracterizes Plaintiffs' Allegations .................................................................17

V.     THE 8 MARCH 2023 EARNINGS ANNOUNCEMENT WAS NOT A FULLY CORRECTIVE DISCLOSURE..........................................................................19

    A.   UNFI Provides Q2 2023 Results and Revises Guidance .....................................19

    B.   Dr. Zurek Erroneously Contends That All of the Alleged Concealed Truth Was Disclosed to the Market on 8 March 2023..................................................23

    C.   Dr. Zurek Erroneously Contends That Defendants Disclosed All They Could..................................................................................................25

    D.   Analyst Commentary Following the 8 March 2023 Disclosures.........................28

VI.    THE 7 JUNE 2023 CORRECTIVE DISCLOSURE .........................................................31

    A.   The Announcement: UNFI Provides Q3 2023 Results and Lowers FY 2023 Guidance ..................................................................................32

    B.   Dr. Zurek Is Wrong to Assert That None of the Information Announced on 7 June 2023 Was New Information That Corrected the Alleged Misrepresentations and Omissions ........................................................................37

    C.   Dr. Zurek Tries to Deflect Attribution for the 7 June 2023 Stock Price Decline to Purportedly Confounding Information and Away from the Corrective Disclosure..................................................................................42

    D.   Dr. Zurek Erroneously Limits Plaintiffs' Allegations to Exclude Procurement Gain Magnitudes and the Downward Revision to FY 2023 Guidance as Corrective Disclosures .................................................................45

VII.   THE 26 SEPTEMBER 2023 CORRECTIVE DISCLOSURE.........................................46

    A.   UNFI Provides Q4 2023 and FY 2023 Results and Provides FY 2024 Guidance ..................................................................................46

B.     Dr. Zurek Is Wrong to Assert That None of the Information Announced on 26 September 2023 Was New Information That Corrected the Alleged Misrepresentations and Omissions ............................................................51

C.     Dr. Zurek Tries to Deflect Attribution for the 26 September 2023 Stock Price Decline to Purportedly Confounding Information and Away from the Corrective Disclosure..................................................................................54

D.     Dr. Zurek Erroneously Limits Plaintiffs' Allegations to Exclude Procurement Gain Magnitudes and the FY 2024 Guidance as Corrective Disclosures..................................................................................................56

VIII.    CRITIQUE OF DR. ZUREK'S DAMAGES METHODOLOGY OPINION ..................58

A.     The Out-Of-Pocket Damages Methodology ...........................................................58

B.     The Out-of-Pocket Damages Methodology Is Consistent with Plaintiffs' Theory of Liability ..................................................................................60

C.     Dr. Zurek's Criticisms of the Damages Methodology Are Meritless...................60

D.     Dr. Zurek's Additional Criticisms .........................................................................64

      1.     Valuing UNFI Stock in the But-For Scenario...........................................64

      2.     Materialization of Risk is Well Accommodated by the Damages Methodology ..............................................................................................65

      3.     The Length of the Class Period is Neither Unusual Nor Problematic ..................................................................................................68

      4.     The Out-Of-Pocket Damages Methodology Handles Confounding Information Well.........................................................................................69

E.     Option Damages Can Be Commonly Computed with the Out-of-Pocket Methodology ...........................................................................................70

      1.     Artificial Inflation Ribbon ........................................................................71

      2.     The Option Formula Volatility Parameter .................................................71

IX.     LIMITING FACTORS AND OTHER ASSUMPTIONS.................................................73

## I.    SCOPE OF PROJECT AND REPORT

1.    On 7 March 2025, I submitted a report (the "Feinstein Report") addressing market efficiency and the methodology for computing damages in this matter. Based on the analyses presented in the Feinstein Report, I concluded that the common stock and exchange-traded options of United Natural Foods, Inc. ("UNFI" or the "Company")[1] traded in efficient markets over the Class Period, 8 December 2021 through 25 September 2023, inclusive.[2]

2.    In the Feinstein Report, I showed that each of the *Cammer* and *Krogman* factors supports a finding that UNFI stock traded in an efficient market.[3] As explained and documented in the Feinstein Report, analysis of the *Cammer* and *Krogman* factors, including empirical event study analysis, is the generally accepted methodology for assessing market efficiency.[4] My analysis included statistical tests, which compared the price behavior of UNFI stock on high information dates to the stock price movements on more ordinary non- or lesser-news dates.[5] The tests proved that UNFI stock responded to new, Company-specific information and thereby demonstrated market efficiency during the Class Period.[6]

3.    The Feinstein Report also explained that options are designed to respond to movement in the underlying stock's price, such that if the stock price rises, the call option prices will also rise and the put option prices will fall, all else held equal.[7] Similarly, if the stock price falls, the call option prices will fall and the put option prices will rise, all else held equal.[8]

---

[1] Unless otherwise indicated, capitalized terms used herein have the same definition and meaning ascribed to them in the Feinstein Report.

[2] Feinstein Report, ¶¶18 and 23.

[3] Feinstein Report, §§VII-VIII.

[4] Feinstein Report, ¶¶54-64.

[5] Feinstein Report, ¶121.

[6] Feinstein Report, ¶154.

[7] Feinstein Report, ¶36.

[8] Feinstein Report, ¶36.

4. The Feinstein Report noted that the UNFI options were listed and traded on the NYSE throughout the Class Period and also traded on Nasdaq during most of the Class Period.[9] As described in the Feinstein Report, in addition to their well-developed trading infrastructure, the UNFI options, the prices of which are functions of the UNFI stock price, benefited from the same information infrastructure that made the market for UNFI stock efficient.[10] Therefore, by virtue of their design and the highly developed information dissemination and trading infrastructures, because UNFI stock traded in an efficient market, so too did the UNFI options.[11]

5. I empirically tested whether the UNFI options responded to new Company-specific information as did the UNFI stock.[12] A collective event study test examined the price behavior of the UNFI options, combined in a way to permit valid regression estimation and $t$-tests of statistical significance.[13] The test compared option price movements on high information dates to the option price movements on the more ordinary non- or lesser-news dates.[14] As did the UNFI stock, the UNFI options demonstrated market efficiency during the Class Period, observably reacting to information, and thus satisfying the fifth *Cammer* factor.[15] I concluded that the UNFI options traded in an efficient market over the course of the Class Period.[16]

6. In the Feinstein Report, I further concluded that Section 10(b) and Section 20(a) damages can be computed using a methodology that is consistent with Plaintiffs' theory of liability and common for all Class members.[17] In the Feinstein Report, I described that damages computation methodology – the out-of-pocket damages methodology – and noted that it is the damages computation methodology that is applied in virtually all class action securities

---

[9] Feinstein Report, ¶¶37 and 171.

[10] Feinstein Report, ¶¶168 and 197.

[11] Feinstein Report, ¶197.

[12] Feinstein Report, §IX.B.

[13] Feinstein Report, ¶¶182-184.

[14] Feinstein Report, ¶178.

[15] Feinstein Report, ¶¶185-188 and 198.

[16] Feinstein Report, ¶¶23 and 199.

[17] Feinstein Report, ¶¶24 and 200.

2

cases. [18] I explained how available valuation tools routinely address the various case-specific complexities that may arise in the application of the out-of-pocket damages methodology.[19]

7.  Following submission of the Feinstein Report, on 9 May 2025, I provided deposition testimony in this case (the "Feinstein Deposition").[20]

8.  I am now asked by Glancy Prongay & Murray LLP, Counsel for Plaintiffs, to consider, evaluate, and respond to the arguments and conclusions in the Expert Report of Paul Zurek, Ph.D., dated 13 June 2025 (the "Zurek Report"), which was submitted by Defendants in this matter.

9.  Dr. Zurek wrote that he was retained by counsel for Defendants to do the following:

    i.   "assess economic evidence regarding the impact, if any, of the actionable alleged misrepresentations (i.e., the alleged misstatements and omissions that survived Defendants' motion to dismiss) on the prices of UNFI common stock and options ('UNFI Securities') following the alleged corrective disclosure on March 8, 2023, assuming those securities traded in efficient markets;"[21] and,

    ii.  "evaluate Dr. Feinstein's opinion that 'Section 10(b) and Section 20(a) damages in this matter can be computed for all [Proposed] Class [M]embers and all UNFI Securities using a common methodology for each cause of action that is consistent with Plaintiffs' theory of liability.'"[22]

10. This instant report presents my analyses and conclusions relating to the Zurek Report and the issues raised therein.

11. I have not been asked to opine on or conduct analyses of loss causation or to compute damages at this juncture. Should I be asked to do so, I will comprehensively address loss causation and damages at the appropriate stage in this litigation.

---

[18] Feinstein Report, §X.

[19] Feinstein Report, ¶¶208-210.

[20] Videotaped Deposition of Steven P. Feinstein, Ph.D., 9 May 2025.

[21] Zurek Report, ¶5 (internal citation omitted).

[22] Zurek Report, ¶5 (brackets as in original).

3

12.     My conclusions are based on the information presently available to me. For this report, I reviewed and relied upon, or considered, all the data and documents cited and listed in the Feinstein Report. Additional data and documents considered are listed in Exhibit-1 of this report. My credentials and compensation are presented in the Feinstein Report, as is a list of testimony I provided during the four years preceding that report. Testimony I have provided since the Feinstein Report is identified in Exhibit-2 of this report.

13.     My work in this matter is ongoing. I reserve the right to amend, refine, or supplement my analyses and opinions in the event that I become aware of additional information, evidence, arguments, or analyses that bear on my work in this matter.

## II.     SUMMARY OF CONCLUSIONS AND OPINIONS

14.     Dr. Zurek provides no reason to revise any of the conclusions or proffered opinions in the Feinstein Report. In fact, Dr. Zurek either agrees with or accepts as assumptions most of my findings and conclusions. Where he disagrees, his analysis is deficient, and he arrives at erroneous conclusions.

15.     Specifically, Dr. Zurek does not question that the UNFI Securities traded in efficient markets. He assumes this fact for his analysis.[23] Thus, the efficiency of the markets for the UNFI Securities is undisputed.[24]

16.     Dr. Zurek acknowledges and does not challenge that corrective disclosures on 7 December 2022 and 8 March 2023 reasonably caused or contributed to the statistically significant UNFI stock price declines that occurred on those days.[25] Thus, he does not challenge that the alleged misrepresentations and omissions impacted the prices of the UNFI Securities prior to and on those days. Dr. Zurek does not opine that the misrepresentations and omissions had no price impact.

---

[23] Zurek Report, ¶¶5, 9, 35, and 49; and The Videotaped Deposition of Paul Zurek, 5 August 2025, at 10:13-15 and 13:11-18.

[24] Feinstein Report, ¶¶18 and 23.

[25] Zurek Report, ¶¶9 and 49.

4

17. Dr. Zurek's opinion about price impact relates only to the period after 8 March 2023, and focuses on the alleged corrective disclosures on 7 June 2023 and 26 September 2023.[26] But even there, Dr. Zurek never opines that the alleged misrepresentations and omissions had no price impact subsequent to 8 March 2023 and, in particular, on 7 June 2023 and 26 September 2023. The price impact opinion that Dr. Zurek does proffer is the following heavily qualified statement:

> "Based on my assessment of the economic evidence presented below, it is my opinion that this economic evidence is consistent with the Challenged Statements having had no impact on the prices of UNFI Securities following the alleged corrective disclosure on March 8, 2023, even to the extent they had impacted the prices of these securities prior to that date."
> **Zurek Report, ¶9.**

18. That is, Dr. Zurek does not say he has proven there was no price impact after 8 March 2023. Rather, he states that the "economic evidence is consistent" with such a conclusion.[27] If he had found that the evidence or analysis definitively disproved price impact, one would expect Dr. Zurek would have said so. He did not.

19. Dr. Zurek presents a more decisive assertion in the heading of his report introducing his purported analysis of the 7 June 2023 and 26 September 2023 corrective disclosures. There he states:

> "In an Efficient Market, Any Changes in the Prices of UNFI Securities Following the Alleged Corrective Disclosures on June 7, 2023 and September 26, 2023 Were Not a Result of the Revelation of Information Underlying the Alleged Truth or Its Repetition Because the Alleged Truth Was Already Public Information"
> **Zurek Report, p. 39.**

20. However, this bold statement of Dr. Zurek's is not supported by the purported evidence and analysis he then presents. Rather, this assertion derives from a fatal flaw pervading Dr. Zurek's price impact analysis. At the direction of Defendants' counsel, Dr. Zurek replaces

---

[26] Zurek Report, ¶¶75-109.

[27] Zurek Report, ¶¶9 and 49.

Plaintiffs' actual allegations with a severely limited alternative mischaracterization. [28] Under Dr. Zurek's interpretation, Plaintiffs allege only that the existence of prior procurement gains were concealed from the market by the misrepresentations and omissions. [29] He omits from this definition that Plaintiffs also allege that the misrepresentations and omissions concealed the magnitude of the procurement gains and the extent to which the procurement gains had boosted prior profits and profitability.[30] The information that Dr. Zurek incorrectly excludes from Plaintiffs' allegations is the very information that the Company continued to conceal after 8 March 2023.

21.    Dr. Zurek overlooks that because investors were allegedly misled about how much procurement gains drove profits and profitability in FY 2022 and the first half of FY 2023, the market was deceived about the sustainability of those prior profits and that profitability.[31] On account of the information they were deprived of, investors could not anticipate how profits and profitability would later suffer when the opportunity for massive procurement gains subsided.[32] Plaintiffs allege that the concealment of the magnitude of prior procurement gains and their impact on profits and profitability is why reduced profit and profitability so severely surprised the market when earnings and guidance were announced on 7 June 2023 and 26 September 2023.[33]

22.    Plaintiffs allege that the missing magnitude information that would have alerted the market to the unsustainability of prior profits and profitability was not disclosed to the market until 26 September 2023.[34] Because Dr. Zurek complied with the instructions of Defendants' counsel to wrongly assume that everything concealed by the alleged misrepresentations and omissions had been disclosed to the market by 8 March 2023, the price impact of the

---

[28] Zurek Report, ¶10, FN 7, and §V.A.1; and The Videotaped Deposition of Paul Zurek, 5 August 2025, at 10:15-17 and 30:2-19.

[29] Zurek Report, ¶28.

[30] Complaint, ¶¶6, 13, 69-70, 78-79, 101, 106-107, and 141.

[31] Complaint, ¶¶6-8 and 89.

[32] Complaint, ¶¶89 and 106-107.

[33] Complaint, ¶¶216-217.

[34] Complaint, ¶¶132 and 217.

actually alleged misrepresentations and omissions on 7 June 2023 and 26 September 2023 escapes Dr. Zurek's notice.[35]

23.    Dr. Zurek does not dispute that the out-of-pocket damages methodology is used in virtually all class action securities cases, including those with facts and allegations similar to those in the instant case.[36] Rather than challenge the damages methodology, Dr. Zurek criticizes my articulation of it and that I have not yet executed it, contending that my explanation is "insufficient" for how the methodology handles various potential complexities that often arise in the methodology's implementation.[37] Dr. Zurek identifies no unusual complexities, let alone insurmountable ones, that might be encountered when executing the out-of-pocket damages methodology in this case. The same concerns and criticisms he raises in this case he has presented in prior cases, to no avail.[38]

24.    With respect to the application of the out-of-pocket damages methodology to the UNFI stock options, Dr. Zurek asserts that full disclosure would have impacted not just the UNFI stock price but also the UNFI stock volatility, which would in turn affect UNFI option values according to generally accepted option pricing formulas.[39] He worries that the computation of but-for option prices might not take this volatility effect into account.[40] In raising this concern, Dr. Zurek implicitly accepts the market efficiency of the UNFI options

---

[35] Zurek Report, ¶10, FN 7, and §V.A.1; and The Videotaped Deposition of Paul Zurek, 5 August 2025, at 10:15-17 and 30:2-19.

[36] Feinstein Report, ¶¶203-204; Zurek Report, ¶111; and The Videotaped Deposition of Paul Zurek, 5 August 2025, at 94:25-95:9.

[37] Zurek Report, ¶¶13 and 115; and The Videotaped Deposition of Paul Zurek, 5 August 2025, at 98:14-99:14.

[38] See, e.g., Declaration of Paul Zurek, Ph.D., dated 14 August 2018, In Re RH, Inc. Securities Litigation, U.S. District Court, Northern District of California, Oakland Division, Civil Action No. 4: 17-00554-YGR; Expert Report of Paul Zurek, Ph.D., dated 1 April 2019, Trevor Mild, et al., v. PPG Industries, Inc., et al., U.S. District Court, Central District of California, Civil Action No. 2:18-cv-04231-RGK-JEM; Expert Report of Paul Zurek, Ph.D., dated 13 June 2019, In re Novo Nordisk Securities Litigation, U.S. District Court, District of New Jersey, Civil Action No. 3:17-cv-00209-BRM-LHG; Rebuttal Report of Paul Zurek, Ph.D., dated 18 June 2019, Christakis Vrakas, et al., v. United States Steel Corporation, et al., U.S. District Court, Western District of Pennsylvania, Civil Action No. 17-579; Rebuttal Report of Paul Zurek, Ph.D., dated 31 August 2020, Indiana Public Retirement System, et al., v. Stamps.com, Inc., et al., U.S. District Court, Central District of California, Civil Action No. 2:19-cv-01828-MWF (SK); and Expert Report of Paul Zurek, Ph.D., dated 20 December 2024, San Antonio Fire and Police Pension Fund, et al., v. Dentsply Sirona Inc., et al., U.S. District Court, Southern District of New York, Civil Action No. 1:22-cv-06339-AS.

[39] Zurek Report, ¶140.

[40] Zurek Report, ¶¶141-146.

and that option prices conform to the generally accepted option pricing formulas.[41] But this concern is unfounded and emblematic of all of Dr. Zurek's damages methodology criticisms and highlights the flaw with them. Dr. Zurek has no valid basis for speculating that evident valuation effects will be disregarded. The same evidence that indicates the presence of a valuation effect will also guide the incorporation of that valuation effect into the computation of the but-for prices and in turn damages. If evidence of changing volatility is encountered, for example, the indicated changed volatility will be incorporated into the but-for option valuation. The out-of-pocket damages methodology would neatly and commonly accommodate it.[42] It is not a valid criticism of the damages methodology to speculate that it might be executed incorrectly. Care will be taken to execute the damages methodology correctly.

25.    Moreover, the volatility parameter Dr. Zurek points to is an observable parameter, and how it reacts to corrective disclosures can be measured.[43] The observable volatility parameter required in option pricing is known as the implied volatility.[44] To the extent that corrective disclosures change this volatility parameter, that change is observable and can be incorporated into the option valuation formula.[45]

## III.    AREAS OF AGREEMENT

26.    Dr. Zurek agrees with or accepts as assumptions most of my findings and conclusions.

---

[41] Zurek Report, ¶¶136 and 146.

[42] Feinstein Report, ¶¶208-211.

[43] Zurek Report, ¶135.

[44] "The Black-Scholes-Merton Model," by John Hull, Chapter 14 of *Options, Futures, and Other Derivatives*, 8th Edition, Prentice Hall, 2012, pp. 318-319.

[45] For a more detailed explanation of how changes in implied volatility can be accommodated when computing option damages, *see, e.g.*, "The Class Certification of Exchange-Listed Options in Securities Class-Action Litigation," by Don Chance, Onnig Dombalagian, and Steven Feinstein, *University of Pennsylvania Journal of Business Law*, Vol. 27, No. 1, 2025.

### A.    Market Efficiency

27.    Dr. Zurek assumed and did not dispute that UNFI stock traded in an efficient market during the Class Period.[46] Dr. Zurek does not dispute any of my findings concerning the *Cammer* and *Krogman* factors, which establish that the market for UNFI stock was efficient throughout the Class Period.[47]

28.    Dr. Zurek also does not contest that the market for UNFI's options was an efficient market.[48] Dr. Zurek does not dispute that options are designed to move with the underlying stock, and the UNFI options demonstrated that they did move with UNFI stock, thus, the *Cammer* and *Krogman* factors that indicated the efficiency of the market for UNFI stock also serve to indicate that the market for the UNFI stock options was efficient throughout the Class Period.[49]

### B.    Damages Methodology

29.    Dr. Zurek does not dispute the existence of the out-of-pocket damages methodology.[50] He does not dispute that it is used to compute damages in virtually all class action securities cases and that it is acknowledged in legal scholarship as the appropriate damages methodology for class action securities cases.[51]

30.    Dr. Zurek does not dispute that in the out-of-pocket damages methodology, one computes artificial inflation as the difference between the security price that actually prevailed and what the but-for price would have been had there been full disclosure.[52] According to the

---

[46] Zurek Report, ¶¶5, 9, 35, and 49; and The Videotaped Deposition of Paul Zurek, 5 August 2025, at 10:13-15 and 13:14-20.

[47] Feinstein Report, ¶¶65-154; and The Videotaped Deposition of Paul Zurek, 5 August 2025, at 14:10 – 15:12.

[48] Zurek Report, ¶¶5, 9, 35, and 49; and The Videotaped Deposition of Paul Zurek, 5 August 2025, at 10:13-15 and 13:14-20.

[49] Feinstein Report, ¶¶22 and 197; and The Videotaped Deposition of Paul Zurek, 5 August 2025, at 136:5-12.

[50] Feinstein Report, ¶200; and Zurek Report, ¶111.

[51] Feinstein Report, ¶203; Zurek Report, ¶111; and The Videotaped Deposition of Paul Zurek, 5 August 2025, at 94:25-95:9.

[52] Feinstein Report, ¶205; and Zurek Report, ¶112.

methodology, damages are the change in artificial inflation over an investor's holding period, subject to various statutory and case law constraints.[53]

### C. Statistical Significance and Causes of Alleged Corrective Disclosure Price Declines

31. Dr. Zurek agrees that the price of UNFI stock declined by statistically significant amounts on 7 December 2022, 8 March 2023, 7 June 2023, and 26 September 2023, dates on which there were alleged corrective disclosures.[54] On each of these days, the Company announced that the Company's gross profit margin rate had declined from the same quarter in the prior fiscal year.[55] Each time, either reported realized profit or forecasted profit disappointed the market as they fell below expectations.[56] Dr. Zurek acknowledges that these announcements caused or contributed to the statistically significant UNFI stock price declines that occurred on each of these dates.[57] He does not dispute that the declines in profits and profitability announced on these dates (as reflected in reported financial results or forward guidance) were unanticipated by the market and therefore surprising, and thus caused the UNFI stock price to decline.[58]

32. Dr. Zurek does not dispute that the market's surprise on 7 December 2022 and 8 March 2023 (the first two alleged corrective disclosure dates) was due, at least in part, to the market not knowing how prior procurement gains drove UNFI's gross profit margin

---

[53] Feinstein Report, ¶206; and Zurek Report, ¶112.

[54] Complaint, ¶213; Zurek Report, ¶¶29, 48 and FN 89; and The Videotaped Deposition of Paul Zurek, 5 August 2025, at 37:20-25 and 38:5-22.

[55] "United Natural Foods, Inc. Reports First Quarter Fiscal 2023 Results," *Business Wire*, Company press release, 7 December 2022 7:00 AM; "United Natural Foods, Inc. Reports Second Quarter Fiscal 2023 Results," *Business Wire*, Company press release, 8 March 2023 7:00 AM; "United Natural Foods, Inc. Reports Third Quarter Fiscal 2023 Results," *Business Wire*, Company press release, 7 June 2023 7:00 AM; and "United Natural Foods, Inc. Reports Fourth Quarter and Full Year Fiscal 2023 Results," *Business Wire*, Company press release, 26 September 2023 7:00 AM.

[56] "United Natural Foods Q1 Profit Decreases, Misses Estimates," *RTT News*, 7 December 2022; "United Natural Foods Q2 Profit Decreases, Misses Estimates," *RTT News*, 8 March 2023; "United Natural Foods Q3 Profit Decreases, Misses Estimates," *RTT News*, 7 June 2023; and "United Natural Foods Down 19% After Below-Consensus FY24 Guidance," *The Fly*, 26 September 2023.

[57] Zurek Report, ¶¶30-33, 54, 77-78, and 96-97.

[58] Zurek Report, ¶¶30-33, 66-67, 81-82, and 99-100; and The Videotaped Deposition of Paul Zurek, 5 August 2025, at 64:3-6.

expansion in the prior fiscal year, FY 2022.[59] Thus, the price impact of the alleged misrepresentations and omissions on these days is undisputed.

## IV.    DR. ZUREK'S MISCHARACTERIZATION OF PLAINTIFFS' ALLEGATIONS

33.    Dr. Zurek acknowledges that the stock price declines on 7 December 2022, 8 March 2023, 7 June 2023, and 26 September 2023 were each statistically significant, and therefore caused by Company news.[60] He acknowledges that the negative news that caused the stock price declines on all four dates was primarily disappointing profits and profitability.[61] Dr. Zurek does not dispute that the alleged misrepresentations and omissions caused or contributed to the market's surprise and thus the UNFI stock price declines on 7 December 2022 and 8 March 2023, the first two alleged corrective disclosure dates.[62]

34.    Dr. Zurek does, however, question whether the alleged misrepresentations and omissions similarly caused or contributed to the market's surprise and thus UNFI's stock price declines on 7 June 2023 and 26 September 2023, the third and fourth alleged corrective disclosures.[63] He contends that all economically material information allegedly concealed by the misrepresentations and omissions was already out into the market following the 8 March 2023 disclosures.[64]

35.    The fundamental flaw driving Dr. Zurek's erroneous conclusions about 7 June 2023 and 26 September 2023 are his mischaracterization of Plaintiffs' allegations and his related misunderstanding of what therefore constituted full corrective disclosure. Dr. Zurek complied with instructions from Defendants' counsel to assume a different set of allegations than what Plaintiffs actually alleged, which led him to believe a different set of

---

[59] Zurek Report, ¶¶9, 49, and 65-67.

[60] Zurek Report, ¶48 and FN 89.

[61] Zurek Report, ¶¶30-33, 54, 77-78, and 96-97.

[62] Zurek Report, ¶¶9, 49, and 65-67.

[63] Zurek Report, ¶¶11, 51, and 72-74.

[64] Zurek Report, ¶¶10, 50, and 71; and The Videotaped Deposition of Paul Zurek, 5 August 2025, at 84:23-85:18 and 89:19-90:6.

information would constitute full corrective disclosure. [65] Dr. Zurek significantly understates the full breadth of what information Plaintiffs allege was misrepresented and omitted, and therefore also understates what information if provided would have constituted full corrective disclosure. These errors led him to his erroneous conclusion that full corrective disclosure had occurred on 8 March 2023.[66]

36.    To illuminate the disconnect between Plaintiffs' allegations and Dr. Zurek's mischaracterization, I next review Plaintiffs' allegations.

### A.    Review of Plaintiffs' Allegations and Related Facts

37.    As explained in the Feinstein Report, according to Plaintiffs, UNFI engaged in a "massive undisclosed 'strategic' forward buying" practice, in which the Company, with knowledge of impending price increases, procured products that exceeded actual demand to generate substantial procurement gains.[67] These procurement gains produced substantial profits and boosted the gross profit margin in FY 2022 and the first half of FY 2023.[68]

38.    Because procurement gains depended on sustained price inflation, they were inherently atypical and unsustainable as they would subside when inflation moderated.[69]

> "Throughout the Class Period, Defendants failed to disclose that UNFI's profitability benefited significantly from massive strategic forward buying in advance of known price increases; that this elevated level of forward buying led to substantial atypical procurement gains; that these atypical procurement gains masked the Company's challenges, including labor challenges and wage inflation; and that there was a very high risk that the forward buying opportunities would decrease when inflation normalized, which would in turn materially decrease the Company's profitability."
> **Complaint, ¶6.**

---

[65] Zurek Report, ¶10, FN 7, and §V.A.1; and The Videotaped Deposition of Paul Zurek, 5 August 2025, at 10:15-17 and 30:2-19.

[66] Zurek Report, ¶¶10, 50, and 71.

[67] Feinstein Report, ¶39; and Complaint, ¶5.

[68] Complaint, ¶¶6-8, 70, 127, FN 14, and 132.

[69] Feinstein Report, ¶40.

39.    Plaintiffs specifically allege that Defendants did not disclose the *extent* to which the Company's profits and profitability in FY 2022 and the first half of FY 2023 were driven by the procurement gains.[70] The allegation is not merely that the Company concealed that it had availed itself of the opportunity to reap procurement gains – that is, the *existence* of procurement gains – but also that the Company concealed the *amount* of the procurement gains and the *extent* to which profits and profitability depended on them.[71]

> "First, Defendants failed to disclose both the number and the magnitude of 'strategic' and 'substantial' undisclosed forward buying opportunities during the Class Period. This was a material trend that Defendants belatedly revealed at the end of the Class Period and was substantial. ***The number and the magnitude of strategic forward buying opportunities was information that was known to Defendants during the Class Period***."
> **Complaint, ¶¶207-208 (emphasis added).**

> "Importantly, Defendant Howard effectively admitted that the Individual Defendants had access to information sufficient to understand the ***extent of UNFI's strategic forward buying practices during the Class Period***."
> **Complaint, ¶101 (emphasis added).**

40.    Investors were disappointed by each earnings announcement in FY 2023.[72] Plaintiffs contend that the Q1 2023 earnings announcement on 7 December 2022 was a partially corrective disclosure because the decline in gross profit margin, which surprised and disappointed investors and analysts, would have been anticipated but for the misrepresentations and omissions about procurement gains that boosted the gross profit margin previously.[73] The Q2 2023 earnings announcement on 8 March 2023 also disappointed investors and analysts, as profit and profitability fell from the prior year, and

---

[70] Complaint, ¶¶19, 101, 123, and 213-217.

[71] Complaint, ¶¶101 and 207-208.

[72] "United Natural Foods Q1 Profit Decreases, Misses Estimates," *RTT News*, 7 December 2022; "United Natural Foods Q2 Profit Decreases, Misses Estimates," *RTT News*, 8 March 2023; "United Natural Foods Q3 Profit Decreases, Misses Estimates," *RTT News*, 7 June 2023; and "United Natural Foods Down 19% After Below-Consensus FY24 Guidance," *The Fly*, 26 September 2023.

[73] Complaint, ¶¶85-89 and 214.

this deterioration was revealed to have been due to the prior year benefiting from procurement gains.[74]

41. However, the level of prior procurement gains was still undisclosed as of 8 March 2023. The market was kept unaware that procurement gains in Q3 and Q4 of 2022, respectively, were even greater than those achieved in Q2 2022, such that further disappointments were in store for Q3 and Q4 of 2023. Plaintiffs contend that if the magnitudes of FY 2022 procurement gains had been disclosed rather than concealed by misrepresentations and omissions, the market would not have been as surprised by the deterioration of profits and profitability announced for Q3 and Q4 2023 on 7 June 2023 and 26 September 2023, respectively.[75]

> "The truth regarding the **extent** of forward buying and the significant impact of procurement gains was partially revealed, and/or the concealed risks materialized, on or about December 7, 2022, March 8, 2023, June 7, 2023, and September 26, 2023."
> **Complaint, ¶213 (emphasis added).**

> "On March 8, 2023, Defendants Shocked Investors By Revealing That UNFI's Reported EBITDA Had Been 'Significantly' Inflated By Undisclosed 'Procurement Gains' That Had Masked Other Challenges. … [T]he Company's share price fell $11.49, or 28.1%, to close at $29.47 per share on March 8, 2023, on unusually heavy trading volume. Defendants' disclosures on March 8, 2023 **partially corrected** the misleading impression created by Defendants' false and misleading statements…"
> **Complaint, §V.C and ¶215 (emphasis added).**

> "On June 7, 2023, Defendants Again Shocked Investors By Further Slashing UNFI's EBITDA Guidance And Further Revealing Problems That Had Been Masked by UNFI's 'Strategic Forward Buying' Practices During The Class Period. … Among other things, this ***further revealed the extent to which UNFI's prior results had been benefited by UNFI's 'strategic' forward buying and the extent to which the benefit had masked other problems impacting UNFI's profitability***."
> **Complaint, §V.F and ¶216 (emphasis added).**

---

[74] "United Natural Foods, Inc. Reports Second Quarter Fiscal 2023 Results," *Business Wire*, Company press release, 8 March 2023 7:00 AM; and Complaint, ¶¶91-102 and 215.

[75] Complaint, ¶¶113-132 and 216-217.

"On September 26, 2023, Defendants *Further Reveal* That The 'Out-of-Pattern Increase in Procurement Gains' Began By January 2022 At The Latest And Amounted To At Least $275 Million For The One Year Period Spanning The Second Half Of Fiscal 2022 Through The First Half Of Fiscal 2023"
**Complaint, §V.G (emphasis added).**

42.    As noted in this last quote from the Complaint, and as public documentation confirms, the Company did not disclose until 26 September 2023 that the Company had reaped "at least $275 million" of procurement gains between 30 January 2022 and 28 January 2023 ("the one year period spanning the second half of fiscal 2022 through the first half of fiscal 2023").[76] This magnitude of procurement gains and the extent to which they had driven previously reported profits and profitability were not disclosed on 8 March 2023, and remained undisclosed until 26 September 2023.[77]

43.    I understand that the Court upheld Plaintiffs' allegation that Defendants likely knew but did not disclose that "the explosion then evaporation of inflation-related forward buying gains (and a resulting substantial impact on margins) was 'a "known" trend,'" and that "its omission was at least reckless under the PSLRA," supporting Plaintiffs' allegation that Defendants' statements suggesting otherwise were false and misleading.[78] The Court recognized that the emphasis of Plaintiffs' allegations is on the *magnitude*, not merely the *existence* of the procurement gains.[79]

44.    I understand that the Court found actionable, among other things, the alleged misstatements and omissions concerning: (i) the driver of the Company's increase in gross margin rate in FY 2022; (ii) the sustainability of the Company's margins in a deflationary environment; and (iii) "the sensitivity of the Company's margins to deflationary and inflationary pressures."[80] Specifically, the Court found that:

---

[76] Complaint, ¶¶127, FN 14, and 132.

[77] Complaint, ¶¶132 and 217.

[78] MTD Order, p. 27.

[79] MTD Order, pp. 1-2, 16, and 25.

[80] MTD Order, pp. 16-17.

"The Profit Driver Statements are actionable because they purported to disclose the drivers of the Company's profits while omitting material facts that rendered those statements misleading. The Company put the drivers of its margins in play by speaking on the issue. But it failed to disclose that forward buying was a significant and aberrational driver of its profit margins. … And the facts alleged suggest that the market was blindsided by the eventual revelation of the *significant and unsustainable level of procurement gains* that drove profit margins during the Class Period."
**MTD Order, p. 16 (emphasis added).**

"The Profit Sustainability Statements are plausibly misleading for similar reasons as the Profit Driver Statements. The Profit Sustainability Statements spoke to the impact of a deflationary environment on UNFI's margins and whether the causes of a decline in margins were temporary. Defendants put the drivers of the decline in margins in play by speaking on the issue. However, they conspicuously *failed to disclose the impact of forward buying* on the decline."
**MTD Order, p. 17 (emphasis added).**

45.    Again, the emphasis of the upheld allegations is on the *magnitude* and *impact* of the procurement gains, not merely their *existence*.

46.    The market was never told how much procurement gains had been in Q2 2022. So, although the market was told on 8 March 2023 that some underperformance in Q2 2023 relative to Q2 2022 was caused by the prior year benefiting from procurement gains, the market did not know how much.[81]

47.    Prior to 7 June 2023, when Q3 2023 financial results were announced, the market was not informed that procurement gains in the quarter one year prior, Q3 2022, were likely at least $50 million.[82] Prior to 7 June 2023, the market was therefore deprived of the information that would have informed the market of the extent Q3 2023 would be worse than Q3 2022 on account of the evaporation of procurement gains.

---

[81] "United Natural Foods, Inc. Reports Second Quarter Fiscal 2023 Results," *Business Wire*, Company press release, 8 March 2023 7:00 AM.

[82] "Third Quarter Fiscal 2023 Earnings Conference Call," Company presentation, 7 June 2023, p. 9.

48.     Similarly, prior to 26 September 2023, when Q4 2023 financial results were announced, the market was not informed that procurement gains in the quarter one year prior, Q4 2022, were at least $94 million.[83] Prior to 26 September 2023, therefore, the market was deprived of the information that would have informed the market of the extent Q4 2023 would be worse than Q4 2022 on account of the substantial evaporation of procurement gains.

49.     Moreover, prior to 26 September 2023, the market was deprived of the information that procurement gains had increased between Q3 2022 and Q4 2022 (from approximately $50 million to $94 million), such that the impact of procurement gains and the unsustainable portion of adjusted EBITDA due to procurement gains had increased.[84]

50.     Finally, it is an undeniable fact that the magnitude of procurement gains reaped between 30 January 2022 to 28 January 2023, which amounted to approximately $275 million according to Plaintiffs' summation, was not disclosed until 26 September 2023.[85] Given these facts and Plaintiffs' allegations, there was no full corrective disclosure prior to 26 September 2023.[86]

### B.     Dr. Zurek Adopts Defendants' Alternative "Alleged Truth" Which Mischaracterizes Plaintiffs' Allegations

51.     Dr. Zurek adopts a narrower characterization of Plaintiffs' allegations that diverges from Plaintiffs' actual allegations. He admits that he did so at the direction of Defendants' counsel.[87]

52.     Specifically, Dr. Zurek misinterprets Plaintiffs' allegations to comprise only that the Company concealed the *existence* of procurement gains and that procurement gains had some impact on the Company's profits and profitability, but he omits that the Company

---

[83] "Fourth Quarter Fiscal 2023 Earnings Conference Call," Company presentation, 26 September 2023, p. 10.

[84] "Third Quarter Fiscal 2023 Earnings Conference Call," Company presentation, 7 June 2023, p. 9; and "Fourth Quarter Fiscal 2023 Earnings Conference Call," Company presentation, 26 September 2023, p. 10.

[85] Complaint, ¶¶127, FN 14, and 132.

[86] Complaint, ¶¶125-132, 213, and 217.

[87] Zurek Report, ¶10, FN 7, and §V.A.1; and The Videotaped Deposition of Paul Zurek, 5 August 2025, at 10:15-17 and 30:2-19.

also concealed the ***magnitude*** of the procurement gains and how much the procurement gains had boosted profits and profitability during the Class Period.[88]

53.    The "Alleged Truth," as Dr. Zurek calls it, is admittedly a construct of Defendants' counsel, which Dr. Zurek was asked to assume when undertaking the analyses presented in the Zurek Report.[89]

> "For the purposes of my analysis, Counsel has instructed me to assume that, consistent with Plaintiffs' allegations as above, the Court's MTD Ruling, and Dr. Feinstein's testimony, Plaintiffs' liability theory is that UNFI should have disclosed during the Proposed Class Period, at the time the Challenged Statements were made, that ***inflation-related forward buying opportunities were a significant but temporary driver of improvements in UNFI's gross margin*** (the 'Alleged Truth')."
> **Zurek Report, ¶28 (emphasis added).**

54.    It is my understanding that Dr. Zurek's alternative "Alleged Truth" differs markedly from what Plaintiffs actually allege, is inconsistent with the Court's MTD Order, and, contrary to Dr. Zurek's contention, is not what I testified to in my deposition.

55.    Dr. Zurek's alternative "Alleged Truth" falls short of capturing the totality of Plaintiffs' allegations. Dr. Zurek limits the allegation to concealment of the existence of prior procurement gains and that the procurement gains had some impact on profits and profitability.[90] In reality, Plaintiffs' allegations include that Defendants also concealed how much were the procurement gains and the extent to which they boosted profits and profitability.[91] Dr. Zurek's erroneous exclusions produce his erroneous conclusions.

---

[88] Zurek Report, ¶28; The Videotaped Deposition of Paul Zurek, 5 August 2025, at 36:7-19; and Complaint, ¶¶19, 101, 123, and 213-217.

[89] Zurek Report, ¶10, FN 7, and §V.A.1; and The Videotaped Deposition of Paul Zurek, 5 August 2025, at 10:15-17 and 30:2-19.

[90] Zurek Report, ¶28.

[91] Complaint, ¶¶19, 101, 123, and 213-217.

56.    Dr. Zurek is wrong when he says that I too excluded from Plaintiffs' allegations the extent of the procurement gains.[92] I specifically noted that the allegations included concealment of the extent of the procurement gains, not just their existence:

> "- -  it's the practice that was alleged to have been undisclosed, the **extent** to which the company engaged in it during the class period."
> **Feinstein Deposition, at 79:8-11 (emphasis added).**

57.    Dr. Zurek's definition of the alternative "Alleged Truth" is flawed and incomplete. As discussed in more detail below, it is because he wrongly narrows the allegations that he reaches the erroneous conclusion that the full truth was revealed on 8 March 2023.[93] It is because of this error that he then overlooks how the earnings announcements on 7 June 2023 and 26 September 2023 were corrective disclosures, and that the statistically significant price declines on those dates comprised price impacts of the alleged misrepresentations and omissions.

## V.    THE 8 MARCH 2023 EARNINGS ANNOUNCEMENT WAS NOT A FULLY CORRECTIVE DISCLOSURE

58.    Dr. Zurek contends that the UNFI announcements made on 8 March 2023 were full disclosures that completely corrected the alleged misrepresentations and omissions.[94] He is wrong.

### A.    UNFI Provides Q2 2023 Results and Revises Guidance

59.    On 8 March 2023, before the market opened, UNFI announced Q2 2023 results, released an earnings presentation, and held a conference call with analysts and investors.[95] In the Company's press release, UNFI announced that net sales in the quarter were $7.82 billion,

---

[92] Zurek Report, ¶27.

[93] Zurek Report, ¶¶10, 50, and 52.

[94] Zurek Report, ¶¶10, 50, and 52.

[95] "United Natural Foods, Inc. Reports Second Quarter Fiscal 2023 Results," *Business Wire*, Company press release, 8 March 2023 7:00 AM; "Second Quarter Fiscal 2023 Earnings Conference Call," Company presentation, 8 March 2023; and "Q2 2023 United Natural Foods Inc Earnings Call," *Refinitiv*, conference call, 8 March 2023 8:30 AM.

an increase of 5.4% compared to Q2 2022.[96] Net sales exceeded the consensus estimate of $7.77 billion.[97] However, the gross profit rate fell to 14.0% of net sales,[98] below the 14.8% gross profit rate achieved in Q2 2022.[99] This gross profit rate was below the consensus estimate of 14.6%. [100] Adjusted EBITDA in the quarter was $181 million, which represented a decline of 17.7% from Q2 2022, and it was below the consensus estimate of $231 million.[101]

60.   The difference between the 14.6% expected gross profit rate and the 14.0% achieved gross profit rate translates into lower gross profit of approximately $47 million earned on the $7.82 billion of sales.[102] This deficit is of comparable magnitude to the adjusted EBITDA miss of $50 million.[103]

61.   The Company attributed the deterioration in gross profit rate to "lower current period procurement gains due to the decelerating rate of inflation and lower inventory gains."[104] During the conference call, Chief Executive Officer James Alexander Miller Douglas ("CEO Douglas") and Chief Financial Officer John W. Howard ("CFO Howard")

---

[96] "United Natural Foods, Inc. Reports Second Quarter Fiscal 2023 Results," *Business Wire*, Company press release, 8 March 2023 7:00 AM.

[97] Consensus estimates obtained from *LSEG Workspace*.

[98] "United Natural Foods, Inc. Reports Second Quarter Fiscal 2023 Results," *Business Wire*, Company press release, 8 March 2023 7:00 AM. Unless otherwise specified, all references to the gross profit rate in this report refer to the gross profit rate excluding the non-cash LIFO charge.

[99] "United Natural Foods, Inc. Reports Second Quarter Fiscal 2023 Results," *Business Wire*, Company press release, 8 March 2023 7:00 AM.

[100] Consensus estimates obtained from analyst report ("What's The Initial View on UNFI's 2Q'23 Results?" by Mark Carden et al., UBS, analyst report, 8 March 2023, p. 1).

[101] "United Natural Foods, Inc. Reports Second Quarter Fiscal 2023 Results," *Business Wire*, Company press release, 8 March 2023 7:00 AM; and consensus estimates obtained from analyst reports ("F2Q23 Miss, F2023 Outlook Lowered, F2024 Targets Withdrawn," by Kelly Bania and Benjamin Wood, BMO Capital Markets, analyst report, 8 March 2023, p. 1; "UNFI: Visibility Not There - Downgrade to Neutral," by Bill Kirk, Roth MKM, analyst report, 8 March 2023, p. 1; and "United Natural Foods (UNFI) - Guidance Slashed as Inflation Decelerates…," by Greg Badishkanian et al., Wolfe Research, analyst report, 8 March 2023, p. 1).

[102] "United Natural Foods, Inc. Reports Second Quarter Fiscal 2023 Results," *Business Wire*, Company press release, 8 March 2023 7:00 AM.

[103] "United Natural Foods, Inc. Reports Second Quarter Fiscal 2023 Results," *Business Wire*, Company press release, 8 March 2023 7:00 AM.

[104] "United Natural Foods, Inc. Reports Second Quarter Fiscal 2023 Results," *Business Wire*, Company press release, 8 March 2023 7:00 AM.

explained that the decline in profitability was "primarily" due to a lower level of procurement gains compared to the same quarter in the prior year.[105]

> "The decrease in gross profit rate, excluding the LIFO charge, was primarily driven by lower current period procurement gains due to the decelerating rate of inflation and lower inventory gains."
> **"United Natural Foods, Inc. Reports Second Quarter Fiscal 2023 Results," *Business Wire*, Company press release, 8 March 2023 7:00 AM.**

> "'While I'm pleased with our continued sales growth, profitability in the quarter was lower than recent levels and our plan. Profits were challenged as we did not repeat the significant level of procurement gains from rapidly accelerating inflation and inventory gains, due to supply chain volatility, that we experienced in the second quarter of last year.'"
> **"United Natural Foods, Inc. Reports Second Quarter Fiscal 2023 Results," *Business Wire*, Company press release, 8 March 2023 7:00 AM.**

> "Our reduced profitability this quarter was primarily driven by a lower gross profit rate, as we did not repeat the level of significant procurement and inventory gains experienced last year."
> **"Q2 2023 United Natural Foods Inc Earnings Call," *Refinitiv*, conference call, 8 March 2023, p. 3.**

> "Our gross profit rate, again, prior to the LIFO charge declined by approximately 80 basis points. The largest drivers of this decline in gross profit rate were lower procurement, and inventory gains resulting from among several things, supply chain volatility, and a deceleration in the sequential rate of inflation."
> **"Q2 2023 United Natural Foods Inc Earnings Call," *Refinitiv*, conference call, 8 March 2023, p. 4.**

62.  In the press release and conference call, the Company also announced that, relative to the prior year, profitability was expected to be lower in the next two fiscal quarters, Q3 and Q4 of 2023, also due to the decline in procurement gains.[106] The Company provided

---

[105] "Q2 2023 United Natural Foods Inc Earnings Call," *Refinitiv*, conference call, 8 March 2023, pp. 3-4.

[106] "United Natural Foods, Inc. Reports Second Quarter Fiscal 2023 Results," *Business Wire*, Company press release, 8 March 2023 7:00 AM; and "Q2 2023 United Natural Foods Inc Earnings Call," *Refinitiv*, conference call, 8 March 2023 8:30 AM, p. 3.

guidance for those two quarters that purportedly reflected the decrease in procurement gain profitability.[107]

> "'Profits were challenged as we did not repeat the significant level of procurement gains from rapidly accelerating inflation and inventory gains, due to supply chain volatility, that we experienced in the second quarter of last year. As a result of these challenges, we are reducing our profitability expectations for fiscal 2023 and withdrawing our fiscal 2024 targets.'"
> **"United Natural Foods, Inc. Reports Second Quarter Fiscal 2023 Results," *Business Wire*, Company press release, 8 March 2023 7:00 AM.**

> "Finally, we expect to see similar trends in profitability for our results for the remainder of the year, as we continue to lap periods of significant benefits from procurement gains as price increase activity further decelerates. This is why we're reducing our profitability outlook."
> **"Q2 2023 United Natural Foods Inc Earnings Call," *Refinitiv*, conference call, 8 March 2023 8:30 AM, p. 3.**

63. While the revenue guidance for FY 2023 was increased from a range of $29.8-$30.4 billion to a range of $30.1-$30.5 billion, increasing the midpoint to $30.3 billion from $30.1 billion (above consensus estimate of $30.2 billion),[108] the Company lowered its guidance for adjusted EBITDA for FY 2023.[109] The Company's FY 2023 adjusted EBITDA guidance was reduced from a range of $850-$880 million to a range of $715-$785 million, lowering the midpoint to $750 million from $865 million (below consensus estimate of $860 million).[110]

---

[107] "United Natural Foods, Inc. Reports Second Quarter Fiscal 2023 Results," *Business Wire*, Company press release, 8 March 2023 7:00 AM; and "Q2 2023 United Natural Foods Inc Earnings Call," *Refinitiv*, conference call, 8 March 2023 8:30 AM, p. 3.

[108] "United Natural Foods, Inc. Reports Second Quarter Fiscal 2023 Results," *Business Wire*, Company press release, 8 March 2023 7:00 AM; and consensus estimates obtained from *LSEG Workspace*.

[109] "United Natural Foods, Inc. Reports Second Quarter Fiscal 2023 Results," *Business Wire*, Company press release, 8 March 2023 7:00 AM.

[110] "United Natural Foods, Inc. Reports Second Quarter Fiscal 2023 Results," *Business Wire*, Company press release, 8 March 2023 7:00 AM; and consensus estimates obtained from analyst reports ("UNFI: 2Q23 Adjusted EBITDA Missed on Gross Profit Shortfall; F2023 Earnings Guidance Cut as Lower Inventory Holding Gains to Persist," by Andrew Wolf, CL King, analyst report, 8 March 2023, p. 1; "What's The Initial View on UNFI's 2Q'23 Results?" by Mark Carden et al., UBS, analyst report, 8 March 2023, p. 1; and "United Natural Foods (UNFI) - Guidance Slashed as Inflation Decelerates…," by Greg Badishkanian et al., Wolfe Research, analyst report, 8 March 2023, p. 1).

64.    While the Company now acknowledged that its profitability had substantially benefited from capitalizing on the procurement gain opportunity in the prior fiscal year, it still did not disclose the magnitude of Q2 2022 procurement gains, how much of the decline in the Q2 2023 gross profit rate was due to the subsiding of procurement gains relative to Q2 2022, or what happened to procurement gains during the quarters immediately after Q2 2022 (i.e. Q3 and Q4 2022, whether they increased, decreased, or stayed the same).[111] The Company did not disclose that procurement gains accelerated between Q3 and Q4 2022.

65.    As shown in the Feinstein Report, the UNFI stock price declined 32.92% (on a logarithmic basis) on 8 March 2023.[112] After adjusting for market and sector factors, the residual return of UNFI stock on 8 March 2023 was -32.94%, which is statistically significant at the 99% confidence level.[113] In his report, Dr. Zurek confirms that UNFI stock fell by a statistically significant amount that day, and he attributes the decline to the negative information in the earnings announcement.[114]

B.    **Dr. Zurek Erroneously Contends That All of the Alleged Concealed Truth Was Disclosed to the Market on 8 March 2023**

66.    Dr. Zurek argues that the entirety of the "Alleged Truth" was disclosed to the market on 8 March 2023.[115] Dr. Zurek aims to establish this point in order to argue that UNFI stock price declines following the alleged corrective disclosures on 7 June 2023 and 26 September 2023 could not possibly be evidence of price impact stemming from the alleged misrepresentations and omissions because before those dates there had already been full corrective disclosure.[116]

---

[111] "United Natural Foods, Inc. Reports Second Quarter Fiscal 2023 Results," *Business Wire*, Company press release, 8 March 2023 7:00 AM; and "Q2 2023 United Natural Foods Inc Earnings Call," *Refinitiv*, conference call, 8 March 2023, p. 3.

[112] Feinstein Report, Exhibit-9.

[113] Feinstein Report, Exhibit-9.

[114] Zurek Report, ¶¶48, FN 89, 54, and 65-68.

[115] Zurek Report, ¶10 and §VIII.A.

[116] Zurek Report, ¶¶11, 51, and 72-73.

23

67.     In constructing his argument that the entirety of the "Alleged Truth" was disclosed to the market on 8 March 2023, Dr. Zurek initially itemizes the information that Plaintiffs allege partially corrected prior misrepresentations and omissions on 8 March 2023.[117] Dr. Zurek states that UNFI's disclosures on 8 March 2023 informed analysts and investors that i) inflation-driven forward buying had significantly boosted margins during the prior year and led to the sharp drop in Q2 2023 gross margin,[118] ii) "further declines in gross margin could occur if all such forward buying ceased,"[119] and iii) past profits from inflation-driven forward buying were temporary and "not repeatable in the current environment."[120] Dr. Zurek also acknowledges that UNFI reduced its FY 2023 adjusted EBITDA and adjusted EPS guidance, and withdrew FY 2024 guidance, citing "the loss of inflation-related forward buying opportunities."[121]

68.     Dr. Zurek synthesizes the information that Plaintiffs allege partially corrected prior misrepresentations and omissions on 8 March 2023, and reframes the information to amount to the corrective disclosure that "inflation-related forward buying opportunities were a significant but temporary driver of improvements in UNFI's gross margin during the Proposed Class Period" – Dr. Zurek's entire "Alleged Truth."[122] According to Dr. Zurek, because individual pieces of the alleged corrective information disclosed on 8 March 2023 amount to the entire "Alleged Truth," and because the entire "Alleged Truth" was disclosed on 8 March 2023, there is no subsequent point in the Class Period when the market later learned additional, previously concealed information correcting the alleged fraud.[123]

---

[117] Zurek Report, ¶¶54-55 and 60-61.

[118] Zurek Report, ¶55.

[119] Zurek Report, ¶58.

[120] Zurek Report, ¶59.

[121] Zurek Report, ¶¶60 and 69.

[122] Zurek Report, ¶62.

[123] Zurek Report, ¶¶10, 49-50, 52, 62, and 71.

69.   Dr. Zurek's opinion that the entirety of the "Alleged Truth" was disclosed to the market on 8 March 2023 rests on his mischaracterization of Plaintiffs' allegations. Dr. Zurek's "Alleged Truth" is not the same as Plaintiffs' alleged concealed truth. The 8 March 2023 announcements did not reveal the magnitude of prior procurement gains, and they did not fully inform the market of the extent to which procurement gains had previously boosted profitability. This magnitude and this extent were not revealed until 26 September 2023.[124]

**C.    Dr. Zurek Erroneously Contends That Defendants Disclosed All They Could**

70.   In an attempt to support his argument that the 8 March 2023 earnings announcement comprised a full corrective disclosure, Dr. Zurek claims that UNFI lacked visibility into the magnitude of its procurement gains due to limitations in its legacy data management system, and thus the Company possessed no additional information to reveal.[125] However, as noted below, I understand that the Court rejected this contention at the pleading stage. Dr. Zurek's assertion is not economic analysis, but rather is simply an inappropriate rejection of Plaintiffs' factual allegations. He has no independent basis for this alternative fact. Plaintiffs specifically allege that Defendants "were aware of and had visibility into UNFI's undisclosed 'substantial' 'strategic' forward buying during the Class Period."[126]

71.   In the Complaint, Plaintiffs cite statements made by CEO Douglas during the Q2 2023 earnings call, in which he acknowledges:

> "We were able to understand these issues toward the end of the quarter due to the significant intra-period volatility, which has led us to a different set of financial expectations for fiscal 2023 compared to our December earnings call."
> **Complaint, ¶112; and "Q2 2023 United Natural Foods Inc Earnings Call," *Refinitiv*, conference call, 8 March 2023, p. 3.**

---

[124] Complaint, ¶¶213 and 217.

[125] Zurek Report, ¶¶88-89.

[126] Complaint, §V.H.

72.     According to Plaintiffs, "Defendant Howard effectively admitted that the Individual Defendants had access to information sufficient to understand the extent of UNFI's strategic forward buying practices during the Class Period."[127]

> "During the 2Q23 Earnings Call an analyst specifically asked Defendant Howard 'did you guys just not have the systems in place to understand how much forward buy you were doing?' Although Defendant Howard avoided directly answering the question, his answer implicitly acknowledged that Defendants did possess such information even though he attempted to downplay the information as not 'strong': 'Great question. Our systems, the way they're structured now, do a very good job of aggregating [distribution center] data each period and they do it accurately and it's very controlled. However, the granularity of that data and the real-time ability to analyze it is not strong.'"
> **Complaint, ¶101; and "Q2 2023 United Natural Foods Inc Earnings Call," *Refinitiv*, conference call, 8 March 2023, p. 11.**

73.     In the 8 March 2023 conference call, CEO Douglas provided fine details about supplier prices in FYs 2022 and 2023, which seemingly belie Dr. Zurek's contention that the Company did not have the data to assess the magnitude and impact of prior forward buying and procurement gains.

> "The number of price increases that are happening now is reduced by about 2/3 from last year, and that significantly impacted P6. And when we lapped it, we were able to understand it analytically. And as we look ahead, it was more impactful than we had expected, and that's what we've now applied to our second half guidance."
> **"Q2 2023 United Natural Foods Inc Earnings Call," *Refinitiv*, conference call, 8 March 2023, p. 10.**

74.     Dr. Zurek's argument that Defendants provided as much information as they were able to on 8 March 2023, and that they were unable to provide a more fulsome and correct disclosure, does not derive from any economic analysis performed by Dr. Zurek. It is an argument about facts, which Dr. Zurek is unqualified as an economist to make. Nonetheless, the record of what CEO Douglas said during the 8 March 2023 conference

---

[127] Complaint, ¶101.

call supports Plaintiffs' factual allegation that Defendants did possess the information that Dr. Zurek contends they lacked.

75. Moreover, the Court rejected Dr. Zurek's (and Defendants') argument that the Defendants lacked visibility and therefore could not disclose more about procurement gains on 8 March 2023 than they did disclose. The MTD Order states, "It strains credulity to suppose that the leaders of the largest publicly traded grocery wholesaler in North America were as ignorant as they now claim."[128]

> "For each forward buying opportunity, Defendants had to conduct a cost-benefit analysis to determine whether the potential savings from buying ahead of the known price increase outweighed the higher carrying costs incurred by holding inventory in excess of demand. Recognizing the opportunity, Defendants engaged in substantial forward buying, from which the Company reaped significant profits. Second, Defendants' revelations on March 8, 2023 **and thereafter** support the inference that they knew that forward buying had a substantial impact on margins during the Class Period (December 8, 2021 to September 25, 2023)."
> **MTD Order, p. 23 (emphasis added; internal citations omitted).**

> "Defendants harp that they did not contemporaneously know the precise of impact of the Company's inflation-based forward buying on margin. Defendants plead ignorance, blaming their own antiquated IT systems and the complicated economic environment for obscuring their ability to know the impact of their own forward buying on margins. At this stage, Defendants' self-serving explanation is less compelling than the culpable inference. ***It strains credulity to suppose that the leaders of the largest publicly traded grocery wholesaler in North America were as ignorant as they now claim***. This is particularly true when Defendants emphasized their reliance on data analytics to drive decision-making and their new 'Value Path' initiative that was created to generate cost efficiencies across pricing and procurement. The more compelling inference is that these sophisticated Defendants knew that a substantial and aberrational amount of forward buying was a significant (even if not fully quantified) driver in the rise and fall of profit margins at the time that they made the plausibly misleading statements."
> **MTD Order, pp. 23-24 (emphasis added; internal citations omitted).**

---

[128] MTD Order, p. 24.

76.     It is important to note that while Dr. Zurek cannot support his argument that Defendants were unable to provide more information on 8 March 2023, Dr. Zurek implicitly acknowledges the undisputed fact that Defendants did not make a more fulsome disclosure. The entire truth was not yet revealed.

### D.     Analyst Commentary Following the 8 March 2023 Disclosures

77.     Dr. Zurek cites to analyst commentary and changes in consensus estimates to purportedly support his contention that the entirety of the "Alleged Truth" was disclosed to the market on 8 March 2023.[129] In particular, Dr. Zurek highlights that in their reports, analysts i) "echoed UNFI's disclosure that inflation-related forward buying had been a significant but temporary driver of improvements in UNFI's gross margin"; ii) "attributed the below-consensus Q2 2023 earnings, reduced FY 2023 financial guidance, and withdrawal of the FY 2024 earnings target to a loss of inflation-related forward buying opportunities"; and iii) "lowered their FY 2023 and FY 2024 earnings and profitability estimates and attributed the revision to UNFI's loss of inflation-related forward buying opportunities."[130]

78.     Dr. Zurek points out that analysts' consensus estimates changed after the 8 March 2023 earnings announcement, factoring in an impact for the subsiding of procurement gains, "not just for the current period, but also for future quarters."[131] These changes, however, reflected only what the Company did tell the market, but could not reflect what the Company did not tell the market.[132]

79.     What Dr. Zurek apparently misunderstands is that while analysts related what the Company did disclose, they did not and could not report what the Company continued to conceal. In particular, analysts did not report the magnitudes of prior procurement gains, they could not accurately calculate the impact procurement gains had on profits and profitability, they did not report that forward buying and procurement gains accelerated between Q3 and Q4

---

[129] Zurek Report, ¶¶65-71.

[130] Zurek Report, ¶¶65-67.

[131] Zurek Report, ¶¶68-69.

[132] Complaint, ¶¶100-101.

2023, and they were unaware they would soon be surprised when this information would be later revealed.

80.    Far from indicating that the Company had made full and complete disclosure, analyst commentary establishes that the disclosures were partial at best. Analysts commented on the significant uncertainty and low visibility around the size and impact of procurement gains despite the announcements. Some analysts tried to estimate the magnitude and impact of prior procurement gains using the information the Company provided, but they were stymied by the incompleteness of the disclosure.[133]

> "The 13% cut to EBITDA guidance (at the mid-point) suggests that procurement gains account for at least ~10-15% of EBITDA; however, *the company has not disclosed the magnitude* of EBITDA that is typically attributed to procurement gains and therefore it's difficult to gauge whether this is conservative enough and/or what other elements of the company's growth have not been properly attributed to the appropriate drivers (synergies, initiatives, etc)."
> **"Lowering Target Price Following Profit Reset; Risks Remain," by Kelly Bania and Benjamin Wood, BMO Capital Markets, analyst report, 8 March 2023, p. 1 (emphasis added).**

> "Adjusted EPS is now expected to be $3.05-$3.90, down from $4.85-$5.15 previously, and a surprisingly wide range with just two quarters left in the year compared to the prior outlook. This suggests to us that management is still struggling to quantify the exact profit impact from lapping the procurement gains, and how moderating inflation (or deflation) could impact results."
> **"The Bottom Falls Out; Moderating Inflation Drives Significant Gross Margin Miss, Largely Contained to Non-Perishables; Remain Neutral," by Peter Saleh and Ben Parente, BTIG, analyst report, 8 March 2023, p. 1.**

> "The substantial 2Q bottom-line miss and guide-down is a rare occurrence in a consumables space benefiting from elevated inflation, with most peers delivering 'beats and raises.' This was driven by a gross margin shortfall as meaningful inflation-related 'inventory profit' was cycled. However, *this benefit isn't visible in the P&L* and wasn't called out at the time with multiple operational cross-currents and limited IT-related real-time

---

[133] "UNFI: Downgrading to Neutral, Cutting Estimates; Proprietary Analysis Shows that Gross Margin Issues that Caused Q2 Earnings Miss Most Likely to Persist for Three More Quarters," by Andrew Wolf, CL King, analyst report, 9 March 2023, p. 1; "UNFI: Lost Momentum - Shares Downgraded to Neutral," by Chuck Cerankosky, Northcoast Research, analyst report, 10 March 2023, p. 1; and "UNFI: Q2 Disappoints as End of Historic Inflation Cycle Begins to Show Its Challenges," by Edward Kelly et al., Wells Fargo, analyst report, 8 March 2023, p. 1.

visibility clouding analytics until late January. … ***We continue to struggle*** with the P&L dynamics, especially since no peer has had, to-date, similar inventory profit challenges. … 2Q 2022's Omicron-Related Labor Challenges Were, As It Turns Out, Meaningfully Offset By Inflation-Centric Inventory Procurement Gains… But It Is Difficult to Find These Gains In Gross Or EBITDA Margins – However, Absent Them, Profitability Would Have Been Much Worse."

**"UNFI – A Rare Significant EBITDA Miss Impacts NT Confidence but Shouldn't Alter the Algo – Lower Estimates, Stay NEUTRAL Rated Despite Modest Multiple," by John Heinbockel et al., Guggenheim, analyst report, 12 March 2023, pp. 1 and 5-6 (emphasis added).**

"Management is looking at this as an opportunity to reset UNFI procurement, systems, and supply chain for its next leg of growth, but we remain on the sidelines, waiting for visibility into the company's plans to improve its operating capabilities."

**"Sour Systems Spoil the Quarter," by Krisztina Katai et al., Deutsche Bank, analyst report, 8 March 2023, p. 1.**

"The co's initial print ***brings up more questions than answers***. ... Still, some headwinds emerged over the course of the quarter that are expected to have longer term impacts, including a considerable slowdown in procurement gains as inflation slowed. Addressing where these deviated from expectations (was it simply a faster than anticipated decline in inflation or did it include anything more structural?) & other profitability shortfalls will likely be key topics of discussion on the co's earnings call."

**"What's the Initial View on UNFI's 2Q'23 Results?" by Mark Carden et al., UBS, analyst report, 8 March 2023, p. 1 (emphasis added).**

"UNFI provided a disappointing Q2 update, as the company underestimated the difficult lap of procurement gains. Credibility takes a material hit, given the issue seems to have blindsided management. We see further risk ahead and remain sidelined."

**"UNFI: Q2 Disappoints as End of Historic Inflation Cycle Begins to Show Its Challenges," by Edward Kelly et al., Wells Fargo, analyst report, 8 March 2023, p. 1.**

81. Dr. Zurek misconstrues the market's knowledge of some of the alleged curative information for knowledge of all the curative information. He points out that analysts wrote about what they were told, but he ignores that analyst commentary could not include what was still concealed. There was indeed partial correction of alleged misrepresentations and omissions, but not full and complete correction. When analysts and the market later learned

the true extent and financial impact of procurement gains, analysts again expressed surprise and had to reduce their estimates further.[134]

## VI.    THE 7 JUNE 2023 CORRECTIVE DISCLOSURE

82.    Aiming to dismiss the Company's 7 June 2023 earnings announcement as a corrective disclosure, Dr. Zurek attacks this corrective disclosure from three directions. He attacks the breadth of what the market already knew, the contents of the announcements, and the scope of the allegations.[135] He contends the market was already provided with full corrective disclosure comprising everything economically material there was to know about past procurement gains.[136] He argues that unrelated confounding information was what elicited the statistically significant stock price decline.[137] He claims that Plaintiffs' allegations do not encompass any of the revealed information. That is, he attacks the market, the announcement, and the allegations.

83.    None of Dr. Zurek's arguments is availing as they are all demonstrably wrong. Of course, these arguments overlap, but I will address them using the same organization in which they are raised. The correct analysis compels the conclusion that the 7 June 2023 announcements clearly comprised partial corrective disclosure, which reasonably caused or contributed to the significant stock price decline and evident price impact that day.

---

[134] *See, e.g.*, "UNFI: Another Surprising Guidance Cut as Pricing Lap and Macro Wreaks Havoc; Remain Sidelined Despite Sharp Sell-off," by Edward Kelly et al., Wells Fargo, analyst report, 7 June 2023, p. 1 ("The headwind from lapping inflation-related procurement gains that was revealed last quarter is actually turning out to be even worse than expected, once again highlighting management's low visibility into its business"); "Despite Another Pullback Still More Risk for UNFI," by Kelly Bania and Benjamin Wood, BMO Capital Markets, analyst report, 8 June 2023, p. 1 ("Procurement gains came in worse than anticipated… Our TP shifts down to $20 (still ~6x including LIFO), and we remain Market Perform"); and "UNFI - Cycling $250M of Procurement Gains While Transforming the Business - Lowering Our 2024 EBITDA Estimate By ~20%; Stay NEUTRAL Rated," by John Heinbockel et al., Guggenheim, analyst report, 26 September 2023, p. 1 ("To be honest, we continue to be very surprised by the magnitude of the procurement gains").

[135] Zurek Report, ¶¶76-93.

[136] Zurek Report, ¶¶10, 52, 62, 64, and 71.

[137] Zurek Report, ¶84; and The Videotaped Deposition of Paul Zurek, 5 August 2025, at 84:23-85:18.

### A.    The Announcement: UNFI Provides Q3 2023 Results and Lowers FY 2023 Guidance

84.    On 7 June 2023, before the market opened, UNFI issued a press release announcing Q3 2023 results and held a conference call with analysts and investors.[138] The Company announced that net sales in the quarter were $7.51 billion, which was exactly in line with the consensus estimate and was 3.7% greater than net sales in Q3 2022.[139] However, the announced gross profit rate in Q3 2023 was 13.8%, falling well below the 15.0% gross profit rate achieved the prior year in Q3 2022, and below the 14.0% gross profit rate analysts were expecting for Q3 2023.[140] Analysts had expected the Q3 2023 gross profit rate to be stable at the same 14.0% rate that the Company had announced on 8 March 2023 for Q2 2023.[141]

85.    The Company announced Q3 2023 adjusted EBITDA was $159 million, which was a decline of $37 million, or 18.9%, from the $196 million of adjusted EBITDA earned in Q3 2022.[142] Analysts had expected Q3 2023 adjusted EBITDA to be $167 million, so the actual results represented an $8 million miss.[143]

---

[138] "United Natural Foods, Inc. Reports Third Quarter Fiscal 2023 Results,", *Business Wire*, Company press release, 7 June 2023 7:00 AM; and "Q3 2023 United Natural Foods Inc Earnings Call," *Refinitiv*, conference call, 7 June 2023 8:30AM.

[139] "United Natural Foods, Inc. Reports Third Quarter Fiscal 2023 Results," *Business Wire*, Company press release, 7 June 2023 7:00 AM; and consensus estimates obtained from *LSEG Workspace*.

[140] "United Natural Foods, Inc. Reports Third Quarter Fiscal 2023 Results," *Business Wire*, Company press release, 7 June 2023 7:00 AM; and consensus estimates obtained from analyst reports ("Slight F3Q23 Miss; F23 Adjusted EBITDA Guidance Cut by 15%-17%," by Kelly Bania and Benjamin Wood, BMO Capital Markets, analyst report, 7 June 2023, p. 1; "What's the Initial View on UNFI's 3Q'23 Results?" by Mark Carden et al., UBS, analyst report, 7 June 2023, p. 1; and "United Natural Foods (UNFI) – Mixed F'3Q Results as Trends Decelerate," by Greg Badishkanian et al., Wolfe Research, analyst report, 7 June 2023, p. 1).

[141] Consensus estimates obtained from analyst reports ("Slight F3Q23 Miss; F23 Adjusted EBITDA Guidance Cut by 15%-17%," by Kelly Bania and Benjamin Wood, BMO Capital Markets, analyst report, 7 June 2023, p. 1; "What's the Initial View on UNFI's 3Q'23 Results?" by Mark Carden et al., UBS, analyst report, 7 June 2023, p. 1; and "United Natural Foods (UNFI) – Mixed F'3Q Results as Trends Decelerate," by Greg Badishkanian et al., Wolfe Research, analyst report, 7 June 2023, p. 1).

[142] "United Natural Foods, Inc. Reports Third Quarter Fiscal 2023 Results," *Business Wire*, Company press release, 7 June 2023 7:00 AM.

[143] Consensus estimates obtained from analyst reports ("Slight F3Q23 Miss; F23 Adjusted EBITDA Guidance Cut by 15%-17%," by Kelly Bania and Benjamin Wood, BMO Capital Markets, analyst report, 7 June 2023, p. 1; "UNFI: Another Surprising Guidance Cut as Price Lap and Macro Wreaks Havoc; Remain Sidelined Despite Sharp Sell-off," by Edward Kelly et al., Wells Fargo, analyst report, 7 June 2023, p. 1; "United Natural Foods (UNFI) – Mixed F'3Q

86.     The difference between the 14.0% expected gross profit rate and the 13.8% achieved gross profit rate, applied to the expected and achieved $7.51 billion of net sales translates into lower gross profit of approximately $15 million.[144]

87.     In its press release, the Company reaffirmed FY 2023 revenue guidance of $30.1-$30.5 billion but lowered its adjusted EBITDA guidance for FY 2023.[145] The Company lowered adjusted EBITDA guidance to a range of $610-$650 million from a range of $715-$785 million, lowering the midpoint to $630 million from $750 million.[146] The consensus estimate for FY 2023 adjusted EBITDA had been $731 million.[147]

88.     In the conference call presentation, the Company finally disclosed a magnitude of prior procurement gains, as it reported that the reduction in adjusted EBITDA from Q3 2022 to Q3 2023 was due to a $50 million reduction in Wholesale Gross Margin, which was primarily driven by a reduction in procurement gains.[148] Thus, the market learned for the first time that in Q3 2022, procurement gains had likely contributed at least $50 million, or 25.5%, of the reported $196 million in adjusted EBITDA for that quarter.[149] The Company explained that the net $37 million decline in adjusted EBITDA from Q3 2022 to Q3 2023 was due mostly to this $50 million decrease in Wholesale Gross Margin, which was in turn caused primarily by the reduction in procurement gains.[150]

---

Results as Trends Decelerate," by Greg Badishkanian et al., Wolfe Research, analyst report, 7 June 2023, p. 1; and "UNFI: Earnings Power Difficult to Determine," by Bill Kirk, Roth MKM, analyst report, 8 June 2023, p. 1).

[144] "United Natural Foods, Inc. Reports Third Quarter Fiscal 2023 Results," *Business Wire*, Company press release, 7 June 2023 7:00 AM; and consensus estimates obtained from analyst reports ("Slight F3Q23 Miss; F23 Adjusted EBITDA Guidance Cut by 15%-17%," by Kelly Bania and Benjamin Wood, BMO Capital Markets, analyst report, 7 June 2023, p. 1; "What's the Initial View on UNFI's 3Q'23 Results?" by Mark Carden et al., UBS, analyst report, 7 June 2023, p. 1; and "United Natural Foods (UNFI) – Mixed F'3Q Results as Trends Decelerate," by Greg Badishkanian et al., Wolfe Research, analyst report, 7 June 2023, p. 1).

[145] "United Natural Foods, Inc. Reports Third Quarter Fiscal 2023 Results," *Business Wire*, Company press release, 7 June 2023 7:00 AM.

[146] "United Natural Foods, Inc. Reports Third Quarter Fiscal 2023 Results," *Business Wire*, Company press release, 7 June 2023 7:00 AM.

[147] Consensus estimates obtained from analyst report ("What's the Initial View on UNFI's 3Q'23 Results?" by Mark Carden et al., UBS, analyst report, 7 June 2023, p. 1).

[148] "Third Quarter Fiscal 2023 Earnings Conference Call," Company presentation, 7 June 2023, p. 9.

[149] "Third Quarter Fiscal 2023 Earnings Conference Call," Company presentation, 7 June 2023, p. 9.

[150] "Third Quarter Fiscal 2023 Earnings Conference Call," Company presentation, 7 June 2023, p. 9.

89.    The decrease in the gross profit rate, according to the Company's explanation, was due to "the volatile macroeconomic environment, which led to lower inflationary benefits and reduced procurement gains." [151] While the Company had hitherto not revealed the magnitude of procurement gains in Q3 2022, or the financial impact of those procurement gains on the gross profit rate, it now explained that the Q3 2023 gross profit rate came in lower than in the prior year because procurement gains had abated from the previously undisclosed sizable amount earned that prior year.[152]

90.    In UNFI's Q3 2023 Form 10-Q, filed after the close on 7 June 2023, the Company elaborated that during Q3 2023 the opportunity for procurement gains had abated sharply from FY 2022, and that the resulting reduced procurement gains negatively impacted the Q3 2023 gross profit rate.[153]

> "The biggest contributor to the year-over-year decline was our gross profit rate prior to the LIFO charge in both years, which declined by more than 100 basis points and led to a gross profit decline of about $50 million. As we discussed on our last call, we expected to see our year-over-year gross profit rate decline given the procurement gains we're cycling from last year."
> **"Q3 2023 United Natural Foods Inc Earnings Call," *Refinitiv*, conference call, 7 June 2023, p. 5.**

> "Last year, in fiscal '22, we saw a big upswing in value that we got as inflation took hold and our inventory was valued lower than the market price, and we strategically forward-[bought]. And it was a tremendous source of margin expansion. And obviously, we've been down the back end of that this year, and it surprised us in Q2. As John answered earlier, it was less of a surprise. It's weaker than we thought it would be since that estimate."
> **"Q3 2023 United Natural Foods Inc Earnings Call," *Refinitiv*, conference call, 7 June 2023, p. 8.**

---

[151] "United Natural Foods, Inc. Reports Third Quarter Fiscal 2023 Results," *Business Wire*, Company press release, 7 June 2023 7:00 AM.

[152] "United Natural Foods, Inc. Reports Third Quarter Fiscal 2023 Results," *Business Wire*, Company press release, 7 June 2023 7:00 AM.

[153] United Natural Foods, Inc., Form 10-Q for the fiscal quarter ended 29 April 2023, filed 7 June 2023, p. 28.

"And if you look back to FY '22, our Q3 inflation was about 8%, but the sequential from Q2 last year to Q3, Q2 was 5.7%. So we saw that inflation rising as we moved through Q3, providing that forward-buy opportunity as well as commodity inflation and a tailwind last year. And then we're just seeing the inverse of that this year with the deceleration of inflation from Q2 to Q3 this year."

**"Q3 2023 United Natural Foods Inc Earnings Call," *Refinitiv*, conference call, 7 June 2023, p. 9.**

"In the third quarter of fiscal 2023, we experienced fewer and less significant vendor product cost increases as compared to the third quarter of fiscal 2022. These decreases negatively impacted our gross profit rate when comparing the third quarter of fiscal 2023 to the third quarter of fiscal 2022."

**United Natural Foods, Inc., Form 10-Q for the fiscal quarter ended 29 April 2023, filed 7 June 2023, p. 28.**

91.    In sum, the Company explained that the opportunity for procurement gains had subsided and that the reduction in procurement gains largely explained the disappointing reduction in gross profit rate. Although UNFI previously acknowledged on 8 March 2023 that it had reaped procurement gains in FY 2022, the 7 June 2023 earnings announcement marked the first time Defendants quantified the size of those gains – likely at least $50 million in Q3 2022, or 25.5% of adjusted EBITDA for that quarter.[154] Not knowing how much procurement gains had been is primarily why the market was surprised by the decline in Q3 2023 adjusted EBITDA. The Company averred that it was surprised too, but Plaintiffs contest that excuse.[155]

92.    In addition to announcing disappointing Q3 2023 results on 7 June 2023, the Company also lowered FY 2023 financial guidance that day.[156]

"These revised expectations include an assumption that procurement gain opportunities continue to decline as a result of the macroeconomic and competitive environment, and we expect supplier promotional activity to remain below pre-pandemic levels. It also reflects our assumption that the

---

[154] "Third Quarter Fiscal 2023 Earnings Conference Call," Company presentation, 7 June 2023, p. 9.

[155] Complaint, ¶¶134-142.

[156] "United Natural Foods, Inc. Reports Third Quarter Fiscal 2023 Results," *Business Wire*, Company press release, 7 June 2023 7:00 AM.

broader operating environment will remain challenging with share shift continuing to pressure independence."
**"Q3 2023 United Natural Foods Inc Earnings Call,"** *Refinitiv*, **conference call, 7 June 2023, p. 6.**

"As we discussed on our last call, we expected to see our year-over-year gross profit rate decline given the procurement gains we're cycling from last year."
**"Q3 2023 United Natural Foods Inc Earnings Call,"** *Refinitiv*, **conference call, 7 June 2023, p. 5.**

"So broadly, with the way we forecasted that and what we were expecting, there still continues to be softness within the forward buy and the opportunities that are presented as well as the magnitude of those opportunities when they do come through. We were reasonably close within Q3 on a net basis. But some of that softness that we started seeing it towards the end of Q3, as we extended it through the rest of the year, is one of the contributing factors to bringing that guidance down for the rest of this year."
**"Q3 2023 United Natural Foods Inc Earnings Call,"** *Refinitiv*, **conference call, 7 June 2023, p. 7.**

93.    The new guidance supposedly reflected a reduction in procurement gains in Q4 2023 relative to Q4 2022, but the Company would not disclose how much were the procurement gains in Q4 2022. That amount remained concealed until 26 September 2023.

94.    As shown in the Feinstein Report, on 7 June 2023, UNFI stock declined 16.14% (on a logarithmic basis).[157] After adjusting for market and sector factors, the residual return of UNFI stock on 7 June 2023 was a decline of 16.42%, which was statistically significant at the 99% confidence level.[158] In his report, Dr. Zurek confirms that the UNFI stock price declined in a highly statistically significant fashion on 7 June 2023.[159]

---

[157] Feinstein Report, Exhibit-9.

[158] Feinstein Report, Exhibit-9.

[159] Zurek Report, ¶48 and FN 89.

**B.  Dr. Zurek Is Wrong to Assert That None of the Information Announced on 7 June 2023 Was New Information That Corrected the Alleged Misrepresentations and Omissions**

95.  Dr. Zurek argues that none of the information announced on 7 June 2023 was new information that corrected the alleged misrepresentations and omissions.[160] According to Dr. Zurek, there had been full corrective disclosure before 7 June 2023, so no additional information could have been corrective.[161]

96.  As noted above, Dr. Zurek is wrong because the 8 March 2023 disclosures were incomplete, leaving much of the concealed truth still undisclosed. His argument rests on the flimsy foundation of his incorrect characterization of Plaintiffs' allegations. Dr. Zurek incorrectly restricts the alleged fraud to UNFI's failure to disclose that "inflation-related forward buying opportunities were a significant but temporary driver of improvements in UNFI's gross margin."[162] He omits that Plaintiffs allege more broadly that UNFI misled investors by failing to disclose "the extent to which UNFI's prior results had been benefited by UNFI's 'strategic' forward buying and the extent to which the benefit had masked other problems impacting UNFI's profitability."[163]

97.  The 7 June 2023 disclosures partially revealed these concealed truths. Plaintiffs describe the disclosure as follows:

> "On June 7, 2023, before the market opened, UNFI revealed that lower procurement gains eroded gross margins even further, reporting that 3Q23 gross profit decreased $12 million due to 'lower inflationary benefits primarily related to reduced procurement gains, as well as higher shrink.' The Company's gross profit rate declined to 13.3%, which was 'primarily driven by the volatile macroeconomic environment, which led to lower inflationary benefits and reduced procurement gains.' As a result of the 'pressure' on margins, the Company reduced its fiscal 2023 outlook again.

---

[160] Zurek Report, ¶75; and The Videotaped Deposition of Paul Zurek, 5 August 2025, at 84:23-85:18.

[161] Zurek Report, ¶¶10, 50, 52, 73, and 75.

[162] Zurek Report, ¶¶10, 28, 50, 67-68, 92, and 108.

[163] Complaint, ¶216.

> Among other things, this further revealed the extent to which UNFI's prior results had been benefited by UNFI's 'strategic' forward buying and the extent to which the benefit had masked other problems impacting UNFI's profitability."
>
> **Complaint, ¶216 (original emphasis removed).**

98.  By incorrectly limiting the scope of the "Alleged Truth," Dr. Zurek fails to observe that much of the information disclosed on 7 June 2023 directly addressed what Plaintiffs allege was fraudulently concealed by misrepresentations and omissions, and part of what was missing from the 8 March 2023 disclosure. For example, the market learned from the 7 June 2023 disclosures that the market's expectations for the Q3 2023 gross profit rate were inflated due to previously concealed outsized procurement gains in FY 2022. The market learned that the gross profit rate the market had expected was unachievable primarily due to the abatement of the procurement gain opportunity. Despite being partially reset by the 8 March 2023 disclosure, the market learned that without the information about the magnitude of FY 2022 procurement gains, the market's expectation for profits and profitability had still been too high.

> "Gross margin was 13.3%, 70 bps below our forecast, and the main driver of the profitability decline as procurement gains were lapped and shrink increased."
>
> **"Perfect Storm of Challenges; Retrenching Consumer, Moderating Inflation and Shrink Lead to Another Guidance Cut; Maintain Neutral," by Peter Saleh and Ben Parente, BTIG, analyst report, 7 June 2023, p. 1.**

> "Notably, the co. faced continued pressure on its gross margin as it lapped outsized procurement gains (this was a big driver of last quarter's negative reaction to earnings) and it faced higher shrink."
>
> **"What's the Initial View on UNFI's 3Q'23 Results?" by Mark Carden et al., UBS, analyst report, 7 June 2023, p. 1.**

> "Complicated List of Issues Only Growing: The headwind from lapping inflation-related procurement gains that was revealed last quarter is actually turning out to be even worse than expected, once again highlighting management's low visibility into its business."
>
> **"UNFI: Another Surprising Guidance Cut as Pricing Lap and Macro Wreaks Havoc; Remain Sidelined Despite Sharp Sell-off," by Edward Kelly et al., Wells Fargo, analyst report, 7 June 2023, p. 1.**

38

> "**Margin pressure continues**: Gross margin declined -121 bps y/y to 13.8% primarily due to lower inflationary benefits and reduced procurement gains (i.e., fewer price increases from suppliers), along with higher shrink and higher costs for operational improvements."
> "**Margin Pressure Continues as Disinflation Limits Procurement Opportunities; Reiterate Neutral,**" **by Leah Jordan, Goldman Sachs, analyst report, 7 June 2023, p. 1 (emphasis as in original).**

99. Contrary to Dr. Zurek's contention that full corrective disclosure had been incorporated into the UNFI Securities' prices following the 8 March 2023 disclosure, the market was surprised by the 7 June 2023 disclosures about the Q3 2022 magnitude of procurement gains and their impact on the Company's profitability, and the stock price reasonably fell accordingly. Dr. Zurek emphasized that during the week after 8 March 2023, all contributing analysts lowered their gross margin estimates for UNFI for Q3 2023, Q4 2023, FY 2023 and FY 2024.[164] Dr. Zurek stated that these revisions were "consistent with market participants taking into account that information comprising the Alleged Truth was publicly available information by March 8, 2023."[165] According to Exhibit-5a of the Zurek Report, the new lower consensus for gross margin in Q3 2023 was 14.28%.[166] However, analysts apparently did not lower their estimates for gross margin enough. The gross margin announced by the Company on 7 June 2023 was even lower at 13.8%.[167]

100. Dr. Zurek disregards that analysts likely overestimated the Company's profit margin because they were still deprived of the information about the magnitude of procurement gains earned in FY 2022 and the impact of those procurement gains on the Company's previously reported profit margin. He does not account for this channel of price impact.

101. Analysts expressed surprise at the severity of the negative impact that the subsiding of procurement gains had on the Company's performance. For example, Wells Fargo noted that the negative impact from lapping Q3 2022 procurement gains was "even worse than

---

[164] Zurek Report, ¶68 and Exhibit-5a.

[165] Zurek Report, ¶69.

[166] Zurek Report, Exhibit-5a, Panel 1.

[167] "United Natural Foods, Inc. Reports Third Quarter Fiscal 2023 Results," *Business Wire*, Company press release, 7 June 2023 7:00 AM.

expected" and described the situation as "shocking."[168] Other analysts expressed similar sentiments, establishing that the market had not previously known the magnitudes of procurement gains and their impact on UNFI's profits and profitability. This information clearly had not been already fully incorporated into the UNFI Securities prices as of 8 March 2023.

> "The headwind from lapping inflation-related procurement gains that was revealed last quarter is actually turning out to be even worse than expected, once again highlighting management's low visibility into its business. … Credibility at UNFI is about as low as it gets, as it's shocking how the company seemed caught off guard by these issues given their magnitude."
> **"UNFI: Another Surprising Guidance Cut as Pricing Lap and Macro Wreaks Havoc; Remain Sidelined Despite Sharp Sell-off," by Edward Kelly et al., Wells Fargo, analyst report, 7 June 2023, p. 1.**

> "Procurement gains came in worse than anticipated, shrink was added to the list of margin pressures, running ~40bps above levels two years ago (~$125MM to EBITDA) and the promotional environment remains relatively unchanged."
> **"Despite Another Pullback Still More Risk for UNFI," by Kelly Bania and Benjamin Wood, BMO Capital Markets, analyst report, 8 June 2023, p. 1.**

> "We continue to be surprised at the rapid deterioration in profitability, especially in a largely distribution model with solid top-line momentum. … However, FIFO gross margin erosion was nearly twice as large as we expected – 121 basis points versus 65 and 70 in the 2Q – driving $47 million of GP dollar underperformance. The incremental pressure reflected a step up in commodity deflation, or the other side of inventory profit, higher shrink, and adverse mix shifts."
> **"UNFI - The Downside of Large Acquisitions in a Volatile Operating Backdrop - Profit, Valuation Floors Are Approaching, but We Stay NEUTRAL Rated," by John Heinbockel et al., Guggenheim, analyst report, 25 June 2023, p. 1.**

102. Moreover, while some analysts attempted to estimate the size, impact, and sustainability of procurement gains using available information,[169] they acknowledged they were stymied by the incompleteness of the information the Company provided. BTIG

---

[168] "UNFI: Another Surprising Guidance Cut as Pricing Lap and Macro Wreaks Havoc; Remain Sidelined Despite Sharp Sell-off," by Edward Kelly et al., Wells Fargo, analyst report, 7 June 2023, p. 1.

[169] "UNFI: Q3 Adjusted EBITDA in Line with Our Forecast, but Missed Consensus by 5%; FY23 Earnings Guidance Cut as Lower Inventory Holding Gains Persist," by Andrew Wolf, CL King, analyst report, 8 June 2023, pp. 1-2.

emphasized that this lack of visibility made accurate forecasting difficult, with management's Q4 2023 EBITDA guidance ($63M–$103M) far below expectations, leaving doubts about its realism.[170] Roth MKM echoed these concerns, noting it is "difficult to determine forward earnings potential," and expressed caution due to their hampered "ability to anticipate cost surprises."[171] Other analysts concurred.

> "The pressure on gross margin, lack of visibility and varied tech infrastructure is making it difficult for management to accurately forecast. For 4QF23, management now forecasts adjusted EBITDA of $63MM-$103MM, well below our already reduced estimate of $192MM, and consensus of $176MM. At this point in time, *we are unsure if these numbers are realistic, or too conservative, given the lack of visibility on procurement gains*."
> **"Perfect Storm of Challenges; Retrenching Consumer, Moderating Inflation and Shrink Lead to Another Guidance Cut; Maintain Neutral," by Peter Saleh and Ben Parente, BTIG, analyst report, 7 June 2023, p. 1 (emphasis added).**

> "With the revisions and 4Q expected to be EPS negative, it's difficult to determine forward earnings potential (in either direction). We reiterate our Neutral and lower our price target to $22 (from $34). … We are discouraged by the lack of visibility on costs and worry that even after the reset, the risk of over-earning remains. Ultimately, topline performance and market share will drive earnings growth, but without more confidence in near-term earnings, we cannot recommend owning shares. We like the growth opportunities ahead for UNFI, including the ability to leverage existing capabilities, but we are not confident in our ability to anticipate cost surprises."
> **"UNFI: Earnings Power Difficult to Determine," by Bill Kirk, Roth MKM, analyst report, 8 June 2023, p. 1.**

> "*It has been difficult to forecast (and address) GP dollar issues* relating to inflation/deflation-related inventory profit as well as shrink. UNFI is the only consumables-oriented company in our coverage facing this degree of difficulty, adversely impacting investor confidence in the N-T outlook."
> **"UNFI - The Downside of Large Acquisitions in a Volatile Operating Backdrop-Profit, Valuation Floors Are Approaching, but We Stay NEUTRAL Rated," by John Heinbockel et al., Guggenheim, analyst report, 25 June 2023, p. 1 (emphasis added).**

---

[170] "Perfect Storm of Challenges; Retrenching Consumer, Moderating Inflation and Shrink Lead to Another Guidance Cut; Maintain Neutral," by Peter Saleh and Ben Parente, BTIG, analyst report, 7 June 2023, p. 1.

[171] "UNFI: Earnings Power Difficult to Determine," by Bill Kirk, Roth MKM, analyst report, 8 June 2023, p. 1.

"Valuing the business on all of this is difficult."
**"UNFI: Another Surprising Guidance Cut as Pricing Lap and Macro Wreaks Havoc; Remain Sidelined Despite Sharp Sell-off," by Edward Kelly et al., Wells Fargo, analyst report, 7 June 2023, p. 1.**

103. The market's reaction to UNFI's 7 June 2023 disclosure clearly demonstrates that new information regarding the magnitude and financial impact of procurement gains was revealed on that day. Analyst commentary confirms that the decline in gross margin, driven by lapping prior quarters' outsized procurement gains, was a central – and still surprising – driver of the earnings miss. The disclosures on 7 June 2023 about the size, impact, and sustainability of procurement gains were neither redundant nor immaterial. Contrary to Dr. Zurek's assertion, all economically material information about procurement gains had not been disclosed to the market on 8 March 2023. The 7 June 2023 disclosure revealed new economically material information that significantly altered investor expectations, reasonably causing the statistically significant stock price decline and demonstrating continued price impact.

### C.    Dr. Zurek Tries to Deflect Attribution for the 7 June 2023 Stock Price Decline to Purportedly Confounding Information and Away from the Corrective Disclosure

104. Disregarding what was missing from the 8 March 2023 partially corrective disclosure, and disregarding the partially corrective disclosures made on 7 June 2023, Dr. Zurek contends that all of the stock price decline on 7 June 2023 was caused by non-allegation-related information.[172]

105. The fundamental flaws in Dr. Zurek's attribution argument (his attack on the contents of the announcement) are that most of what he characterizes as confounding information is actually directly allegation related. For example, to explain why the UNFI stock price declined, Dr. Zurek surprisingly points to the same below-consensus Q3 2023 financial results and downward revision to FY 2023 guidance that the Company itself attributed to

---

[172] Zurek Report, ¶¶11a and 84; and The Videotaped Deposition of Paul Zurek, 5 August 2025, at 84:23-85:18.

the reduction of procurement gains, which information is clearly allegation-related.[173] Moreover, the fact that any truly unrelated information may have had some price impact does not prove that the allegation-related disclosure had no impact.

106. Dr. Zurek concurs that the stock price decline on 7 June 2023 was caused by disappointing earnings results and a reduction in forward guidance.[174] However, he asserts that the Q3 2023 financial results reflected then-current performance, which in his inaccurate view Plaintiffs do not claim should have been disclosed earlier.[175] He contends the financial results came in below expectations for three reasons that are purportedly unrelated to the allegations: "(i) the materialization of previously disclosed risks that increased macroeconomic pressures from moderating inflation or deflation would reduce the benefits to profitability from inflation-related forward buying opportunities achieved in prior quarters; (ii) the materialization of previously known risks that UNFI's financial results and financial guidance would be realized below expectations due to UNFI's lack of visibility into its future performance; and (iii) factors other than inflation-related forward buying, including shrink, changes in consumer spending, and continued weak supplier promotional activity."[176]

107. While the factors that Dr. Zurek highlights may or may not have contributed to the earnings surprise, the fact that they may have contributed does not prove that the misrepresentations and omissions about procurement gains had no effect. In fact, on the contrary, analyst commentary indicates that much of the surprise was indeed driven by the market not knowing the magnitude and impact of the unsustainable contribution of procurement gains to the Company's prior profits and profitability.

108. With respect to Dr. Zurek's first item, the materialization of risk that the opportunity for and benefit of procurement gains would abate, even if it were true that this risk were disclosed and then did materialize (which I do not necessarily agree with at this juncture),

---

[173] Zurek Report, ¶83; "United Natural Foods, Inc. Reports Third Quarter Fiscal 2023 Results," *Business Wire*, Company press release, 7 June 2023 7:00 AM; and "Q3 2023 United Natural Foods Inc Earnings Call," *Refinitiv*, conference call, 7 June 2023, pp. 5-7.

[174] Zurek Report, ¶¶81-82.

[175] Zurek Report, ¶83.

[176] Zurek Report, ¶84.

it would follow that this risk was underassessed because the market was not told how great were the procurement gains reaped in FY 2022. The implication is that the alleged misrepresentations and omissions did have price impact evident on 7 June 2023.

109.    Dr. Zurek's second attribution item is baseless. Plaintiffs contest that the Company lacked visibility.[177] Moreover, the opaqueness that misled investors was not visibility into the future results that had not happened yet, but rather visibility into FY 2022 results that had already occurred. Additionally, to the extent that the market's surprise was due to a materialization of a disclosed risk, it would follow that the risk could have been more correctly assessed if there had been full and complete disclosure. The implications of these facts overlooked by Dr. Zurek are that the alleged misrepresentations and omissions did have price impact evident on 7 June 2023.

110.    Dr. Zurek's third item is similarly unavailing. The Company itself stated that the sundry items Dr. Zurek cites were not even the primary causes of the poor results, let alone the only causes. The abatement of procurement gains is what the Company did cite was the primary cause, contrary to Dr. Zurek's conjecture.[178]

111.    Dr. Zurek does not prove that concealment of the magnitude of prior procurement gains and the extent of the procurement gains on the Company's prior year profits and profitability played no role in formulating the market's expectations and subsequent disappointment. As analysts and the Company both compared the current quarter's performance to the performance in the same quarter of the prior year, it is evident that the alleged misrepresentations and omissions about the prior year's procurement gains did impact expectations, did produce or contribute to the eventual disappointment, and therefore did produce or contribute to the UNFI stock price decline. The alleged misrepresentations and omissions therefore reasonably had price impact evident on 7 June 2023.

---

[177] Complaint, ¶¶134-142.

[178] "United Natural Foods, Inc. Reports Third Quarter Fiscal 2023 Results," *Business Wire*, Company press release, 7 June 2023 7:00 AM; "Q3 2023 United Natural Foods Inc Earnings Call," *Refinitiv*, conference call, 7 June 2023, pp. 5 and 9; and United Natural Foods, Inc., Form 10-Q for the fiscal quarter ended 29 April 2023, filed 7 June 2023, p. 28.

**D.      Dr. Zurek Erroneously Limits Plaintiffs' Allegations to Exclude Procurement Gain Magnitudes and the Downward Revision to FY 2023 Guidance as Corrective Disclosures**

112.    As noted, Dr. Zurek mischaracterizes Plaintiffs' allegations to exclude information about the magnitude of prior procurement gains. Plaintiffs allegations squarely address not only the existence of prior procurement gains but also their magnitude and financial impact.[179]

113.    7 June 2023 was the first time the Company gave the market a quantification of a prior procurement gain.[180] This fact by itself proves that the Company's announcements on 7 June 2023 included corrective disclosure.

114.    In another attack on Plaintiffs' allegations, Dr. Zurek incorrectly asserts that because the Court dismissed the allegation that UNFI's FY 2023 guidance was materially misleading, it follows that the Company's lowering FY 2023 guidance on 7 June 2023 cannot be considered an allegation-related corrective disclosure.[181]

115.    This argument of Dr. Zurek's is misguided. Although the Court dismissed guidance statements as being actionable misrepresentations, the Court did not determine that the guidance revision could not be a partially corrective disclosure.[182] When the Company lowered FY 2023 guidance on 7 June 2023 due to the abatement of procurement gains relative to what was earned in FY 2022, this action partially revealed to the market the magnitude and financial impact of the FY 2022 procurement gains.[183] Dr. Zurek disregards this partially corrective disclosure, and so he has not proved that the alleged misrepresentations and omissions had no price impact evident on 7 June 2023.

---

[179] Complaint, ¶¶6-8, 19, 69-70, 101, 123, and 213-217.

[180] "Third Quarter Fiscal 2023 Earnings Conference Call," Company presentation, 7 June 2023, p. 9.

[181] Zurek Report, ¶¶11a and 83.

[182] The FY 2023 Guidance Statements include several statements by Defendants regarding UNFI's projected FY 2023 adjusted EBITDA. The Court found these statements to be "optimistic opinions in the face of market uncertainty" and concluded they were "simply too general to be actionable." (MTD Order, pp. 13 and 18-19).

[183] "Q3 2023 United Natural Foods Inc Earnings Call," *Refinitiv*, conference call, 7 June 2023, pp. 5 and 9.

## VII.    THE 26 SEPTEMBER 2023 CORRECTIVE DISCLOSURE

116.    Dr. Zurek's effort to dismiss the 26 September 2023 corrective disclosure follows the same outline as his attack on the 7 June 2023 corrective disclosure. He attacks the market for what it purportedly already knew, the announcements for what they contained, and the allegations for their scope.[184] These arguments are futile as each is demonstrably wrong. UNFI's earnings announcement on 26 September 2023 was a corrective disclosure that reasonably elicited the stock price decline that day. Dr. Zurek does not prove otherwise.

### A.    UNFI Provides Q4 2023 and FY 2023 Results and Provides FY 2024 Guidance

117.    On 26 September 2023, before the market opened, UNFI issued a press release announcing Q4 and FY 2023 results and held a conference call with analysts and investors.[185] The Company announced that net sales in the quarter were $7.42 billion, which was 2.0% greater than net sales in Q4 2022, but slightly below the consensus estimate of $7.47 billion.[186] The announced gross profit rate in Q4 2023 was 13.5%, falling well below the 15.2% gross profit rate achieved in Q4 2022, but above the 13.4% gross profit rate analysts were expecting for Q4 2023.[187]

---

[184] Zurek Report, ¶¶95-109.

[185] "United Natural Foods, Inc. Reports Fourth Quarter and Full Year Fiscal 2023 Results," *Business Wire*, Company press release, 26 September 2023 7:00 AM; and "Q4 2023 United Natural Foods Inc Earnings Call," *Refinitiv*, conference call, 26 September 2023 8:30 AM.

[186] "United Natural Foods, Inc. Reports Fourth Quarter and Full Year Fiscal 2023 Results," *Business Wire*, Company press release, 26 September 2023 7:00 AM; and consensus estimates obtained from *LSEG Workspace*.

[187] "United Natural Foods, Inc. Reports Fourth Quarter and Full Year Fiscal 2023 Results," *Business Wire*, Company press release, 26 September 2023 7:00 AM; and consensus estimates obtained from analyst reports ("Profitability Bottoming Process to Deepen in F24," by Kelly Bania and Benjamin Wood, BMO Capital Markets, analyst report, 26 September 2023, p. 1; "What's the Initial View on UNFI's 4Q'23 Results?" by Mark Carden et al., UBS, analyst report, 26 September 2023, p. 1; and "United Natural Foods (UNFI) – F'24 Guidance Disappoints," by Greg Badishkanian et al., Wolfe Research, analyst report, 26 September 2023, p. 1).

118. The Company announced Q4 2023 adjusted EBITDA of $93 million, which was a decline of $120 million, or 56.3%, from the $213 million adjusted EBITDA earned in Q4 2022.[188] Nonetheless, this adjusted EBITDA result beat the consensus estimate of $84 million for the quarter.[189] In sum, the reported results for the quarter were largely better than expected.

119. Forward guidance, however, was another story. The Company forecasted FY 2024 revenue to be $30.9-$31.5 billion, and adjusted EBITDA in the range of $450-$550 million, with a midpoint of $500 million.[190] The consensus estimate for FY 2024 adjusted EBITDA had been $622 million.[191] Thus, while Q4 results modestly exceeded consensus, the FY 24 guidance disappointed the market. The Company attributed the disappointingly low EBITDA forecast to the abatement of the procurement gain opportunity.[192]

---

[188] "United Natural Foods, Inc. Reports Fourth Quarter and Full Year Fiscal 2023 Results," *Business Wire*, Company press release, 26 September 2023 7:00 AM.

[189] Consensus estimates obtained from analyst reports ("Profitability Bottoming Process to Deepen in F24," by Kelly Bania and Benjamin Wood, BMO Capital Markets, analyst report, 26 September 2023, p. 1; "Outlook Suggests Uncertainty Persists; Procurement Losses, Shrink and Higher Incentive Compensation Weighs on Earnings – Remain Neutral," by Peter Saleh and Ben Parente, BTIG, analyst report, 26 September 2023, p. 1; "UNFI: 4Q23 Earnings Beat Us and Consensus but FY24 Earnings Guidance Set Well Below Us and Consensus," by Andrew Wolf, CL King, analyst report, 26 September 2023, p. 1; "UNFI: Weak Guide – Cooperation Agreement," by Bill Kirk, Roth MKM, analyst report, 26 September 2023, p. 1; "UNFI: FQ4 Highlights Challenges, but Update About as We Expected; Remain Sidelined," by Edward Kelly et al., Wells Fargo, analyst report, 26 September 2023, p. 1; "United Natural Foods (UNFI) – F'24 Guidance Disappoints," by Greg Badishkanian et al., Wolfe Research, analyst report, 26 September 2023, p. 1; and "UNFI: Q4 Adjusted EBITDA Beats, but FY24 Earnings Guidance Set Well Below Street on Continued Drag from Lower Inventory Holding Gains, as Confirmed by Our Proprietary Model," by Andrew Wolf, CL King, analyst report, 27 September 2023, p. 1).

[190] "United Natural Foods, Inc. Reports Fourth Quarter and Full Year Fiscal 2023 Results," *Business Wire*, Company press release, 26 September 2023 7:00 AM.

[191] Consensus estimates obtained from analyst reports ("Profitability Bottoming Process to Deepen in F24," by Kelly Bania and Benjamin Wood, BMO Capital Markets, analyst report, 26 September 2023, p. 1; "Outlook Suggests Uncertainty Persists; Procurement Losses, Shrink and Higher Incentive Compensation Weighs on Earnings – Remain Neutral," by Peter Saleh and Ben Parente, BTIG, analyst report, 26 September 2023, p. 1; "UNFI: 4Q23 Earnings Beat Us and Consensus but FY24 Earnings Guidance Set Well Below Us and Consensus," by Andrew Wolf, CL King, analyst report, 26 September 2023, p. 1; "UNFI: Weak Guide – Cooperation Agreement," by Bill Kirk, Roth MKM, analyst report, 26 September 2023, p. 1; "UNFI: FQ4 Highlights Challenges, but Update About as We Expected; Remain Sidelined," by Edward Kelly et al., Wells Fargo, analyst report, 26 September 2023, p. 1; "United Natural Foods (UNFI) – F'24 Guidance Disappoints," by Greg Badishkanian et al., Wolfe Research, analyst report, 26 September 2023, p. 1; and "UNFI: Q4 Adjusted EBITDA Beats, but FY24 Earnings Guidance Set Well Below Street on Continued Drag from Lower Inventory Holding Gains, as Confirmed by Our Proprietary Model," by Andrew Wolf, CL King, analyst report, 27 September 2023, p. 1).

[192] "United Natural Foods, Inc. Reports Fourth Quarter and Full Year Fiscal 2023 Results," *Business Wire*, Company press release, 26 September 2023 7:00 AM; and "Q4 2023 United Natural Foods Inc Earnings Call," *Refinitiv*, conference call, 26 September 2023, p. 6.

120.  In the slide deck accompanying the conference call, the Company explained that "Wholesale Gross Profit" declined by $94 million from Q4 2022 to Q4 2023, on account of "reduced Wholesale procurement gains."[193] This meant that procurement gains in Q4 2022 had been at least $94 million, or at least 44.1% of the reported $213 million in adjusted EBITDA earned in that quarter.[194] This $94 million quantification had never been disclosed to the market before.

121.  The Company attributed the $120 million decline in adjusted EBITDA from Q4 2022 to Q4 2023 primarily to this $94 million decrease in procurement gains.[195] During the conference call, the Company explained, "the biggest driver for the decline in Q4 year-over-year profitability was lower levels of procurement gain opportunities resulting from decelerating inflation. This resulted in a reduction in our gross profit rate prior to the LIFO charge in both years of approximately 175 basis points or more than $100 million."[196]

122.  With respect to FY 2024 guidance, the Company attributed the devastatingly low adjusted EBITDA forecast to "lower levels of anticipated procurement gains" "during the first half of fiscal 2024," as well as "incentive cash compensation."[197]

> "'We expect further headwinds as we continue to cycle elevated inflationary benefits during the first half of fiscal 2024,' said Sandy Douglas, UNFI Chief Executive Officer. … The Company is providing the following outlook for fiscal 2024, a 53-week year. This outlook reflects lower levels of anticipated procurement gains, driven by moderating levels of inflation, as well as the restoration of performance-based incentive cash compensation in fiscal 2024."
> **"United Natural Foods, Inc. Reports Fourth Quarter and Full Year Fiscal 2023 Results,"** *Business Wire*, **Company press release, 26 September 2023 7:00 AM.**

---

[193] "Fourth Quarter Fiscal 2023 Earnings Conference Call," Company presentation, 26 September 2023, p. 10.

[194] "Fourth Quarter Fiscal 2023 Earnings Conference Call," Company presentation, 26 September 2023, p. 10.

[195] "Fourth Quarter Fiscal 2023 Earnings Conference Call," Company presentation, 26 September 2023, p. 10.

[196] "Q4 2023 United Natural Foods Inc Earnings Call," *Refinitiv*, conference call, 26 September 2023, p. 5.

[197] "United Natural Foods, Inc. Reports Fourth Quarter and Full Year Fiscal 2023 Results," *Business Wire*, Company press release, 26 September 2023 7:00 AM.

123.  Quantifying, the Company explained that the projected FY 2024 adjusted EBITDA reflected an approximately $125 million reduction in procurement gains in FY 2024 relative to FY 2023, with most of this reduction coming in the first two quarters of FY 2024.

> "We expect fiscal 2024 full year adjusted EBITDA to be in $450 million to $550 million range. This decline primarily reflects approximately $125 million in lower anticipated procurement gains, primarily in last year's first and second quarters resulting from the continued decline in the number of supplier price increases compared to the first half of fiscal 2023. It also includes normalized performance-based incentive compensation accrual of approximately $62 million. This compares to fiscal 2023 when no material performance-based incentive compensation was paid to eligible associates."
> **"Q4 2023 United Natural Foods Inc Earnings Call," *Refinitiv*, conference call, 26 September 2023, p. 6.**

> "The only thing just to put some numbers around that '23 to '24 impact. It's going to be about $125 million that we've, of course, factored into our guidance. And most of that is going to be in the first 2 quarters of FY '24 as we cycle those gains that were still happening in the first half of FY '23."
> **"Q4 2023 United Natural Foods Inc Earnings Call," *Refinitiv*, conference call, 26 September 2023, p. 8.**

> "From a cadence perspective, we would expect our first quarter to be the lowest of the year in absolute adjusted EBITDA dollar terms and likely to be similar to the adjusted EBITDA level we generated during Q4 2023. Our first quarter is expected to have the largest percentage decline compared to last year as we cycled last year's elevated level of procurement gains and further build the benefits of our near-term profitability initiatives."
> **"Q4 2023 United Natural Foods Inc Earnings Call," *Refinitiv*, conference call, 26 September 2023, p. 6.**

124.  During the conference call, seeking to understand the disappointing forward guidance, an analyst asked the Company to contextualize the historical norm for procurement gains. With the newly revealed information, the analyst figured that procurement gains may have reached an unusual peak of $250–$300 million.[198] In response, CEO Douglas finally acknowledged that procurement gains did experience an atypical and unsustainable surge beginning in early 2022, from which UNFI benefited. He explained that, as inflation

---

[198] "Q4 2023 United Natural Foods Inc Earnings Call," *Refinitiv*, conference call, 26 September 2023, p. 7.

moderates and consumer demand remains soft, it was unlikely that the Company would achieve similar procurement gains going forward.[199]

> "[John Edward Heinbockel Guggenheim Securities, LLC, Research Division – Analyst:] Sandy, maybe talk to what procurement gains were pre-COVID in a normal environment right? It looks like, I don't know, maybe they got up to $250 million or $300 million at the peak. Was that all just gains on stuff that was in your inventory? Or was there a lot of forward buy, that went along with that. And when you think about that, does that then, what you had earned right over the past couple of years, sort of an EBITDA margin in the upper 2s, is that no longer retainable anytime, or over a very long period of time because those inventory gains are just going to be very de minimis in the next couple of years.
>
> [James Alexander Miller Douglas United Natural Foods, Inc. - CEO & Director:] John, it's Sandy. Let me come at this a couple of ways, and then I'll ask John Howard to add to my comments. Definitely, we saw an out-of-pattern increase in procurement gains beginning in January of '22. And that last year before the year-over-year disinflation started and that generated numbers in line with your estimates. And that was the out-of-pattern part. You've got really two things going on there. You've got actual price increase events, both the frequency and depth and then you have promotions. And we saw a decline in promotions while prices were going way up. What we expect to happen is that as price increase events decline, we expect promotions to come back, although they've done so very slowly. But as we look forward and we see units continuing to be soft, the consumer to be stressed and inflation now returning to lower levels. We definitely expect consumer products companies to start promoting more. They'll need to in order to drive sales. And so we'll see a positive there the out-of-pattern high number of price events have kind of returned back to more normal levels. We're still cycling the higher ones, as John mentioned in his comments, but net-net-net, from a run rate perspective, we'd expect it to be slightly positive as promotions come back."
> **"Q4 2023 United Natural Foods Inc Earnings Call," *Refinitiv*, conference call, 26 September 2023, pp. 7-8.**

125.  This information about the unsustainable magnitude and impact of UNFI's procurement gains during the "out-of-pattern" market environment of FY 2022 had never been divulged to the public before.[200]

---

[199] "Q4 2023 United Natural Foods Inc Earnings Call," *Refinitiv*, conference call, 26 September 2023, pp. 7-8.

[200] "Q4 2023 United Natural Foods Inc Earnings Call," *Refinitiv*, conference call, 26 September 2023, p. 7.

126.   During the conference call, an analyst revisited concerns about the ongoing lack of visibility into how procurement gains had impacted the Company's profits in the past.

> "[Kelly Ann Bania BMO Capital Markets Equity Research - Director & Senior Food Retailers Analyst:] I just wanted to ask again about the procurement gains. I think the - - one of the challenges with that has been just the visibility into how that has impacted the P&L. So I guess at this point, have you been able to go back and do some more analysis that gives you confidence in the magnitude of procurement gain headwinds that you have forecasted in fiscal '24? And then I have a couple more follow-ups."
> **"Q4 2023 United Natural Foods Inc Earnings Call," *Refinitiv*, conference call, 26 September 2023, p. 10.**

127.   This analyst's expressed concerns establish that the market had not previously been provided with full disclosure about procurement gains.

128.   In sum, because analysts and investors had never been told the extent to which procurement gains had boosted the Company's past profits and profitability, the declines that were now forecasted for profit and profitability after the opportunity for procurement gains had subsided caught analysts by surprise.

129.   As shown in Exhibit-3, applying the same event study analysis that was presented in the Feinstein Report to the 26 September 2023 UNFI stock price reaction, one observes that UNFI's stock price declined 32.06% (on a logarithmic basis) that day. After adjusting for market and sector factors, the residual return was a decline of 28.95%, which is statistically significant at the 99% confidence level. In his report, Dr. Zurek concurs that the UNFI stock price declined by a highly statistically significant amount on 26 September 2023.[201]

**B.     Dr. Zurek Is Wrong to Assert That None of the Information Announced on 26 September 2023 Was New Information That Corrected the Alleged Misrepresentations and Omissions**

130.   Dr. Zurek argues that none of the information announced on 26 September 2023 was new information that corrected the alleged misrepresentations and omissions.[202] According to

---

[201] Zurek Report, ¶48 and FN 89.

[202] Zurek Report, ¶¶11b and 102; and The Videotaped Deposition of Paul Zurek, 5 August 2025, at 84:23-85:18.

Dr. Zurek, there had been full corrective disclosure before 26 September 2023, so no new information could have been corrective.[203]

131.    As noted above, Dr. Zurek is wrong because the 8 March 2023 and 7 June 2023 disclosures were incomplete, leaving much of the concealed truth still undisclosed. Dr. Zurek's relies on mischaracterizing Plaintiffs' allegations as only comprising the existence of procurement gains and not their magnitude or impact on profits and profitability.[204] This mischaracterization is why Dr. Zurek fails to appreciate that the 26 September 2023 disclosure about the magnitude of UNFI's procurement gains in FY 2022 and the half of FY 2023, and their impact on expected profits and profitability, constituted a corrective disclosure. The 26 September 2023 disclosures finally revealed this concealed information.

132.    By incorrectly limiting the scope of the "Alleged Truth," Dr. Zurek fails to observe that much of the information disclosed on 26 September 2023 directly addressed what Plaintiffs allege was fraudulently concealed by misrepresentations and omissions. The disappointing forward guidance, which was the most important piece of news that day, was a negative surprise primarily because of the alleged misrepresentations and omissions.

133.    Analysts commented following the 26 September 2023 earnings announcement that they were surprised by the unexpected scale of profit margin degradation and adjusted EBITDA, which the Company attributed to lapping prior quarters that had high levels of procurement gains.[205] Guggenheim wrote that they "continue to be very surprised by the magnitude of the procurement gains," estimating that such gains totaled approximately $250 million during 2H 2022 and 1H 2023 but had "shrunk to virtually nothing."[206] BTIG remarked that their previously inflated expectations derived from not knowing the magnitude and impact

---

[203] Zurek Report, ¶¶10, 52, 73, and 94.

[204] Zurek Report, ¶28.

[205] "United Natural Foods, Inc. Reports Fourth Quarter and Full Year Fiscal 2023 Results," *Business Wire*, Company press release, 26 September 2023 7:00 AM.

[206] "UNFI - Cycling $250M of Procurement Gains While Transforming the Business -- Lowering Our 2024 EBITDA Estimate By ~20%; Stay NEUTRAL Rated," by John Heinbockel et al., Guggenheim, analyst report, 26 September 2023, p. 1.

of prior procurement gains.[207] Other analysts expressed similar sentiments, attributing their surprise to their not knowing the magnitude and impact of prior procurement gains.

> "Despite top-line growth, adjusted EBITDA fell 59% with Y/Y margin erosion of 176 basis points. This was entirely a function of FIFO gross margin weakness, which is being pressured by the elimination of inflation-related inventory profits as well as elevated shrink. To be honest, *we continue to be very surprised by the magnitude of the procurement gains*. By our estimate, they totaled $250 million during 2H 2022/1H 2023 and have shrunk to virtually nothing."
> **"UNFI - Cycling $250M of Procurement Gains While Transforming the Business Lowering Our 2024 EBITDA Estimate By ~20%; Stay NEUTRAL Rated," by John Heinbockel et al., Guggenheim, analyst report, 26 September 2023, p. 1 (emphasis added).**

> "We remind investors that this time last year, we were forecasting adjusted EBITDA of $214MM for this quarter, almost three times the actual result. The main difference between our original estimate and the actual results is the lapping of procurement gains, which dragged profit by ~$100MM and gross margin by about 175 bps, and shrink that is running at nearly triple pre-COVID levels. … This guidance assumes low-to-mid-single digit inflation and approximately $125MM to drag from lapping procurement gains, mostly confined to 1HF24."
> **"Outlook Suggests Uncertainty Persists; Procurement Losses, Shrink and Higher Incentive Compensation Weighs on Earnings - Remain Neutral," by Peter Saleh and Ben Parente, BTIG, analyst report, 26 September 2023, p. 1.**

> "We think UNFI's results brought about more questions than answers. … That said, the extent of its tough inventory gain comparisons are becoming more apparent, as the co. expects it to be a $125 mm headwind in FY'24 (for context, its total adj. EBITDA guidance is $450-550 mm)."
> **"Taking Inventory of a Challenging Year Ahead," by Mark Carden et al., UBS, analyst report, 27 September 2023, p. 1.**

> "Gross Margin headwinds were sequentially higher (-174bps y/y), but an opex beat prevented (incl. materially lower incentive comp) a weaker result. In the end, EBITDA still declined an eye-catching 56%. Margin Issues Continue in Q4 as Top-Line Headwinds Accelerate: Margin pressure from

---

[207] "Outlook Suggests Uncertainty Persists; Procurement Losses, Shrink and Higher Incentive Compensation Weighs on Earnings - Remain Neutral," by Peter Saleh and Ben Parente, BTIG, analyst report, 26 September 2023, p. 1.

the lap of robust procurement gains, moderating inflation, and elevated shrink all bled into Q4, and look to be H1'24 headwinds. … Still Too Much Uncertainty Here."
**"UNFI: FQ4 Highlights Challenges, but Update About as We Expected; Remain Sidelined," by Edward Kelly et al., Wells Fargo, analyst report, 26 September 2023, p. 1.**

"Gross margin declined -174 bps y/y to 13.5% primarily due to lower levels of procurement gains, reduced benefits from inflation, and higher shrink."
**"Disinflation Continues to Pressure Margins," by Leah Jordan, Goldman Sachs, analyst report, 27 September 2023, p. 1.**

134. The market learned on 26 September 2023 that adjusted EBITDA going forward would be far less than the market had expected due to the abatement of procurement gains. Analysts' attributing their surprise to lack of information about prior procurement gains establishes that the extent and financial impact of prior procurement gains had not been fully disclosed before 26 September 2023. Contrary to Dr. Zurek's assertion, all economically material information about procurement gains had not been disclosed previously. The 26 September 2023 disclosures about procurement gains reasonably caused or contributed to the statistically significant stock price decline that day. Accordingly, the 26 September 2023 earnings and guidance announcement was a corrective disclosure. The alleged misrepresentations and omissions reasonably impacted the prices of the UNFI Securities that day. Dr. Zurek does not prove otherwise.

**C.    Dr. Zurek Tries to Deflect Attribution for the 26 September 2023 Stock Price Decline to Purportedly Confounding Information and Away from the Corrective Disclosure**

135. Dr. Zurek contends that the stock price decline on 26 September 2023 was caused by non-allegation-related confounding information.[208]

136. Dr. Zurek acknowledges that the stock price fell on 26 September 2023 due to UNFI's below-consensus FY 2024 guidance.[209] Nonetheless, he fails to appreciate how the alleged misrepresentations and omissions caused or contributed to the disconnect between the new guidance and what the market had been led to expect.

[208] Zurek Report, ¶¶11b and 102; and The Videotaped Deposition of Paul Zurek, 5 August 2025, at 84:23-85:18.

[209] Zurek Report, ¶100.

137. In Dr. Zurek's opinion, the below-consensus FY 2024 guidance was unrelated to the alleged misrepresentations and omissions, but instead reflected: "(i) the materialization of previously disclosed risks that increased macroeconomic pressures from moderating inflation or deflation would further reduce the benefits to profitability from inflation-related forward buying opportunities achieved in prior quarters; (ii) the materialization of previously known risks that UNFI's financial guidance would be realized below expectations due to UNFI's lack of visibility into its future performance; and (iii) factors other than inflation-related forward buying, including shrink, changes in consumer spending, moderated supplier promotional activity, and increased retail price competition."[210]

138. While the factors that Dr. Zurek highlights may or may not have contributed to the market's disappointment with the announced FY 2024 guidance, the fact that they may have contributed does not prove that the misrepresentations and omissions about procurement gains had no effect on expectations and thus the negative surprise. In fact, on the contrary, analyst commentary indicates that much of the surprise was indeed driven by the market not knowing the magnitude and financial impact of the unsustainable prior contribution of procurement gains to the Company's profits and profitability.

139. With respect to Dr. Zurek's first item, the materialization of risk that the opportunity for procurement gains would abate, even if it were true that this risk were disclosed and then did materialize (which I do not necessarily agree with at this juncture), it would follow that the risk was underassessed because the market was not told how great were the procurement gains in FY 2022 and the first half of FY 2023.

140. Dr. Zurek's second attribution item is baseless. Plaintiffs contest that the Company lacked visibility.[211] Moreover, the opaqueness that misled investors was not visibility into the future results that had not happened yet, but rather visibility into FY 2022 and FY 2023 results that already occurred. Had the past information been provided to the market instead of allegedly being concealed by misrepresentations and omissions, the risk of reduced

---

[210] Zurek Report, ¶102.

[211] Complaint, ¶¶134-142.

forward guidance could have been more correctly assessed. Thus, even within Dr. Zurek's argument, the alleged misrepresentations and omissions had price impact.

141. Dr. Zurek's third item is similarly unavailing. The Company itself stated that the list of items Dr. Zurek cites as possible causes for the disappointing guidance were not the primary factors responsible, let alone the only causes. The abatement of procurement gains is what the Company cited as the primary reason for the diminished outlook going forward.[212]

142. Dr. Zurek does not prove that concealment of the magnitude of prior procurement gains and the extent of the procurement gains on the Company's prior year profits and profitability played no role in formulating the market's expectations which were then dashed by the disappointing FY 2024 guidance the Company released on 26 September 2023. The Company and analysts both attributed the disappointment to the cycling past prior quarters in which procurement gains had substantially boosted profits and profitability. The alleged misrepresentations and omissions that concealed the magnitude and impact of prior procurement gains were thus instrumental in causing the surprise that elicited the significant stock price decline on 26 September 2023. The alleged misrepresentations and omissions therefore reasonably had price impact on 26 September 2023. Dr. Zurek does not prove otherwise.

### D.    Dr. Zurek Erroneously Limits Plaintiffs' Allegations to Exclude Procurement Gain Magnitudes and the FY 2024 Guidance as Corrective Disclosures

143. Dr. Zurek mischaracterizes Plaintiffs' allegations to exclude information about the magnitude of prior procurement gains. Plaintiffs allegations squarely address not only the existence of prior procurement gains, but concern their magnitude and financial impact.[213]

---

[212] "United Natural Foods, Inc. Reports Fourth Quarter and Full Year Fiscal 2023 Results," *Business Wire*, Company press release, 26 September 2023 7:00 AM; and "Q4 2023 United Natural Foods Inc Earnings Call," *Refinitiv*, conference call, 26 September 2023, pp. 6 and 8.

[213] Complaint, ¶¶6-8, 19, 69-70, 101, 123, and 213-217.

144. 26 September 2023 was the first time the Company quantified the Q4 2022 procurement gains and gave any indication of the magnitude of procurement gains in Q1 and Q2 of 2023. [214] Thus, the Company's announcements on 26 September 2023 disclosed information that was allegedly concealed by the misrepresentations and omissions.

145. Without any economic analysis, Dr. Zurek seeks to dismiss the FY 2024 guidance as a corrective disclosure. He states that counsel for Defendants informed him that "Plaintiffs do not allege that UNFI should have provided earlier in the Proposed Class Period the FY 2024 guidance it ultimately provided on September 26, 2023 and that Plaintiffs' allegations regarding financial guidance have been dismissed."[215]

146. First, while Plaintiffs do not allege that the Company should have disclosed the FY 2024 guidance at the start of the Class Period, Plaintiffs do allege that had the full truth been told – including the scale and financial impact of procurement gains – the FY 2024 guidance would not have come as such a surprise to the market. The provided guidance and the Company's commentary around it brought to light previously undisclosed information – specifically, the magnitude of past procurement gains, the impact past procurement gains had on profits and profitability, that the Company's past gross profit margin was not sustainable, and the degree to which profits and profitability would fall as the procurement gain opportunity abated. According to Plaintiffs, this information could have been disclosed during the Class Period, prior to 26 September 2023, as the procurement gains were being earned.[216] Therefore, the FY 2024 guidance and the Company's commentary around it constituted corrective disclosures.

147. Second, although the Court dismissed guidance statements as being actionable misrepresentations, my understanding is that the Court did not rule that guidance statements could not be corrective disclosures.[217]

---

[214] "Fourth Quarter Fiscal 2023 Earnings Conference Call," Company presentation, 26 September 2023, p. 10; and "Q4 2023 United Natural Foods Inc Earnings Call," *Refinitiv*, conference call, 26 September 2023, p. 6.

[215] Zurek Report, ¶101.

[216] Complaint, ¶¶6-8, and 69-82.

[217] The FY 2023 Guidance Statements include several statements by Defendants regarding UNFI's projected FY 2023 adjusted EBITDA. The Court found these statements to be "optimistic opinions in the face of market uncertainty" and concluded they were "simply too general to be actionable." (MTD Order, pp. 13 and 18-19).

148.    Dr. Zurek acknowledges that he intentionally treated the FY 2024 guidance announcement as if it could not be a corrective disclosure on account of legal reasons, and economic analysis was not the basis for his decision. His price impact analysis is therefore admittedly incomplete.

## VIII.    CRITIQUE OF DR. ZUREK'S DAMAGES METHODOLOGY OPINION

### A.    The Out-Of-Pocket Damages Methodology

149.    In the Feinstein Report, I concluded that Section 10(b) and 20(a) damages can be computed using a methodology that is consistent with Plaintiffs' theory of liability and common for all Class members.[218] In the Feinstein Report, I described that damages computation methodology – the out-of-pocket damages methodology – and noted that it is the damages methodology that is applied in virtually all class action securities cases.[219] I explained that according to the out-of-pocket damages methodology, damages are computed the same way for all investors, and that for any particular investor, per security damages are the difference between the artificial inflation in the security price at the time of purchase and the artificial inflation remaining in the security price at the time of sale (or disposition of the security, which for an option may be expiration or exercise).[220] I explained that artificial inflation is the difference between the actual price for the security that was prevailing in the marketplace and what that market price would have been in the but-for scenario where there had been full disclosure instead of fraudulent misrepresentations and omissions.[221]

150.    In the Feinstein Report, I explained that the but-for security price is the valuation of the security taking into account all information available to the market plus the information that was allegedly concealed or obscured by misrepresentations and omissions.[222] I explained in the Feinstein Report that the valuation exercise that is necessary to compute

---

[218] Feinstein Report, ¶¶24 and 200.

[219] Feinstein Report, ¶¶202-215.

[220] Feinstein Report, ¶¶203-206.

[221] Feinstein Report, ¶205.

[222] Feinstein Report, ¶211.

the but-for prices is the same valuation exercise that is undertaken by professional analysts and investors continuously, every day, for virtually all publicly traded securities.[223]

151.    In the instant matter, the but-for valuation of UNFI stock would incorporate the same procedures and valuation tools that analysts applied and described in their reports when they valued UNFI under current and various alternative scenarios.[224] In addition to the valuation tools that analysts valuing UNFI stock did use, the forensic analyst can also incorporate event study results to see precisely how the UNFI Securities' prices changed when corrective disclosures occurred.[225] Additionally, as explained in the Feinstein Report, the forensic analyst calculating damages can utilize additional valuation tools, as necessary, from among the set of valuation tools routinely used to address the various case-specific complexities that sometimes arise.[226]

152.    Paragraph 211(i)-(ix) of the Feinstein Report details the steps for implementing the out-of-pocket damages methodology. The Feinstein Report also explains that there are various statutory and case law caps on damages that are easily and commonly calculated, such as the restriction that recoverable damages can be no more than the amount of money the investor actually lost.[227]

---

[223] Feinstein Report, ¶¶208-210.

[224] *See, e.g.,* "Power of Full Store Offering and Pricing Will Continue," by Bill Kirk, MKM, analyst report, 9 December 2021, p. 1 ("Our $67 price target is DCF-derived and implies ~8.2x EV/NTM EBITDA, which is in line with the sector and UNFI 10-year average"); "UNFI: Outlook Remains Attractive; Reiterate Buy Rating with $56 Price Target," by Chuck Cerankosky, Northcoast Research, analyst report, 13 December 2022, p. 1 ("Our price target for UNFI stock is based on our fiscal 2024 EPS estimate of $5.47. A P/E ratio of little more than 10 applied to that earnings forecast yields a $56 price objective"); "Reiterating Our Buy on UNFI," by Scott Mushkin, R5 Capital, analyst report, 14 March 2023, p. 2 ("Our price target is based on a weighted average of our PE (45%), EV/EBITDA (45%), and DCF (10%) valuation methodologies"); and "Disinflation Continues to Pressure Margins," by Leah Jordan, Goldman Sachs, analyst report, 27 September 2023, p. 6 ("Our 12-month price target decreases to $15 from $24 primarily due to lower estimates. We also update our valuation methodology to target EV/EBITDA multiples (downside/base/upside cases of 4.5x/5.0x/5.5x) from target relative P/E multiples previously (downside/base/upside cases of 40%/45%/50% with a 19.1x market multiple), noting most investor conversations have shifted to this metric").

[225] Feinstein Report, ¶210.

[226] Feinstein Report, ¶¶208-210.

[227] Feinstein Report, ¶211(vii)-(ix).

**B.    The Out-of-Pocket Damages Methodology Is Consistent with Plaintiffs' Theory of Liability**

153.    Dr. Zurek questions whether the out-of-pocket damages methodology is consistent with Plaintiffs' theory of liability in the instant matter.[228] It certainly is. Plaintiffs' theory of liability is that Defendants' misrepresentations and omissions artificially inflated the price of UNFI stock, such that investors overpaid for the stock and call options and received depressed prices when writing put options.[229] Plaintiffs further allege that when the truth was revealed, the price of UNFI stock declined as the artificial inflation dissipated from the stock price.[230] The overpayment and subsequent price declines in the stock and call options (and corresponding distortions in the put option prices), allegedly caused by Defendants' misrepresentations and omissions, allegedly caused Plaintiffs and proposed Class members to sustain losses and thereby suffer damages.[231]

154.    The out-of-pocket damages methodology measures specifically this loss caused by the introduction and subsequent dissipation of artificial inflation in the UNFI security prices.[232] This damages methodology is therefore consistent with Plaintiffs' theory of liability. The methodology is applied commonly for all Class members.[233]

**C.    Dr. Zurek's Criticisms of the Damages Methodology Are Meritless**

155.    In the Zurek Report, Dr. Zurek does not dispute that the out-of-pocket damages methodology is widely used to compute damages in virtually all class action securities cases, and that it is supported by published legal scholarship.[234] He does not dispute that it is a methodology for computing damages commonly for all Class members.[235]

---

[228] Zurek Report, ¶¶12-15 and 110-134.

[229] Complaint, ¶¶276-277.

[230] Complaint, §VII.

[231] Complaint, ¶¶218 and 264.

[232] Feinstein Report, ¶211.

[233] Feinstein Report, ¶¶212 and 215.

[234] Feinstein Report, ¶203; and The Videotaped Deposition of Paul Zurek, 5 August 2025, at 94:25-95:9.

[235] Feinstein Report, ¶204.

156. Dr. Zurek's criticisms relate more to my articulation of the damages methodology rather than to the methodology itself. He contends that I did not provide sufficient detail for how I or another forensic expert would execute the out-of-pocket damages methodology.[236] Specifically, he contends that while I enumerated a large set of valuation tools that could be used to value the stock in the but-for scenario, I did not identify at this juncture precisely which of those tools I would use.[237] He contends that I did not provide sufficient detail to convince him that I or the forensic analyst calculating damages would not err when valuing the stock in the but-for scenario.[238] He contends that I did not explain in sufficient detail how I might address certain valuation complexities that he conjectures might arise when implementing the out-of-pocket damages methodology.[239]

157. Dr. Zurek's criticisms are not valid. While a damages methodology can be fully articulated *a priori*, as I did, the degree of specificity Dr. Zurek desires about how hypothetical complexities that potentially may be encountered would be handled cannot be provided until damages are actually computed. Nonetheless, if complexities are encountered during the damages computation, the standard valuation tools that I described in the Feinstein Report would certainly accommodate them.[240] This is assured because valuations under alternative scenarios, of the sort necessary to compute but-for prices and artificial inflation, are routinely conducted every day, by legions of financial analysts, for virtually every publicly traded security. Dr. Zurek is wrong to suggest that valuation under the but-for scenario of full disclosure in the instant case is unusual or might be impossible.

158. Dr. Zurek apparently would be unsatisfied with any description of the damages methodology that is unaccompanied by the completed analysis, which is premature at this stage. Dr. Zurek is incorrect to contend that I must describe in granular detail precisely which valuation tools I would use when constructing the inflation ribbon for use in the

---

[236] Zurek Report, ¶¶13 and 115-117; and The Videotaped Deposition of Paul Zurek, 5 August 2025, at 92:13-93:20, 98:14-99:14, and 126:1-12.

[237] Zurek Report, ¶¶118-122; and The Videotaped Deposition of Paul Zurek, 5 August 2025, at 116:14-21.

[238] Zurek Report, ¶¶118-122; and The Videotaped Deposition of Paul Zurek, 5 August 2025, at 116:11-21.

[239] Zurek Report, ¶¶120-122; and The Videotaped Deposition of Paul Zurek, 5 August 2025, at 94:12-18, 99:2-14, and 112:17-22.

[240] Feinstein Report, ¶¶208-210.

implementation of the out-of-pocket damages methodology in this case. I am unaware of any expert report submitted at the class certification stage in a case alleging violations of the securities laws that describes to the degree of detail that Dr. Zurek requires, all of the valuation tools that will be used in the construction of the inflation ribbon.

159. Plus, there is good reason to reserve flexibility. It is my understanding that discovery is ongoing in this case. Development of the record will inform the forensic analyst of key facts relevant to the computation of artificial inflation, such as what the Company knew and when Defendants knew it. Dr. Zurek recognizes that there is a dispute about what the Company knew and was thus able to disclose during the Class Period. He writes that some information revealed on the corrective disclosure dates could not have been disclosed earlier due to "UNFI's lack of visibility into its future performance due to legacy data management system limitations." [241] Determinations of what allegations, omissions, misrepresentations, and corrective disclosures are or are not sustained are relevant to the computation of damages. Consequently, the detail Dr. Zurek demands is premature and inappropriate at the current stage.

160. None of the potential valuation issues that Dr. Zurek raises (confounding information and disclosures that are risk realizations) are insurmountable, and he does not contend that they are insurmountable.[242] Dr. Zurek overlooks that these potential issues are common and routinely encountered and addressed in class action securities cases. Moreover, these computational issues are more about the execution of the common damages methodology rather than the existence of the common damages methodology.

161. If anything, Dr. Zurek's concerns for the potential adjustments to the inflation ribbon to accommodate valuation complexities acknowledge the existence of the damages methodology and that it would be commonly applied for all Class members. The value computations and adjustments that Dr. Zurek opines may be necessary would not be necessary for just select Class members, but rather would apply to all Class members. Therefore, the damages methodology and the financial and quantitative analysis for implementing it are common for all Class members.

---

[241] Zurek Report, ¶74.

[242] Zurek Report, ¶¶123-130; and The Videotaped Deposition of Paul Zurek, 5 August 2025, at 106:16-107:12 and 123:6-17.

162.    Finally, Dr. Zurek's concerns regarding my articulation of the damages methodology rely on his mischaracterization of my exposition. For example, Dr. Zurek asserts that an event study **by itself** is not enough to deal with the confounding information or materializations of disclosed risk.[243] But, I never stated that event study analysis alone would resolve these and all other potential complexities. I stated in the Feinstein Report that but-for prices and inflation would be computed using event study analysis **in concert** with standard valuation tools.[244] Valuation tools have been developed for precisely the sorts of issues Dr. Zurek mentions.

163.    Dr. Zurek criticizes the damages methodology as applied to options.[245] However, the damages methodology I presented for the UNFI options is the same out-of-pocket methodology as the damages methodology for the UNFI stock – the holding period decline in artificial inflation precipitated by corrective disclosures, subject to certain statutory and case law prescriptions.[246] Similarly, and apparently recognizing this fact, Dr. Zurek's two criticisms of my description of the out-of-pocket damages methodology for the UNFI options are that 1) they rely on the same stock price inflation ribbon constructed for the stock damages, which he baselessly conjectures might be computed incorrectly, and 2) computing but-for option prices requires a but-for volatility parameter, which he argues may be difficult to come by even though it is observable.[247]

164.    As Dr. Zurek's first criticism of the options damages methodology is that it uses the UNFI stock artificial inflation ribbon, my responses to conjecture that it may be computed incorrectly are the same as when I explained that construction of the stock artificial inflation ribbon is a straightforward valuation exercise that is common for all Class members. With respect to his second criticism, pertaining to the volatility parameter

[243] Zurek Report, ¶125; and The Videotaped Deposition of Paul Zurek, 5 August 2025, at 94:12-18, 99:2-9, and 107:20-171:7.

[244] Feinstein Report, ¶¶204 and 211.

[245] Zurek Report, ¶¶133-134.

[246] Feinstein Report, ¶207.

[247] Zurek Report, ¶¶132-146.

necessary for but-for option price computation, I again note that the volatility parameter is observable, and therefore how it is affected by a corrective disclosure is also observable.

### D.    Dr. Zurek's Additional Criticisms

#### 1.    Valuing UNFI Stock in the But-For Scenario

165.    In paragraph 116 of his report, Dr. Zurek incorrectly asserts that I have not specified how artificial inflation for UNFI stock would be calculated, and how it would be calculated in a common manner for all Class members. This criticism is erroneous. The Feinstein Report clearly articulates that the formula for stock artificial inflation on any particular day is the actual stock price prevailing in the marketplace that day, minus the but-for price.[248] The but-for price is what the price would have been absent the alleged fraudulent misrepresentations and omissions.[249]

166.    The but-for price is calculated by conducting a valuation of the stock, augmenting the information that was actually available to investors and analysts with the additional information that was allegedly concealed from them by the misrepresentations and omissions.[250]

167.    Dr. Zurek is wrong when in paragraphs 116 and 118 of his report he asserts that "[e]conomic theory provides no assurance" that the valuation necessary to construct an inflation ribbon is possible. This type of alternative scenario valuation is routinely conducted by analysts, investors, and valuation experts all the time. Analysts and investors value virtually all publicly traded securities continuously, reacting to changing information and also positing likely future values under a wide variety of alternative possible scenarios. Stock valuation is rarely, if ever, impossible.

168.    As noted, the tools used by analysts and investors for this purpose include the array of valuation tools I enumerated in the Feinstein Report at paragraph 210, and that forensic experts additionally have at their disposal the event study results that show how much the stock price changed when there was a corrective disclosure. The potential valuation

---

[248] Feinstein Report, ¶205.

[249] Feinstein Report, ¶¶205 and 211.

[250] Feinstein Report, ¶211.

complexities that Dr. Zurek identifies, which may or may not be encountered when the inflation ribbon is constructed at the merits stage in this case, can most assuredly be accommodated by standard tools of valuation.

169.    It is particularly noteworthy that the analysts covering UNFI provided valuations in almost all of their reports, and they rapidly adjusted these valuations as new information entered the market.[251]

170.    Dr. Zurek is wrong to suggest that this analysis might not be common for all Class members.[252] Market prices and but-for prices do not depend on any particular investor's circumstances. They are the same for all Class members. Thus, the but-for valuation and the artificial inflation ribbon construction are common for all Class members.

### 2.    Materialization of Risk is Well Accommodated by the Damages Methodology

171.    In paragraphs 120 through 129 of his report, Dr. Zurek argues that damages computation is complicated when a corrective disclosure is a materialization of risk. He explains that full disclosure would have informed the market of a particular probability of an adverse outcome that may be greater than the probability assessed when the risk was obscured by misrepresentations and omissions, but the assessed risk would still be less than 100%.[253] Dr. Zurek describes that the ultimate realization of the risk, however, represents a 100% chance of realization of the risk, while prior full disclosure would not necessarily have caused investors to assess a 100% realization.[254] The event study residual return following

---

[251] *See, e.g.*, "F1Q23 Results Not Enough Given Growing Volume Concerns," by Kelly Bania and Benjamin Wood, BMO Capital Markets, analyst report, 7 December 2022, p. 1 ("With signs of deteriorating core volumes and an outlook for less inflation, we maintain our Market Perform rating and $40 target, which is based on 5-6x (~6-6.5x including LIFO) our slightly lower F23 adjusted EBITDA forecast of $856mm as lower GM % rate assumptions flow through"); "Sour Systems Spoil the Quarter," by Krisztina Katai et al., Deutsche Bank, analyst report, 8 March 2023, p. 1 ("Our adjusted FY23 EPS estimate decreases to $3.24 from $4.88 (Street $4.97; guidance $3.05-$3.90) which is based on net sales of $30.3B (guidance $30.1-$30.5B), GPM ex. LIFO of 14.3%, and adjusted EBITDA margin of 2.4%"); and "Margin Pressure Continues as Disinflation Limits Procurement Opportunities; Reiterate Neutral," by Leah Jordan, Goldman Sachs, analyst report, 7 June 2023, p. 3 ("We are lowering our FY23-25 EPS estimates to $2.16/$0.80/$2.62 from $3.19/$3.33/$3.67, respectively, primarily due to a lower gross margin outlook given fewer procurement opportunities, partially offset by incremental cost savings").

[252] Zurek Report, ¶115; and The Videotaped Deposition of Paul Zurek, 5 August 2025, at 124:16-24.

[253] Zurek Report, ¶127.

[254] Zurek Report, ¶127.

the realization of the risk, therefore, according to Dr. Zurek, might be greater than the artificial inflation produced by the misrepresentations and omissions when the corrective disclosure is a realization of risk.[255]

172.    Dr. Zurek argues that Plaintiffs' allegations in the instant case describe the corrective disclosures as materializations of understated risks.[256] Dr. Zurek's argument is illustrative as to why it is premature to conjecture what complexities may arise in the present case before discovery is complete. Without financial analysis examining the fully developed record in this case, it is not established how investors would have assessed the risk if they had not been allegedly deceived by misrepresentations and omissions. Investors may have fully anticipated the poor performance and guidance announcements that occurred in this case if there were no misrepresentations and omissions. Reasonably, investors would have known how much of previously reported EBITDA was nonrecurring, and so they very well might have been able to correctly estimate how much of the Company's profits and profitability were sustainable and how much were unsustainable. Dr. Zurek has not proved otherwise.

173.    Importantly, what Dr. Zurek overlooks is that the well-developed field of financial analysis is well suited to determining how missing information would impact the assessment of risk, and therefore the but-for stock price and artificial inflation. Dr. Zurek is entirely incorrect when he conjectures in paragraph 126 that full corrective disclosure would necessarily have impacted the UNFI stock price less than the corrective disclosures did. Analysis and the application of generally accepted valuation principles may indicate that investors would have forecasted a worse outcome than what ultimately did occur, and they may have also discounted the stock to account for information asymmetry. Well regarded economic research and generally accepted principles of valuation address how investors typically react to risk, uncertainty, and information asymmetries of the type Dr. Zurek conjectures may have been present with full disclosure.[257] Without conducting any valuation analysis,

---

[255] Zurek Report, ¶126.

[256] Zurek Report, ¶¶123-124.

[257] The Nobel Prize in Economics was twice awarded for developing the principles about behavior and pricing under conditions of asymmetric information. "The Market for 'Lemons': Quality Uncertainty and the Market Mechanism," by George Akerlof, *The Quarterly Journal of Economics*, Vol. 84, No. 3, 1970; "Markets with Asymmetric

Dr. Zurek has no basis for his opinion that the event study residual returns would overstate the dissipation of artificial inflation in the instant case.

174.    Dr. Zurek is wrong when he suggests in paragraph 125 of his report that I would rely only on event study results to assess the dissipation of artificial inflation precipitated by the corrective disclosures in this case. He is similarly wrong in his paragraph 128 where he states that I would separately use valuation tools as an alternative to the event study. I was quite clear, and other portions of Dr. Zurek's report recognize, that the but-for valuation and computation of artificial inflation would employ the event study ***in concert*** with the full array of valuation tools.[258]

175.    Finally, Dr. Zurek is wrong to suggest that materialization of risk, if in fact it describes the corrective disclosures in the instant case, is a unique or unusual complexity.[259] Many cases have that particular fact pattern, and the out-of-pocket damages methodology commonly and correctly computes damages in those cases.[260]

176.    Of note, the specific information that Plaintiffs allege investors were deprived of in this case, which would inform analysts and investors as to how much of the Company's FY 2022 and 2023 EBITDA was likely nonrecurring income rather than recurring, fits neatly into the valuation models analysts presented into their published reports. The valuation exercise necessary to compute the but-for prices in the instant case appears to be straightforward.

---

Information: The Contributions of George Akerlof, Michael Spence and Joseph Stiglitz," by Karl-Gustaf Lofgren et al., *The Scandinavian Journal of Economics*, Vol. 104, No. 2, June 2002; and "Improvements to Auction Theory and Inventions of New Auction Formats," The Committee for the Prize in Economic Sciences in Memory of Alfred Nobel, 12 October 2020, describing the award to Paul Milgrom in 2020 for his work addressing asymmetric information, which cited, among others, "Rational Expectations, Information Acquisition, and Competitive Bidding," by Paul Milgrom, *Econometrica*, Vol. 49, No. 4, 1981.

[258] Feinstein Report, ¶¶204 and 211; and Zurek Report, ¶¶13 and 112.

[259] Zurek Report, ¶¶14, 122, 126-129; and The Videotaped Deposition of Paul Zurek, 5 August 2025, at 112:17-22.

[260] *See, e.g.*, *Baker v. SeaWorld Entm't, Inc.*, No. 14-cv-2129-MMA (AGS), 2017 WL 5885542, at *12 (S.D. Cal. Nov. 29, 2017) (rejecting claim that plaintiffs advanced a materialization of the risk theory of damages and finding that out-of-pocket damages methodology sufficiently linked to plaintiffs' theory of liability and was capable to measure damage on a class-wide basis); and *Monroe County Employees' Retirement System and Roofers Local No. 149 Pension Fund et al., v. The Southern Company et al.*, No. 1:17-cv-00241-WMR, 332 F.R.D. 370, at *80 (N.D. Ga. Atlanta Div. Aug. 22, 2019) (rejecting claim that plaintiffs' theory of liability is a "materialization of the risk theory" and finding the class-wide damages methodology is appropriately articulated).

### 3.     The Length of the Class Period is Neither Unusual Nor Problematic

177.    In paragraph 129 of his report, Dr. Zurek is incorrect when he suggests that the length of the Class Period in the instant matter, and the series of four corrective disclosures coming at three-month intervals may pose a problem when applying the out-of-pocket damages methodology in this case. While Dr. Zurek points out that the information available to the market changed over time as corrective disclosures occurred, which is not unusual in a securities fraud case, Dr. Zurek is not clear about why these factors may be problematic.[261]

178.    These features of the instant case are neither unusual nor problematic. The Class Period is less than two years in length, which is similar to the Class Period lengths in many other securities cases. Of course the information available to the market changed over time, as this is always the case in efficient securities markets. In every securities fraud case, information is concealed and then later revealed. The fact that the revelations occurred over several dates rather than all at once is also not unique to this case and poses no unique complexities that the out-of-pocket damages methodology cannot accommodate.

179.    If Dr. Zurek's point is that the value of the concealed information changed over the course of the Class Period, such that it was not the same early in the Class Period as on the later days when it was revealed, the out-of-pocket damages methodology handles that potential complexity in stride. Moreover, Dr. Zurek has provided no evidence or indication that the value of the concealed information changed over the course of the Class Period. But, if there was such evidence that indicated a change in the value of the concealed information, that same evidence and indication would be incorporated and therefore reflected in the but-for stock price valuation.

180.    Dr. Zurek questions how the out-of-pocket damages methodology works when there are four corrective disclosures and an almost two-year Class Period.[262] The short answer is that it works as it always does, as described in the Feinstein Report and above. But to answer Dr. Zurek's question more completely here: The but-for stock price would be computed by valuing UNFI stock on each day of the Class Period under the hypothetical scenario that

---

[261] Zurek Report, ¶129.

[262] Zurek Report, ¶129.

there was full disclosure at all points in time instead of misrepresentations and omissions. For each day in the Class Period, the but-for price would be subtracted from the actual market price to compute how much artificial inflation was in the stock price on each day. Per share damages for any particular investor would be computed as the change in artificial inflation over the investor's holding period, but limited to be no greater than the amount lost on the investment. Applying the *Dura* cap, if deemed appropriate by the Court, damages would be further limited to be no greater than the amount of artificial inflation that dissipated on the corrective disclosure dates that occurred during the investor's holding period.[263]

### 4. The Out-Of-Pocket Damages Methodology Handles Confounding Information Well

181. In paragraph 130 of his report, Dr. Zurek questions how the out-of-pocket damages methodology handles confounding information. Confounding information is information unrelated to the alleged fraud that is provided to the market simultaneously with a corrective disclosure. When there is substantial and material negative confounding information, the event study's residual return will generally be greater than the stock price decline elicited by the corrective disclosure.

182. Dr. Zurek's query derives from his miscomprehension of my report in his paragraphs 113 and 125, wherein he seems to say that I would only use the event study to measure artificial inflation and not employ the supplemental valuation tools. As discussed, the event study is a useful and valuable tool. However, when conditions are identified that call for supplementing the event study analysis with additional valuation tools, one can certainly do so to remove the effect of confounding information.

183. Confounding information is a common condition that is routinely handled by the out-of-pocket damages methodology. One simply identifies the confounding information, applies generally accepted valuation tools and principles to value it, and then extracts it from the event study's residual return to isolate the portion of the residual return attributable only to the allegation-related disclosure.

---

[263] *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U. S. 336 (2005).

184. For example, assume that a publicly traded company committed securities fraud by reporting that its net income was $10 per share when in fact it was only $7 per share. Also assume that the fraud came to light on a day when it was announced that a fire destroyed a company factory that was worth $1 per share. Suppose the fire was the only confounding information disclosed. Suppose that in response to the mix of news the stock price fell $35 per share, of which the event study identified $4 per share was due to market and sector factors. The residual return that day would be $31 per share, which is the $35 per share total stock price decline minus the $4 per share decline caused by the market and sector effects. Of this $31 per share residual decline detected by the event study, valuation analysis confirms that $1 per share was the impact of the fire. Thus, the event study in concert with the additional valuation analysis finds that the fraud removed $30 per share of artificial inflation from the stock price (the $31 residual decline minus the $1 confounding information effect).

185. If the investor had purchased the stock for $50 per share before the corrective disclosure, and sold the stock after the corrective disclosure for $15 per share, the investment loss would be $35 per share, but the damages would be the decline in artificial inflation, which is computed to be $30 per share.

186. As the example shows, contrary to Dr. Zurek's confusion, the out-of-pocket damages methodology accommodates confounding information.

### E.    Option Damages Can Be Commonly Computed with the Out-of-Pocket Methodology

187. As detailed in the Feinstein Report, the out-of-pocket damages methodology can be applied to compute option damages as well as stock damages. [264] The application of the methodology is common for all Class members who purchased call options or wrote put options.[265]

---

[264] Feinstein Report, ¶207.

[265] Feinstein Report, ¶207.

70

### 1. Artificial Inflation Ribbon

188. Dr. Zurek acknowledges the connection between the out-of-pocket damages methodology for stock and options, as the first of his two criticisms of the option damages methodology is that it uses the same stock artificial inflation ribbon used to compute stock damages.[266] He reprises all the same criticisms about the stock inflation ribbon when criticizing the option damages methodology.[267] None of his criticisms was valid in this context of the out-of-pocket damages methodology applied to stocks, and they remain invalid in the context of the out-of-pocket damages methodology applied to options.

### 2. The Option Formula Volatility Parameter

189. To compute option damages with the out-of-pocket damages methodology for any particular option, one computes a but-for option price using a generally accepted option valuation formula, such as the Black-Scholes formula.[268] Dr. Zurek does not dispute that the Black-Scholes formula is a well-regarded and capable option pricing formula that can compute option values for any stock price and volatility.[269]

190. The but-for option price is computed by inserting into the pricing formula the but-for stock price in place of the actual inflated stock price. The formula also calls for a stock volatility parameter that takes into account all of the information concealed by the alleged misrepresentations and omissions.

191. Dr. Zurek questions where one would obtain the requisite but-for volatility parameter for the option valuation formula.[270] I addressed this question in my deposition.[271] Indeed, option prices and observable implied volatility inputs can be obtained from *OptionMetrics* and *iVolatility* as of any point in time, including post-disclosure.[272] A post-disclosure

---

[266] Zurek Report, ¶133.

[267] Zurek Report, ¶¶132-134.

[268] Feinstein Report, ¶207.

[269] Zurek Report, ¶¶131, 136, and 146.

[270] Zurek Report, ¶¶135-141.

[271] Feinstein Deposition, at 261:17-262:15.

[272] Contrary to Dr. Zurek's criticism in ¶139 of his report, this data is readily available for all UNFI options. That there are numerous different option specifications poses no problem.

implied volatility is the market's requisite assessment of volatility accounting for full disclosure.

192.    Even if the implied volatility input were not available from a data provider, the Black-Scholes option pricing formula can be effectively inverted so that an analyst can compute the post-disclosure implied volatility parameter from the post-disclosure stock and option prices. The methodology for computing an implied volatility is explicated in academic textbooks on option pricing.[273]

193.    Dr. Zurek argues that using the post-disclosure implied volatility may be imprecise because other factors besides corrective disclosure may have contributed to the change in implied volatility.[274] Dr. Zurek specifically contends that in the instant case, the market's uncertainty (and therefore the volatility assessment) would have been greater in the but-for scenario with full disclosure than it actually was pre- and post-disclosure, because in the but-for scenario the market would have been apprised of a risk that it otherwise did not know about. Dr. Zurek argues that in the but-for scenario in this instant case, the market would have known that there was a risk that previously achievable procurement gains would vanish, and this additional knowledge would have caused them to have greater uncertainty and thus a higher volatility assessment.[275]

194.    Dr. Zurek is wrong. In the instant case, ignorance was not bliss. Had the market known how much of the Company's profits were recurring and how much were non-recurring because they derived from unsustainable procurement gains, the market would have been better able to forecast future profits and profitability, not less able. Investors would have had more confidence in their forecasts. In fact, throughout the Class Period, investors clamored for more transparency from the Company, not less. With more transparency and less uncertainty, the volatility parameter for the but-for scenario would not have been greater than it was both pre- and post-disclosure, but rather would have been consistent with the observed post-disclosure implied volatility.

---

[273] *See, e.g.*, The Black-Scholes-Merton Model," by John Hull, Chapter 14 of *Options, Futures, and Other Derivatives*, 8th Edition, Prentice Hall, 2012, pp. 318-319.

[274] Zurek Report, ¶¶143-145.

[275] Zurek Report, ¶¶140 and 143.

195.    Dr. Zurek provides no contrary evidence supporting his position that the but-for uncertainty and observable post-disclosure volatility parameter is too low for pricing the UNFI options in the but-for scenario. Nonetheless, while I disagree with Dr. Zurek's contention, as I explained in my deposition, if there is any dispute as to whether the pre-disclosure or post-disclosure implied volatility, or a volatility quantity in between, is more accurate for pricing the option in the but-for scenario, one can compute a conservative measure of damages immune to that criticism by using the implied volatility from the range of pre- and post-disclosure implied volatility values that yields the most conservative measure of damages.[276]

196.    Thus, it is always possible to compute option damages, commonly for all option investors, with the out-of-pocket damages methodology.


## IX.    LIMITING FACTORS AND OTHER ASSUMPTIONS

197.    This report is furnished solely for the purpose of court proceedings in the above-referenced matter and may not be used or referred to for any other purpose. The analysis and opinions contained in this report are based on information available as of the date of the report. I reserve the right to amend, refine, or supplement this report in the event that I become aware of additional information, evidence, arguments, or analyses which bear on my work in this matter.


Steven P. Feinstein, Ph.D., CFA

---

[276] Feinstein Deposition, at 262:17-263:3.

**Exhibit-1**
**Documents and Other Information Considered**
**In Addition to Those Cited in the Feinstein Report**

## CASE DOCUMENTS

- Report on Market Efficiency and Damages Methodology, Steven P. Feinstein, Ph.D., CFA, filed 7 March 2025.
- Expert Report of Paul Zurek, Ph.D., filed 13 June 2025.

## DEPOSITIONS

- Transcript of Videotaped Deposition of Steven P. Feinstein, Ph.D., 9 May 2025.
- Transcript of Videotaped Deposition of Paul Zurek, Ph.D., 5 August 2025.

## EXPERT REPORTS

- Declaration of Paul Zurek, Ph.D., dated 14 August 2018, *In Re RH, Inc. Securities Litigation*, U.S. District Court, Northern District of California, Oakland Division, Civil Action No. 4: 17-00554-YGR.
- Expert Report of Paul Zurek, Ph.D., dated 1 April 2019, *Trevor Mild, et al., v. PPG Industries, Inc., et al.*, U.S. District Court, Central District of California, Civil Action No. 2:18-cv-04231-RGK-JEM.
- Expert Report of Paul Zurek, Ph.D., dated 13 June 2019, *In re Novo Nordisk Securities Litigation*, U.S. District Court, District of New Jersey, Civil Action No. 3:17-cv-00209-BRM-LHG.
- Rebuttal Report of Paul Zurek, Ph.D., dated 18 June 2019, *Christakis Vrakas, et al., v. United States Steel Corporation, et al.*, U.S. District Court, Western District of Pennsylvania, Civil Action No. 17-579.
- Rebuttal Report of Paul Zurek, Ph.D., dated 31 August 2020, *Indiana Public Retirement System, et al., v. Stamps.com, Inc., et al.*, U.S. District Court, Central District of California, Civil Action No. 2:19-cv-01828-MWF (SK).
- Expert Report of Paul Zurek, Ph.D., dated 20 December 2024, *San Antonio Fire and Police Pension Fund, et al., v. Dentsply Sirona Inc., et al.*, U.S. District Court, Southern District of New York, Civil Action No. 1:22-cv-06339-AS.

## ANALYST REPORTS

- Northcoast Research, 5 October 2021.
- Wells Fargo, 17 March 2022.
- Northcoast Research, 13 December 2022.
- CL King, 8 March 2023.

**Exhibit-1**
**Documents and Other Information Considered**
**In Addition to Those Cited in the Feinstein Report**

- Goldman Sachs, 8 March 2023.
- Wolfe Research, 8 March 2023.
- CL King, 9 March 2023.
- Seaport Global, 9 March 2023.
- Northcoast Research, 10 March 2023.
- R5 Capital, 14 March 2023.
- BofA, 7 June 2023.
- Goldman Sachs, 7 June 2023.
- UBS, 7 June 2023.
- Wolfe Research, 7 June 2023.
- CL King, 8 June 2023.
- BTIG, 26 September 2023.
- CL King, 26 September 2023.
- Roth MKM, 26 September 2023.
- Wolfe Research, 26 September 2023.
- CL King, 27 September 2023.
- Goldman Sachs, 27 September 2023.

**CONFERENCE CALLS AND PRESENTATIONS**

- "Q1 2022 United Natural Foods Inc Earnings Call," *Refinitiv*, conference call, 8 December 2021.
- "Fiscal 2022 1st Quarter Supplemental Slides," Company presentation, 8 December 2021.
- "Q2 2022 United Natural Foods Inc Earnings Call," *Refinitiv*, conference call, 9 March 2022.
- "Fiscal 2022 2nd Quarter Supplemental Slides," Company presentation, 9 March 2022.
- "Q3 2022 United Natural Foods Inc Earnings Call," *Refinitiv*, conference call, 7 June 2022.
- "Fiscal 2022 3rd Quarter Supplemental Slides," Company presentation, 7 June 2022.
- "Q4 2022 United Natural Foods Inc Earnings Call," *Refinitiv*, conference call, 27 September 2022.
- "Fourth Quarter 2022 Earnings Conference Call," Company presentation, 27 September 2022.
- "Q1 2023 United Natural Foods Inc Earnings Call," *Refinitiv*, conference call, 7 December 2022.
- "First Quarter Fiscal 2023 Earnings Conference Call," Company presentation, 7 December 2022.
- "Q2 2023 United Natural Foods Inc Earnings Call," *Refinitiv*, conference call, 8 March 2023.

**Exhibit-1**
**Documents and Other Information Considered**
**In Addition to Those Cited in the Feinstein Report**

- "Second Quarter Fiscal 2023 Earnings Conference Call," Company presentation, 8 March 2023.
- "Q3 2023 United Natural Foods Inc Earnings Call," *Refinitiv*, conference call, 7 June 2023.
- "Third Quarter Fiscal 2023 Earnings Conference Call," Company presentation, 7 June 2023.
- "Q4 2023 United Natural Foods Inc Earnings Call," *Refinitiv*, conference call, 26 September 2023.
- "Fourth Quarter Fiscal 2023 Earnings Conference Call," Company presentation, 26 September 2023.


**ACADEMIC AND PROFESSIONAL LITERATURE**

- Akerlof, George, "The Market for 'Lemons': Quality Uncertainty and the Market Mechanism," *The Quarterly Journal of Economics*, Vol. 84, No. 3, 1970.
- Hull, John, "The Black-Scholes-Merton Model," Chapter 14 of *Options, Futures, and Other Derivatives*, 8th Edition, Prentice Hall, 2012.
- "Improvements to Auction Theory and Inventions of New Auction Formats," The Committee for the Prize in Economic Sciences in Memory of Alfred Nobel, 12 October 2020.
- Lofgren, Karl-Gustaf, Torsten Persson, and Jorgen Weibull, "Markets with Asymmetric Information: The Contributions of George Akerlof, Michael Spence and Joseph Stiglitz," *The Scandinavian Journal of Economics*, Vol. 104, No. 2, 2002.
- Milgrom, Paul, "Rational Expectations, Information Acquisition, and Competitive Bidding," *Econometrica*, Vol. 49, No. 4, 1981.


**DATA AND DATABASES**

- LSEG Workspace


**LEGAL CASES**

- *Baker v. SeaWorld Entm't, Inc.*, No. 14-cv-2129-MMA (AGS), 2017 WL 5885542 (S.D. Cal. Nov. 29, 2017).
- *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U. S. 336 (2005).
- *Monroe County Employees' Retirement System and Roofers Local No. 149 Pension Fund et al., v. The Southern Company et al.*, No. 1:17-cv-00241-WMR, 332 F.R.D. 370 (N.D. Ga. Atlanta Div. Aug. 22, 2019).

**Exhibit-1**
**Documents and Other Information Considered**
**In Addition to Those Cited in the Feinstein Report**

**OTHER**

- Any other documents cited in the report.

**Exhibit-2**
**Steven P. Feinstein, Ph.D., CFA**
**Testimony Subsequent to the Date of the Feinstein Report**

In re Biogen Inc. Securities Litigation
Civil Action No. 1-22-cv-10200-WGY
United States District Court
District of Massachusetts
Deposition Testimony
April 2025

In re United Natural Foods Inc. Securities Litigation
Civil Action No. 1-23-cv-02364-JGLC-VF
United States District Court
Southern District of New York
Deposition Testimony
May 2025

In re Zymergen Inc. Securities Litigation
Case No. 5:21-cv-06028-PCP
United States District Court
Northern District of California
Deposition Testimony
May 2025

In re Acadia Pharmaceuticals Inc. Securities Litigation
Case No. 3:21-cv-00762-WQH-MSB
United States District Court
Southern District of California
Deposition Testimony
October 2023
Deposition Testimony
June 2025

In re Green Dot Corporation Securities Litigation
Case No. 2:19-CV-10701-FLA-E
United States District Court
Central District of California
Deposition Testimony
June 2025

In re Valeant Pharmaceuticals International, Inc. Securities Litigation
Master No. 3:15-cv-07658-MAS-LHG
United States District Court
District of New Jersey
Deposition Testimony
May 2024
Deposition Testimony
July 2024

**Exhibit-3**

**UNFI Common Stock Event Study Result: 26 September 2023**

| Date | UNFI Closing Price | UNFI Prior Day Closing Price | UNFI Logarithmic Return | Market Index Logarithmic Return | S&P SmallCap 600 Food Distributors Index Logarithmic Return [1] | UNFI Explained Return | UNFI Residual Return | OLS $t$-statistic [2] | Newey-West $t$-statistic [2] |
|---|---|---|---|---|---|---|---|---|---|
| 9/26/2023 | $13.73 | $18.92 | -32.06% | -1.42% | -3.47% | -3.12% | -28.95% | -16.43 *** | -16.13 *** |

**Sources:** CRSP, S&P, and computations performed by Crowninshield Financial Research, Inc.

**Notes:**

[1] Sector Index reconstructed to exclude UNFI.

[2] "***" Statistically significant at the 99% confidence level.