**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAN SILLS and GEORGE DICK, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED NATURAL FOODS, INC., J. ALEXANDER MILLER DOUGLAS, JOHN W. HOWARD, and CHRISTOPHER P. TESTA,<br><br>Defendants. | Case No. 1:23-cv-02364-JGLC-VF |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**<u>DEFENDANT CHRISTOPHER TESTA'S MOTION FOR RECONSIDERATION</u>**

Plaintiffs file this opposition to Defendant Christopher Testa's Motion for Reconsideration of July 28, 2025 Opinion and Order Denying his Motion for Judgment on the Pleadings (ECF 120).

## INTRODUCTION

Plaintiffs' Second Amended Class Action Complaint contained an error that misattributed one public statement to Defendant Christopher Testa ("Testa"). *See* ECF 39 ("Complaint"), ¶167. To be clear, this statement did not form a basis of primary liability against Testa under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"). The Court already dismissed the Section 10(b) claim brought against Testa as a primary violator, holding that the statement in ¶167 was not actionable. ECF 66 ("MTD Order") at 22 & n.2. The Court did, however, sustain Plaintiffs' claim of Testa's liability as a control person under Section 20(a) of the Exchange Act. *Id.* at 28. The Court reiterated its holding that Testa may be liable under Section 20(a) in its Order denying Testa's Motion for Judgment on the Pleadings. *See* ECF 118 ("12(c) Order").

Correcting the misattribution in ¶167 does not alter the Court's conclusion that Testa can be held liable as a control person under Section 20(a).[1] First and foremost, the statement in ¶167 did not form the basis for the Court's holding in the MTD Order that Testa is liable under Section 20(a). As the Court observed, Defendants did not even challenge that Testa was a control person in the Motion to Dismiss. *See* MTD Order at 28 (citing ¶¶280-83); *see also* ¶¶29-30.[2] *Those* allegations form the basis of Plaintiffs' Section 20(a) claim against Testa, not ¶167. And they are sufficient. *Cornwell v. Credit Suisse Grp.*, 689 F. Supp. 2d 629, 639 (S.D.N.Y. 2010) (control adequately pled where defendants, because of their "high-level positions," "had the power to

---

[1] Paragraph 167 contained a scrivener's error regarding the speaker of a statement on UNFI's conference call held on June 7, 2022. That error was unfortunately repeated in Plaintiffs' Opposition to Defendant Testa's Motion for Judgment on the Pleadings (ECF 86), and the misattributed statement was considered in the Court's 12(c) Order (at pp. 2, 6).

[2] Citations to "¶__" are to the Complaint.

control or influence" the public statements); *In re CIT Grp. Inc. Sec. Litig.*, 2010 WL 2365846, at *5 (S.D.N.Y. June 10, 2010) (similar).

Having failed to challenge Testa's control in Defendants' Motion to Dismiss, Testa filed his 12(c) Motion, arguing for the first time that his control was not sufficiently alleged. His opening brief discussed ¶167, but Testa waited until his reply brief to raise the same argument about the misattribution of the statement in ¶167 that he raises again now. *See* ECF 82 at 8-9; ECF 90 at 4. The Court denied the 12(c) Motion because "Plaintiffs also allege that Testa had actual access to the contents of the statements, possessed actual authority to control the misleading statements, and that the misleading statements were made nonetheless." 12(c) Order at 6 (citing ¶¶29-30). The Court also noted Testa's participation in conference calls during the Class Period. *Id.* at 5 (citing ¶67 and the misattributed statement in ¶167). But consideration of the statement in ¶167 was only "[c]ombined with the allegations that Testa had authority over UNFI statements and had access to UNFI statements." *Id.* at 6-7. In short, the misattributed statement did not form the sole basis for finding Testa's control was sufficiently alleged for purposes of Section 20(a) liability; the other allegations are enough.

Still, Defendants take a third bite at the procedural apple with their instant motion, ignoring that Testa need not have made *any* public statements to allege his liability as a control person. As the Court already held, Plaintiffs need only allege that Testa actually *possessed* the power to direct or cause the direction of Defendants, which Plaintiffs have done. *See* 12(c) Order at 4. *Exercising* that power is not required to plead control; if it were, control person liability would be coextensive with primary liability under Section 10(b). Thus, correcting the misattribution of the statement in ¶167 does not alter the result that Testa is sufficiently alleged to have been a control person.

Finally, "whether a defendant is a controlling person 'is a fact-intensive inquiry, and generally should not be resolved on a motion to dismiss.'" 12(c) Order at 4 (quoting *Katz v. Image Innovations Holdings, Inc.*, 542 F. Supp. 2d 269, 276 (S.D.N.Y. 2008)). Here, whether Testa had "control" should not be resolved in his favor on a pleading motion, particularly because discovery already shows he did. Evidence produced to date shows Testa edited scripts of the public statements of the other Defendants, showing that he not only possessed control (all that is required), he actually exercised it. *See* Declaration of Pavithra Rajesh ("Rajesh Decl."), Exs. B-C. *Especially* in light of these facts, the Court should not revisit its holding about Testa's Section 20(a) liability as discovery is ongoing.

For these reasons, Testa has not met his burden to show that the Court overlooked a fact that alters its prior conclusion, and his Motion for Reconsideration should be denied.

## LEGAL STANDARD

To state a claim under Section 20(a), Plaintiffs must allege a predicate violation of the Exchange Act, control of the primary violator, and culpable participation. *See* 12(c) Order at 3. Only the "control" element is at issue here, and it is subject to notice pleading. *Id.* at 3-4.

A motion for reconsideration is "an extraordinary request that is granted only in rare circumstances." *Van Buskirk v. United Grp. of Companies, Inc.*, 935 F.3d 49, 54 (2d Cir. 2019). "The standard for granting a motion for reconsideration is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *In re Platinum-Beechwood Litig.*, 400 F. Supp. 3d 2, 4 (S.D.N.Y. 2019).[3]

---

[3] Unless otherwise stated, all emphasis in bold and italics is added, and internal citations and quotation marks are omitted.

## ARGUMENT

### I.      Plaintiffs' Error Is Not An Outcome-Determinative Fact

Testa has not shown that the outcome of his 12(c) Motion would be different if ¶167 were excluded from the "control" analysis. The Court relied on several facts to reach its conclusion that "Testa was a controlling person": (i) "Testa was UNFI's President during the entire relevant Class Period"; (ii) during this time, he "possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to . . . the market"; (iii) he was "provided with copies of the Company's reports and press releases alleged . . . to be misleading . . . and had the ability and opportunity to prevent their issuance or cause them to be corrected"; and (iv) he "participated in UNFI's earnings calls during the Class Period." 12(c) Order at 4-5.

Indeed, the Court's 12(c) Order shows the significance of ¶167 is limited: "Plaintiffs' allegations regarding Testa's participation in this single call are quite minimal" and have "nothing to do with forward buying." *Id.* at 6. Thus, were Plaintiffs' incorrect "fact" about the statement in ¶167 excluded from the analysis, there are still plenty of other alleged facts that are sufficient to plausibly plead the control element. *In re Virtus Inv. Partners, Inc. Sec. Litig.*, 195 F. Supp. 3d 528, 541, 543 (S.D.N.Y. 2016) (sustaining control person claim against officer who "served as a spokesperson" for the primary violator, even though that officer "was not alleged to have "actually 'made' any of the remaining misstatements for which a claim of primary liability could be asserted"). Moreover, the Court cited other allegations of Testa's participation during conference calls as relevant to his actual possession of control. *See* 12(c) Order at 5 (citing ¶67).[4]

---

[4] Plaintiffs alleged that the statements in ¶¶66-68, which are properly attributed to Testa, are relevant to the actionable misstatements because they discuss the "higher than normal" price increases that, unbeknownst to investors, enabled UNFI to engage in significant and unsustainable forward buying. *See* ¶¶67-68. Similarly, ¶66 specifically alleged Testa's "full visibility and familiarity with changes in their suppliers' expected pricing." *See also* ¶223. These allegations are even more relevant to Testa's actual possession of control regarding the actionable forward-buying-related statements than the mistaken statement in ¶167, which the Court said had "nothing to do with forward buying."

4

Testa seemingly argues that his making the statement alleged in ¶167 is necessary to plead control. ECF 121 ("Br.") at 3-4. Not so. In briefing Testa's 12(c) Motion, Plaintiffs and Testa disputed whether "actual involvement" in the preparing or disseminating actionable statements is required to plead control. *Compare* ECF 82 at 5 (Defendants argued that "the defendant must have **exerted** actual control over the matters at issue."), *with* ECF 86 at 9-12 (Plaintiffs responded, "Defendants' narrow articulation of the standard for control is not accurate because it conflates the ability to direct the actions of the controlled person with the active exercise of that ability."). Resolving that dispute was not necessary because, even if Testa *were* correct that actual involvement in preparing or disseminating public statements is required, Plaintiffs pled those facts. 12(c) Order at 6 ("[W]hile broad allegations of Testa's authority over and knowledge of the misleading statements **might not always be enough** to show actual control, the allegations about Testa's participation in an earnings call imply that he exercised actual control."). The fact is that Testa participated on the June 7, 2022 earnings call, even though he did not make the statement in ¶167. *See, e.g.*, ECF 122-1 at 18 ("Kelly, this is Chris [Testa]. It's not – inflation isn't really a channel thing, it's a product segment thing, right? So it's based on the suppliers.").

Testa acknowledges that *exercise* of control is not *required* to plead that he is a control person. Br. at 5 (authority over and knowledge of business matters "may" not be enough); *see also* ECF 86 at 9-12 & n.7. The Court's qualifier—"might not always be enough"— contemplates that there **are** instances where broad allegations that the defendant possessed power over the statements suffices to adequately plead control over the primary violators, even if he did not exercise it. This is one such instance: Testa was intimately familiar with the abnormal price increases (¶223) and,

---

12(c) Order at 6. Testa claims that the Court did not rely on ¶67 (a statement before the Class Period). Br. at 6. He is wrong. 12(c) Order at 5.

as Defendants' previously-filed exhibits demonstrate, Testa participated on every earnings call during which the primary violators made actionable statements. *See* ECF 50-4, 50-5, 50-6, 50-7, 50-9, 50-11. This suffices to plead control. *In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d 493, 517 (S.D.N.Y. 2009) (allegations that defendant was group managing director and later chief compliance officer sufficient to provide "fair notice" of grounds for "actual control"); *In re Parlamat Sec. Litig.*, 414 F. Supp. 2d 428, 440-41 (S.D.N.Y. 2006) (allegations that bank had "access" to company's public statements suffice because "control . . . need not be pleaded with particularity"). Unlike in Defendants' cited authorities, Plaintiffs do not rely solely on Testa's status as UNFI's President or general allegations that he presided over public statements. *Compare* 12(c) Order at 5 *with Li v. Eqonex Ltd.*, 2024 WL 4241951, at *16-18 (S.D.N.Y. Sept. 18, 2024) (plaintiffs relied solely on defendants' status as parent company or directorship) (Br. at 3) *and In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d 731, 771 (S.D.N.Y. 2017) ("general" allegation that director is responsible for public filings was not enough) (Br. at 6).

Even if the Court requires more than Testa's silent endorsement of the remaining Defendants' actionable statements, Testa did make statements "condoning the [other Defendants'] misleading omission of material information about forward buying" and its impact on profitability. 12(c) Order at 6. For example, Testa stated:

> Due to the cost plus nature of the majority of our pricing agreements, inflation is typically a positive driver of top-line revenue and margin gains. For Q1, our growth can be looked at as roughly half coming from new business wins, net of expected market contraction, and half coming from inflation. At least for the next several months, we don't see inflation easing. Our procurement and merchandising teams are working closely with our suppliers to offset some of these price hikes with increased promotional activity to help our customers manage through this period.

Rajesh Decl., Ex. A at 4 (December 8, 2021 earnings call transcript); *see also* ECF 50-6. This is similar to other statements that the Court found actionable. MTD Order at 16 (statements "put the drivers of [UNFI's margins in play" but "failed to disclose that forward buying was a significant

6

and aberrational driver of its profit margins"). In fact, Testa's claim in that statement—that UNFI was easing the burden of inflation on customers through promotional activity—is the polar opposite of what Defendants were actually doing (*i.e.*, capitalizing on those price hikes to generate additional margin for UNFI through forward buying). *See generally* ¶61 (Unlike the case of promotions, forward buying does not pass on the discounted cost of inventory to retailers).

In sum, the misattribution of the statement in ¶167 to Testa is not outcome-determinative.

## II.    Reconsideration Is Not Warranted Because The Control Element Is A "Fact-Intensive" Inquiry And Discovery Has Already Produced Evidence That Testa Controlled Defendants' Statements

Though fact discovery has not yet concluded, there is already evidence showing Testa did, in fact, control the primary violators' statements during the Class Period.

Discovery confirms that Testa was familiar with forward buying and its impact on UNFI's profitability. ██████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████ Thus, it is plausible to infer that Testa knew that Douglas omitted forward

7

buying in his statements (¶165), which this Court has held to be actionable (ECF 66 at 13, 17), and Testa did not speak up to correct them.

Discovery also shows that Testa exercised control over other of Douglas's public statements. For example, Testa edited a script for Douglas's fireside chat with Wolfe Research in December 2021, and Testa edited a proposed answer about wholesale inflation and gross margin compression. Rajesh Decl., Ex. C (UNFI-0021938) (Testa's edits (in red) to a script for Douglas's fireside chat with analyst firm Wolfe Research in December 2021). His proposed insertion reads, "From CPG [consumer packaged goods] perspective, inflation typically coincides with promotions to help maintain volume and offset some of the impact of higher prices," which omits forward buying. *Id*. at UNFI-0021939. This shows that Testa had specific control over public statements concerning the topic that is at-issue in this case, which is even more than what is needed to show control. *In re Henry Schein, Inc. Sec. Litig.*, 2019 WL 8638851, at *17, *29 (E.D.N.Y. Sept. 27, 2019) (control pled as to President of U.S. dental operations who did not make actionable statements where he oversaw relevant division and regularly communicated with competitors about anticompetitive scheme).

The foregoing plausibly demonstrates that Testa possessed and exercised actual control over Defendants' public statements. As the Court previously noted, the question of whether one is a controlling person "is a fact-intensive inquiry, and generally should not be resolved on a motion to dismiss." 12(c) Order at 4. This case is a good example of why. Ongoing discovery should be allowed to continue so that questions of control can be decided at summary judgment or trial.

## CONCLUSION

The Motion for Reconsideration should be denied. Even if the foregoing facts, taken alone, "would not be enough to establish actual control . . . dismissal is improper as long as it is at least plausible that Plaintiffs can develop some set of facts that would pass muster." *In re Global*

*Crossing, Ltd. Sec. Litig.*, 2005 WL 2990646, at \*8 (S.D.N.Y. Nov. 7, 2005). It is unreasonable to conclude that Plaintiffs could never prove their theory of control as to Testa, who served as UNFI's President and Chief Marketing Officer during the Class Period, demonstrated his familiarity with the facts underlying Plaintiffs' forward-buying-related claims, and participated on every investor conference call during the Class Period during which the actionable false statements were made.

Dated: September 8, 2025

By: */s/ Pavithra Rajesh*
**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay (admitted *pro hac vice*)
Kara M. Wolke (admitted *pro hac vice*)
Casey E. Sadler (admitted *pro hac vice*)
Melissa C. Wright (admitted *pro hac vice*)
Pavithra Rajesh (admitted *pro hac vice*)
Amir A. Soleimanpour (admitted *pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
kwolke@glancylaw.com

Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 358
New York, NY 10169
Telephone:(212) 682-5340
Facsimile: (212) 884-0988
glinkh@glancylaw.com

*Counsel for Plaintiffs and Proposed Class Counsel for the Proposed Class*

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

9

**LAW OFFICES OF FRANK CRUZ**
Frank Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Additional Counsel*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel for Plaintiffs certifies that this brief contains 2,852 words.

*/s/ Pavithra Rajesh*
Pavithra Rajesh

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On September 8, 2025, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 8, 2025.

*/s/ Pavithra Rajesh*
Pavithra Rajesh