

SIDLEY AUSTIN LLP
ONE SOUTH DEARBORN STREET
CHICAGO, IL 60603
+1 312 853 7000
+1 312 853 7036 FAX


AMERICA • ASIA PACIFIC • EUROPE

+1 312 853 7772
NUMAR@SIDLEY.COM

December 30, 2025


**VIA ECF**
Hon. Jessica G. L. Clarke
United States District Court
Southern District of New York
500 Pearl Street, Room 1040
New York, NY 10007

Re:     *Sills et al. v. United Natural Foods Inc. et al.*, No. 23 Civ. 2364 (JGLC)(VF)

Dear Judge Clarke:

We represent Defendants United Natural Foods, Inc., J. Alexander Miller Douglas, John W. Howard, and Christopher P. Testa in the above-referenced action. We write in response to Plaintiffs' Notice of Supplemental Authority (Dkt. 156). Plaintiffs argue that a recent class certification order in *Leone v. ASP Isotopes Inc.*, No. 24-cv-9253 (CM) (S.D.N.Y. Dec. 4, 2025) ("*ASPI*"), attached as Exhibit A to their Notice (Dkt. 156-1), supports Plaintiffs' motion for class certification. They are mistaken.

*ASPI* is fundamentally different from this case, presenting a different set of class certification arguments and an entirely different record. As Judge McMahon emphasized, the *ASPI* defendants presented "no expert report, no event study, and no other evidence to challenge price impact." Dkt. 156-1, Ex. A at 68; *see also id.* at 74 ("Rebutting the *Basic* presumption of reliance requires evidence, not conjuncture, and [d]efendants offer[ed] none."). And the defendants' core predominance argument was that the substance of the alleged corrective disclosures was revealed *before any of the alleged misstatements*.[1] *Id.* at 81-82. Neither circumstance exists here. Instead, Defendants submitted extensive evidence—including two reports by their expert (Dkt. 113-15; Dkt. 147-1)—rebutting price impact for two of Plaintiffs' four alleged corrective disclosures. Dkt. 112 at 21-27; Dkt. 146 at 9-15. And here, Defendants do not claim that the substance of the alleged corrective disclosures was revealed before the alleged misstatements were made; rather, Defendants' argument is that the March 8, 2023 disclosure revealed the allegedly omitted information and there was no new, corrective information disclosed in the June 7, 2023 and September 26, 2023 disclosures. *Id.* Indeed, Plaintiffs here do not even challenge any statements made between the March 2023 disclosure on the one hand, and the June and September 2023

---

[1] This is why *ASPI* referred to the defendants' argument as a "truth-on-the-market defense," which is an argument that the misrepresentations could not have affected the stock price because the alleged truth was already known before the alleged misstatements were made. *See* Dkt. 156-1, Ex. A at 12-14, 19, 82. That is not Defendants' argument here.

Sidley Austin LLP is a limited liability partnership practicing in affiliation with other Sidley Austin partnerships.

# SIDLEY

Page 2

disclosures on the other. Nothing in *ASPI* compares to or undermines Defendants' evidentiary showings here, or otherwise supports Plaintiffs' attempt to certify an overly broad class.

In fact, *ASPI* actually supports Defendants. Judge McMahon conducted exactly the type of content comparison—comparing the contents of the alleged misstatements with the contents of the alleged corrective disclosures to ensure a match—that *Goldman* requires and that neither Plaintiffs nor their expert have even attempted in this case. *See* Dkt. 156-1, Ex. A at 83-84. Applying *Goldman*, the *ASPI* court carefully "mapped each alleged misstatement to the [alleged corrective disclosure] report's factual findings," concluding that the alleged corrective disclosure "directly addresse[d] the 'contents of the misrepresentations,'" with "new, detailed, and specific information" that "plausibly corrected" the alleged misstatements. *Id.* As the chart below illustrates, that mapping was essential to the court's conclusion:

| Challenged Statement | Alleged Corrective Disclosure |
|---|---|
| **Statement 2:** "Mann presented Q[uantum Enrichment] as outperforming other technologies, with high selectivity and vaporization of uranium metal." *Id.* at 83. | "The report demonstrates that ASPI had no operational uranium enrichment technology, making the slide's claims materially misleading." *Id.* at 83. |
| **Statement 3:** "The slide indicated ASPI had already enriched uranium." *Id.* at 83. | "The … Report confirms Q[uantum Enrichment] had never been successfully tested on uranium, contradicting the implied claim of real-world uranium enrichment." *Id.* at 83-84. |
| **Statements 5 & 6:** "The slides suggested that U-235 Q[uantum Enrichment] work had progressed in parallel with Lithium-6 testing." *Id.* at 84. | "The report shows that Q[uantum Enrichment] remained entirely theoretical, with no laboratory scale uranium experiments completed, undermining any impression of practical research progress." *Id.* at 84. |
| **Statement 13:** "Mann claimed ASPI could enrich uranium 'in batches' with no risk of criticality." *Id.* at 84. | "The report shows ASPI had not begun uranium enrichment at all and faced fundamental technical challenges that made such enrichment impossible. This directly contradicts Mann's representation of current operational capability." *Id.* at 84. |
| **Statements 14 & 15:** "Petkov described multiple isotopes, including HALEU, as 'critical nuclear fuels' and claimed ASPI's technology was 'fully prepared for deployment.'" *Id.* at 84. | "The report shows ASPI had not tested Q[uantum Enrichment] on uranium or HALEU, and technical and scientific obstacles remained unresolved, directly contradicting these statements." *Id.* at 84. |

Sidley Austin LLP is a limited liability partnership practicing in affiliation with other Sidley Austin partnerships.

# SIDLEY

Page 3

Here, by contrast, Plaintiffs and their expert have not done a statement-by-statement comparison. Dkt. 146 at 13; *see also* Dkt. 147-2 at 38:20-39:5, 43:15-19, 55:21-56:4, 61:21-62:4, 62:16-22 (Dr. Feinstein admitting that he did not conduct a statement-by-statement matching analysis, that he "[didn't] really know exactly what that means" when asked if he had compared the alleged misstatements to an "equally generic corrective disclosure," and that he believed such an analysis "was irrelevant for this case"). That is not surprising, because such a comparison shows that there is a mismatch between the contents of the alleged misstatements and the June and September 2023 disclosures. *See* Dkt. 112 at 24-27; Dkt. 146 at 12-15. The degree of fit between the alleged misstatements and the alleged corrective disclosures found in *ASPI* is missing here.

Plaintiffs also seize on *ASPI*'s rejection of an "alternative causes" argument, but that aspect of the court's decision has no applicability here. *See* Dkt. 156 at 1. In *ASPI*, the defendants sought to rebut the presumption of reliance by "specula[ting] that 'other news' might have contributed to the decline" in stock price, without identifying anything specific. Dkt. 156-1, Ex. A at 74. Here, by contrast, there are a host of specific factors—identified by Defendants' expert—that could explain the decline in the stock price on June 7, 2023 and September 26, 2023, including the announcement of below-consensus Q3 2023 financial results and the downward revision to FY 2023 financial guidance for the June disclosure and the below-consensus FY 2024 financial guidance for the September disclosure, among other factors. Dkt. 112 at 24-26; Dkt. 113-15 at ¶¶ 74-109; Dkt. 147-1 at ¶¶ 22, 49-53.[2] In any event, the fundamental point remains—which Plaintiffs cannot answer—that the information Plaintiffs say was omitted by the Company was fully disclosed by March 8, 2023. Dkt. 112 at 21-24; Dkt. 146 at 9-10. Thus, under the efficient-market hypothesis, that information could not have impacted the price of the stock in June or September 2023.

Finally, Plaintiffs argue that *ASPI* supports the adequacy and typicality of Lead Plaintiff Sills and Additional Plaintiff Dick. It does not. While Plaintiffs latch on to the *ASPI* court's statements about the lead plaintiff's participation in the litigation, the plaintiff's supervision *was not disputed* in that case as it is here. And while Plaintiffs cite *ASPI* for the proposition that post-class-period purchases do not defeat adequacy and typicality, courts in this district have long recognized that post-disclosure purchases can give rise to a unique non-reliance defense. Dkt. 112 at 31-33 (collecting cases). This defense is especially applicable here where Sills purchased nearly a quarter of a million dollars of UNFI stock after the March 8, 2023 disclosure, just days after acknowledging that inflationary forward buying was a major driver of UNFI's margin and that UNFI's financial performance would continue to decline as a result of this phenomenon, and on the heels of repeated contemporaneous statements that he thought the market for UNFI securities was being manipulated and undervalued. *Id.* at 33. None of these facts existed in *ASPI*.

---

[2] Given the extensive discussion of alternative factors in Defendants' briefing and expert reports, it is baffling that Plaintiffs assert that "Defendants here do not even attempt to explain *what* that non-fraud-related information purportedly was." Dkt. 156 at 2.

# SIDLEY

Page 4

Respectfully submitted,

*/s/ Nilofer Umar*

Nilofer Umar

cc:     All counsel of record (via ECF)

Sidley Austin LLP is a limited liability partnership practicing in affiliation with other Sidley Austin partnerships.